# Exhibit A

## *To Plaintiffs' Complaint for Injunctive and Declaratory Relief*



**OFFICE OF THE ASSISTANT SECRETARY OF WAR**
3400 DEFENSE PENTAGON
WASHINGTON, DC 20301-3400

ENERGY, INSTALLATIONS,
AND ENVIRONMENT

MEMORANDUM FOR ASSISTANT SECRETARY OF THE ARMY
(INSTALLATIONS, ENERGY, AND ENVIRONMENT)
ASSISTANT SECRETARY OF THE NAVY (ENERGY,
INSTALLATIONS, AND ENVIRONMENT)
ASSISTANT SECRETARY OF THE AIR FORCE
(INSTALLATIONS, ENVIRONMENT, AND
ENERGY)
DIRECTORS OF THE DEFENSE AGENCIES

SUBJECT:  Interim Guidance Regarding Compliance with Established Military
Aviation and Installation Assurance Siting Clearinghouse Procedures

1.  This interim guidance regarding compliance with established Military Aviation and Installation Assurance Siting Clearinghouse (SCH) procedures intends to clarify necessary, coordination, interactions, and consultations required to ensure adherence to the processes established in Section 183a of title 10, United States Code (U.S.C.), the Clearinghouse statute, and the corresponding regulations set forth in Code of Federal Regulations (C.F.R.) Part 211.

2.  This guidance is not a policy or regulatory change in how the Department meets its statutory obligation to inform the Secretary of Transportation if the Deputy Secretary of War determines a proposed project presents an unacceptable risk to the national security of the United States, or how the Department makes similar notifications to the Department of the Interior (DOI) with respect to projects under its jurisdiction.

3.  Due to this complexity and the significance of the national security considerations involved, Congress directed the Department to establish the SCH and to develop a comprehensive review strategy for addressing the military impacts for projects filed with the Secretary of Transportation pursuant to Section 44718 of title 49 U.S.C.

4.  DoW's role in evaluating development proposals is inherently complex and time-consuming because it involves balancing two critical, and sometimes competing, interests: (1) not unnecessarily impeding project development; (2) while ensuring military operations and readiness are not degraded or impaired to the extent an unacceptable risk to national security is created.  Energy projects and related electric power transmission infrastructure have the inherent potential to adversely impact or impair military testing, training and operations.

5.  The Energy Dominance policy of the United States recognizes domestic power generation capabilities are critical national security assets.  In support of this policy, the Department is collectively focused on energy resilience, lethality, and mission assurance achieved through reliable, baseload independence, "islanding" (i.e., the capability of a military installation to

1

disconnect from the public utility grid and operate autonomously using local power generation), nuclear integration, combat logistics, and supply chain security of critical minerals and fuel.

6.  In support of these objectives, several routine project types (including, but not limited to, oil and gas infrastructure, energy storage facilities, power plants, presidential permits, deepwater ports, barges and cranes, meteorological evaluation towers, transmission lines, utility poles catenary wires, and related facilities that do not create an impactful doppler effect) filed with the Federal Aviation Administration's (FAA's) Obstructions Evaluation and Airport Airspace Analysis (OEAAA) system and with DOI's Bureau of Ocean Energy Management (BOEM) should continue to be promptly processed from preliminary assessment through to completion, to include Mitigation Response Team (MRT) consideration with the assistance of federal partners, as required.

7.  Pursuant to 32 CFR Part 211.6(b), SCH process is lengthy and requires significant intra-agency coordination, as well as interagency coordination pursuant to both the Clearinghouse statute and implementing regulations.  When the Clearinghouse has offered to enter into mitigation discussions with developers, the SCH is required to notify the Secretaries of Transportation and Homeland Security and to invite their participation in MRT discussions. The SCH may also invite any other federal agencies with interests germane to a given project.

8.  Given potential threats to critical infrastructure and the homeland based on the advancement of adversarial capabilities and the evolving global threat-picture, the Department has been evaluating its Part 211 interagency coordination compliance with existing regulations and the resulting impact it has on MRT effectiveness.  During review of multiple MRTs, DoW determined that further interagency coordination, especially with respect to the Department of Homeland Security (DHS), is required to ensure a comprehensive national security review is conducted in a manner sufficient to address modern advancements in consideration of their scope, duration, and level of risk recent presented to DoW operations and readiness.

9.  Based on the energy policy objectives and the forgoing analysis, the following compliance measures will be undertaken by the respective organizations within the deadlines established below:

   a.  The Office of the Deputy Assistant Secretary of War for Energy Resilience & Optimization:

      (1)  In coordination with DoW organizations with specialized capabilities and subject matter expertise and required federal partners, ascertain which OEAAA and BOEM project types (e.g., communication and observation towers, tall buildings, bridges, water towers, and amusement park rides, transportation infrastructure, and industrial facilities) do not require pre-MRT establishment analysis against emerging threats to military operations and readiness (May 15, 2026).

      (2)  With the assistance of required federal partners and internal DoW organizations with specialized capabilities and subject matter expertise, continue to evaluate the intersection of

2

emerging threats and adverse operational and readiness impacts of OEAAA and BOEM applicant project types (ongoing).

(3)  With required federal partners and internal DoW organizations with specialized capabilities and subject matter expertise, explore new mitigation options as they become technologically available (ongoing).

(4)  To facilitate further MRT discussions on OEAAA and BOEM project types causing impactful doppler interference and/or other areas of emerging concern (i.e., those not identified under energy policy para. 5 or para. 9(a)(1)) provide training, as necessary, to SCH personnel, DoW stakeholders, and federal partners (as soon as practicable).

  b.  Military Aviation and Installation Assurance Siting Clearinghouse (SCH):

(1)  Continue to conduct preliminary reviews of newly submitted energy or antenna structure project applications properly filed with the Secretary of Transportation or DOI within 75 days of receipt (effective immediately).

(2)  Continue to issue notices of presumed risk to the FAA or inform BOEM (as described in either the 1983 Memorandum of Agreement and 2024 Memorandum of Understanding, as applicable) when the SCH finds that an energy project or antenna structure project will have an adverse impact on military operations and readiness (effective immediately).

(3)  Consistent with statutory requirements for energy or antenna structure projects with proposed structures more than 200 feet above ground level located within two nautical miles of the geographic center of an active intercontinental ballistic missile launch facility or control center, follow unacceptable risk determination procedures as required by 10 U.S.C. § 183a (effective immediately).

(4)  Invite the FAA and DHS to participate in continued MRT discussions for all existing OEAAA applications for which the FAA has not issued a Determination of No Hazard (DNH) and projects under BOEM's jurisdiction for which DoW has not signed a mitigation agreement. Additionally, on a case-by-case basis, evaluate if other federal agencies should also be invited to participate in continued MRT discussions (May 15, 2026).

(5)  Ensure the Military Departments (MILDEPs) and Components receive updated information and guidance regarding emerging threats, current capabilities, and any advancements in technologically feasible mitigation measures prior to engaging in continued MRT discussions with developers and required federal partners and conduct training as necessary (as soon as practicable).

(6)  Continue coordination with federal, state, local, and tribal partners on all matters with the potential to adversely impact military readiness or to create unacceptable risk to the national security of the United States (effective immediately).
  c.  Military Departments (MILDEPs) and Components:

(1)  Continue to assist the SCH with preliminary reviews of newly submitted energy project or antenna structure project applications properly filed with the Secretary of Transportation or DOI within 75 days of receipt (effective immediately).

(2)  Attend training as required and coordinate with identified federal partners prior to continuing MRT discussions for all existing OEAAA applications for which the FAA has not issued a DNH and projects under BOEM's jurisdiction for which DoW has not signed a mitigation agreement (as directed).

10.  The point of contact for this memorandum is Ms. Rebecca Isacowitz, 703-693 5796, rebecca.isacowitz.civ@mail.mil.

Robert E. Thompson
Performing the Duties of the Assistant Secretary of
    War For Energy, Installations and Environment