# Exhibit B

## *To Plaintiffs' Complaint for Injunctive and Declaratory Relief*



March 9, 2026
Via Electronic and Certified Mail

The Honorable Dale R. Marks
Assistant Secretary of War
Energy, Installations, and Environment
Attn: Installations & Environment
Department of War
3010 Defense Pentagon
Washington, DC 20301-3010

**Re:    Request for Clarification of DoW Position and Timeline – Pending Land-Based
         Wind Energy Mitigation Agreements**

Dear Assistant Secretary Marks:

On behalf of our member companies developing land-based wind energy projects across the
United States, we write regarding mitigation agreements negotiated pursuant to 10 U.S.C. §
183a—including both initial agreements and minor amendments—that remain unsigned and
untransmitted to the Federal Aviation Administration ("FAA"), thereby preventing the FAA
from fulfilling its obligations under 49 U.S.C. § 44718 and 14 C.F.R. Part 77 to complete
required airspace determinations for the proposed projects.

The scope and duration of these delays suggest that the Department of War ("DoW") may have
changed its policy or current practices regarding these agreements. We respectfully request
clarification of DoW's current position and the basis for it.

As you know, the governing statutory framework requires the DoW to:

- Conduct a national security review;
- Engage in mitigation discussions where appropriate;
- Determine whether mitigation resolves identified concerns; and
- Transmit its final determination to the FAA.

In numerous instances, DoW has not signed and transmitted its final determinations to the FAA,
even though mitigation negotiations between DoW and land-based wind energy project
applicants have concluded successfully and agreements have been finalized—often tendered by
DoW and executed by the applicants—leaving DoW's execution and transmission to the FAA as
the only remaining steps in the process.

These include both initial mitigation agreements and minor amendments relating to siting
changes within the originally designated project area, where no new mitigation measures have

been identified or required. In many cases, DoW has taken no action for more than six months following the conclusion of negotiations and acceptance of the agreement (or amendment) terms.

Historically, negotiated mitigation agreements were executed within a substantially shorter time frame, consistent with the timelines contemplated in the statute and agency guidance. Following the conclusion of negotiations, execution and transmission to the FAA generally occurred promptly.

Your recent testimony before the House Armed Services Committee regarding the status of mitigation agreements and potential process changes further underscores the need for clarity regarding DoW's current practices and intentions with respect to executing these agreements and transmitting final determinations to the FAA.

These delays are producing substantial, concrete, and ongoing commercial consequences for our members, including:

- Blocking issuance of FAA determinations;
- Preventing financial close;
- Jeopardizing existing or necessary local permits that are contingent on FAA determinations;
- Disrupting supply chains (*e.g.*, turbine orders and contractor scheduling);
- Delaying construction schedules;
- Creating regulatory and contractual uncertainty;
- Delaying the availability of needed power to support growing load (*e.g.*, data centers, industrial, consumer); and
- Loss of income to private landowners.

Given the importance of timely completion of DoW's mitigation agreement process for project viability, we respectfully request that DoW provide a written response within 30 days of this letter (April 8, 2026) addressing the following:

1. What is the basis for the apparent departure from DoW's prior longstanding practice of promptly concluding agreements and transmitting findings to the FAA?
2. If DoW does not intend to execute mitigation agreements for certain projects or categories of projects, please identify the legal and factual basis for that position.

If DoW does not provide a substantive written response within the specified response period, we will construe DoW's position as a refusal to execute mitigation agreements for land-based wind energy projects within a reasonable time under the Administrative Procedure Act.

This request is made to obtain clarity and facilitate timely processing of these applications and transmission of findings to the FAA. Nothing in this letter should be construed as a waiver of any rights or remedies available under federal law.

We have recently requested a meeting with you to discuss the status of these pending mitigation agreements and DoW's current execution practices. We would welcome the opportunity to meet with you during the response period identified above to discuss these issues and determine whether they can be resolved expeditiously.

We appreciate your prompt attention to this matter and look forward to your response.

Respectfully,

JC Sandberg
Chief Policy Officer
American Clean Power Association
1299 Pennsylvania Ave NW, Suite 1300
Washington, D.C. 20004
(202) 383-2500
jcsandberg@cleanpower.org

cc:
The Honorable Michael P. Duffey
Under Secretary of War for Acquisition and Sustainment