# Exhibit EE

*To Plaintiffs' First Amended Complaint for Injunctive and Declaratory Relief*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| RENEWABLE NORTHWEST, *et al.*,<br><br>　　　　　　*Plaintiffs*,<br><br>　　　v.<br><br>PETER B. HEGSETH, *et al.*,<br><br>　　　　　　*Defendants*. | Case No.  3:26-cv-01092-IM<br><br><br>**AMENDED DECLARATION OF MICHAEL KAPLAN** |

Pursuant to 28 U.S.C. § 1746(2), I, Michael Kaplan, declare as follows:

1.　　　　I, Michael Kaplan, am the Vice President of Ramble Wind Energy LLC ("Ramble" or "the Project"). I am over the age of 18 and competent to testify to the matters set forth in this Declaration. The facts stated herein are based on my personal knowledge and information obtained in the course of my role at Ramble.

2.　　　　In my role as Vice President, I am responsible for oversight of permitting, development, and financing activities. I have been working in wind energy development for 16 years and developed and entitled projects that have gone into operations across multiple states. I have direct knowledge of Ramble's participation in the permitting, development, and financing process.

3.　　　　Ramble is a member of Clean Grid Alliance.

4.　　　　Ramble is a project-specific LLC established for the sole purpose of developing the Ramble Wind Energy LLC project (the "Project"), a land-based wind energy project comprising 45 turbines located near Bloomington, Illinois.

5.　　　　The Project represents a significant economic investment in Illinois, totaling approximately $500 million in addition to millions of increased tax revenues and direct payments

1

**DECLARATION OF MICHAEL KAPLAN**

to host landowners and their communities to fund public infrastructure.

6.    The Project will generate over 180 megawatts of electricity which will power more than 75,000 American homes annually and is expected to create over 200 construction jobs that will create meaningful employment opportunities for local residents and support local businesses.

7.    In evaluating whether to pursue this project, Ramble relied on various factors bearing on the Project's feasibility, timing, and likelihood of completion.

8.    One important factor was reliance on the fact that the Department of Defense ("DoD") would follow a fair, consistent, and timely mitigation agreement process. A mitigation agreement is a prerequisite for the Federal Aviation Administration ("FAA") to complete its aeronautical studies and, where appropriate, issue Determinations of No Hazard ("DNH").

9.    Historically, it has been standard practice for the DoD to execute a mitigation agreement in these circumstances. Specifically, as part of the FAA's normal approval process, it is standard practice that the FAA coordinates with DoD's Mitigation Response Team ("MRT"), which reviews projects for potential impacts on military readiness or national security.

10.    This coordination is a necessary step in the Project's timeline before the FAA can complete its aeronautical studies and issue DNH. Without timely receipt of DNH, Ramble cannot secure financing from its lenders.

11.     DoD has refused to complete its review of the Project. Ramble initiated MRT discussions with the relevant DoD Components in October 2025 and February 2026, respectively. Though MRT discussions have substantively concluded and an agreement with the relevant DoD Components has been reached, Ramble has received no draft mitigation agreement from the DoD Clearinghouse. No project-specific explanation for DoD's inaction

2

**DECLARATION OF MICHAEL KAPLAN**

has been provided.

12.     As a result of DoD inaction, DoD has not transmitted its non-objection to the FAA for the Project, the FAA has not completed its aeronautical studies, and DNH have not been issued for the Project. DoD inaction has materially disrupted Project timelines and created waterfall Project impacts.

13.     Ramble has undertaken diligent and sustained efforts to obtain the status of the mitigation agreement. Ramble has reached out via two separate emails to schedule a meeting with the DoD Siting Clearinghouse and NORAD to understand the status of the agreement.

14.     Despite these efforts, Ramble has not received a response to its clarifying questions or an updated mitigation offer, a definitive timeline for receipt of a response or updated offer, or any substantive explanation for its refusal to act.

15.     DoD's refusal to finalize the mitigation agreement has caused, and continues to cause, significant and ongoing harm to the Project. Without the finalized and countersigned mitigation agreement and the resulting non-objection from DoD, the FAA cannot issue the necessary DNH, which are required for the Project's county permit prior to construction and by the lenders to finance the Project.

16.     As a direct consequence of DoD inaction, Ramble faces the following impacts to the Project's schedule and financial commitments:

  a.  Ramble cannot finance the Project on the timeline contemplated by its financing arrangements.

  b.  For each year that the Project is delayed, Ramble would incur tens of millions of dollars in increased construction costs, excluding costs associated with additional development, new studies, and lease renewals.

3

**DECLARATION OF MICHAEL KAPLAN**

c. In addition to construction costs, each year of delay would result in a compounding 2.5% increase in turbine procurement costs, adding tens of millions of dollars in additional expenses each year.

d. DoD inaction places at risk Ramble's previously obtained local permits which are subject to deadlines or conditions that may not be satisfied if DoD continues to refuse to act.

e. DoD inaction also places at risk Ramble's ability to secure an offtake agreement. The absence of an executed mitigation agreement and issued DNH makes it more difficult to secure an agreement, particularly because any resulting schedule or cost increases would negatively impact the Project's offtaker.

17. To date, Ramble has invested substantial resources in the Project, including expenditures for land acquisition exceeding $1.7 million, $330,000 in environmental and engineering studies to support regulatory permitting at the state, local, and federal levels, $4 million in interconnection costs, and $2.4 million in internal overhead in reasonable reliance on a timely and predictable federal permitting process. If Ramble is forced to cancel the Project as a result of DoD's refusal to provide an updated mitigation offer or subsequently executing the mitigation agreement the Project's development costs would constitute a substantial financial loss.

18. DoD's refusal to respond to Ramble's requests for clarification and providing an updated mitigation offer, particularly in light of DoD's recent refusal to act on land-based wind energy agreements more generally, causes me concern that the Project's inability to secure a DNH may not be resolved in the near term. DoD's refusal to finalize the mitigation agreement has halted Project progress by preventing completion of DoD's review process for

4

**DECLARATION OF MICHAEL KAPLAN**

the Project.

19.     The consequences of DoD inaction described in this Declaration—including increased financing costs, risk to the Project's permits and contractual commitments, and diminished Project feasibility—are not readily reducible to a fixed monetary sum. If DoD inaction forces Ramble to cancel the Project, Ramble stands to lose established business relationships, development momentum, and market positioning that it has built over years that cannot be restored through after-the-fact compensation.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: June 22, 2026

By: /s/ _____
Michael Kaplan,
Vice President, Ramble Wind Energy LLC

**DECLARATION OF MICHAEL KAPLAN**