# Exhibit II

*To Plaintiffs' First Amended Complaint for Injunctive and Declaratory Relief*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| RENEWABLE NORTHWEST, et al., | Case No. 3:26-cv-01092-YY |
| *Plaintiffs,* | |
| v. | **DECLARATION OF THOMAS L. LoTURCO** |
| PETER B. HEGSETH., in his official capacity as Secretary of Defense; et al, | Complaint Filed: May 31, 2026 |
| *Defendants.* | |

Pursuant to 28 U.S.C. § 1746(2), I, Thomas L. LoTurco, declare as follows:

1.      I, Thomas L. LoTurco, am the Executive Vice President, Eastern Region, Canada, and Government Affairs of Blackstone Wind Farm, LLC and Blackstone Wind Farm II LLC ("Blackstone Wind") parent company. I am over the age of 18 and competent to testify to the matters set forth in this Declaration. The facts stated herein are based on my personal knowledge and information obtained in the course of my role at Blackstone Wind.

2.      I have been employed by Blackstone Wind's parent company for over 19 years. In my role, I am responsible for oversight of permitting, development, and financing activities. I have direct knowledge of Blackstone Wind's participation in the permitting, development, and financing of onshore wind energy projects.

3.      Blackstone Wind is a project-specific LLC established for the sole purpose of developing the Top Crop I and II Wind Repower Project (the "Project"), a 300 MW wind project in LaSalle and Grundy Counties Illinois.

4.      Blackstone Wind is a wholly owned subsidiary or affiliate of a parent company that is a member of Clean Grid Alliance. Consistent with the membership structure and/or

1

**DECLARATION OF THOMAS L. LoTURCO**

practices of Clean Grid Alliance, subsidiaries, affiliates, and project-level entities of a member company participate through the membership held by the parent company.

5. Blackstone Wind represents a significant economic investment in LaSalle and Grundy Counties, Illinois, including substantial upfront investment in the project, new local tax revenues, and lease payments to landowners.

6. In evaluating whether to pursue this Project, Blackstone Wind relied on various factors bearing on the project's feasibility, timing, and likelihood of completion. An important factor was the expectation that the Department of Defense ("DoD") mitigation review process would proceed in the ordinary course and that the DoD would evaluate and process mitigation agreements in a fair, consistent and timely manner, thereby enabling the Project to obtain Determinations of No Hazards ("DNH") from the Federal Aviation Administration ("FAA"). For projects for which the DoD has made an initial determination that the project may adversely affect military operations, radar systems, or national security, the DoD issues a Notice of Presumed Risk ("NPR") and provides the developer an opportunity to participate in a Mitigation Response Team ("MRT") process to negotiate mitigation measures designed to resolve the concerns identified in the NPR. The DoD Mitigation Agreement memorializes the mitigation measures agreed upon by the parties for implementation by the project. A fully executed DoD Mitigation Agreement is a core component of the project development timeline. For projects that have received an NPR, the FAA cannot complete its aeronautical studies or, where warranted, issue DNH until the mitigation process is complete and the DoD Mitigation Agreement has been executed. DNH are required for the Project to obtain county building permits necessary to start construction.

7. Blackstone Wind began planning for the Project over 4 years ago. In reliance on the expectation that the DoD mitigation review process, including the execution of the DoD Mitigation Agreement, would proceed in a fair, consistent, and timely manner, thereby enabling the FAA to issue DNH for the Project, Blackstone Wind has made substantial investments to advance the Project toward completion, including $40,000 in unrecoverable costs.

8. Following MRT review for the Project, relevant DoD components, including the North American Aerospace Defense Command ("NORAD"), in coordination with the DoD Siting Clearinghouse, have determined that, with agreed mitigation measures, the project does not pose an unacceptable risk to national security, meaning that the project does not interfere with the efficient use of navigable airspace for DoD activities, or impair military readiness.

9. Blackstone Wind received a draft Mitigation Agreement from the Clearinghouse on July 2, 2025

10. Blackstone Wind signed and returned the Mitigation Agreement for countersignature on October 8, 2025. The mitigation measures reflected in the agreement are routine in nature and relate to radar impacts commonly addressed in similar projects.

11. To date, Blackstone Wind has received no comments, requested revisions, or indication of any substantive deficiencies in the agreement. Notwithstanding Blackstone Wind's full compliance with the process, the agreement remains un-countersigned, and no final clearance has been issued.

12. Blackstone Wind and its representatives have made repeated efforts to obtain status updates and advance execution of the agreement. On January 27, 2026, Capitol Airspace, Blackstone Wind's consultant, contacted NORAD. In March and April 2026, Capitol Airspace engaged in additional outreach seeking to facilitate DoD execution of the agreement. Despite

3

these efforts, the agreement has now been pending for approximately seven months without action from DoD.

13.    DoD's refusal to sign the Mitigation Agreement is causing is causing significant and ongoing irreparable harm to Blackstone Wind. The absence of a DNH will substantially impair the Project's ability to obtain necessary local permits, as local authorities require a DNH prior to issuing a building permit. Similarly, prospective offtakers are unlikely to commit to long-term agreements without a DNH, and as such the project's inability to move forward may result in lost commercial opportunities. At the same time, Blackstone Wind will be required to continue expending additional capital to advance the project despite having no certainty as to whether the FAA will issue a DNH. These ongoing expenditures, coupled with increasing regulatory uncertainty, further jeopardize the project's economic viability and increase the risk of unrecoverable losses. If the project is cancelled as a result of DoD inaction, Blackstone Wind will incur more than $40,000 in unrecoverable development costs already invested in the project. Further if Blackstone Wind does not secure a DNH, the total unmaterialized project value will be $40 million.

14.    The impacts and losses described in this Declaration are not fully recoverable nor are they solely economic.  If Blackstone Wind is forced to cancel the Project as a result of DoD inaction, it will suffer irreparable economic, reputational, and business harms.  Accordingly, Blackstone Wind faces an imminent threat of irreparable harm in the absence of immediate and timely relief.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on June 22, 2026

/s/ _____
Thomas F. LoTurco