Michael B. Giaquinto, OSB No. 246342
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071-3132
T: 213-612-7227
michael.giaquinto@morganlewis.com

Jennifer Trock (*pro hac vice)*
Douglas Hastings (*pro hac vice*)
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
jennifer.trock@morganlewis.com
douglas.hastings@morganlewis.com

Ella Foley Gannon (*pro hac vice*)
600 Montgomery Street, Suite 2300
San Francisco, CA 94111-2725
T: 415-442-1000
ella.gannon@morganlewis.com

*Attorneys for Plaintiffs (except Las Crestas Wind Energy, LLC)*

Darin Sands, OSB No. 106624
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
T: +1 503-734-2480
dsands@bradleybernstein.com

Richard W. Smith (*pro hac vice*)
Kathleen Mueller (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
T: 202-736-8000
rwsmith@sidley.com
kmueller@sidley.com

*Attorneys for Plaintiff Las Crestas Wind Energy, LLC*

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION**

| | |
|---|---|
| RENEWABLE NORTHWEST, *et al.*, | No. 3:26-CV-01092-IM |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| PETER B. HEGSETH, *et al.*, | |
| Defendants. | |

**PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**


Dated: July 13, 2026

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

STANDARD OF REVIEW ................................................................................................... 2

ARGUMENT ........................................................................................................................ 2

I.    THIS COURT HAS JURISDICTION BECAUSE PLAINTIFFS CHALLENGE A DOD POLICY NOT AN FAA ORDER. .............................................................. 2

II.   THE CHALLENGED DOD POLICY IS FINAL AGENCY ACTION ............................ 6

　　a.    The Policy Represents the Consummation of DoD's Decision-Making Process ................................................................................................................ 7

　　b.    The Policy Produces Direct, Legal, and Practical Consequences ........................ 10

III.  PLAINTIFFS CAN BRING CLAIMS UNDER BOTH SECTION 706(1) AND SECTION 706(2). .............................................................................................. 12

IV.   PLAINTIFFS DO NOT ASSERT AN IMPERMISSIBLE PROGRAMMATIC CHALLENGE ....................................................................................................... 13

V.    THE ASSOCIATIONAL AND ORGANIZATIONAL PLAINTIFFS HAVE STANDING. .......................................................................................................... 17

CONCLUSION .................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerosource, Inc. v. Slater*,
142 F.3d 572 (3d Cir. 1998)................................................................................12

*Air Brake Sys., Inc. v. Mineta*,
357 F.3d 632 (6th Cir. 2004) .............................................................................12

*Al Otro Lado, Inc. v. Nielsen*,
327 F. Supp. 3d 1284 (S.D. Cal. 2018).........................................................13, 15

*Al Otro Lado v. Executive Office for Immigration Review*,
138 F.4th 1102 (9th Cir. 2025), *reversed on other grounds by Mullin v. Al
Otro Lado*, No. 25-5, 2026 WL 1825741 (U.S. June 25, 2026) ............................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).............................................................................................2

*Ass'n for Educ. Fin. & Pol'y v. McMahon*,
786 F. Supp. 3d 13 (D.D.C. 2025).....................................................................16

*Barrick Goldstrike Mines Inc. v. Browner*,
215 F.3d 45 (D.C. Cir. 2000)..............................................................................15

*Behdin v. Edlow*,
No. 26-CV-00566-SVK, 2026 WL 1031079 (N.D. Cal. Apr. 16, 2026)...............10, 12, 13, 15

*Bennett v. Spear*
520 U.S. 154, 177-78 (1997) ......................................................................... *passim*

*BFI Waste Sys. of N. Am., Inc. v. F.A.A.*,
293 F.3d 527 (D.C. Cir. 2002).............................................................................10

*Bozchalooi v. U.S. Dep't of State*,
No. 2:25-CV-02983-DJC-SCR, 2026 WL 1042680 (E.D. Cal. Apr. 17, 2026).......................13

*California Save Our Streams Council, Inc. v. Yeutter*,
887 F.2d 908 (9th Cir. 1989) ...........................................................................5, 6

*Chang v. Jaddou*,
No. 8:24-CV-01022-FWS-JDE, 2024 WL 5429724 (C.D. Cal. Nov. 25, 2024).....................13

*Ciba-Geigy Corp. v. U.S. E.P.A.*,
801 F.2d 430 (D.C. Cir. 1986)..............................................................................15

*Connecticut v. U.S. Dep't of the Interior*,
363 F. Supp. 3d 45 (D.D.C. 2019) ..................................................................................10

*Ctr. for Biological Diversity v. Burgum*,
826 F. Supp. 3d 18 (D.D.C. 2026) ..................................................................................16

*Defs. of Wildlife v. Tuggle*,
607 F. Supp. 2d 1095 (D. Ariz. 2009) .............................................................................15

*Env't Def. Fund, Inc. v. Gorsuch*,
713 F.2d 802 (D.C. Cir. 1983) ........................................................................................15

*Fikre v. Federal Bureau of Investigation*,
35 F.4th 762 (9th Cir. 2022), *aff'd*, 601 U.S. 234 (2024) ...............................3, 4, 6, 9

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
460 F.3d 13 (D.C. Cir. 2006) ..........................................................................................11

*Holistic Candlers & Consumers Ass'n v. FDA*,
664 F.3d 940 (D.C. Cir. 2012) ........................................................................................11

*Ibrahim v. Department of Homeland Security*,
538 F.3d 1250 (9th Cir. 2008) ...................................................................................3, 4, 6

*INS v. Chadha*,
462 U.S. 919 (1983) ...........................................................................................................4

*Latif v. Holder*,
686 F.3d 1122 (9th Cir. 2012) ....................................................................................3, 4, 6

*Leigh v. Salazar*,
No. 3:13-CV-00006-MMD, 2014 WL 4700016 (D. Nev. Sep. 22, 2014)........................13

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ............................................................................................2

*Louisiana v. Biden*,
622 F. Supp. 3d 267 (W.D. La. 2022)......................................................................8, 11, 14

*Lujan v. Nat'l Wildlife Fed'n*,
497 U.S. 871 (1990).....................................................................................................14, 16

*M-J-M-A- v. Hermosillo*,
822 F. Supp. 3d 1147 (D. Or. 2026) ..................................................................................9

*Mokdad v. Lynch*,
804 F.3d 807 (6th Cir. 2015) .............................................................................................3

iii

*National Parks & Conservation Ass'n v. F.A.A.*,
  998 F.2d 1523 (10th Cir. 1993) ..................................................................................5, 6

*New York v. Trump*,
  811 F. Supp. 3d 215 (D. Mass. 2025) ............................................................ *passim*

*Nw. Ctr. for Alts. to Pesticides v. U.S. Dep't of Homeland Sec.*,
  552 F. Supp. 3d 1078 (D. Or. 2021) ...................................................................16

*Parsons v. U.S. Dep't of Just.*,
  878 F.3d 162 (6th Cir. 2017) ...............................................................................10

*Patagonia Area Res. All. v. U.S. Forest Serv.*,
  No. CV-23-00280-TUC-JGZ, 2025 WL 2720212 (D. Ariz. Sep. 24, 2025) ...........................13

*RENEW Ne. v. U.S. DOI*,
  No. 25-cv-13961, 2026 WL 1078282 (D. Mass. Apr. 21, 2026).................................... *passim*

*Renewable NW. v. Hegseth*,
  No. 3:26-cv-01092 (D. Or. July 6, 2026), ECF No. 90 .................................................... *passim*

*Robertson v. D.C.*,
  762 F. Supp. 3d 34 (D.D.C. 2025).........................................................................18

*Sierra Club v. EPA*,
  955 F.3d 56 (D.C. Cir. 2020)................................................................................11

*Sierra Club v. Peterson*,
  228 F.3d 559 (5th Cir. 2000) ...............................................................................16

*Smith v. Pac. Props. & Dev. Corp.*,
  358 F.3d 1097 (9th Cir. 2004) ..............................................................................19

*Soundboard Ass'n v. FTC*,
  888 F.3d 1261 (D.C. Cir. 2018)............................................................................11

*State v. Trump*,
  No. 25-CV-01144 (JAV), 2025 WL 573771 (S.D.N.Y. Feb. 21, 2025)..................................9

*State v. U.S. Dep't of Transp.*,
  792 F. Supp. 3d 1147 (W.D. Wash. 2025)..............................................................11

*State v. United States*,
  524 F. Supp. 3d 598 (S.D. Tex. 2021) ...................................................................15

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023)............................................................................................17

iv

*Telecommunications Research & Action Center v. F.C.C.*,
  750 F.2d 70 (D.C. Cir. 1984) ..................................................................................................5

*Varniab v. Edlow*
  No. 25-cv-10602-SVK, 2026 WL 485490, at *8, *17 (N.D. Cal. Feb. 20,
  2026) ...............................................................................................................................7, 9, 13

*Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*,
  5 F.4th 997 (9th Cir. 2021) ................................................................................................14, 16

*Widakuswara v. Lake*,
  779 F. Supp. 3d 10 (D.D.C. 2025) .........................................................................................18

**Statutes**

10 U.S.C. § 183a ................................................................................................ *passim*

28 U.S.C. § 1331 ...................................................................................................................6

49 U.S.C. § 44718 ................................................................................................................2

49 U.S.C. § 46110 ................................................................................................ *passim*

Administrative Procedure Act.................................................................................. *passim*

**Other Authorities**

Merriam-Webster.com Dictionary, "Issue", https://www.merriam-
  webster.com/dictionary/issue.................................................................................................3

**TABLE OF ABBREVIATIONS**

| Abbreviation | Term |
|---|---|
| Associational Plaintiffs | Plaintiffs Renewable Northwest Advanced Power Alliance, Alliance for Clean Energy New York, Inc., Clean Grid Alliance, Interwest Energy Alliance, Maine Renewable Energy Association, Renew Northeast, Southern Renewable Energy Association, and Green Energy Consumers Alliance |
| Clearinghouse | Military Aviation and Installation Assurance Sitting Clearinghouse |
| Developer Plaintiffs | Las Crestas Wind Energy, LLC; Apex Clean Energy Holdings, LLC; Nova Clean Energy, LLC; North Hills Wind Project, LLC; Prairie Phoenix Wind Project, LLC; Deuel Harvest Wind Energy South LLC; Lazbuddie Wind Energy II LLC; Thresher Wind LLC; Towner Wind Energy II LLC; Triton Wind Energy LLC; Whitetail Wind, LLC; Meadow Lake II Windfarm, LLC; Blackstone Wind Farm II, LLC; Big River Wind, LLC; Horse Thief Wind Project, LLC; Crider Valley Wind Energy LLC; Canisteo Wind Energy LLC; Hammerhead Wind Energy LLC; Ramble Wind Energy LLC; and Blue Canyon Windpower V, LLC. |
| DNH | Determination of No Hazard |
| DoD | Department of Defense |
| FAA | Federal Aviation Administration |
| GECA | Green Energy Consumers Alliance |
| Organizational Plaintiff | Green Energy Consumers Alliance |
| REC | Renewable Energy Credit |
| Wind Presidential Memorandum | January 20, 2025 Temporary Withdrawal of All Areas on the Outer Continental Shelf from Offshore Wind Leasing and Review of the Federal Government's Leasing and Permitting Practices for Wind Projects |

vi

**INTRODUCTION**

Every threshold argument in the Defendants' motion to dismiss rests on the same mistaken premise:  a misidentification of the agency action Plaintiffs challenge.  Plaintiffs do not challenge any determination of the FAA, the Clearinghouse program writ large, or any future action in which DoD reconsiders its process for reviewing wind-energy projects.  They challenge DoD's decision to indefinitely suspend the review process Congress assigned it under 10 U.S.C. § 183a ("Section 183a")—a policy that is preventing every wind-energy project before the Clearinghouse from completing the statutory review process.  That policy has caused immediate, substantial economic and regulatory consequences for developers, utilities, and the communities they serve.

Based on their skewed characterization of Plaintiffs' claims, Defendants invoke a series of threshold doctrines which if accepted would prevent any court from reaching the merits.  They contend that exclusive jurisdiction lies in the court of appeals under a statute authorizing judicial review of FAA orders even though no FAA order exists. They contend that Plaintiffs may proceed only under one Administrative Procedure Act ("APA") provision but not the other, that the challenged policy is both too broad and too indefinite to be reviewed, and that the Associational and Organizational Plaintiffs cannot challenge it at all.  The cumulative effect of Defendants' theory would be to insulate DoD's suspension of the statutory review process Congress assigned it from judicial review.  Neither the APA nor the cases Defendants invoke support that result.  Indeed, courts addressing other government efforts to suspend wind-energy permitting have rejected these same threshold arguments and reached the merits. *See New York v. Trump*, 811 F. Supp. 3d 215, 233 (D. Mass. 2025) and *RENEW Ne. v. U.S. DOI*, No. 25-cv-13961, 2026 WL 1078282, at *18–19 (D. Mass. Apr. 21, 2026).   As those courts recognized, the APA does not

1

permit agencies to evade judicial review by indefinitely suspending statutory duties through across-the-board policies. The same result should follow here.

## STANDARD OF REVIEW

Where, as here, Defendants bring a facial challenge to this Court's jurisdiction under Rule 12(b)(1), the Court must accept the Complaint's allegations as true and draw all reasonable inferences in Plaintiffs' favor. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). To the extent Defendants' arguments instead challenge the legal sufficiency of Plaintiffs' claims pursuant to Rule 12(b)(6), their motion to dismiss must be denied if the Court determines that the complaint alleges "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ARGUMENT

I.    **THIS COURT HAS JURISDICTION BECAUSE PLAINTIFFS CHALLENGE A DOD POLICY NOT AN FAA ORDER.**

Defendants' contention that 49 U.S.C. § 46110 ("Section 46110") vests jurisdiction over this matter in the courts of appeals is foreclosed by the plain text of the statute and Ninth Circuit precedent. Section 46110 applies only to a final "order issued by" the FAA (and certain orders issued by other enumerated agencies). Plaintiffs challenge DoD's adoption and continued implementation of an across-the-board policy decision suspending the Clearinghouse review process Congress separately assigned it under Section 183a. Plaintiffs do not challenge an FAA order, and the FAA is not a defendant in this case. Section 46110 does not apply.

Defendants attempt to rewrite the statutory text by characterizing DoD's policy as "incident to" the FAA's aeronautical review. ECF No. 90 ("DoD Br."), at 11. But DoD's policy is not simply one step in a completed FAA proceeding, but rather a separate agency decision that prevents the FAA from completing its aeronautical review and issuing a final order. *See* 49 U.S.C. §§

2

44718(b)(1)(B), (f) (requiring the FAA's aeronautical study to include national security finding made by the Secretary of Defense under Section 183a). Nothing in Section 46110 suggests that Congress intended to extend the exclusive jurisdiction of the courts of appeals to such policies of other agencies. To the contrary, Congress's use of the phrase "issued by" confirms the opposite. The ordinary meaning of "issue" is "to put forth or distribute, usually officially." Merriam-Webster.com Dictionary, "Issue", https://www.merriam-webster.com/dictionary/issue. When used in the past tense and combined with "by" the FAA and other enumerated agencies, Congress's use of that term demonstrates that Section 46110 is limited to circumstances in which the FAA or an enumerated agency has "put forth" a final order.

The Ninth Circuit has been explicit that review of orders subject to Section 46110 does not cover actions of non-enumerated agencies. In *Ibrahim v. Department of Homeland Security*, 538 F.3d 1250, 1255 (9th Cir. 2008), the Government argued that the plaintiff's challenge to her placement on a No-Fly list belonged exclusively in the court of appeals because the Transportation Security Administration ("TSA") administered the No-Fly list and Section 46110 grants the court of appeals jurisdiction over TSA orders. However, the decision to place the plaintiff on the list had been made by the FBI not the TSA. The court held that "[b]ecause putting Ibrahim's name on the No-Fly List was an 'order' of an agency *not* named in [S]ection 46110, the district court retains jurisdiction to review that agency's order under the APA." *Id.* (emphasis in original). The Ninth Circuit has consistently reaffirmed this rule, *see Latif v. Holder*, 686 F.3d 1122, 1127 (9th Cir. 2012); *Fikre v. Federal Bureau of Investigation*, 35 F.4th 762, 775 (9th Cir. 2022), *aff'd*, 601 U.S. 234 (2024), and other circuit courts have reached the same conclusion. *See, e.g.*, *Mokdad v. Lynch*, 804 F.3d 807, 814 (6th Cir. 2015).

3

The Ninth Circuit has also rejected Defendants' position that actions by non-enumerated agencies fall within the ambit of Section 46110 provided they relate to the action of an enumerated agency.  In *Ibrahim*, in response to the government's argument that the FBI's actions were "inextricably intertwined" with the actions of TSA, the Ninth Circuit held that Section 46110 confers jurisdiction over an "order"; "it says nothing about 'intertwining,' escapable or otherwise[,]" and there is "no good reason why the word 'order' should be interpreted to mean 'order or any action inescapably intertwined with it.'"  *Ibrahim*, 538 F.3d at 1255. That reasoning applies with even greater force here.  Plaintiffs challenge DoD's independent implementation of a policy under Section 183a.  That action is not part of an FAA order regardless of how DoD's statutory duties relate to the FAA's, because DoD's policy prevents the FAA from issuing an order in the first place.

Unable to reconcile their position with the text of Section 46110 or the Ninth Circuit's interpretation of that statute, Defendants instead rely on an assortment of cases interpreting different jurisdictional statutes or administrative proceedings that culminate in an agency order reviewable in the courts of appeals.  None supports extending Section 46110 beyond its text.  None involves a challenge to an agency action unreferenced in an exclusive jurisdiction provision that prevented the covered agency from issuing any reviewable order at all.  And Defendants nowhere cite the binding Ninth Circuit precedents in *Ibrahim*, *Latif* and *Fikre*.

Defendants rely primarily on *INS v. Chadha*, 462 U.S. 919 (1983), in which the Supreme Court held that a provision in an immigration statute providing that the courts of appeals "shall be the sole and exclusive procedure for the judicial review of all final orders of deportation" gave them exclusive jurisdiction over a challenge to the House of Representatives' veto of an INS order suspending the plaintiff's deportation.  *Id.* at 937.  Unlike Section 46110, the statute in *Chadha*

4

applied broadly to all "final orders of deportation," without any requirement that those orders be "issued by" a particular agency. *Id.* And because the challenged legislative veto reinstated the plaintiffs' deportation order, that action was effectively a final deportation order. Here, by contrast, Plaintiffs challenge DoD's independent decision not to conduct its review process—a decision that prevents the FAA from issuing any orders.

Defendants' reliance on *Telecommunications Research & Action Center v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), fares no better. There, the D.C. Circuit held that allegations of unreasonable delay *by FCC* had to be brought in the court of appeals, which has exclusive jurisdiction over final FCC orders. *Id.* at 79-81. But Plaintiffs here have not alleged unreasonable delay by the FAA; they challenge only *DoD's* unlawful suspension of its own statutory review process. Extending *TRAC* here would contravene the text of Section 46110 and applicable Ninth Circuit precedent by treating DoD's actions as though they were the FAA's actions and treating the absence of an FAA order as sufficient to invoke jurisdiction under a statute that applies only to FAA orders.

Finally, neither *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), nor *National Parks & Conservation Ass'n v. F.A.A.*, 998 F.2d 1523 (10th Cir. 1993), hold (much less imply) that Section 46110 applies. In *Yeutter*, the Ninth Circuit held that a challenge to conditions on a license for a hydroelectric plant that FERC imposed at the request of the Forest Service must be brought in the courts of appeals, which have exclusive jurisdiction over the FERC licensing decision. *Yeutter*, 887 F.2d at 911-12. In *National Parks*, the Tenth Circuit held that it had jurisdiction to resolve challenges to BLM and FAA actions related to BLM's conveyance of land that the FAA requested for construction of an airport approved and funded by an FAA order. 998 F.2d at 1527-28.

5

Here, Plaintiffs are not attempting to evade the courts of appeals' jurisdiction by "careful[ly] pleading" around an FAA order. *Yeutter*, 887 F.2d at 911; *cf. Nat'l Parks*, 998 F.2d at 1527-28 (noting existence of final FAA order reviewable in court of appeals). Rather, Plaintiffs challenge DoD's independent exercise of authority under Section 183a pursuant to a separate statutory and regulatory scheme in the absence of any FAA order. Unlike in *National Parks*, where the FAA had already issued an order and the BLM's action had been directed and undertaken pursuant to the FAA's authority, DoD's policy here prevents the FAA from issuing any order at all. And even if *National Parks* or *Yeutter* could be read to imply that Section 46110 could apply to an action of an agency not mentioned in Section 46110 when there is no FAA order reviewable under Section 46110, that interpretation is foreclosed by Ninth Circuit cases like *Ibrahim*, *Latif* and *Fikre*, all of which were decided decades after *National Parks* and *Yeutter.*

Because Plaintiffs' claims arise under the APA and the exclusive jurisdiction provision of Section 46110 does not apply, jurisdiction is proper in this court under 28 U.S.C. § 1331.

## II.    THE CHALLENGED DOD POLICY IS FINAL AGENCY ACTION

DoD's freeze satisfies both requirements of *Bennett v. Spear*: it marks the consummation of DoD's decision-making process and produces immediate legal consequences with substantial practical effects for regulated parties. 520 U.S. 154, 177-78 (1997). Defendants mischaracterize the agency action Plaintiffs challenge. Plaintiffs do not challenge an eventual FAA determination or any project-specific mitigation decision. They challenge DoD's completed decision to indefinitely suspend the review process Congress assigned to it under Section 183a.[1]

---

[1] Even if the Court were to find that DoD's freeze is not final agency action, Plaintiffs' Section 706(1) claim for agency action unlawfully withheld or unreasonably delayed would remain.

6

### a.  The Policy Represents the Consummation of DoD's Decision-Making Process

The first *Bennett* requirement is satisfied because the challenged action here—DoD's decision to indefinitely suspend the review of wind-energy projects purportedly pending a broader reconsideration of the Clearinghouse's methodology—has been made and implemented.

Defendants do not dispute that the challenged action has occurred.  Defendants acknowledge that, by mid-August 2025, DoD decided to stop executing mitigation agreements. DoD Br. at 11.  Beginning in August 2025, that policy was memorialized in several written and unwritten actions and communications which impacted the review process in different ways and at different stages (e.g., through delays, cancellations, and failures to perform normal functions). *Id.* at 19.  On April 13, 2026, DoD issued a communication directing the Clearinghouse to completely stop processing wind-energy projects under its ordinary procedures, and on May 7, 2026, it published a memorandum further memorializing the freeze and describing  additional coordination requirements that applied only to wind projects without providing any deadline for meeting those additional requirements and confirmed that wind-energy projects are not proceeding through the established review and mitigation frameworks and timelines on which developers had long relied.  *See* ECF No. 1-1.

Courts have repeatedly recognized that an agency's decision to indefinitely suspend the processing of wind and other energy project applications is itself final agency action.  In *New York v. Trump*, for example, the court held that a government-wide freeze on wind-energy permitting was final because it "altered the legal status quo" by replacing the agencies' ordinary practice of processing applications with a blanket suspension of decision-making.  811 F. Supp. 3d 215, 233 (D. Mass. 2025).  Likewise, in *Varniab v. Edlow*, the court held that an indefinite hold on asylum adjudications while the agency developed a new review process constituted final agency action because the agency had reached a definitive decision to suspend processing under the existing

7

framework.  No. 25-cv-10602-SVK, 2026 WL 485490, at *8, *17 (N.D. Cal. Feb. 20, 2026).  The same reasoning applies here.  DoD made and implemented a final decision to suspend review under the existing Clearinghouse framework.  The possibility that DoD may someday adopt a different methodology does not render its present decision any less final.  As *New York* recognized, an agency's present policy is final even if the agency retains discretion to revise it in the future.  811 F. Supp. 3d at 233.  *See also Louisiana v. Biden*, 622 F. Supp. 3d 267, 292 (W.D. La. 2022) (collecting numerous cases finding agency decisions to suspend legally required activities are reviewable).

Defendants' arguments—that the freeze merely marks the "initiation of the decision-making process" or that the relevant final action is the FAA's eventual determination—mischaracterize Plaintiffs' claim.  DoD Br. at 19.  Plaintiffs  challenge DoD's completed decision to indefinitely suspend the review process Congress assigned to it under Section 183a.  That decision is not the beginning of some broader decision-making process; it is the culmination of DoD's policy halting review under the existing framework unless and until DoD chooses to adopt a different policy.  The fact that this policy affects a future FAA decision-making does not transform DoD's completed decision into an unfinished FAA action or render it non-reviewable.

Defendants likewise assert that "it is unclear what agency 'action' Plaintiffs tie to the delay, which began in August 2025 and remains ongoing." *Id.*  But Plaintiffs have consistently identified the challenged action: DoD's policy suspending review of wind-energy projects.  Whether that policy was communicated through unwritten directives, the April 13 communication, the May 7 memorandum, or all three is immaterial.  As this Court recently recognized, "A practice is not committed to writing is not dispositive; both logic and law require unwritten policies to be

8

reviewable." *M-J-M-A- v. Hermosillo*, 822 F. Supp. 3d 1147, 1177-78 (D. Or. 2026); *see also State v. Trump*, No. 25-CV-01144 (JAV), 2025 WL 573771, at *19 (S.D.N.Y. Feb. 21, 2025).

Contrary to Defendants' assertion, the May 7 memo purporting to allow limited preliminary review (while creating additional hurdles for wind-energy development) likewise does not alter the analysis. DoD Br. at 6-7 (asserting that "the preliminary review phase of the Clearinghouse process" resumed in May). That assertion cannot be reconciled with the Assistant Secretary's own declaration, which states that the mitigation response team phase of the process remains "currently strategically" paused. Marks Decl. ¶ 81. Moreover, Defendants identify no subsequent agency action rescinding the decision to freeze review or restoring the ordinary Clearinghouse review process, and they identify no wind projects that have progressed through the process since the freeze was adopted. The challenged policy therefore remains fully operative and continues to prevent wind-energy projects from reaching completion of DoD's statutory review process. *See RENEW Ne.*, 2026 WL 1078282, at *18-19 (holding that an agency policy remained final notwithstanding continued processing of individual applications); *Varniab*, 2026 WL 485490, at *16, *20-21 (holding that an agency policy remained final even though it "allows a case to proceed through processing, up to a final adjudication").[2]

In short, the agency action at issue is DoD's decision to indefinitely prevent all wind-energy projects from proceeding through the existing Clearinghouse process. That decision undisputedly has been made and implemented, and it remains in effect today. It therefore represents the consummation of DoD's decision-making process under *Bennett*.

---

[2] Even to the limited extent that the May 7 memorandum may have repudiated the across-the-board freeze imposed on April 13, that does not—as Defendants assert—render anything "moot." As the Supreme Court recently reaffirmed, "what matters is not whether a defendant repudiates its past actions, but what that repudiation can prove about its future conduct." *Fikre*, 601 U.S. at 241.

9

### b. The Policy Produces Direct, Legal, and Practical Consequences

DoD's freeze likewise satisfies the second *Bennett* requirement because it produces immediate legal consequences, accompanied by substantial practical effects for regulated parties, including Plaintiffs. Courts have repeatedly held that this requirement is satisfied where, as here, "an indefinite pause is imposed by an agency" on the review or adjudication of applications. *Behdin v. Edlow*, No. 26-CV-00566-SVK, 2026 WL 1031079, at *20 (N.D. Cal. Apr. 16, 2026) (quoting *New York*, 811 F. Supp. 3d at 234).

The consequences of DoD's policy are direct and substantial. By suspending the Clearinghouse review process and preventing DoD from notifying the FAA of its national security determinations, DoD prevents the FAA from completing its aeronautical reviews and issuing DNHs for wind-energy projects. Agency actions that "prevent other government actors from pursuing a particular course of conduct cause legal consequences." *Parsons v. U.S. Dep't of Just.*, 878 F.3d 162, 167 (6th Cir. 2017). What is more, the absence of a DNH "can hinder the project sponsor in acquiring insurance, securing financing or obtaining approval from state or local authorities." *BFI Waste Sys. of N. Am., Inc. v. F.A.A.*, 293 F.3d 527, 530 (D.C. Cir. 2002). Those are not hypothetical effects. As detailed in Plaintiffs' Complaint and Motion for Preliminary Injunction, DoD's freeze has already resulted in substantial carrying costs, defaults or potential defaults under power purchase agreements, threatened termination of equipment and service contracts, loss of eligibility for critical tax credits, potential cancellation of projects, and other harms. *See* First Amended Complaint ¶¶ 175-97.

Defendants, therefore, are incorrect in asserting that the freeze "does not impose any direct legal consequences with respect to any application." DoD Br. at 21. DoD's policy leaves applicants "trapped without recourse due to the indefinite postponement of agency action." *Connecticut v. U.S. Dep't of the Interior*, 363 F. Supp. 3d 45, 60 (D.D.C. 2019) (quoting

10

*Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1268 (D.C. Cir. 2018)).  That legal consequence directly produces the practical harms Plaintiffs are experiencing.  Those harms stem not from Plaintiffs' (and their members') "own expectations as to the pace of bureaucracy," DoD Br. at 20, but from DoD's decision to indefinitely suspend the statutory review process.  As *New York* explained, such an agency-wide freeze constitutes a "*de facto* suspension of the law."  811 F. Supp. 3d at 234 (quotation marks omitted).  The resulting harms are the direct legal and practical consequences of DoD's unlawful decision to suspend the statutory process that must occur before the FAA can issue a DNH and developers can proceed with construction.

Defendants are also incorrect in suggesting that practical consequences are irrelevant to the finality inquiry.  Courts in this circuit evaluate both the "*practical* and legal effects of the agency action" because "[t]he finality element must be interpreted in a pragmatic and flexible manner." *State v. U.S. Dep't of Transp.*, 792 F. Supp. 3d 1147, 1176 (W.D. Wash. 2025) (emphasis added) (citation omitted).  Here, Defendants do not seriously dispute that the freeze has immediate and significant effects on wind-energy development.  Nor could they.  *See, e.g.*, *State*, 622 F. Supp. 3d at 291 (finding second prong of the *Bennett* test satisfied where agency action halted leasing); *State*, 792 F. Supp. 3d at 1178 ("It is hard to conceive of a more exemplary effect on day-to-day operations than a shovel-ready construction project suddenly delayed because its funding has failed to materialize.").

None of the authorities on which Defendants rely involve an agency-imposed freeze on consideration of applications.  Instead, they address agency guidance, interpretive letters, strategies, or legal opinions that carried no binding legal effect under the governing statutory regime.  *See Sierra Club v. EPA*, 955 F.3d 56, 63 (D.C. Cir. 2020); *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940, 944 (D.C. Cir. 2012); *Fund for Animals, Inc. v. U.S. Bureau of Land*

*Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2006); *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 642-43 (6th Cir. 2004); *Aerosource, Inc. v. Slater*, 142 F.3d 572, 581 (3d Cir. 1998). In those cases, any practical consequences resulted from third-party reactions to nonbinding agency statements. Here, by contrast, the consequences flow directly from DoD's own decision to suspend the review process Congress assigned to it. The suspension binds DoD itself by directing Clearinghouse personnel to cease processing wind-energy applications or executing mitigation agreements, thereby preventing projects from advancing through the statutory process. Numerous courts have recognized that precisely this type of agency-wide suspension constitutes reviewable final agency action. *See, e.g.*, *Behdin*, 2026 WL 1031079 at *20-22 (collecting cases).

Accordingly, DoD's policy satisfies the second *Bennett* requirement because it has immediate legal consequences and produces concrete practical effects for Plaintiffs.

### III. PLAINTIFFS CAN BRING CLAIMS UNDER BOTH SECTION 706(1) AND SECTION 706(2).

Defendants incorrectly contend that Plaintiffs' sole avenue for relief lies under Section 706(1) of the APA, leaving no room for a claim under Section 706(2). That argument rests on a mistaken premise: it treats Plaintiffs' two challenges as equivalent. They are not. First, Plaintiffs challenge DoD's adoption and implementation of a policy indefinitely suspending Clearinghouse review of wind-energy projects, which is unlawful agency action that a court may review and set aside under Section 706(2). Second, Plaintiffs challenge DoD's failure to perform mandatory statutory duties and comply with governing statutory and regulatory timelines, which is unlawfully withheld and unreasonably delayed action that a court may compel the agency to perform under Section 706(1).

"Sections 706(1) and 706(2) are not mutually exclusive," and courts routinely permit both claims to proceed together, including in challenges to agency-wide moratoria and other categorical

12

agency conduct. *New York*, 811 F. Supp. 3d at 243; *Patagonia Area Res. All. v. U.S. Forest Serv.*, No. CV-23-00280-TUC-JGZ, 2025 WL 2720212, at *3 (D. Ariz. Sep. 24, 2025); *Behdin*, 2026 WL 1031079, at *18, *22-23; *Varniab*, 2026 WL 485490, at *16, *20-21. Indeed, courts have rejected arguments nearly identical to those that Defendants raise here in the other cases involving the administration's efforts to stymie wind energy. *See New York*, 811 F. Supp. 3d at 243 (rejecting the argument that "Plaintiffs' sole potential avenue for relief was through § 706(1)"); *RENEW Ne.*, 2026 WL 1078282, at *18-19.

None of the Defendants' cited authorities holds otherwise. Some merely recognize the distinction between Sections 706(1) and 706(2). *See Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1320 (S.D. Cal. 2018). Others dismissed Section 706(2) claims because the plaintiffs failed to identify a reviewable final agency action. *See Chang v. Jaddou*, No. 8:24-CV-01022-FWS-JDE, 2024 WL 5429724, at *8 (C.D. Cal. Nov. 25, 2024). And others simply characterized claims without addressing whether a plaintiff may pursue both theories simultaneously. *See Bozchalooi v. U.S. Dep't of State*, No. 2:25-CV-02983-DJC-SCR, 2026 WL 1042680, at *3 (E.D. Cal. Apr. 17, 2026), and *Leigh v. Salazar*, No. 3:13-CV-00006-MMD, 2014 WL 4700016, at *4 (D. Nev. Sep. 22, 2014). None, however, suggests that a plaintiff alleging both unlawful withholding of non-discretionary duties and a separate final agency action must elect one of either Section 706(1) or 706(2). Because Plaintiffs have adequately alleged both, both claims may proceed.

## IV.    PLAINTIFFS DO NOT ASSERT AN IMPERMISSIBLE PROGRAMMATIC CHALLENGE.

Plaintiffs' claims under both Sections 706(1) and 706(2) challenge discrete agency action that has broad impacts, not a broad agency program. Under Section 706(2), Plaintiffs challenge DoD's adoption and implementation of a policy indefinitely preventing wind-energy projects from

13

proceeding to completion under the Clearinghouse review process.  Under Section 706(1), Plaintiffs challenge DoD's categorical refusal to carry out the statutory review process Congress assigned to it under Section 183a.  Whether viewed as DoD's affirmative policy suspending review or DoD's failure to continue processing applications, Plaintiffs challenge specific agency action— not the Clearinghouse program itself.

The Supreme Court has long recognized that distinction.  Although the APA does not permit wholesale challenges to an agency's "continuing (and thus constantly changing) operations," it expressly permits challenges to "some specific order or regulation, applying some particular measure across the board." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 890 n.2 (1990).  Likewise, the Ninth Circuit has explained that "challenging a particular rule with broad application is a far cry from attempting to challenge all rules relating to one subject matter in the aggregate." *Whitewater Draw Nat. Res. Conservation Dist. v. Mayorkas*, 5 F.4th 997, 1012 n.7 (9th Cir. 2021). Plaintiffs fall squarely within that category.  They challenge discrete agency action and inaction that DoD has chosen to apply uniformly—not the Clearinghouse program as a whole.

Courts have repeatedly entertained precisely this type of challenge.  In *New York v. Trump*, the district court enjoined federal agencies' adoption and implementation of the Wind Presidential Memorandum, which indefinitely suspended wind-energy permitting nationwide, purportedly pending a government-wide reassessment of permitting practices (which, like here, had not meaningfully progressed despite the passage of several months).  811 F. Supp. 3d at 232-45. Similarly, in *RENEW Northeast*, the court enjoined agency action that broadly suspended or obstructed permitting and construction of wind and solar projects. 2026 WL 1078282 at *32. Other courts have likewise recognized that agency-wide moratoria or suspensions constitute discrete agency action subject to APA review.  *See State*, 622 F. Supp. 3d at 291-92 (challenge to leasing

14

"Stop" was not programmatic challenge to agency's general administration); *Env't Def. Fund, Inc. v. Gorsuch*, 713 F.2d 802, 813 (D.C. Cir. 1983) (agency-wide suspension of permit processing reviewable as rulemaking); *State v. United States*, 524 F. Supp. 3d 598, 642-43 (S.D. Tex. 2021) (holding that "100-day pause on removals" constituted final agency action).

The Ninth Circuit reached the same conclusion in *Al Otro Lado v. Executive Office for Immigration Review*, 138 F.4th 1102, 1118-22 (9th Cir. 2025), *reversed on other grounds by Mullin v. Al Otro Lado*, No. 25-5, 2026 WL 1825741, at *3 (U.S. June 25, 2026), where plaintiffs challenged the government's wholesale refusal to carry out mandatory statutory duties.  As in *Al Otro Lado*, Plaintiffs do not seek judicial supervision of the agency's overall administration; they seek resumption of agency actions DoD is legally required to take.  *Id.*

Nor does the fact that DoD unrolled its action in a series of steps render Plaintiffs' challenge programmatic.  DoD's August 2025 cessation of executing final mitigation agreements, its December 2025 cessation of transmitting draft agreements, its May 13 communication freezing all steps, and its May 7 memorandum are all part of its same policy of freezing its review process. Courts have repeatedly recognized that "final agency action may result from a series of agency pronouncements rather than a single edict."  *Ciba-Geigy Corp. v. U.S. E.P.A.*, 801 F.2d 430, 433 (D.C. Cir. 1986*)* (treating a "series of mailings" from EPA as a single agency action); *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 49 (D.C. Cir. 2000) (treating "a preamble plus a guidance plus an enforcement letter" as a single final action); *Defs. of Wildlife v. Tuggle*, 607 F. Supp. 2d 1095, 1110 (D. Ariz. 2009) (considering an agency statement of procedures and a prior memorandum of understanding together as a final agency action).

Defendants' authorities involve fundamentally different claims.  In each, the plaintiffs attempted to aggregate numerous unrelated agency decisions or ongoing agency operations into a

15

single APA challenge.  *See Lujan*, 497 U.S. at 890; *Whitewater Draw*, 5 F.4th at 1012*; Sierra Club v. Peterson*, 228 F.3d 559, 566 (5th Cir. 2000); *Nw. Ctr. for Alts. to Pesticides v. U.S. Dep't of Homeland Sec.*, 552 F. Supp. 3d 1078, 1088-89 (D. Or. 2021); *Ctr. for Biological Diversity v. Burgum*, 826 F. Supp. 3d 18, 34 (D.D.C. 2026); *Ass'n for Educ. Fin. & Pol'y v. McMahon*, 786 F. Supp. 3d 13, 29 (D.D.C. 2025).  Defendants' reliance on *Sierra Club v. Peterson* illustrates why. There, the plaintiffs' allegations regarding twelve timber sales were themselves the alleged program-wide policy, with no single, dateable agency action common to all of them beyond the Forest Service's general management approach.  *Peterson*, 228 F.3d at 563.  Here, by contrast, Plaintiffs challenge one specific agency action: DoD's adoption, beginning in August 2025 and confirmed by the April 13 and May 7, 2026 communications, of a policy preventing utility-scale wind-energy projects from proceeding through the Clearinghouse process to completion.  The individual projects identified in the Complaint merely illustrate the effects of that policy.

Indeed, Defendants have the doctrine backwards.  It is not Plaintiffs who have bundled together disparate agency actions under the label of a "program."  Rather, DoD itself adopted a uniform policy of categorically refusing to continue processing the applications of every wind-energy project, regardless of its potential impact on national security or its position in the Section 183a process.  Plaintiffs are entitled to challenge that policy and the resulting failures to act on applications from wind energy projects.[3]  The fact that DoD chose to adopt a broad and uniform policy does not insulate that policy from judicial review.

---

[3] Defendants' reliance on Plaintiffs' statement that the "Member Organization Plaintiffs seek programmatic relief," DoD Br. at 16, is misplaced.  That statement described the scope of the requested remedy—not the nature of the challenged agency action.

16

## V.     THE ASSOCIATIONAL AND ORGANIZATIONAL PLAINTIFFS HAVE STANDING.

Defendants' challenges to Plaintiffs' standing are narrow and readily resolved.[4]  The

Supreme Court has long held that organizations may sue on behalf of their members where "(a)

[their] members would otherwise have standing to sue in their own right; (b) the interests [they]

seek[] to protect are germane to the organization's purpose; and (c) neither the claim asserted nor

the relief requested requires the participation of individual members in the lawsuit." *Students for*

*Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 199 (2023).

Defendants do not dispute that Associational Plaintiffs' members have suffered concrete injury or

that the interests asserted are germane to the organizations' purposes.  Nor do they dispute that

GECA has demonstrated that the challenged policy frustrates its organizational mission.  Instead,

Defendants contend only that (1) Associational Plaintiffs cannot proceed without the participation

of individual members; and (2) GECA has not demonstrated a sufficient diversion of resources to

address the freeze.  Neither argument has merit.

As an initial matter, many of Defendants' standing arguments depend on their incorrect

premise that Plaintiffs have failed to identify reviewable final agency action to bring a claim under

Section 706(2).  *See* DoD Br. at 22.  As discussed above, DoD's freeze constitutes reviewable final

agency action and is not an impermissible programmatic challenge.  Defendants do not otherwise

dispute that Plaintiffs satisfy Article III if Plaintiffs may proceed under Section 706(2).  That alone

is sufficient to defeat Defendants' threshold standing argument.

Defendants' challenge to Plaintiffs' associational standing under Section 706(1) fares no

better.  Their argument that Plaintiffs' claims require individualized participation because "the

---

[4] Notably, Defendants do not claim that the individual Developer Plaintiffs lack standing.

17

challenged delays must proceed by individual application," DoD Br. at 22, misunderstands what Plaintiffs' claims require the Court to decide.  Plaintiffs do not ask the Court to adjudicate individual permitting decisions or determine whether any particular application presents a national security risk—if Plaintiffs prevail, DoD will continue to evaluate individual projects under the statutory process.  Rather, Plaintiffs challenge DoD's categorical refusal to allow wind-energy projects from proceeding through the Clearinghouse review process to completion, together with its corresponding refusal to carry out the statutory review process Congress assigned to it under Section 183a.  The requested relief is likewise categorical: an order setting aside DoD's suspension policy and requiring the Clearinghouse to resume the review process required by law.  Resolution of those claims does not depend on the circumstances of any individual member's application.  Courts routinely recognize associational standing under such circumstances.  *See Robertson v. D.C.*, 762 F. Supp. 3d 34, 63 (D.D.C. 2025) ("Relief in the form of systemic changes does not involve individual participation for the purposes of assessing the *Hunt* factors."); *Widakuswara v. Lake*, 779 F. Supp. 3d 10, 27 (D.D.C. 2025) (holding that prong three of the *Hunt* test was satisfied where "the relief that Plaintiffs seek pertains to Defendants' wholesale dissolution of USAGM and does not depend on the individual circumstances of any union member").[5]

Defendants' challenge to GECA's organizational standing is also meritless.  They assert that GECA has not demonstrated a "diversion of its resources to combat the particular [conduct] in question."  *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004).  GECA's declaration readily satisfies that standard.  GECA explains that it relies on RECs generated by

---

[5] Defendants assert without basis that the fact that Plaintiffs amended their complaint to add Developer Plaintiffs "reveals their doubt as to the Organizational Plaintiffs' standing[.]"  DoD Br. at 23.  Not so.  Plaintiffs filed with Associational and Organizational Plaintiffs initially because those parties clearly had standing, and the complaint and preliminary injunction papers were joined expeditiously by Developer Plaintiffs who saw the clear merit of the claims and wanted to be directly supportive as additional Plaintiffs.

renewable-energy projects to advance its programs, provide benefits to participating communities, and promote a zero-carbon energy environment.  ECF No. 1-15 ¶ 12.  It further explains that DoD's freeze reduces the supply of RECs because "the REC supply in the New England market depends directly on renewable projects."  *Id.* ¶ 17.  As a result, GECA must pay higher prices for RECs, faces greater difficulty securing sufficient volumes, and has been forced to divert limited organizational resources away from other mission-critical work to sustain its existing commitments.  *Id.* ¶¶ 18-19.

Defendants contend that GECA has not shown how DoD's policy meaningfully affects the REC market.  DoD Br. at 23.  But GECA's declaration explains precisely that contention.  Defendants simply ignore those factual allegations.  At the pleading stage, those unrebutted allegations are more than sufficient to establish frustration of GECA's mission and diversion of organizational resources.  Indeed, another court recently rejected Defendants' similar arguments against GECA's standing to challenge other federal agencies' recent anti-wind actions.  *RENEW Ne.*, 2026 WL 1078282, at *10-11, *15.

Accordingly, Associational Plaintiffs have established associational standing and GECA has established organizational standing.

## CONCLUSION

The Motion to Dismiss should be denied.

19

Dated: July 13, 2026

Respectfully submitted,

/s/ Michael B. Giaquinto
Michael B. Giaquinto, OSB No. 246342
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071
T: (213) 612-2500
michael.giaquinto@morganlewis.com

Jennifer Trock (*pro hac vice*)
Douglas Hastings (*pro hac vice*)
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
jennifer.trock@morganlewis.com
douglas.hastings@morganlewis.com

Ella Foley Gannon (*pro hac vice*)
600 Montgomery Street
Suite 2300
San Francisco, CA 94111-2725
T: 415-442-1000
ella.gannon@morganlewis.com

*Attorneys for Plaintiffs (except for Las Crestas Wind Energy, LLC)*

Darin Sands, OSB No. 106624
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
T: +1 503-734-2480
dsands@bradleybernstein.com

Richard W. Smith (*pro hac vice*)
Kathleen Mueller (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
T: 202-736-8000
rwsmith@sidley.com
kmueller@sidley.com

20

*Attorneys for Plaintiff Las Crestas Wind Energy, LLC*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

This brief complies with the applicable combined 14,000-word limitation as noted in the Court's order on July 6, 2026 (*see* ECF No. 89) because it contains 5,785 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature blocks, exhibits and any certificates of counsel.

/s/ Michael B. Giaquinto

*Attorney for Plaintiffs (except Las Crestas Wind Energy, LLC)*