DAN RAYFIELD
Attorney General
COBY HOWELL #253434
Senior Assistant Attorney General
PATRICK T. JOHNSON #260534
Assistant Attorney General
Oregon Department of Justice
100 SW Market Street
Portland, OR 97201
Telephone: (971) 673-1880
Fax: (971) 673-5000
Email: Coby.Howell@doj.oregon.gov
          Patrick.t.johnson@doj.oregon.gov

*Attorneys for Intervenor-Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| RENEWABLE NORTHWEST; ADVANCED POWER ALLIANCE; ALLIANCE FOR CLEAN ENERGY NEW YORK, INC.; CLEAN GRID ALLIANCE; INTERWEST ENERGY ALLIANCE; MAINE RENEWABLE ENERGY ASSOCIATION; RENEW NORTHEAST; SOUTHERN RENEWABLE ENERGY ASSOCIATION; GREEN ENERGY CONSUMERS ALLIANCE; LAS CRESTAS WIND ENERGY, LLC; APEX CLEAN ENERGY HOLDINGS, LLC; NOVA CLEAN ENERGY, LLC; NORTH HILLS WIND PROJECT, LLC; PRAIRE PHOENIX WIND PROJECT, LLC; DEUEL HARVEST WIND ENERGY SOUTH LLC; LAZBUDDIE WIND ENERGY II LLC; THRESHER WIND LLC; TOWNER WIND ENERGY II LLC; TRITON WIND ENERGY LLC; WHITETAIL WIND, LLC; MEADOW LAKE II WINDFARM, LLC; BLACKSTONE WIND FARM II, LLC; BIG RIVERWIND, LLC; HORSE THIEF WIND PROJECT, LLC; CRIDER VALLEY WIND | Case No. 3:26-cv-01092-IM<br><br>**MOTION TO INTERVENE BY STATES OF OREGON, ILLINOIS, NEW YORK, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, MAINE, MARYLAND, COMMONWEALTH OF MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, RHODE ISLAND, WASHINGTON, and the DISTRICT OF COLUMBIA** |

**MOTION TO INTERVENE**

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

ENERGY LLC; CANISTEO WIND ENERGY LLC; HAMMERHEAD WIND ENERGY LLC; RAMBLE WIND ENERGY LLC; and BLUE CANYON WINDPOWER V, LLC,

        Plaintiffs,

STATES OF OREGON, ILLINOIS, NEW YORK, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, MAINE, MARYLAND, COMMONWEALTH OF MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, RHODE ISLAND, WASHINGTON, and the DISTRICT OF COLUMBIA,

        Intervenor-Plaintiffs,

    v.

PETER B. HEGSETH., in his official capacity as Secretary of Defense; DALE R. MARKS, in his official capacity as Assistant Secretary of Defense for Energy, Installations, and Environment; U.S. DEPARTMENT OF DEFENSE; and DEPARTMENT OF DEFENSE MILITARY AVIATION AND INSTALLATION ASSURANCE SITING CLEARINGHOUSE,

        Defendants.

MOTION TO INTERVENE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF CONTENTS

LOCAL RULE 7-1(A) CERTIFICATION ................................................................... 1

MOTION................................................................................................................... 2

MEMORANDUM ..................................................................................................... 2

   I.  INTRODUCTION ............................................................................................. 2

   II.  BACKGROUND .............................................................................................. 3

      A.  Procedural Posture ..................................................................................... 3

      B.  DoD's Unlawful Wind Freeze.................................................................... 4

      C.  DoD's Wind Freeze Harms the States' Interests. .......................................... 5

   III.  ARGUMENT ................................................................................................ 10

      A.  The States Should Be Allowed to Intervene as of Right...............................11

         1.  The States' Motion Is Timely. .................................................................. 12

         2.  The States Have a Significantly Protectable Interest, and Disposition of This Case May Impair That Interest. ................................................................... 13

         3.  Energy Plaintiffs Cannot Adequately Represent the States' Interests................... 15

      B.  Alternatively, the States Should Be Permitted to Intervene....................................... 17

   IV.  CONCLUSION.............................................................................................. 19

MOTION TO INTERVENE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## TABLE OF AUTHORITIES

**Cases**

*Cahill v. Insider Inc.*,
131 F.4th 933 (9th Cir. 2025) .................................................................................... 15

*Cal. ex rel. Lockyer v. United States*,
450 F.3d 436 (9th Cir. 2006) .................................................................................... 13

*Calif. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,
54 F.4th 1078 (9th Cir. 2022) ................................................................................... 10

*California v. Health & Hum. Servs.*,
330 F.R.D. 248 (N.D. Cal. 2019) ......................................................................... 12, 17

*Citizens for Balanced Use v. Mont. Wilderness Ass'n,*
647 F.3d 893 (9th Cir. 2011) ............................................................................... 13, 15

*Cooper v. Newsom,*
13 F.4th 857 (9th Cir. 2021) ..................................................................................... 16

*County of Fresno v. Andrus*,
622 F.2d 436 (9th Cir. 1980) .................................................................................... 13

*Donnelly v. Glickman*,
159 F.3d 405 (9th Cir. 1998) .................................................................................... 16

*Freedom from Religion Found., Inc. v. Geithner*,
644 F.3d 836 (9th Cir. 2011) .................................................................................... 17

*Kalbers v. U.S. Dep't of Just.*,
22 F.4th 816 (9th Cir. 2021) ...................................................................... 11, 12, 14, 15

*Levin Richmond Terminal Corp. v. City of Richmond*,
482 F. Supp.3d 944 (N.D. Cal. 2020) ........................................................................ 17

*Lighthiser v. Trump*,
No. Civ. 25-54 (BU)(DLC), 2025 WL 2336435 (D. Mont. Aug. 13, 2025) ...................... 13, 15

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*,
591 U.S. 657 (2020) ................................................................................................ 10

*MD Helicopters Inc. v. United States*,
No. Civ. 19-02236, 2019 WL 8953136 (D. Ariz. May 10, 2019) ........................................ 12

MOTION TO INTERVENE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

*Or. Nat. Desert Ass'n v. McDaniel*,
   405 F. App'x 197 (9th Cir. 2010) .................................................................................. 12

*Or. Nat. Desert Ass'n v. Shuford*,
   No. Civ. 06-242, 2006 WL 2601073 (D. Or. Sept. 8, 2006) ....................................... 12

*Oregon v. Noem*,
   Nos. Civ. 26-186 & 25-2396, 2026 WL 1078199 (D. Or. Apr. 21, 2026) .........10, 11, 13, 15, 16

*Perry v. Prop. 8 Official Proponents*,
   587 F.3d 947 (9th Cir. 2009) ........................................................................................ 16

*Vasquez Perdomo v. Noem*,
   820 F. Supp. 3d 1061 (C.D. Cal. 2026) ........................................................................ 10

*Venegas v. Skaggs*,
   867 F.2d 527 (9th Cir. 1989) ........................................................................................ 17

*W. Energy Alliance v. Zinke*,
   877 F.3d 1157 (10th Cir. 2017) .................................................................................... 13

*W. Watersheds Project v. Haaland*,
   22 F.4th 828 (9th Cir. 2022) ....................................................................................11, 14

*W. Watersheds Project v. U.S. Dep't of Interior*,
   2015 WL 5304113 ......................................................................................................... 15

*Washington v. U.S. Dep't of Transp.*,
   2025 WL 3023041 (W.D. Wash. Oct. 29, 2025) ................................................... 17, 18

*Washington v. U.S. Food & Drug Admin.*,
   108 F.4th 1163 (9th Cir. 2024) ..................................................................................... 10

*Wilderness Soc'y v. U.S. Forest Serv.*,
   630 F.3d 1173 (9th Cir. 2011) (en banc) ..................................................................10, 11

**Statutes**

5 U.S.C. § 706(1), (2) .......................................................................................................... 16

10 U.S.C. § 183a.................................................................................................................... 4

10 U.S.C. § 183a(c)(3) .......................................................................................................... 5

49 U.S.C. § 40103.................................................................................................................. 4

MOTION TO INTERVENE

49 U.S.C. § 44718 ................................................................................................................... 4, 5

Cal. Pub. Util. Code § 454.53 ..................................................................................................... 7

Conn. Gen. Stat. § 16-245a(a)(25) .............................................................................................. 7

D.C. Code Ann. § 34-1432 ........................................................................................................... 7

Del. Code Ann. tit. 26, § 354(a) .................................................................................................. 7

20 ILCS 3855/1-5(1.5) ................................................................................................................ 7

20 ILCS 3855/1-75(c)(1)(B) ....................................................................................................... 7

415 ILCS 5/9.15 ........................................................................................................................... 7

Mass. Gen. Laws ch. 25A, § 11F(a) ............................................................................................ 7

Md. Code. Ann., PUB. UTIL. § 7-703(b)(25) ................................................................................ 7

Me. Rev. Stat. Ann. tit. 35-A, § 3210(1A)(A) ............................................................................. 7

2023 Mich. Pub. Act 235 ............................................................................................................. 7

Minn. Stat. § 216B.1691(2g) (2025) ........................................................................................... 7

N.J. Stat. Ann. § 48:3-87 .............................................................................................................. 7

N.M. Stat. Ann. § 62-16-4(A)(3), (6) .......................................................................................... 7

N.Y. Env't Conserv. Law § 75-0107 ........................................................................................... 7

N.Y. Pub. Serv. Law § 66-p(2) .................................................................................................... 7

Or. Rev. Stat. § 469A.410(1)(c) .................................................................................................. 7

39 R.I. Gen. Laws § 39-26-4 ....................................................................................................... 7

Wash. Rev. Code § 19.405.010(2) ............................................................................................... 7

MOTION TO INTERVENE

**Other Sources**

Am. Clean Power Ass'n, Wind Energy in Colorado (2022) ........................................................... 9

Ariz. State Land Dep't, *State Trust Land Beneficiaries*.................................................................. 9

Lazard, *Lazard Releases 2025 Levelized Cost of Energy+ Report* (June 16, 2025)....................... 7

Letter from Comm'r Robyn Sahid to Governor Katie Hobbs (Sept. 16, 2024)............................. 9

Med. Soc'y Consortium on Climate & Health et al., The Costs of Inaction: The Economic
    Burden of Fossil Fuels and Climate Change on Health in the United States 5 (May 20, 2021)
    ...................................................................................................................................... 9, 10

RWE Renewables Dev., LLC., Notice of Filing Application for Certificates of Environmental
    Compatibility (July 24, 2023)................................................................................................. 9

MOTION TO INTERVENE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

## LOCAL RULE 7-1(A) CERTIFICATION

Counsel for the States of Oregon, Illinois, New York, Arizona, California, Colorado, Connecticut, Delaware, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Rhode Island, Washington, and the District of Columbia (collectively, **"the States"**) conferred with counsel for plaintiffs Renewable Northwest; Advanced Power Alliance; Alliance for Clean Energy New York, Inc.; Clean Grid Alliance; Interwest Energy Alliance; Maine Renewable Energy Association; RENEW Northeast; Southern Renewable Energy Association; Green Energy Consumers Alliance; Las Crestas Wind Energy, LLC; Apex Clean Energy Holdings, LLC; Nova Clean Energy, LLC; North Hills Wind Project, LLC; Prairie Phoenix Wind Project, LLC; Deuel Harvest Wind Energy South LLC; Lazbuddie Wind Energy II LLC; Thresher Wind LLC; Towner Wind Energy II LLC; Triton Wind Energy LLC; Whitetail Wind, LLC; Meadow Lake II Windfarm, LLC; Blackstone Wind Farm II, LLC; Big River Wind, LLC; Horse Thief Wind Project, LLC; Crider Valley Wind Energy LLC; Canisteo Wind Energy LLC; Hammerhead Wind Energy LLC; Ramble Wind Energy LLC; and Blue Canyon Windpower V, LLC (collectively, "**Energy Plaintiffs**"); and with counsel for defendants Peter B. Hegseth, Dale R. Marks, U.S. Department of Defense, Department of the Air Force, Department of the Army, Department of the Navy, and Department of Defense Military Aviation and Installation Assurance Siting Clearinghouse (collectively, "**DoD**" or "**DoD Defendants**").[1]

Energy Plaintiffs do not oppose this motion. DoD Defendants reserve their position and intend to file a response.

---

[1] This Motion uses the legal name "Department of Defense" or "DoD" but uses "Department of War" or "DoW" when directly quoting documents or communications using that term.

MOTION TO INTERVENE

**MOTION**

Pursuant to Federal Rules of Civil Procedure 24(a) and (b), the States move to intervene as Plaintiffs. This motion is accompanied by a pleading that sets out each claim for which intervention is sought and the following memorandum.

**MEMORANDUM**

## I.     INTRODUCTION

The States seek to intervene in this lawsuit to challenge DoD's decision to halt approvals for all land-based wind projects throughout the United States ("Wind Freeze"), including many projects located within or anticipated to deliver energy to the States. The Wind Freeze violates the Administrative Procedure Act ("APA") and harms the States' unique policy, environmental, public health, and sovereign interests.

DoD's Wind Freeze adversely affects the States' interests in multiple ways, including by undermining the States' efforts to procure clean, renewable, and affordable wind energy; maintain grid stability; enforce their own clean energy policies; create jobs and generate tax revenue; and protect the health of their residents. The States, like Energy Plaintiffs, ask this Court to vacate and enjoin DoD's Wind Freeze.

The States allege the same legal claims as those alleged by Energy Plaintiffs and seek the same relief. However, the Energy Plaintiffs, which seek to defend their own commercial and financial interests, cannot adequately represent the sovereign interests of the States. Allowing the States to intervene as Plaintiffs in this action will protect their sovereign and quasi-sovereign interests without duplicative proceedings, thus promoting judicial economy, while aiding the

MOTION TO INTERVENE

Court's review without delay or prejudice. The Court should grant the States' motion to intervene as Plaintiffs.

## II.     BACKGROUND

### A.  Procedural Posture

On May 31, 2026, Energy Plaintiffs brought this action challenging DoD's decision to stop fulfilling its statutory duty to assess the national security implications of proposed land-based wind projects. ECF 1. Energy Plaintiffs subsequently moved for a stay or preliminary injunction on June 11, 2026, ECF 14, and amended their complaint on June 22, 2026, ECF 36 (First Amended Complaint). On July 6, 2025, DoD Defendants filed a combined response in opposition to Energy Plaintiffs' motion for preliminary injunction and, while their responsive pleading was not yet due, a Motion to Dismiss the First Amended Complaint based on lack of subject-matter jurisdiction. ECF 90, 90-1. Energy Plaintiffs filed a response to DoD's motion to dismiss on July 13 (ECF 91), and their reply in support of their motion for preliminary injunction is due July 20. DoD Defendants' reply in support of their motion to dismiss is also due on July 20. Oral argument is scheduled for August 4, 2026, *see* ECF 20, 87, 89.

The States have moved to intervene just over three weeks after Energy Plaintiffs amended their complaint (ECF 36), and ten days after the Defendants filed a declaration identifying–for the first time and without prior disclosure to the States—the purported basis of the Wind Freeze (ECF 90-1). The instant motion is timely and will not disrupt the schedule the Court has set for Energy Plaintiffs' motion for preliminary injunction and DoD's motion to dismiss. The States do not intend to file their own motion for a preliminary injunction.

MOTION TO INTERVENE

### B. DoD's Unlawful Wind Freeze

Across the country, demand for energy is increasing. Wind project development helps meet this demand by generating additional supply, thereby aiding reliability and reducing the price of electricity while lowering harmful air emissions. Wind energy is thus a critical component of our nation's, and the States', energy security.

Wind projects also may implicate national security concerns. Wind turbines can interfere with flight paths or radar, among other issues. Congress knows there are competing priorities and has balanced these two interests in multiple enactments. In particular, Congress instructed the Federal Aviation Administration ("FAA") and DoD to evaluate proposed wind projects in a timely manner, and, if necessary, to mitigate possible adverse effects to national security. 49 U.S.C. §§ 40103, 44718; 10 U.S.C. § 183a. Congress's charge to these agencies could not be clearer: foster wind project development while mitigating any effects on national security.

This process operated efficiently, as Congress intended, for years, with the FAA and DoD appropriately balancing the benefits of wind development with legitimate national security concerns. Wind developers, specifically those planning to construct turbines taller than 200 feet, would contact the FAA with a proposal. Ex. A (States' proposed Complaint-In-Intervention) at ¶¶ 5, 43. The FAA would provide the proposal to DoD for its input, and DoD would assess the project. Ex. A at ¶¶ 5, 44, 50. If DoD identified national security concerns, it would address them with the developer through revisions or mitigation. Ex. A at ¶¶ 5, 55. Historically, all of this was handled quickly and predictably. That is, until DoD implemented its Wind Freeze in or around August 2025. Ex. A at ¶¶ 1, 72–74; ECF 90-1, Declaration of Assistant Secretary Marks ("Marks Decl."), ¶ 96 (confirming the existence of the Wind Freeze by stating that "[c]onsistent with my

MOTION TO INTERVENE

direction as the signatory authority, DoW executed the last mitigation agreement on August 18, 2025" and that "[t]his decision meant DoW refrained from executing further agreements and drafting new ones (beginning around December)").

The Wind Freeze is the latest tactic to advance the Trump Administration's goal of stopping wind energy. Since President Trump's inauguration in January 2025, his Administration has attempted to hinder wind energy development through unlawful executive orders, secretarial orders, stop-work orders, permit denials, sudden reversals of established policies and practices, lease cancellations and settlements, and a host of other illegal actions. Ex. at ¶¶ 59–63. The Wind Freeze is not just bureaucratic delay, but an actionable decision by DoD to categorically stop reviewing wind projects and to halt negotiations with wind developers to mitigate harms. Ex. A at ¶¶ 7–10, 72. It is a final agency action with harmful consequences to the States. *See, e.g.*, Ex. A at ¶¶ 72, 95–132. DoD's unlawful actions implementing the Wind Freeze should be vacated and enjoined.

### C.  DoD's Wind Freeze Harms the States' Interests.

The Wind Freeze uniquely harms the States. States have authority over electricity generation within their borders, and they work to ensure adequate energy generation resources through long-term planning. Indeed, Congress acknowledged that States play a significant role in decisions that impact electricity generation within their borders when it established the Clearinghouse process. For example, state governors receive unique benefits under the applicable statutory framework. DoD Defendants are required to provide notice "to the governor of the State in which the project is located and request that the governor provide the Clearinghouse any comments the governor believes of relevance to the application." 10 U.S.C. § 183a(c)(3). In turn,

MOTION TO INTERVENE

a "governor has at least 30 days after the date on which the governor receives the notice of presumed risk to provide any such comments and shall provide detailed information and other information necessary to ensure that the governor can fully understand the nature of the presumed risk." *Id.* And the "Secretary of Defense shall consider the comments of the governor in the Secretary's evaluation of whether the project presents an unacceptable risk to the national security of the United States and shall include the comments with the finding provided to the Secretary of Transportation pursuant to section 44718(f) of title 49." *Id.* These statutory requirements demonstrate that Congress preserved an important and unique role for the States to exercise their authority over electricity generation and protect their sovereign interests.

The Wind Freeze interferes with and harms the States' sovereign interests in exercising this authority, as well as enforcing and complying with their own energy laws and policies. DoD's Wind Freeze is driving up the cost of electricity for States and their residents, threatening grid capacity, and impeding the States' efforts to reduce emissions from fossil fuel-fired power plants, all of which negatively affect the physical and economic well-being of the States and their residents.

Energy Plaintiffs have already identified at least 106 land-based wind projects with a total capacity of more than 29,000 megawatts that are currently blocked by the Wind Freeze. ECF 14-28 at ¶ 19 (Strunk Decl.). Many of these projects are located in the States, including projects in Oregon, Illinois, New York, Arizona, California, Colorado, Maine, Michigan, New

MOTION TO INTERVENE

Mexico, and Washington. *Id.* By blocking these wind projects, the Wind Freeze harms the States in at least four ways.[2]

*First*, the Wind Freeze undermines the States' sovereign interests in implementing their own laws, including by interfering with statutory goals and mandates to purchase electricity from renewable energy sources and to reduce greenhouse gas emissions. For example, most of the States have adopted Renewable Portfolio Standards, Clean Energy Standards, or other renewable energy mandates that require electricity suppliers to procure specified percentages of renewable energy certificates or credits. These market-based instruments represent electricity generated by renewable resources.[3] DoD's Wind Freeze will make it harder for the States to implement these laws and policies. By delaying the States' transition from fossil fuel-fired power plants, the Wind Freeze will also make it harder for the States to achieve statutory targets for reducing greenhouse gas emissions, which include New York's statutory target of reducing greenhouse gas emissions 40% from 1990 levels by 2030 and 85% from 1990 levels by 2050, N.Y. Env't Conserv. Law § 75-0107, and Illinois's statutory requirement for all electricity generating units to reduce carbon dioxide and co-pollutant emissions to zero by 2045, with interim reduction goals that begin taking

---

[2] These harms are described in more state-specific detail in the States' proposed Complaint in Intervention attached as Exhibit A at ¶¶ 14–32 and 95–132.

[3] *See, e.g.*, N.Y. Pub. Serv. Law § 66-p(2) (70% by 2030); Mass. Gen. Laws ch. 25A, § 11F(a) (annually increasing percentage); Wash. Rev. Code § 19.405.010(2) (100% by 2045); Conn. Gen. Stat. § 16-245a(a)(25) (33% by 2030); Del. Code Ann. tit. 26, § 354(a) (40% by 2035); 20 ILCS 3855/1-75(c)(1)(B) (40% by 2030, 50% by 2040); Me. Rev. Stat. Ann. tit. 35-A, § 3210(1A)(A) (80% by 2030); Minn. Stat. § 216B.1691(2g) (2025) (100% by 2040); Md. Code. Ann., Pub. Util. § 7-703(b)(25) (50% by 2030); 39 R.I. Gen. Laws § 39-26-4 (100% by 2033); N.J. Stat. Ann. § 48:3-87 (50% by 2030); D.C. Code Ann. § 34-1432 (100% by 2032); Cal. Pub. Util. Code § 454.53 (100% by 2045); N.M. Stat. Ann. § 62-16-4(A)(3), (6) (40% by 2025, 100% by 2045); Or. Rev. Stat. § 469A.410(1)(c) (100% by 2040); 2023 Mich. Pub. Act 235 (50% renewable by 2030 and 100% clean by 2040).

MOTION TO INTERVENE

effect by 2030. 415 ILCS 5/9.15. The Wind Freeze further impedes Illinois' ability to achieve its statutory goal to transition to the use of 100% clean energy by 2050. 20 ILCS 3855/1-5(1.5).

*Second*, the Wind Freeze harms the States and their residents, as ratepayers and customers, by increasing the cost of electricity and jeopardizing grid reliability. In many of the States, wind energy is one of the most cost-effective electricity resources to construct and operate.[4] Unlike fossil fuel-fired energy generation, wind projects lock in predictable costs over the life of their contracts (typically 10–25 years), insulating ratepayers from fuel price volatility and supply disruptions. And fossil fuel-fired facilities take longer to build and are more expensive to construct than wind energy facilities.

By preventing the development of wind energy at a time when demand is increasing due to data center developments and other large loads, the Wind Freeze will reduce planned-for new energy generation and increase reliance on more volatile and capital-intensive fossil fuel-fired energy resources, increasing electricity prices for the States and their residents, both of which purchase electricity as ratepayers and customers. The Wind Freeze will further harm the States by forcing State entities to expend significant time and resources re-analyzing their energy plans to meet growing demand and secure grid reliability.

*Third*, the Wind Freeze harms the States by jeopardizing investments, jobs, tax revenues, and other economic benefits anticipated to result from wind development.

As identified by Energy Plaintiffs, DoD's Wind Freeze threatens billions of dollars in anticipated private investment in the States, including, at least: $304 million in Arizona;

---

[4] *See* Lazard, *Lazard Releases 2025 Levelized Cost of Energy+ Report* (June 16, 2025), https://perma.cc/989X-5TVX.

MOTION TO INTERVENE

$267 million in California; $2.687 billion in Colorado; $4.332 billion in Illinois; $112 million in Maine; $507 million in Michigan; $1.994 billion in New Mexico; $445 million in New York; $1.746 billion in Oregon; and $2.066 billion in Washington. ECF 14-28 at ¶ 19 (Strunk Decl.). The Wind Freeze further threatens to destroy the value of existing investments, including the billions of dollars the States have invested in wind energy infrastructure, research and development, job-training programs, and supply chains.

DoD's Wind Freeze also jeopardizes significant employment opportunities within the States. Blocking planned wind projects will deprive the States of thousands of jobs, including, as identified by Energy Plaintiffs, at least: 739 jobs in Arizona; 7,124 jobs in Colorado; 10,664 jobs in Illinois; 296 jobs in Maine; 1,168 jobs in Michigan; 4,710 jobs in New Mexico; 806 jobs in New York; 4,716 jobs in Oregon; and 4,532 jobs in Washington. ECF 14-28 at ¶ 19 (Strunk Decl.).

DoD's Wind Freeze likewise jeopardizes large sources of tax revenue in the States. In Arizona, for example, the State Land Department earns revenues by leasing or selling certain state-owned lands to renewable energy projects, which is an important and significant source of revenue for its public education systems.[5] In Colorado, wind projects generated more than $10 million in state and local tax dollars and $18 million in lease payments to Colorado residents in 2022.[6]

---

[5] *See, e.g.*, Letter from Comm'r Robyn Sahid to Governor Katie Hobbs (Sept. 16, 2024), https://perma.cc/46P6-ZCEF; Ariz. State Land Dep't, *State Trust Land Beneficiaries*, https://perma.cc/92TK-HNAZ; RWE Renewables Dev., LLC., Notice of Filing Application for Certificates of Environmental Compatibility (July 24, 2023), https://perma.cc/Y2RE-FNJA.
[6] Am. Clean Power Ass'n, Wind Energy in Colorado (2022), https://perma.cc/FMU7-Y6P7.

MOTION TO INTERVENE

Finally, DoD's Wind Freeze jeopardizes other economic benefits these projects provide, including electricity bill credits and direct payments to host communities through local taxes, community benefit agreements, and host community and landowner agreements.

*Fourth*, the Wind Freeze harms the States and their residents by interfering with the States' ongoing efforts to ameliorate the acute and long-term environmental and public health harms caused by pollution from fossil fuel-fired energy sources. By reducing the amount of new electricity generation from wind energy, DoD's Wind Freeze perpetuates the States' reliance on fossil fuel-fired power plants. These plants emit large quantities of harmful conventional air pollutants in addition to greenhouse gases, which cause and contribute to climate change, and thereby exacerbate sea-level rise, drought, and extreme weather events. Fossil fuel-related pollution causes approximately 107,000 premature deaths each year in the United States.[7] This pollution imposes healthcare costs on the States; health costs due to fossil fuel pollution amount to billions of dollars each year nationally.[8] New wind projects are expected to alleviate harm to the environment and to the health of the States' residents, in addition to reducing State healthcare costs. But this will not happen if DoD's Wind Freeze remains in place.

## III.    ARGUMENT

The States' legal claims and requested relief align with those of Energy Plaintiffs. But Energy Plaintiffs, who represent the commercial and financial interests of privately owned companies, cannot adequately represent the sovereign interests of the States. The States therefore

---

[7] *See* Med. Soc'y Consortium on Climate & Health et al., The Costs of Inaction: The Economic Burden of Fossil Fuels and Climate Change on Health in the United States 5 (May 20, 2021), https://perma.cc/VS6U-YJFQ.
[8] *See id.*

MOTION TO INTERVENE

move to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) to protect their interests and those of their citizens. Alternatively, the Court should permit the States to intervene under Federal Rule of Civil Procedure 24(b).[9]

### A.  The States Should Be Allowed to Intervene as of Right.

The States meet all the requirements to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) and thus should be allowed to intervene as plaintiffs in this action. "[Rule 24(a)(2)] requires a court to permit intervention when four requirements are met: (1) the motion is timely; (2) the applicant claims a 'significantly protectable' interest relating to the property or transaction which is the subject of the action; (3) the applicant is so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest is inadequately represented by the parties to the action." *Oregon v. Noem*, Nos. Civ. 26-186 & 25-2396, 2026 WL 1078199, at *1 (D. Or. Apr. 21, 2026) (quoting *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (en banc)); *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022); *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021). These requirements are interpreted broadly in favor of intervention and review is guided primarily by practical considerations, not technical distinctions. *W. Watersheds*, 22 F.4th at 835;

---

[9] Because the States seek relief that is not fundamentally different from or beyond that sought by the Energy Plaintiffs, they need not establish separate Article III standing, but as demonstrated in the proposed complaint-in-intervention and in the discussion above, could do so regardless. *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6 (2020); *Calif. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022); *Vasquez Perdomo v. Noem*, 820 F. Supp. 3d 1061, 1082 (C.D. Cal. 2026). *See Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1171–72 (9th Cir. 2024).

MOTION TO INTERVENE

*Oregon*, 2026 WL 1078199, at \*1. Because the States meet each of these requirements, they should be allowed to intervene as of right.

### 1. The States' Motion Is Timely.

The States' motion, filed at this early stage of the action, is timely. For intervention to be timely, "a party must intervene when he knows or has reason to know that his interests might be adversely affected by the outcome of litigation." *W. Watersheds*, 22 F.4th at 835. "To determine whether a motion for intervention as of right is timely," courts "consider the totality of circumstances facing the would-be intervenor, with a focus on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Id.* at 835–36 (citation omitted); *Kalbers*, 22 F.4th at 822. "[T]he crucial date for assessing the timeliness of a motion to intervene is when proposed intervenors should have been aware that their interests would not be adequately protected by the existing parties." *W. Watersheds*, 22 F.4th at 836 (citation omitted). Whether a motion to intervene is timely is necessarily fact-specific because "timeliness is determined by the totality of the circumstances." *Kalbers*, 22 F.4th at 822–23 (citation omitted).

The States' motion is timely. The case is in its early stages, and the States do not seek to disrupt any existing deadlines. Energy Plaintiffs filed suit approximately 6 weeks ago, moved for a preliminary injunction 5 weeks ago, and amended their complaint just over 3 weeks ago. ECF 1, 14, 36. DoD Defendants filed their response to the preliminary injunction and moved to dismiss 10 days ago, at which time the States first learned the purported basis for DoD's illegal Wind Freeze. The States do not ask the Court to change any of the deadlines related to the pending motion for preliminary injunction, nor will the States file their own motion for preliminary relief.

MOTION TO INTERVENE

Inclusion of the States as Plaintiff-Intervenors would not prejudice the other parties, given the States' parallel claims and the early stage of the case. Indeed, including the States as Plaintiff-Intervenors in this action would promote judicial economy, as it avoids a parallel suit seeking the same relief.

Courts routinely find intervention motions timely where, as here, the intervenors move before the case has advanced substantively and do not seek to disrupt existing court deadlines. *See, e.g.*, *Kalbers*, 22 F.4th at 826–27 (motion to intervene timely when case had not yet progressed substantively).[10] This case fits squarely within a reasonable timeframe to intervene based on the preliminary nature of the proceedings. This Court should find the States' motion timely.

### 2. The States Have a Significantly Protectable Interest, and Disposition of This Case May Impair That Interest.

The States have a significantly protectable interest in this action and its outcome. As discussed above, DoD's Wind Freeze harms the States in multiple ways, and as such, vacating and enjoining the Wind Freeze—the relief sought by both Energy Plaintiffs and the States—will protect those interests.

"Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical, threshold inquiry, and no specific legal or equitable interest need be

---

[10] *See also California v. Health & Hum. Servs.*, 330 F.R.D. 248, 253 (N.D. Cal. 2019) (state's motion to intervene in APA action was timely when filed less than a month after plaintiffs' second amended complaint and preliminary injunction motion); *Or. Nat. Desert Ass'n v. Shuford*, No. Civ. 06-242, 2006 WL 2601073, at *2 (D. Or. Sept. 8, 2006) (finding no prejudice where intervenors moved promptly and agreed "to comply with the court's discovery and pretrial scheduling order"), *aff'd sub nom. Or. Nat. Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010); *MD Helicopters Inc. v. United States*, No. Civ. 19-02236, 2019 WL 8953136 (D. Ariz. May 10, 2019) at *2 (motion to intervene timely when intervenors did not seek to disrupt parties' preliminary injunction schedule).

MOTION TO INTERVENE

Department of Justice
100 SW Market Street
Portland, OR 97201
(971) 673-1880 / Fax: (971) 673-5000

13

established." *Citizens for Balanced Use v. Mont. Wilderness Ass'n,* 647 F.3d 893, 897 (9th Cir. 2011) (citation omitted). A proposed intervenor need only show that "disposition of the action *may* practically impair [its] ability to protect their interest in the subject matter of the litigation," and need not show such impairment is an "absolute certainty." *Citizens for Balanced Use*, 647 F.3d at 900 (emphasis added) (citation modified). Once a proposed intervenor has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" those interests. *Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006). Application of this requirement is "primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*, 622 F.2d 436, 438 (9th Cir. 1980) (citation omitted).

Courts have found that states have protectable, sovereign interests in protecting state energy policies and environmental concerns. For example, in *Oregon v. Noem*, this District recently found that state and municipal had demonstratable protectable interests, obligations, and objectives "which may range from public policy to economic considerations" that were not identical to environmental groups "focused interests," but whose interests were also found to be protectable. *Oregon*, 2026 WL 1078199, at *2–3. As another example, in *Lighthiser v. Trump*, the District of Montana found that intervenor-states demonstrated protectable interests when "their States' energy policies, businesses, and employment may, as a practical matter, be impaired." *Lighthiser v. Trump*, No. Civ. 25-54 (BU)(DLC), 2025 WL 2336435, at *4–5 (D. Mont. Aug. 13, 2025); s*ee also W. Energy Alliance v. Zinke*, 877 F.3d 1157, 1165 (10th Cir. 2017) ("With respect to

MOTION TO INTERVENE

Rule 24(a)(2), we have declared it indisputable that a prospective intervenor's environmental concern is a legally protectable interest.").

Likewise, the States have protectable interests that will be affected by the outcome of this case. As discussed in more detail above, an adverse outcome in this case—*i.e.*, the indefinite continuation of DoD's Wind Freeze—will affect, *inter alia*, the States' abilities to comply with and enforce their own laws, protect their own financial interests, and otherwise protect their own economic and physical well-being. This Court therefore should find the States have demonstrated a protectable interest here

### 3.  Energy Plaintiffs Cannot Adequately Represent the States' Interests.

While Energy Plaintiffs and the States seek common relief through the same APA claims, Energy Plaintiffs cannot adequately represent the States' unique interests here. An applicant for intervention must show that it "will not be adequately represented by existing parties," but "the burden of showing inadequacy of representation is minimal and satisfied if the applicant can demonstrate that representation of its interests *may be* inadequate." *W. Watersheds*, 22 F.4th at 840 (emphasis added) (citation omitted); *Kalbers*, 22 F.4th at 828 (same). "To evaluate adequacy of representation, courts consider three factors: (1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect." *W. Watersheds*, 22 F.4th at 840–41 (citation omitted).

Energy Plaintiffs and the States have the same objective of vacating and enjoining DoD's Wind Freeze, but their interests and arguments differ. *See W. Watersheds*, 22 F.4th at 840–41. For

MOTION TO INTERVENE

example, Energy Plaintiffs are protecting their business and economic interests from the harms caused by DoD's actions. *See e.g.*, ECF 1, 14, 36. The States, meanwhile, are protecting their sovereign interests in implementing their own laws and protecting public health and economic welfare. DoD has arbitrarily failed to consider these unique sovereign reliance interests. *See e.g.*, Ex. A at ¶¶ 95–132. Business interests and sovereign interests do not always align and can diverge in unanticipated ways. It is therefore necessary for States to preserve their independence and authority when protecting their interests. Upon intervening, the States will become parties to the suit and "permitted to litigate fully" to protect these independent interests. *Cahill v. Insider Inc.*, 131 F.4th 933, 937 (9th Cir. 2025) (citation omitted).

State governmental parties have obligations that Energy Plaintiffs do not share, including representing the public interest, and enforcing and complying with their own energy laws and policies. *Oregon*, 2026 WL 1078199, at *3 (recognizing differences between government interests and interests of environmental groups that sought to intervene); *W. Watersheds Project v. U.S. Dep't of Interior*, 2015 WL 5304113, at *3–4 (same). The Ninth Circuit has recognized that government interests and their "representation of the public interest may not be identical to individual parochial interests of a particular group just because both entities occupy the same posture in the litigation." *Citizens for Balanced Use*, 647 F.3d at 899 (citations omitted). *See Lighthiser*, 2025 WL 2336435, at *5 (interests of state intervenors are different from the federal government's interests). Thus, Energy Plaintiffs cannot represent the full range of the States' interests or make the same arguments the States would, warranting intervention.

In sum, the States' motion is timely, they have demonstrated significantly protectable interests that will be impeded by an unfavorable disposition, and Energy Plaintiffs cannot

MOTION TO INTERVENE

adequately represent the States' interests. Thus, the Court should grant the States' motion to intervene as of right. *See, e.g.*, *Kalbers*, 22 F.4th at 828 (district court erred in denying intervention as of right); *Oregon*, 2026 WL 1078199, at *3 (granting motion to intervene as of right); *Washington v. U.S. Dep't of Transp.*, 2025 WL 3023041, at *11 (W.D. Wash. Oct. 29, 2025) (same).

### B.  Alternatively, the States Should Be Permitted to Intervene.

If the Court does not find that the States can intervene as plaintiffs as of right, it should exercise its discretion to permit intervention. *See* Fed. R. Civ. P. 24(b). Generally, a court has discretion to permit anyone to intervene who has a claim or defense that shares a common question of law or fact with the main action. Fed. R. Civ. P. 24(b)(1)(B). An "applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Cooper v. Newsom,* 13 F.4th 857, 868 (9th Cir. 2021); *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998). The Court "must consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Cooper*, 13 F.4th at 868; *Donnelly*, 159 F.3d at 412. The "court may also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry v. Prop. 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted).

All these elements are met for the same reasons that the States should be allowed to intervene as of right. As set forth above, the States' proposed claims and Energy Plaintiffs' claims share common questions of law and fact. Like Energy Plaintiffs, the States seek to challenge DoD's

MOTION TO INTERVENE

Wind Freeze under the APA. Namely, both Energy Plaintiffs and the States claim that the DoD Defendants violated 5 U.S.C. § 706(1) and (2). ECF 36, ¶¶ 231–91; Ex. at ¶¶ 133–70. Their interests are aligned but separate representation is necessary to ensure that both commercial and sovereign interests are adequately represented. But ultimately, the States seek the same relief as Energy Plaintiffs (*see* Ex. A at pp. 57–58; ECF 36 at pp. 79–81 (respective requests for relief)).

The States' claims would not prejudice the interests of existing parties. Permitting intervention here would also promote judicial economy by obviating the need for the State to bring a similar suit against DoD. *See Venegas v. Skaggs*, 867 F.2d 527, 531 (9th Cir. 1989) (noting that "judicial economy is a relevant consideration in deciding a motion for permissive intervention"). Permitting intervention here "avoids overlapping litigation and ensures that the Court has before it the full range of legal arguments and stakeholder perspectives necessary to resolve the case fairly and efficiently." *Washington*, 2025 WL 3023041 at *12. And as discussed in more detail above, the States' motion is timely, and allowing the States to intervene at this early stage of the litigation will not delay the action or prejudice any party.

Finally, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Washington*, 2025 WL 3023041 at *11 (citing *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011)); *Levin Richmond Terminal Corp. v. City of Richmond*, 482 F. Supp.3d 944, 968 (N.D. Cal. 2020) (same, noting that when proposed intervenors do not bring new claims "the jurisdictional concern drops away").

Thus, even if the Court does not find that the States may intervene as of right, it should permit them to intervene. *See, e.g.*, *California v. Health & Hum. Servs.*, 330 F.R.D. 248, 254–55

MOTION TO INTERVENE

(N.D. Cal. 2019) (state permitted to intervene as plaintiff in APA case); *Washington*, 2025 WL 3023041, at \*13 (permitting intervention when intervenors "bring a unique perspective and expertise to this action that will not necessarily . . . duplicate Plaintiff[s'] role").

## IV.    CONCLUSION

For the foregoing reasons, the States should be allowed to intervene as of right, or alternatively, the Court should permit them to intervene as plaintiffs in this action.

Dated: July 16, 2026

Respectfully submitted,

**DAN RAYFIELD**
Attorney General of Oregon

By:  */s/ Coby Howell*
COBY HOWELL #253434
*Senior Assistant Attorney General*
PATRICK T. JOHNSON #260534
*Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
Tel (971) 673-1880
Fax (971) 673-5000
Coby.Howell@doj.oregon.gov
Patrick.t.johnson@doj.oregon.gov

*Counsel for the State of Oregon*

MOTION TO INTERVENE

**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Joanna Brinkman*
CARA HENDRICKSON
*Executive Deputy Attorney General*
JOANNA BRINKMAN
*Complex Litigation Counsel*
CAITLIN KELLY
MOLLY MAUCK
ALICE RIECHERS
*Assistant Attorneys General*
Office of the Illinois Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3000
Cara.Hendrickson@ilag.gov
Joanna.Brinkman@ilag.gov
Caitlin.Kelly@ilag.gov
Molly.Mauck@ilag.gov
Alice Riechers@ilag.gov

*Counsel for the State of Illinois*

**KRISTIN K. MAYES**
Attorney General of Arizona

By: */s/ Mary M. Curtin*
MARY M. CURTIN (SBN 031973)
*Senior Litigation Counsel*
ANDY McCOY (SBN 039783)
*Assistant Attorney General*
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, Arizona 85004
(602) 542-3333
Mary.Curtin@azag.gov
Andy.McCoy@azag.gov
ACL@azag.gov

*Counsel for the State of Arizona*

**LETITIA JAMES**
Attorney General of New York

By: */s/ Matthew Eisenson*
MONICA WAGNER
*Deputy Bureau Chief*
MATTHEW EISENSON
*Assistant Attorney General*
LIBBY DIMENSTEIN
*Special Assistant Attorney General*
Environmental Protection Bureau
28 Liberty Street
New York, NY 10005
(212) 416-6351
Monica.Wagner@ag.ny.gov

*Counsel for the State of New York*

**ROB BONTA**
Attorney General of California

VANESSA C. MORRISON
Supervising Deputy Attorney General

By: */s/ Rafael J. Hurtado*
RAFAEL J. HURTADO
BRIAN CALAVAN
*Deputy Attorneys General*
600 West Broadway, Suite 1800
San Diego, CA 92101
Tel: (619) 321-5780
Fax: (916) 732-7920
Rafael.Hurtado@doj.ca.gov

*Counsel for the State of California*

MOTION TO INTERVENE

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ Carrie Noteboom*
CARRIE NOTEBOOM (Colo. #52910)
*Assistant Deputy Attorney General*
JESSICA L. LOWREY (Colo. #45158)
*First Assistant Attorney General*
Ralph L. Carr Judicial Center
1300 Broadway, 10th Floor
Denver, CO 80203
(720) 508-6000
Carrie.Noteboom@coag.gov
Jessica.Lowrey@coag.gov

*Counsel for the State of Colorado*

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: /s/ *Vanessa L. Kassab*
IAN R. LISTON
*Director of Impact Litigation*
RALPH K. DURSTEIN III
VANESSA L. KASSAB
*Deputy Attorneys General*
ROBIN L. JACOBS
*Assistant Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Jill Lacedonia*
Jill Lacedonia
*Assistant Attorney General*
Office of the Connecticut Attorney General
165 Capitol Avenue
Hartford, CT 06106
Jill.Lacedonia@ct.gov
860-808-5250

*Counsel for the State of Connecticut*

**AARON M. FREY**
Attorney General of Maine

By: */s/ Caleb Elwell*
CALEB E. ELWELL
*Assistant Attorney General*
Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333
(207) 626-8545
Caleb.Elwell@Maine.gov

*Counsel for the State of Maine*

MOTION TO INTERVENE

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ Steven J. Goldstein*
Steven J. Goldstein
Assistant Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6414
sgoldstein@oag.maryland.gov

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Lucas Wollenzien*
Lucas Wollenzien
Michael Moody
Neil Giovanatti
*Assistant Attorneys General*
Michigan Department of Attorney General
P.O. Box 30755
Lansing, MI 48909
(517) 335-7627
WollenzienL@michigan.gov
Moodym2@michigan.gov
GiovanattiN@michigan.gov

*Counsel for the State of Michigan*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: /s/ *Turner Smith*
Turner Smith
*Deputy Chief & Assistant Attorney General*
Nathaniel Haviland-Markowitz
*Assistant Attorney General*
Jon Whitney
*Special Assistant Attorney General*
Energy and Environment Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA 02108
(617) 727-2200
Turner.Smith@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**KEITH ELLISON**
Attorney General of Minnesota

By: */s/ Cat Rios-Keating*
Cat Rios-Keating
*Special Assistant Attorney General*
Office of the Minnesota Attorney General
445 Minnesota St., Suite 600
St. Paul, MN 55101
651-300-7302
Catherine.Rios-Keating@ag.state.mn.us

*Counsel for the State of Minnesota*

MOTION TO INTERVENE

**AARON D. FORD**
Attorney General of Nevada

By: */s/ K. Brunetti Ireland*
K. Brunetti Ireland
*Chief of Special Litigation*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
kireland@ag.nv.gov

*Counsel for the State of Nevada*

**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Rachel Manning*
JESSICA PALMER
*Assistant Attorney General*
RACHEL MANNING
*Deputy Attorney General*
New Jersey Division of Law
25 Market Street, P.O.
Box 093
Trenton, NJ 08625-0093
609-376-2740
Jessica.Palmer@law.njoag.gov
Rachel.Manning@law.njoag.gov

*Counsel for the State of New Jersey*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Thomas Silva*
Thomas Silva
*Honors Attorney*
408 Galisteo Street
Santa Fe, New Mexico 87501
Tel. (505) 681-4894
TSilva@nmdoj.gov

*Counsel for the State of New Mexico*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: /s/ Rachel Rebello
RACHEL REBELLO
*Special Assistant Attorney General*
Rhode Island Office of the Attorney General
150 South Main Street
Providence, RI 02903
Tel: (401) 274-4400 ext. 2063
rrebello@riag.ri.gov

*Counsel for the State of Rhode Island*

**NICHOLAS W. BROWN**
Attorney General of Washington

By: */s/ Yuriy Korol*
YURIY KOROL
*Assistant Attorney General*
Washington Attorney General's Office
Environmental Protection Division
800 5th Ave Ste. 2000 TB-14
Seattle, WA 98104-3188
(206) 717-0096
Yuriy.Korol@atg.wa.gov

*Counsel for the State of Washington*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

*/s/ Lauren Cullum*
LAUREN CULLUM
*Special Assistant Attorney General*
Office of the Attorney General
for the District of Columbia
400 6th Street, N.W., 10th Floor
Washington, D.C. 20001
lauren.cullum@dc.gov

*Counsel for the District of Columbia*

MOTION TO INTERVENE