# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF OREGON
# PORTLAND DIVISION

RENEWABLE NORTHWEST, *et al.*,    §
                                  §
      Plaintiffs,                §
                                  §
v.                                §    Civil Action No. 3:26-CV-01092
                                  §
PETER B. HEGSETH, *et al.*,        §
                                  §
      Defendants.                §

## FEDERAL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Shawn D. Ren*
Shawn D. Ren, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
999 18th St., N Terrace, Suite 600
Denver, CO 80202
Tel: (202) 598-3141
Fax: (303) 844-1350
E-mail: shawn.ren2@usdoj.gov

*Attorney for Federal Defendants*

**TABLE OF CONTENTS**

I.     ARGUMENT ...................................................................................................................1

    A.     Plaintiffs' Section 706(1) Claim is an Impermissible Programmatic Challenge. ..........................................................................................................2

    B.     The Effort to Compel Action on Pending Applications Can Only Be Brought in the Circuit Court. ..................................................................................4

    C.     The Non-Developer Plaintiffs, Including All Plaintiffs Who Brought the Motion for Preliminary Injunction, Lack Standing to Compel Action on Specific Applications. ....................................................................................................7

    D.     Plaintiffs' Section 706(2) Claim Fails to Challenge Final Agency Action. .........9

        1.     Plaintiffs cannot obtain relief to compel unreasonably delayed action through Section 706(2). ...................................................................9

        2.     Plaintiffs' framing should be rejected. .......................................................11

        3.     The supposed "freeze" is not final agency action reviewable under the APA ..........................................................................................................12

II.     CONCLUSION ............................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*,
  600 F.2d 965 (D.C. Cir. 1979) ................................................................................................14

*Backcountry Against Dumps v. Fed. Aviation Admin.*,
  77 F.4th 1260 (9th Cir. 2023) ................................................................................................14

*Bennett v. Spear*,
  520 U.S. 154 (1997) ...............................................................................................................13

*Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*,
  461 U.S. 273 (1983) .................................................................................................................7

*Cal. Cmtys. Against Toxics v. U.S. Env't. Prot. Agency*,
  688 F.3d 989 (9th Cir. 2012) ..................................................................................................10

*California Save Our Streams Council, Inc. v. Yeutter*,
  887 F.2d 908 (9th Cir. 1989) ................................................................................................ 5, 7

*Diamond Alternative Energy, LLC v. EPA*,
  606 U.S. 100 (2025) ................................................................................................................11

*Fikre v. Fed. Bureau of Investigation*,
  35 F.4th 762 (9th Cir. 2022) .....................................................................................................6

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ..................................................................................................13

*Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*,
  764 F.2d 896 (D.C. Cir. 1985) ..................................................................................................6

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
  593 F.3d 923 (9th Cir. 2010) ....................................................................................................9

*Hyatt v. U.S. Patent & Trademark Office*,
  146 F. Supp. 3d 771 (E.D.Va. 2015) ........................................................................................8

*Ibrahim v. Department of Homeland Security*,
  538 F.3d 1250 (9th Cir. 2008) ............................................................................................... 5, 6

*Kidd v. Mayorkas*,
  734 F.Supp.3d 967 (C.D. Cal. 2024) ......................................................................................10

*Latif v. Holder*,
  686 F.3d 1122 (9th Cir. 2012) ..................................................................................................6

*Lujan v. Nat'l Wildlife Fed'n,*
  497 U.S. 871 (1990)................................................................................................ 2, 3, 4

*Montana Wildlife Fed'n v. Haaland,*
  127 F.4th 1 (9th Cir. 2025) ........................................................................................10

*Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs,*
  417 F.3d 1272 (D.C. Cir. 2005) ...................................................................................9

*Nat'l TPS All. v. Noem,*
  166 F.4th 739 (9th Cir. 2026) ....................................................................................10

*National Parks & Conservation Ass'n v. F.A.A.,*
  998 F.2d 1523 (10th Cir. 1993) ...................................................................................5

*New York v. Trump,*
  811 F.Supp.3d 215 (D. Mass. 2025) ..........................................................................12

*Norton v. S. Utah Wilderness All.,*
  542 U.S. 55 (2004).................................................................................................. 2, 4

*Ohio Forestry Ass'n, Inc. v. Sierra Club,*
  523 U.S. 726 (1998)....................................................................................................13

*PETA v. U.S. Fish & Wildlife Serv.,*
  130 F. Supp. 3d 999 (E.D.Va. 2015) ...........................................................................3

*S. Utah Wilderness All. v. Palma,*
  707 F.3d 1143 (10th Cir. 2013) .................................................................................13

*Sierra Club v. Peterson,*
  228 F.3d 559 (5th Cir. 2000)........................................................................................3

*State v. U.S. Dep't of Transp.,*
  792 F. Supp. 3d 1147 (W.D. Wash. 2025) ................................................................13

*Telecommunications Rsch. & Action Ctr. v. F.C.C.,*
  750 F.2d 70 (D.C. Cir. 1984) .......................................................................................5

*Texas v. United States,*
  40 F.4th 205 (5th Cir. 2022) ......................................................................................10

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021)......................................................................................................7

*U.S. Army Corps of Eng'rs v. Hawkes Co.,*
  578 U.S. 590 (2016)....................................................................................................13

*United States v. Texas,*
  599 U.S. 670(2023)....................................................................................................11

*Varniab v. Edlow*,
   No. 25-CV-10602-SVK, 2026 WL 485490 (N.D. Cal. Feb. 20, 2026) ...................................12

*Vaz v. Neal*,
   33 F.4th 1131 (9th Cir. 2022) ......................................................................................... 3, 4

*Vietnam Veterans of Am. v. Cent. Intel. Agency*,
   811 F.3d 1068 (9th Cir. 2016) ...............................................................................................10

**Statutes**

49 U.S.C. § 46110(a)....................................................................................................................7

5 U.S.C. § 706(1)................................................................................................... 1, 3, 8, 9, 11, 12

5 U.S.C. § 706(2)................................................................................................... 1, 7, 9, 10, 11, 12

## I.    ARGUMENT

The Court should grant Federal Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction as Plaintiffs have failed to make the requisite showing of jurisdiction. Principally, Plaintiffs levy a broad programmatic challenge seeking to compel program-wide action. But programmatic relief is unavailable under Section 706(1) of the Administrative Procedure Act (APA) , which only permits claims to compel action on a plaintiff's specific pending application. Here, however, such claims would fall under the Federal Aviation Act's direct circuit review provision and therefore must be brought before a federal court of appeals. Plaintiffs cannot avoid this result by seeking relief under APA Section 706(2), pursuant to which the only available remedy is remand and (in some cases) vacatur of the challenged agency action—not the type of coercive, program-wide relief Plaintiffs seek. In any event, Plaintiffs fail to challenge final agency action under Section 706(2) .

Plaintiffs submit that Federal Defendants' jurisdictional arguments, "if accepted[,] would prevent *any court* from reaching the merits." Dkt. No. 91 at 9 (emphasis added). But that mischaracterizes Federal Defendants' position. Federal Defendants have identified both the "where" (the courts of appeals) and the "how" (a claim to compel discrete agency action, i.e., as to a specific application) of a potential challenge to compel the Department of War to act on any pending Clearinghouse review that an applicant believes to be unreasonably delayed. Judicial review is available—just not in the impermissibly programmatic fashion Plaintiffs seek here. This case should be dismissed for lack of jurisdiction.

1

### A.     PLAINTIFFS'    SECTION    706(1)    CLAIM    IS    AN    IMPERMISSIBLE PROGRAMMATIC CHALLENGE.

Federal Defendants agree that Section 706(1) is the proper vehicle for a claim asking a court to compel an agency to "take action" on a pending application that an applicant believes to be unreasonably delayed.  But that vehicle cannot, as Plaintiffs' Count II requests, carry every conceivable passenger.

In their motion for preliminary injunction, Plaintiffs make clear that the "Member Organization Plaintiffs seek programmatic relief," i.e., relief across the board on every pending wind application.  Dkt. No. 14 at 22.  Their Amended Complaint confirms as much.  *See* Dkt. No. 36 at 79–80 (seeking to compel Federal Defendants "to take action on all projects" in various phases, including without limitation to any projects specifically identified).  Plaintiffs' response brief does not hide that they "challenge" DoW's alleged "refusal to carry out the statutory review."  Dkt. No. 91 at 26.  And Plaintiffs double down again on their programmatic challenge, stating that "[t]he individual projects in the Complaint merely illustrate the effects." Dkt. No. 91 at 24.

But this type of claim runs afoul of seminal Supreme Court precedent requiring that the challenge must be one to compel a "discrete" agency action.  *See Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62 (2004) ("*SUWA*") (requiring that an agency action be "circumscribed" and "discrete"); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) (holding a plaintiff "must direct its attack against some particular 'agency action' that causes it harm").  Here, a "discrete" action means a DoW decision on a specific wind application.  The Supreme Court instructs that the APA requires such a "case-by-case approach."  *Lujan*, 497 U.S. at 894.  The inverse of "discrete" is programmatic, and here Plaintiffs' challenge is a programmatic one, covering

"[o]ver 100 projects across 25 states" which are "at every stage of the Clearinghouse process." Dkt. No. 14 at 11, 18. Plaintiffs request that relief regardless of any link between Plaintiffs and specific applications, and regardless of the case-specific factors that the Court would normally consider in determining whether an agency had unreasonably delayed action. *See Vaz v. Neal*, 33 F.4th 1131, 1137 (9th Cir. 2022) (listing the *TRAC* factors). As explained in Federal Defendants' motion, Plaintiffs cannot bundle many discrete actions into one programmatic challenge. *See PETA v. U.S. Fish & Wildlife Serv.*, 130 F. Supp. 3d 999, 1001 (E.D.Va. 2015) ("Plaintiff may not 'challenge an entire program by simply identifying specific allegedly-improper final agency actions within that program.'" (quoting *Sierra Club v. Peterson*, 228 F.3d 559, 567 (5th Cir. 2000)). In neither law nor intuition is compelling action as to every pending wind application—indeed, without any particularized analysis as to any project—a "case-by-case approach." *Lujan*, 497 U.S. at 894.

Plaintiffs do not dispute any of these legal principles. Instead, Plaintiffs counter with a singular argument that conflates the entire nature of their claim, offering a Section 706(2) theory for a Section 706(1) claim. They argue that they challenge a discrete action: an alleged "policy" against review. *See* Dkt. No. 91 at 21–22. But that argument is only relevant to the "final agency action" analysis under Plaintiffs' Section 706(2) claim and is addressed below. The purpose of a Section 706(1) claim, by contrast, is to compel a discrete action that has allegedly been delayed or withheld, i.e., has not happened yet—not to challenge a purported action that has already occurred. *See* 5 U.S.C. § 706(1). The relevant question under the Section 706(1) claim that Plaintiffs assert, then, is "What agency action do Plaintiffs seek to compel?" Here, what Plaintiffs seek to compel has nothing to do with any policy; by their

3

own terms, they seek to compel DoW to act on all pending wind applications on Plaintiffs' chosen timelines—a quintessential programmatic challenge. Indeed, Plaintiffs do not even attempt to grapple with the point that DoW's review of each pending application is inherently fact-specific and, in review on the merits, would require an individualized administrative record and judicial assessment of the governing unreasonable delay factors. *See Vaz*, 33 F.4th at 1137. In sum, Plaintiffs do not even attempt to dispute, nor could they credibly, that the actions they are seeking to compel under Section 706(1) are not "discrete" and "case-by-case" as required by the APA. *See, e.g.*, *Lujan*, 497 U.S. at 894.

Plaintiffs incorrectly aver that Federal Defendants take the position that any and all delays are "insulate[d] . . . from judicial review." Dkt. No. 91 at 24; *see id.* at 10 ("[T]he APA does not permit agencies to evade judicial review."). Here, there is a process—just not one to Plaintiffs' liking—for judicial review of the alleged delay in DoW review. Those claims may be properly brought under Section 706(1) by individual developers on their own facts, seeking to compel "discrete" action on a particular application.[1] But as pled, Plaintiffs' claims do not satisfy the requirements for APA jurisdiction.

### B. THE EFFORT TO COMPEL ACTION ON PENDING APPLICATIONS CAN ONLY BE BROUGHT IN THE CIRCUIT COURT.

Federal Defendants' motion explained the applicability of the Federal Aviation Act's direct circuit court review provisions. Dkt. No. 90 at 21–24. Plaintiffs make a number of

---

[1] While the Amended Complaint now lists some specific applications belonging to some of the Plaintiffs, that does not mean all pending applications can be considered in a single class-action-esque lawsuit—especially when Plaintiffs admit those applications are "at every stage of the Clearinghouse process" and each project inherently differs in scope, design, timeframe, geographic region, etc. Dkt. No. 14 at 18. After all, Section 706(1) authorizes a suit to compel "a discrete *action*," singular. *SUWA*, 542 U.S. at 63 (emphasis altered); *see Lujan*, 497 U.S. at 894 (the APA requires such a "case-by-case approach").

4

arguments to try to remove their request for mandamus under Section 706(1) from the umbrella of Congress's chosen judicial framework.  None has merit.

First, Plaintiffs contend that "Section 46110 is limited to circumstances in which the FAA or an enumerated agency has 'put forth' a final order."  Dkt. No. 91 at 11.  But as previously highlighted, *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"), directly refutes this argument.  There was no final order at issue in *TRAC*, but rather a claim of unreasonable delay—just as is the case here.  *See id.* at 75.  Again, exclusive jurisdiction necessarily includes "resolv[ing] claims of unreasonable delay[.]"  *Id.* at 76.

Plaintiffs then argue that two cases Federal Defendants rely on *California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989), and *National Parks & Conservation Ass'n v. F.A.A.*, 998 F.2d 1523 (10th Cir. 1993), are inapposite.  *See* Dkt. No. 91 at 13.  But Plaintiffs' only point appears to be that the cases involved different facts.  *See id.*  Both cases unmistakably involved a challenge to the recommendation or determination offered by one agency as a part of the overarching review process of another agency, only the latter of which was called out in the governing statute's provision for direct circuit court review.  That is precisely the case here.  In *Yeutter*, the Forest Service's recommendation to FERC as part of the FERC licensing process was unreviewable in district court.  And in *National Parks*, BLM's determinations to FAA were required as part of the FAA's review process. So too here with DoW's recommendations to FAA as part of the FAA review process.

Conversely, Plaintiffs principally rely on *Ibrahim v. Department of Homeland Security.*, 538 F.3d 1250 (9th Cir. 2008), wherein a plaintiff challenged her placement on a No-Fly List by the FBI, which led to TSA refusing to let her fly.  But the FBI's No-Fly List determination

was a standalone determination; while it may have played into TSA's refusal to let the plaintiff fly, it was not part of some overarching TSA process. *See id.* at 1255. Here, by contrast, DoW's review exists wholly within, and only because of, FAA's process for making hazard determinations. Plaintiffs' remaining caselaw suffers from the same shortcomings. *See Latif v. Holder*, 686 F.3d 1122, 1125 (9th Cir. 2012) (one agency "develops and maintains" a list, while the other agency "implements" the list); *Fikre v. Fed. Bureau of Investigation*, 35 F.4th 762, 775 (9th Cir. 2022) (same no-fly challenge as *Ibrahim*). These cases, which involve two distinct determinations, are so disanalogous to this case and to *Yeutter* that the Ninth Circuit did not even find occasion to distinguish them from *Yeutter*, and indeed made no mention of *Yeutter*, which is controlling law. Unlike Plaintiffs' proffered Ninth Circuit cases, this case involves two agencies operating within a singular review process where one agency's role (DoW's) is entirely subsumed in, and exists only because of, the overall process belonging to the other agency (FAA)—precisely the case in *Yeutter* and *National Parks*.

To the extent the Court finds this issue ambiguous, Federal Defendants would point to the strong presumption favoring appellate jurisdiction in the first instance, a rule Plaintiffs do not dispute. *See, e.g.*, *Gen. Elec. Uranium Mgmt. Corp. v. U.S. Dep't of Energy*, 764 F.2d 896, 903 (D.C. Cir. 1985) (explaining that this "policy favoring exclusive jurisdiction in the court of appeals" promotes judicial economy by "avoid[ing] duplicative review and the attendant delay and expenses involved"). But more principally, the dispositive inquiry is this: if Plaintiffs' alleged unreasonable delay in the processing of pending wind applications could have been pled in a way that was jurisdictionally proper in the courts of appeals, then any attempt to recast that same challenge in district court would necessarily be inappropriate "artful

6

pleading," as exclusive jurisdiction is just that: exclusive. *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 285 (1983) (citation omitted); *see Yeutter*, 887 F.2d at 912 ("[W]e do not believe that the jurisdictional remedy prescribed by Congress hangs on the ingenuity of the complaint."). Here, the question is whether Congress directed that the courts of appeals would have jurisdiction to compel action on a process when said process is entirely subsumed within an ultimate FAA determination which unquestionably falls under the exclusive jurisdiction provision. *See* 49 U.S.C. § 46110(a). All the precedent points to the answer being yes. And as result, district court jurisdiction is precluded.

### C. THE NON-DEVELOPER PLAINTIFFS, INCLUDING ALL PLAINTIFFS WHO BROUGHT THE MOTION FOR PRELIMINARY INJUNCTION, LACK STANDING TO COMPEL ACTION ON SPECIFIC APPLICATIONS.

On standing, Federal Defendants' motion explained that the Non-Developer Plaintiffs lack associational standing to challenge any alleged delay in processing specific applications because the Non-Developer Plaintiffs are not the applicants. Dkt. No. 90 at 32. In response, Plaintiffs urge that if the Court holds the Section 706(2) claim is proper, the Non-Developer Plaintiffs would have associational standing. *See* Dkt. No. 91 at 25. Indeed, all their arguments on associational standing are tethered to their Section 706(2) "policy" challenge. *See id.* at 25–26. As an initial matter, the Section 706(2) claim is improper for the reasons set forth below. But the Section 706(2) claim is beside the point. The Non-Developer Plaintiffs' standing for the Section 706(2) claim says nothing of their standing for the Section 706(1) claim. A plaintiff must have standing for each claim and every form of relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

As to the Section 706(1) claim, the Non-Developer Plaintiffs fail the elements of associational standing for the reasons already set forth in our opening brief, including because a jurisdictionally proper action under Section 706(1) requires a fact-specific and individualized assessment into the review a particular pending application. Stated differently, any duty owed to act upon the pending applications is a duty owed *to the applicant*, not organizational trade associations with an interest in wind energy development. *See Hyatt v. U.S. Patent & Trademark Office*, 146 F. Supp. 3d 771, 782 (E.D.Va. 2015) ("Under § 706(1), a court is empowered to act only to compel the specific action *to which the petitioner for relief has a right*." (emphasis added)). Plaintiffs do not dispute that if Section 706(1) claims can proceed only on the basis of challenges to specific applications alleged to be unreasonable delayed (as the law is clear they must), participation of the individual developer for each application would be required. Thus, Non-Developer Plaintiffs—the ones who brought the preliminary injunction motion—do not have standing to raise a Section 706(1) challenge. Plaintiffs' efforts to promote the organizational (rather than associational) standing of GECA—the sole Non-Developer Plaintiff purportedly with organizational standing—is also beside the point. *See* Dkt. No. 91 at 27. The Amended Complaint does not allege that GECA is a project developer or has pending applications before the Clearinghouse. And in any event, Plaintiff have not shown that the price of RECs has increased nor explained how GECA's resources have been diverted.[2]

---

[2] Plaintiffs have put forth GECA as the sole Non-Developer Plaintiff that purportedly has standing in their own right; surely a greater showing is required for that singular Non-Developer Plaintiff.

Therefore, should the Court conclude that a claim of unreasonable delay in DoW's Clearinghouse process related to an application for an FAA hazard determination can proceed in district court rather the court of appeals, Count II would need to be limited to the specific applications submitted by Developer Plaintiffs and identified in the Amended Complaint.

### D.    PLAINTIFFS' SECTION 706(2) CLAIM FAILS TO CHALLENGE FINAL AGENCY ACTION.

Perhaps recognizing the limits on their claim under Section 706(1), Plaintiffs focus their response brief on their Section 706(2) claim.  But the focus does not save Plaintiffs' programmatic challenge.  Section 706(1) and Section 706(2) allow for fundamentally different claims.  *See Nat'l Ass'n of Home Builders v. U.S. Army Corps of Eng'rs*, 417 F.3d 1272, 1280 (D.C. Cir. 2005) (observing the "oppose action/compel action dichotomy"); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 593 F.3d 923, 933 (9th Cir. 2010) (explaining that a claim under one cannot "go forward under the guise of" the other). Plaintiffs argue that they "can bring claims under both [provisions]." Dkt. No. 91 at 20.  But that is only true as far as it goes.  Plaintiffs cannot avoid the limits on relief available under Section 706(1) by pleading a Section 706(2) claim. And in any event, their Section 706(2) claim fails to challenge final agency action.

#### 1.    Plaintiffs cannot obtain relief to compel unreasonably delayed action through Section 706(2).

As Plaintiffs have not disputed, the core remedy they specifically and repeatedly seek is to compel DoW to *take action* on pending wind applications.  *See generally* Am. Compl., Dkt. No. 36.  Indeed, the vast majority of the Amended Complaint's request for relief is focused on compelling DoW to act.  *See* Am. Compl. Request for Relief ¶¶ C–N.  It is well-taken that compelling action is the remedy for a Section 706(1) claim.  5 U.S.C. § 706(1); *see, e.g., Hells*

*Canyon*, 593 F.3d at 932 (9th Cir. 2010) ("Section 706(1) of the APA grants federal courts the power to compel agency action unlawfully withheld or unreasonably delayed."); *Vietnam Veterans of Am. v. Cent. Intel. Agency*, 811 F.3d 1068, 1078 (9th Cir. 2016) (recognizing that parties seeking to compel agency action proceed under Section 706(1)). As explained above, Plaintiffs' Section 706(1) claim, as pled, is an impermissible programmatic challenge.

The remedy for a Section 706(2) claim, on the other hand, is not to compel agency action. *See* 5 U.S.C. § 706(2) ("The reviewing court shall . . . (2) hold unlawful and set aside agency action, findings, and conclusions found to be - (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . ."). Instead, "the default remedy" for a Section 706(2) claim is remand and, if warranted by the circumstances, vacatur of the challenged agency action. *See, e.g.*, *Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 50 (9th Cir. 2025); *Cal. Cmtys. Against Toxics v. U.S. Env't. Prot. Agency*, 688 F.3d 989, 992 (9th Cir. 2012). Plaintiffs acknowledge this in the Amended Complaint. *See* Am. Compl. ¶¶ 232–33.

Thus, Plaintiffs challenge to the supposed "freeze"—and any judgment in their favor on that claim—does not present a means to compel agency action, programmatically or otherwise, as relief under Section 706(2) "does not compel further agency decisionmaking." *Kidd v. Mayorkas*, 734 F.Supp.3d 967, 987 (C.D. Cal. 2024) (citation modified); *see Nat'l TPS All. v. Noem*, 166 F.4th 739, 760 (9th Cir. 2026) (explaining that "vacatur neither compels nor restrains further agency decision-making") (quoting *Texas v. United States*, 40 F.4th 205, 220 (5th Cir. 2022)). Yet the vast majority of Plaintiffs' Amended Complaint seeks precisely that: an order that compels DoW "to take action" and otherwise affirmatively perform duties allegedly delayed or withheld. Am. Compl. at 79–81; *see Nat'l TPS All.*, 166 F.4th at 760.

Indeed, even Count I (the Section 706(2) claim) seeks judicial intervention regarding the timeliness and pace of decision-making on pending applications. *See* Am. Compl. ¶ 276. And Count I is based, in part, on the alleged delay in agency decision-making. *See id.* ¶ 265.

Stated differently, an order setting aside a "policy" of "not acting" does not itself require action; this is precisely why Section 706(2) is ill-fitting here as a square peg in a round hole. Plaintiffs cannot achieve their desired programmatic relief of compelling action on all applications before DoW through their Section 706(2) claim.[3] The disconnect between the Section 706(2) claim and the relief sought highlights that this case is a Section 706(1) case.

### 2. Plaintiffs' framing should be rejected.

Plaintiffs attempt to stretch "inaction" into both "action" and "inaction" by bifurcating the alleged failure to act. They frame the delay in processing as not only a delay, but also a "policy" of delay—thereby pointing to this "policy" as the final agency action under Section 706(2). But this reasoning, taken to its logical conclusion, would mean that any Section 706(1) challenge could be spun as a Section 706(2) case so long as the plaintiff artfully pled that they challenged not just a "delay" but also the "policy" of delay. The APA does not permit such gamesmanship. Plaintiffs represent that ascertaining the policy at issue "is immaterial." *Id.* This stance is remarkable; if it is "immaterial" to identify a concrete policy, then every

---

[3] To the extent Plaintiffs have premised their Article III standing for Count I (Section 706(2)) on the Court's ability to redress any harm through compelling agency action, that premise fails as a matter of law and Plaintiffs lack standing for Count I. *See, e.g.*, *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100, 111 (2025) (holding that "redressability requires the plaintiff to demonstrate that the injury would likely be redressed by judicial relief" (internal quotation marks omitted)); *United States v. Texas*, 599 U.S. 670, 691(2023) (Gorsuch, J., concurring) (explaining that vacatur "does [not] compel federal officials to change how they exercise their [] discretion"). Here, an order setting aside any alleged "freeze" does not itself provide Plaintiffs with their requested relief on their pending applications. If the statutorily-prescribed Section 706(2) relief were the means to redress Plaintiffs' grievance, Plaintiffs' request for relief would not then include three additional pages of requests asking the Court to order Federal Defendants to "take action." *See* Dkt. No. 36 at 78–81.

11

conceivable allegation of agency inaction could simply be recast as a "policy" of not acting.[4] That conclusion is unsupported by the text of the APA and Plaintiffs' proffered caselaw. The nature of this case is at core one of delay, seeking to compel agency action; as such, Section 706(1) governs—a square peg in a square hole.

In relevant part, Plaintiffs analogize this case to two others: *New York v. Trump*, 811 F.Supp.3d 215 (D. Mass. 2025) and *Varniab v. Edlow*, No. 25-CV-10602-SVK, 2026 WL 485490 (N.D. Cal. Feb. 20, 2026). *See* Dkt. No. 91 at 15–16. But in neither of those cases did the court issue any mandamus relief compelling any action—rightfully so, as such relief would require prevailing under Section 706(1), which those courts did not find. In *New York*, the district court declared the supposed agency action to be unlawful and ordered it vacated, providing no other relief. *See* 811 F. Supp. 3d at 245. Similarly, the district court in *Varniab*, at the preliminary injunction stage, temporarily enjoined the application of the supposed agency action. *See* 2026 WL 485490 at *24. Plaintiffs cannot frame this case as a Section 706(2) case yet use that cause of action to obtain relief exclusively provided under Section 706(1).

### 3.     The supposed "freeze" is not final agency action reviewable under the APA.

Setting aside the remedial problems with Plaintiffs' Section 706(2) claim, the claim must be dismissed because it fails to identify a final agency action. An agency action is final only if it (1) "mark[s] the consummation of the agency's decisionmaking process," and (2) is an action "by which rights or obligations have been determined, or from which legal consequences will

---

[4] In review of the merits of a Section 706(1) claim, the administrative record would explain the delay. It cannot be that whatever that explanation is, it becomes the agency "policy" and actionable under Section 706(2).

flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (internal quotation marks omitted).  If this inquiry feels awkward here, it is because the test presupposes there is agency action at all.  *See id.*  Again, this case at core seeks to *compel* agency action.

As set forth in Federal Defendants' motion, on the first prong, an "interim decision of the agency as part of the process of deciding whether to grant" an application is not the consummation of agency decision-making.  *See, e.g., S. Utah Wilderness All. v. Palma*, 707 F.3d 1143, 1159 (10th Cir. 2013).  On the second prong, Plaintiffs does not refute the rule that agency action which does not command, restrict, or otherwise oblige the recipient, does not impact rights or obligations.  *See* Dkt. No. 90 at 30 (citing cases).  Of course, any DoW delay in processing applications does none of those things; after all, an alleged *failure* to act by its very nature necessarily could not contain a "command [for] anyone to do anything or to refrain from doing anything."  *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 22 (D.C. Cir. 2006) (quoting *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998)).  As for "direct and appreciable legal consequences," *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (citation omitted), Plaintiffs again cite only practical consequences, not legal ones.  And while Plaintiffs argue that courts should evaluate both the practical and legal effects of agency action, citing a district court case in support, *see* Dkt. No. 91 at 19 (citing *State v. U.S. Dep't of Transp.*, 792 F. Supp. 3d 1147, 1176 (W.D. Wash. 2025)), circuit courts have been steadfast in the rejection of practical effects absent legal effects.  *See* Dkt. No. 90 at 30–31 (citing cases from the D.C., Third, and Sixth Circuits).

Again, the alleged delay in processing applications *couldn't* carry any legal consequences on its own, as even the ultimate FAA determination does not do so.  *See Backcountry Against*

13

*Dumps v. Fed. Aviation Admin.*, 77 F.4th 1260, 1265 (9th Cir. 2023) (explaining that the entire FAA hazard/no hazard determination carries no legal effect); *Aircraft Owners & Pilots Ass'n v. Fed. Aviation Admin.*, 600 F.2d 965, 966–67 (D.C. Cir. 1979) (same).  DoW's recommendation, and even FAA's ultimate determination, does not "approve" or "reject" an applicant's project. Nor does any part of the process otherwise hold any legal bearing on a project, which faces no legal barriers to proceed as a result of DoW's or FAA's process.  Rather, any effects in a delay of processing informs, at most, the independent choices of third parties. As such, Plaintiffs' Section 706(2) claim (Count I) fails to challenge final agency action and should be dismissed for lack of jurisdiction.

## II.    CONCLUSION

For all these reasons and those set forth in Federal Defendants' motion to dismiss (Dkt. No. 90), Plaintiffs cannot artfully plead their way around the jurisdictional requirements of the APA.  This action should be dismissed for lack of jurisdiction.

Dated: July 20, 2026                           Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Shawn D. Ren*
Shawn D. Ren, Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division
999 18th St., N Terrace, Suite 600
Denver, CO 80202
Tel: (202) 598-3141
Fax: (303) 844-1350
E-mail: shawn.ren2@usdoj.gov

14

15

*Attorney for Federal Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT</u>

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 3,924 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

*/s/ Shawn D. Ren*
Shawn D. Ren
Trial Attorney

16