**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

RENEWABLE NORTHWEST; ADVANCED POWER ALLIANCE; ALLIANCE FOR CLEAN ENERGY NEW YORK, INC.; CLEAN GRID ALLIANCE; GREEN ENERGY CONSUMERS ALLIANCE; INTERWEST ENERGY ALLIANCE; MAINE RENEWABLE ENERGY ASSOCIATION; RENEW NORTHEAST; SOUTHERN RENEWABLE ENERGY ASSOCIATION; LAS CRESTAS WIND ENERGY, LLC; NOVA CLEAN ENERGY, LLC; APEX CLEAN ENERGY HOLDINGS, LLC; HORSE THIEF WIND PROJECT, LLC; NORTH HILLS WIND PROJECT, LLC; PRAIRIE PHOENIX WIND PROJECT, LLC; CRIDER VALLEY WIND ENERGY LLC; CANISTEO WIND ENERGY LLC; DEUEL HARVEST WIND ENERGY SOUTH LLC; HAMMERHEAD WIND ENERGY LLC; LAZBUDDIE WIND ENERGY II LLC; THRESHER WIND LLC; TOWNER WIND ENERGY II LLC; TRITON WIND ENERGY LLC; WHITETAIL WIND, LLC; RAMBLE WIND ENERGY LLC; MEADOW LAKE II WINDFARM, LLC; BLACKSTONE WIND FARM II, LLC; BIG RIVER WIND, LLC; and BLUE CANYON WINDPOWER V LLC,

Plaintiffs,

Case No. 3:26-cv-01092-IM

**ORDER GRANTING MOTION TO INTERVENE**

STATES OF OREGON, ILLINOIS, NEW YORK, ARIZONA, CALIFORNIA, COLORADO, CONNECTICUT, DELAWARE, MAINE, MARYLAND, COMMONWEALTH OF MASSACHUSETTS, MICHIGAN, MINNESOTA, NEVADA, NEW JERSEY, NEW MEXICO, RHODE ISLAND, WASHINGTON, and the DISTRICT OF COLUMBIA,

Intervenor-Plaintiffs,

v.

PETER B. HEGSETH, in his official capacity as Secretary of Defense; DALE R. MARKS, in his official capacity as Assistant Secretary of Defense for Energy, Installations, and Environment; U.S. DEPARTMENT OF DEFENSE; DEPARTMENT OF THE AIR FORCE; DEPARTMENT OF THE ARMY; DEPARTMENT OF THE NAVY; and DEPARTMENT OF DEFENSE MILITARY AVIATION AND INSTALLATION ASSURANCE SITING CLEARINGHOUSE,

Defendants.

Before this Court is a Motion to Intervene brought by 18 states[1] and the District of Columbia (collectively, the "States"), seeking to intervene as plaintiffs in this lawsuit. Motion to Intervene ("Motion"), ECF 92 at 9. The background of this case is chronicled in this Court's Opinion and Order Denying Defendants' Motion to Dismiss and Granting Plaintiffs' Motion for

[1] The 18 states are Oregon, Illinois, New York, Arizona, California, Colorado, Connecticut, Delaware, Maine, Maryland, Commonwealth of Massachusetts, Michigan, Minnesota, Nevada, New Jersey, New Mexico, Rhode Island, and Washington. Motion to Intervene, ECF 92 at 1.

Preliminary Injunction ("MTD & PI Opinion"), ECF 125 at 2–11. While briefing on the Motion to Dismiss, ECF 90, and the Motion for Preliminary Injunction, ECF 14, was ongoing, the States filed a Motion to Intervene, ECF 92, requesting that this Court permit (1) intervention as of right under Federal Rule of Civil Procedure 24(a), or (2) alternatively, permissive intervention under Federal Rule of Civil Procedure 24(b). Motion, ECF 92 at 17–26. The existing Plaintiffs do not oppose the States' intervention, *id.* at 8, but Defendants oppose intervention and filed a response, Response in Opposition ("Response"), ECF 115. The States filed a reply brief. Reply in Support ("Reply"), ECF 128. For the below reasons, this Court GRANTS the States' Motion to Intervene.

**DISCUSSION**

**A. Intervention as of Right**

The States have demonstrated that they meet all the requirements to intervene as of right under Federal Rule of Civil Procedure 24(a)(2). Under Rule 24(a)(2), "a nonparty is entitled to intervention as of right when it '(i) timely moves to intervene; (ii) has a significantly protectable interest related to the subject of the action; (iii) may have that interest impaired by the disposition of the action; and (iv) will not be adequately represented by existing parties.'" *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020)). The nonparty movant "has the burden of showing that these four elements are met." *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011). But "in evaluating whether Rule 24(a)(2)'s requirements are met," courts "construe the Rule broadly in favor of proposed intervenors." *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (citation modified).

Here, Defendants only contest whether the States have satisfied the second and third requirements to intervene as of right. *See* Response, ECF 115 at 3–6. But because the States bear the burden on all four requirements, this Court addresses each of the four requirements in turn.

First, the States' Motion is timely. "Timeliness hinges on three primary factors: (1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (citation modified). As the States point out, they filed their Motion within approximately six weeks of Plaintiffs' filing of this lawsuit and three weeks of Plaintiffs' filing of their First Amended Complaint, ECF 36. Motion, ECF 92 at 19. Thus, as to (1) and (3), the States did not delay in moving to intervene at this very early stage of the litigation. Furthermore, while moving to intervene, the States did not seek to change any deadlines with respect to the then-pending Motion to Dismiss, ECF 90, and Motion for Preliminary Injunction, ECF 14. Motion, ECF 92 at 19. The States also did not seek to participate in litigation over the then-pending motions and disclaimed seeking separate preliminary relief. *Id.* Therefore, as to (2), the States' intervention does not prejudice Defendants, and the Motion to Intervene is timely.

Second, the States have a significant protectable interest based on their "sovereign interests in implementing their own laws," specifically their "statutory goals and mandates to purchase electricity from renewable energy sources and to reduce greenhouse gas emissions." *Id.* at 14. "[A] proposed intervenor 'has a significant protectable interest in an action if (1) it asserts an interest that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims.'" *Kalbers*, 22 F.4th at 827 (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998)). "Whether an applicant for intervention as of right demonstrates sufficient interest in an action is a practical threshold inquiry, and no specific legal

or equitable interest need be established." *Citizens for Balanced Use*, 647 F.3d at 897 (citation modified) (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996)).

The States' interest in fulfilling their statutory renewable energy mandates satisfies prongs (1) and (2) and constitutes a significant protectable interest. The States have enacted various "renewable energy mandates that require electricity suppliers to procure specified percentages of . . . electricity generated by renewable resources." Motion, ECF 92 at 14 & n.3. The States' interest in complying with these renewable energy mandates is certainly "an interest that is protected under some law," namely state law. *Kalbers*, 22 F.4th at 827 (citation modified). Moreover, "there is a relationship between [this] legally protected interest and the plaintiff's claims." *Id.* (citation modified). Continuation of the Department of Defense's ("DoD") review freeze of wind energy projects "will make it harder for the States to implement these laws" by suspending the construction of new wind turbine projects. Motion, ECF 92 at 14. Conversely, enjoining the freeze and resuming DoD's review of wind energy projects would potentially lead to new wind turbine construction, increasing the supply of renewable energy available in the States, and thereby making it easier for the States to meet their renewable energy goals.

Defendants argue that the States' asserted interest does not "rise to the level of 'legally protectable'" without grappling with the two-prong test that governs this requirement. Response, ECF 115 at 3–6. Rather, Defendants contend that the States' interest in complying with statutory renewable energy mandates is not sufficiently "direct" and "non-contingent" to qualify as a legally protectable interest to intervene as of right. *Id.* at 4 (quoting *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002)). As an initial matter, Defendants' argument fails to rebut that the States "(1) assert[] an interest that is protected under some law, and (2) there is a relationship

between its legally protected interest and the plaintiff's claims." *Kalbers*, 22 F.4th at 827 (citation modified). But even on its own terms, Defendants' reliance on *Lynch* is misplaced.

In *Lynch*, the plaintiff retail electric public utility sued the California Public Utilities Commission, alleging that federal law preempted the Commission's rejection of the plaintiff's proposal to increase its retail electricity rates. 307 F.3d at 800–01. Certain "wholesale generators of electricity" attempted to intervene as of right, arguing that because the plaintiff owed them money "arising out of their wholesale electricity transactions," they had a significant protectable interest in the litigation. *Id.* 802–03. The Ninth Circuit found that the proposed intervenors had no such right because they were not "in privity" with the plaintiff, and thus, they were "claiming a right to intervene based on a contingent, unsecured claim against a third-party debtor." *Id.* at 803. In other words, the plaintiff owed money to a different nonparty entity, which owed money to the proposed intervenors, and "[t]he pending litigation would not resolve" the proposed intervenors' claims against that entity. *Id.* It was in this context that the Ninth Circuit held that the wholesale generators of electricity did not demonstrate a "direct, non-contingent, substantial and legally protectable interest required for intervention as of right." *Id.* (citation modified).

The situation is far different here. The States do not point to an attenuated financial interest in the outcome of the litigation as in *Lynch*. Or more precisely, the States do not assert a significant protectable interest based on the fact that the existing plaintiff wind energy companies owe a nonparty entity money and that nonparty entity owes the States money. Instead, the States point to *their own* state laws, which require electricity suppliers to generate more electricity using renewable energy sources, such as wind energy. Motion, ECF 92 at 14. The relationship between this interest and the existing Plaintiffs' claims is both direct and non-contingent because DoD's review freeze prevents the construction of new wind energy projects in the States. And

allowing for the potential construction of new wind energy projects serves the interest that the States assert: fulfilling their various statutory renewable energy mandates. In short, dicta taken out of context from *Lynch* does not support Defendants' position that the States' interest in complying with statutory renewable energy mandates is not a significant protectable interest.

Third, the States "may have th[is] interest impaired" by an adverse disposition in this case because continuation of DoD's review freeze will hinder the States' abilities to meet their statutory renewable energy mandates. *W. Watersheds*, 22 F.4th at 835. Defendants resist this straightforward conclusion by arguing that even if the review freeze is lifted, certain contingencies may occur that ultimately prevent the construction of any given wind energy project.[2] *See* Response, ECF 115 at 5–6 (noting, for example, that DoD "may conclude that a particular project *does* present an unreasonable risk of national security" (emphasis in original)). But Defendants ignore the import of the crucial word, "may." The question here is not whether perpetuation of the review freeze will *certainly* decrease construction of wind energy turbines, or even whether it will *likely* decrease such construction. The question is only whether perpetuation of the wind freeze "*may*, as a practical matter," decrease construction of wind energy turbines in relation to the amount of construction that would occur if the freeze were lifted. *Kalbers*, 22 F.4th at 827–28 (emphasis added) (citation modified). It is "clear-cut" that lifting the freeze may result in more production of renewable wind energy, which is all this requirement asks for. *Id.*

Fourth, the States have met the "minimal" showing required to establish inadequacy of representation by the existing Plaintiffs. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). "The burden of showing inadequacy of representation is 'minimal' and satisfied if the

---

[2] Defendants raise this argument when discussing the third requirement, but this argument is directed toward challenging whether disposition of this case may impair the States' interest.

applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for Balanced Use*, 647 F.3d at 898 (quoting *Arakaki*, 324 F.3d at 1086). "To evaluate adequacy of representation, courts consider three factors: '(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether a proposed intervenor would offer any necessary elements to the proceeding that other parties would neglect.'" *W. Watersheds*, 22 F.4th at 840–41 (quoting *Citizens for Balanced Use*, 647 F.3d at 898). As the States explain, while the existing Plaintiffs "are protecting their business and economic interests," the States "are protecting their sovereign interests in implementing their own laws and protecting public health and economic welfare." Motion, ECF 92 at 23; *id.* at 12–17 (discussing these interests). This Court therefore agrees with the States that the existing Plaintiffs "cannot represent the full range of the States' interests or make the same arguments the States would." *Id.*

In sum, the States have met all the requirements to intervene as of right under Federal Rule of Civil Procedure 24(a)(2), and this Court therefore grants the States' request to intervene.

**B. Permissive Intervention**

In the alternative, this Court exercises its discretion to permit the States to intervene as plaintiffs under Federal Rule of Civil Procedure 24(b). "An applicant who seeks permissive intervention must prove that it meets three threshold requirements: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims." *Cooper v. Newsom*, 13 F.4th 857, 868 (9th Cir. 2021) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998)). "Even if an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Id.* (quoting *Glickman*, 159 F.3d at 412). "In exercising its discretion,

the district court *must* consider whether intervention will unduly delay the main action or will unfairly prejudice the existing parties." *Id.* (emphasis added). The district court "*may* also consider other factors in the exercise of its discretion, including 'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry v. Proposition 8 Off. Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (emphasis added) (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, Defendants only argue that the States cannot establish an independent basis for jurisdiction over their proposed claims and that unfair prejudice to Defendants would result from the States' intervention. Once again, this Court addresses all the mandatory and discretionary factors for permissive intervention and finds that they all weigh in favor of allowing intervention.

As to (1), there is no dispute that the States' proposed claims share common questions of law and fact with the existing Plaintiffs' claims. Indeed, the States bring the very same two claims against Defendants under the Administrative Procedure Act ("APA") that the existing Plaintiffs bring. *See* Proposed Complaint-in-Intervention, ECF 92-1 ¶¶ 133–70; First Amended Complaint, ECF 36 ¶¶ 231–91. And the identical legal claims are predicated on the same factual allegations regarding DoD's review freeze of wind energy project applications. *See* Proposed Complaint-in-Intervention, ECF 92-1 ¶¶ 59–94; First Amended Complaint, ECF 36 ¶¶ 112–74.

As to (2), the States' Motion is timely for the same reasons stated above regarding the timeliness of the States' request to intervene as of right. The States moved to intervene within approximately six weeks of Plaintiffs' filing of this lawsuit and three weeks of Plaintiffs' filing of their First Amended Complaint, ECF 36. Motion, ECF 92 at 19. Likewise, intervention of the States will not "unduly delay the main action." *Cooper*, 13 F.4th at 868. The States did not interfere with the then-pending Motion to Dismiss, ECF 90, or Motion for Preliminary

Injunction, ECF 14. And moving forward, the States share Defendants' "interest in efficiency, judicial economy, and avoiding duplicative arguments." Reply, ECF 128 at 8. This Court will therefore set conditions on the States' involvement in this case in accordance with these interests. However, this Court agrees with the States that the "appropriate time" to address these issues is at a later scheduling conference "involving all parties," namely the existing Plaintiffs. *Id.* at 8–9.

As to (3), this Court has federal question jurisdiction over the States' proposed APA claims under 28 U.S.C. § 1331, and therefore, the States are "not required to make any further showing that [their] intervention is supported by independent jurisdictional grounds." *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011); *see Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998) ("[A] federal court has jurisdiction pursuant to 28 U.S.C. § 1331 over challenges to federal agency action as claims arising under federal, unless a statute expressly precludes review."). As the Ninth Circuit has explained, "in federal-question cases, the identity of the parties is irrelevant and the district court's jurisdiction is grounded in the federal question(s) raised by the plaintiff." *Id.* Thus, "the independent jurisdiction grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims." *Id.* That is the case here.

Nonetheless, Defendants argue that the States do not satisfy this requirement for two reasons, but this Court rejected Defendants' same two arguments when it denied Defendants' Motion to Dismiss, ECF 90. Prior to this Court's resolution of Defendants' Motion to Dismiss for lack of subject matter jurisdiction, Defendants argued in their Response to the States' Motion to Intervene that because "the existing Plaintiffs' claims must be dismissed for lack of subject-matter jurisdiction," the States' "very same claims would necessarily sink alongside the existing Plaintiffs." Response, ECF 115 at 7. This Court subsequently rejected Defendants' argument that

the existing Plaintiffs' claims must be dismissed for lack of subject-matter jurisdiction. MTD & PI Opinion, ECF 125 at 12–22. Thus, Defendants' piggybacking argument is just as unavailing here. Relatedly, Defendants argued in their Response that "permissive intervention should only be allowed, if at all, on the Section 706(2) claim" because "the court only has jurisdiction to entertain claims under Section 706(1)." Response, ECF 115 at 8. This Court also rejected this argument in denying the Motion to Dismiss. MTD & PI Opinion, ECF 125 at 18–20 & n.9.

Next, as to unfair prejudice to Defendants, the only purported prejudice that Defendants cite is "prejudice[] in having to separately address [the States'] arguments, including at every stage in litigation, despite that [the States] bring the very same claims as the existing Plaintiffs." Response, ECF 115 at 8. This Court agrees with the States that "[r]esponding to arguments raised by other parties is the essence of litigation," not a source of unfair prejudice. Reply, ECF 128 at 8. Defendants cite no authority to support their claim that the need for additional briefing constitutes unfair prejudice. Moreover, as the States point out, "allowing the States to intervene rather than file their own lawsuit would serve judicial economy by avoiding overlapping litigation in a separate lawsuit concerning the same program and government action, where DoD Defendants would also have to respond to the States' arguments." *Id.* (citation modified).

Finally, the discretionary factors—"the nature and extent of the intervenors' interest" and "whether the intervenors' interests are adequately represented by other parties"—both weigh in favor of permissive intervention. *Perry*, 587 F.3d at 955 (citation modified). As discussed above in granting the States' request to intervene as of right, the States have a significant protectable interest in meeting their "statutory goals and mandates to purchase electricity from renewable energy sources and to reduce greenhouse gas emissions." Motion, ECF 92 at 14. And as also discussed above, the States have demonstrated that this public interest is not adequately

represented by the existing Plaintiffs in this case. S*ee Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation." (citation modified)).

In sum, the States have met all the requirements for permissive intervention under Federal Rule of Civil Procedure 24(b), and the discretionary factors further support permissive intervention. Therefore, this Court also grants the States' request to intervene under Rule 24(b).

## CONCLUSION

For the above reasons, this Court GRANTS the States' Motion to Intervene, ECF 92. The intervenor-plaintiff States are ORDERED to promptly file their Complaint-in-Intervention, ECF 92-1. Consistent with this Court's previous scheduling Order, ECF 131, which set a deadline for Defendants' Answer to the existing Plaintiffs' First Amended Complaint, ECF 36, Defendants' responsive pleading to the States' Complaint-in-Intervention is also due on September 21, 2026.

**IT IS SO ORDERED.**

DATED this 20th day of August, 2026.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge