**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | | |
|---|---|---|
| RENEWABLE NORTHWEST, *et al*., | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-01092 |
| | § | |
| PETER B. HEGSETH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FEDERAL DEFENDANTS' STATUS REPORT**

On August 6, 2026, the Court directed (Dkt. No. 125) the Department of War (DoW) to provide status updates every 30 days "addressing whether review of wind energy projects has resumed at each stage of the review process, specifically: (1) projects with a mitigation agreement executed by the developer that are awaiting countersignature by [DoW]; (2) projects that have completed the [Mitigation Response Team (MRT)] process but have not yet received a draft mitigation agreement from [DoW]; (3) projects that were in the middle of the MRT process; (4) projects that have received a notice of presumed risk and are awaiting initial MRT meetings; and (5) projects that are awaiting completion of a preliminary review and issuance of a notice of presumed risk determination or non-objection transmittals to the FAA." DoW reports as follows:

**Programmatic Updates Since the Court's Injunction**

In compliance with the Court's preliminary injunction, DoW has, as a matter of policy, resumed processing wind energy project applications. As explained in briefing on the preliminary injunction motion, DoW has recognized several systemic deficiencies associated with the Clearinghouse process that require revision. Thus, DoW's initial focus after the Court's injunction

was to address those deficiencies in order to facilitate advancement of developer applications through the process. To that end, DoW has taken the following steps:

1. DoW has implemented a procedural step whereby it will, as a matter of course, invite the Department of Homeland Security (DHS) to evaluate project proposals and provide input into the Clearinghouse process. This invitation is required by existing regulations.

2. DoW has developed (and continues to refine) a new analytical methodology for reviewing wind project risks, including those described in the Marks Declaration that accompanied Federal Defendants' opposition to the preliminary injunction motion. DoW is in the process of applying its new analytical methodology to wind energy projects currently in the Clearinghouse process.

3. DoW undertook a comprehensive review of the former model mitigation agreement used in connection with Clearinghouse projects and has developed a new model agreement. The new model agreement has already been shared with at least one project, and the response thereto is shaping its application for future projects. DoW anticipates that, at least initially, use of the new model agreement may be an iterative process.

**<u>Reporting on the Court's Identified Categories</u>**

1. <u>Projects with a mitigation agreement executed by the developer that are awaiting countersignature by DoD.</u>

For the approximately 30 projects in this category at the time of the Court's injunction, DoW has been assessing the projects under its new analytical methodology. Depending on the results of this assessment and any necessary interagency consultation, DoW will either (i) provide a notice that the project presents an unacceptable risk to national security; (ii) re-engage in negotiations with the developer to attempt to ameliorate any unacceptable risks, or (iii) circulate to the project proponent the new model mitigation agreement. At least one developer has already

received and responded to the updated model agreement by seeking further discussions. As noted above, the developer's response to the model mitigation agreement is shaping its applicability to other projects.

2. Projects that had completed the MRT process but had not yet received a draft mitigation agreement from DoD.

DoW has been applying its new analytical methodology to the approximately 30 projects that were this category at the time of the Court's injunction. Once that review and any necessary interagency consultation is complete, DoW will take one of the three potential steps identified above with respect to Category 1 for these Category 2 projects.

3. Projects that were in the middle of the MRT process.

At the time of the Court's injunction, there were approximately 110 projects in this category. DoW has begun applying its new analytical methodology to the projects in this category. In conjunction with that assessment, DoW, through the Clearinghouse and the military department(s) affected by the proposed projects, will engage with developers to assess the projects' risks. DoW intends to incorporate the terms of the new model mitigation agreement into the MRT process for these projects. As of this filing, developer re-engagements have yet to begin because such discussions need to be informed by the analytical results. Given the number of projects in this category, DoW has been assessing how to resume review and engagement with the developers. This is the most resource-intensive part of the MRT process and DoW has reached a tentative determination to proceed generally in the order in which the projects were received, though certain deviations may occur as appropriate.

4. Projects that had received notice of presumed risk and were awaiting initial MRT meetings.

At the time of the Court's injunction, there were approximately 50 projects in this category. DoW will begin applying its new analytical methodology to the projects in this category once it

finishes with those in Category 3. DoW generally intends, through the Clearinghouse and the military department(s) affected by the proposed project, to initiate MRT meetings with the developers in the order in which the proposals were received, though deviations may occur as appropriate.

5. Projects that were awaiting completion of a preliminary review and issuance of presumed risk determinations or non-objection transmittals to the FAA.

At the time of the Court's injunction, approximately 90 projects were awaiting the completion of the preliminary review process. Since the Court's injunction, DoW has determined that at least 40 of those projects warranted a notice of presumed risk. DoW has initiated the dissemination of the notices to the developers. Those projects will now be transitioned into the Category 4, MRT process. DoW has concentrated its effort on the projects that require notice of presumed risk and expects to complete all of the projects in Category 5 as of the date of the Court's order *prior* to the next report.

Dated: September 10, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

*/s/ Shawn D. Ren*

Shawn D. Ren, Trial Attorney
Natural Resources Section
999 18th St., N Terrace, Suite 600
Denver, CO 80202
Tel: (202) 598-3141
E-mail: shawn.ren2@usdoj.gov

*Attorney for Federal Defendants*