Michael Giaquinto, OSB No. 246342
MORGAN LEWIS & BOCKIUS LLP
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071-3132
T: 213-612-7227
michael.giaquinto@morganlewis.com

Jennifer Trock (*pro hac vice*)
Douglas Hastings (*pro hac vice*)
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
jennifer.trock@morganlewis.com
douglas.hastings@morganlewis.com

Ella Foley Gannon (*pro hac vice*)
600 Montgomery Street, Suite 2300
San Francisco, CA 94111-2725
T: 415-442-1000
ella.gannon@morganlewis.com

*Attorneys for Plaintiffs (except Las Crestas Wind Energy, LLC)*

Darin Sands, OSB No. 106624
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
T: +1 503-734-2480
dsands@bradleybernstein.com

Richard W. Smith (*pro hac vice*)
Kathleen Mueller (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
T: 202-736-8000
rwsmith@sidley.com
kmueller@sidley.com

*Attorneys for Plaintiff Las Crestas Wind Energy, LLC*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| RENEWABLE NORTHWEST, *et al.*,<br>*Plaintiffs*,<br>v.<br>PETER B. HEGSETH, *et al.*,<br>*Defendants.* | Case No.: 3:26-cv-01092-IM<br>**PLAINTIFFS' RESPONSE TO DEFENDANTS' FIRST STATUS REPORT** |

## I. INTRODUCTION

On August 6, 2026, this Court entered an order "staying DoD's review freeze as to all wind energy project applications." Dkt. 125 at 35-36. The Court also required 30-day status reports "[t]o ensure compliance with the stay" and directed DoD to report whether review had resumed at each of the five stages of the Clearinghouse process affected by the freeze. *Id.* Defendants' first report shows that, in substantial respects, that process has not resumed.

DoD's report recounts some preliminary internal activity, but it does not describe a return to the project-specific review process Congress established in 10 U.S.C. § 183a. Instead, DoD reports that it has developed a new "analytical methodology" that it "continues to refine" and has developed a new model mitigation agreement that it anticipates further updating in an "iterative process." Dkt. 144 at 2. DoD indicates it is introducing those preliminary steps before pending projects may meaningfully advance toward completion of the Clearinghouse process.

That is materially the same type of freeze the Court addressed in its August 6 Order. Before the stay, DoD had stopped advancing projects while it reassessed its internal analytical methodology, including by "refrain[ing] from executing further agreements and drafting new

ones" pending the outcome of that review. Dkt. 125 at 19. The Court held that even assuming DoD's review freeze was "reasonable and reasonably explained," DoD could not suspend the statutory regime Congress prescribed while that reassessment proceeded. *Id.* at 25. DoD's internal redesign cannot serve as a substitute for—or a reason to defer—the statutory process.

The report's category-by-category account confirms the point. For the approximately 60 projects[1] it says are furthest along in the process—those awaiting either a draft mitigation agreement or DoD's countersignature—the report identifies no completed draft agreements or countersignatures. *Id.* at 2–3. DoD identifies *exactly one* project[2] out of those 60 that it says received a new model mitigation agreement. For the approximately 110 projects it says are currently in the MRT process, DoD acknowledges that "developer re-engagements have yet to begin" because those discussions await the results of its new analysis. Dkt. 144 at 3. For the approximately 50 projects awaiting an initial MRT meeting, DoD states that it "will begin" applying its new methodology only after it "finishes with" the Category 3 projects. *Id.* at 3–4. DoD reports some movement at the preliminary-review stage, including "initiat[ing] the dissemination" of presumed-risk determinations for approximately 40 projects, but it identifies no non-objection transmittals and reports no determination for approximately 50 projects still awaiting preliminary review. *Id.* at 4.

Those are not delays at the margins of an otherwise resumed process. Defendants' report does not identify a single project that has completed the Clearinghouse process—either through a

[1] The numbers in this response are taken from the status report and have not been independently confirmed by Plaintiffs. Defendants have informed Plaintiffs that they may be able to provide a list of the projects referenced in the report but have not yet done so.

[2] The report does not name the project, but counsel for Defendants has confirmed to Plaintiffs that it is one of the few projects in the country that is neither a Plaintiff in this litigation nor a member of an associational Plaintiff.

non-objection transmittal or a fully executed mitigation agreement. For substantial portions of DoD's docket, the statutory and regulatory process remains stopped while DoD develops and sequentially applies its new approach. And DoD continues not to meet its statutory and regulatory deadlines—notably, approximately 50 projects that were already awaiting preliminary review when the Court entered its August 6 Order remain without a reported determination more than 30 days later, despite the requirement in 32 C.F.R. § 211.6 that preliminary review be conducted within 30 days.

Plaintiffs therefore respectfully request that the Court schedule a status conference to address DoD's implementation of the August 6 Order and the status of project review at the five stages identified by the Court.[3]

## II. STATUS OF COMPLIANCE WITH THE COURT'S AUGUST 6 ORDER

The Court's stay Order makes determining compliance straightforward: DoD must resume its review at each of the five stages of the Clearinghouse process identified by the Court. Dkt. 125 at 35-36. Yet, DoD's category-by-category description in its status report confirms that substantial numbers of projects remain stalled at each stage.

### A. Categories 1 and 2: DoD Is Reassessing, Rather Than Advancing, Projects That Had Already Completed Mitigation Discussions.

Projects in Categories 1 and 2 had already proceeded through the process for identifying and addressing DoD's national-security concerns before DoD halted further progress. For the

[3] Plaintiffs conferred with Defendants on September 15, 2026, regarding Defendants' First Status Report and Plaintiffs' concerns regarding DoD's implementation of the Court's August 6 Order. Counsel for Defendants indicated that it is Defendants' view that the freeze is no longer in place and provided some additional information. Plaintiffs nonetheless continue to believe that Defendant's status report and the information provided by their counsel is inconsistent with this Court's order being fully implemented.

approximately 30 reported Category 1 projects, the MRT process had concluded, the agreed mitigation measures had been reduced to a written agreement, the developer had signed and returned that agreement, and the project was awaiting DoD's countersignature.[4] For the approximately 30 reported Category 2 projects, mitigation discussions likewise had concluded and the developer and MRT had reached agreement on mitigation measures, but DoD had not yet provided the draft agreement. Dkt. 125 at 6-8; Dkt. 144 at 2-3.

Yet, Defendants' First Status Report identifies no countersignature for Category 1 projects and no draft mitigation agreement for Category 2 projects. Instead of advancing these projects from the points at which the freeze stopped them, DoD has essentially started over—it says that it is "assessing" both groups under its new analytical methodology before deciding what happens next. For Category 1, DoD states that it may issue a new unacceptable-risk notice, reopen mitigation negotiations, or provide the developer with its new model mitigation agreement (if and when that is finalized). Dkt. 144 at 2–3. For Category 2, DoD states that it will choose among those same options only after completing its new review and any necessary interagency consultations. *Id.* at 3. The report does not identify a newly discovered or project-specific national-security concern that prompted this additional review of any project in either category. Instead, it describes the systematic reassessment of both categories under a newly developed methodology. DoD has not even advanced projects seeking straightforward amendments to already-executed mitigation agreements, including projects for which agreed mitigation measures have already been implemented.

[4] For a few of the projects, a mitigation agreement already exists and only a non-substantive amendment is pending countersignature.

That approach is inconsistent with the Court's Order. The Court specifically addressed projects at these stages and concluded that "there is no basis in statute or in regulation for DoD to withhold action for projects at stages (1) and (2)." Dkt. 125 at 36 n.13. Defendants' report identifies no genuinely new, project-specific national-security concern for any of the projects in either Category 1 or Category 2. What the report describes instead is the systematic re-review of projects that had already completed the mitigation process before DoD takes any further action, with no completed advancement for either category.

The one project that received DoD's new model mitigation agreement underscores, rather than answers, the problem. Defendants have since confirmed that this is the only project to receive the agreement and that it is not a Plaintiff project or affiliated with any Plaintiff organization. DoD's report states that this developer's response is being used to "shap[e]" application of the agreement to other projects. Dkt. 144 at 2–3. Thus, rather than advancing the approximately 60 projects in Categories 1 and 2 from the stages they had reached, DoD is using a single project as an iterative test case before determining how it will proceed with others. The remaining projects continue to wait while that process unfolds, even though the report identifies no newly discovered, project-specific national-security concern that would prevent those projects from advancing.

### B. Categories 3 and 4: DoD Has Not Resumed the Review Process for Projects Halted Before or During MRT Review.

DoD's report on Categories 3 and 4 also demonstrates that its freeze remains in place for those projects, notwithstanding the Court's order. Approximately 110 reported Category 3 projects were already in the MRT process when the freeze halted their progress. Defendants' report states that "developer re-engagements have yet to begin" because discussions must await the results of DoD's new analysis. Dkt. 144 at 3. DoD further states that it is still "assessing how to resume review and engagement with the developers." *Id.* Thus, projects that were already

engaged in mitigation discussions before the freeze remain without renewed developer engagement more than a month after the Court stayed it.

The report indicates that the approximately 50 reported Category 4 projects are likewise frozen. Those projects had already received notices of presumed risk and were awaiting initial MRT meetings when the freeze was imposed. But DoD now states that it "will begin applying its new analytical methodology" to those projects only *after* it finishes with its review for Category 3. Dkt. 144 at 3–4. In other words, an entire category of projects remains deferred behind approximately 110 other projects for which meaningful developer engagement has not yet resumed.

That sequencing cannot be squared with the statutory process and the Court's Order. Mitigation discussions are subject to a mandatory 90-day period, extendable only if the applicant agrees in writing to an extension for a specific period. Dkt. 125 at 27; 32 C.F.R. § 211.6(b)(1).[5] The Court previously rejected practical constraints as a basis for disregarding those requirements, explaining that "practical constraints cannot justify an agency's failure to comply with federal law." Dkt. 125 at 27–28. Nonetheless, the report describes wholesale deferral of Category 4 and continued postponement of Category 3 developer engagement pending analytical results—not resumption of the mitigation process the Court ordered restored.

[5] Although not reflected in the Defendants' report, Plaintiffs are aware that DoD recently sought extensions of the mitigation period from certain developers. Project-specific extension requests do not explain the category-wide absence of resumed developer engagement described in the Defendants' report.

### C. Category 5: DoD's Partial Resumption of Preliminary Review Does Not Satisfy the Governing Preliminary-Review Deadlines.

DoD's status report identifies some movement at the preliminary review stage. Of approximately 90 reported projects that were awaiting completion of preliminary review when the Court entered its Order, DoD states that it has determined that "at least 40" warrant notices of presumed risk and has "initiated the dissemination" of those notices. Dkt. 144 at 4. While that reflects some resumption of preliminary review, it does not satisfy the Court's Order or statutory and regulatory deadlines.

The report indicates that DoD has not made a determination for approximately 50 of the roughly 90 projects that were awaiting preliminary review when the Court entered its Order. Dkt. 144 at 4.[6] And notably, the report identifies no non-objection transmittals to the FAA, even though the Court specifically directed DoD to report whether review had resumed through either presumed-risk determinations or non-objection transmittals. Dkt. 125 at 35–36.

Those omissions are significant because preliminary review is governed by a mandatory 30-day deadline. As the Court held, 32 C.F.R. § 211.6(a)(3) requires the Clearinghouse to "take one of three actions . . . [n]ot later than 30 days after receiving the application," and each action culminates in notice to the FAA of DoD's determination. Dkt. 125 at 5 n.1. The Court expressly rejected Defendants' prior effort to characterize the 30-day period as something other than a deadline. *Id.* Because each of these projects was already awaiting preliminary review when the

[6] Even as to the approximately 40 projects DoD indicates it has determined warrant presumed-risk notices, the report states only that DoD has "initiated dissemination" of those notices; it does not identify how many notices have actually been issued to date. It is Plaintiffs' understanding that many of those developers had not received a notice of presumed risk at the time of the status report.

Court entered its August 6 Order, DoD is not complying with the 30-day deadline for the approximately 50 projects without a reported determination.

## III. DOD MUST MAKE CONCRETE PROJECT ADVANCEMENT

Taken together, DoD's report describes approximately 310 projects across the five categories identified by the Court. Dkt. 144 at 2–4. Yet it identifies no Category 1 countersignatures; no Category 2 draft agreements; no resumed developer engagement for approximately 110 Category 3 projects; no commencement of review under the new methodology for approximately 50 Category 4 projects; and, in Category 5, no non-objection transmittals and no reported determination for approximately 50 projects. Whatever internal work DoD has undertaken, those results do not reflect resumption of the project-review process the Court ordered restored.

DoD's ongoing delays are not merely procedural. In granting the stay, the Court found that the review freeze was causing "substantial and continuing" economic losses to wind-project developers, including increased carrying costs, higher financing costs, delayed or lost project revenues, and potential loss of tax-credit value. Dkt. 125 at 30. The Court further held that those mounting losses constituted irreparable harm because monetary damages are unavailable. *Id.* DoD's initial assessment activity does not alleviate those harms if projects remain unable to advance through the Clearinghouse process.

It is therefore imperative that DoD promptly and materially advance its review process—as it did prior to August 2025—in order to comply with this Court's Order. To allow the Court to assess whether that concrete progress is occurring, DoD should provide sufficient detail in its next status report, including: (1) the number of projects that have actually advanced; (2) the actions completed for those projects; (3) the developer engagements conducted; (4) the notices and

transmittals issued; (5) the mitigation agreements circulated or executed; and (6) any extensions sought or obtained.

## IV. THE COURT SHOULD SCHEDULE A STATUS CONFERENCE TO DISCUSS COMPLIANCE WITH THE STAY

Because Defendants' First Status Report does not demonstrate compliance with the Court's stay, Plaintiffs respectfully request a prompt status conference at which Defendants should provide an updated account of project-specific advancement since September 10 and address the continued withholding of action described above. Plaintiffs reserve the right to seek further appropriate relief based on DoD's subsequent actions and reports.

Dated: September 21, 2026

Respectfully submitted,

*s/ Michael Giaquinto*
Michael Giaquinto, OSB No. 246342
MORGAN, LEWIS & BOCKIUS LLP
300 South Grand Ave., 22nd Floor
Los Angeles, CA 90071-3132
T: 213-612-7227
michael.giaquinto@morganlewis.com

Jennifer Trock (*pro hac vice*)
Douglas Hastings (*pro hac vice*)
1111 Pennsylvania Ave., NW
Washington, D.C. 20004
T: 202-739-3000
jennifer.trock@morganlewis.com
douglas.hastings@morganlewis.com

Ella Foley Gannon (*pro hac vice*)
600 Montgomery Street
Suite 2300
San Francisco, CA 94111-2725
T: 415-442-1000
ella.gannon@morganlewis.com

*Attorneys for Plaintiffs (except for Las Crestas Wind Energy LLC)*

Darin Sands, OSB No. 106624
BRADLEY BERNSTEIN SANDS LLP
1211 NW Glisan St., Ste 204
Portland, OR 97209
T: +1 503-734-2480
dsands@bradleybernstein.com

Richard W. Smith (*pro hac vice*)
Kathleen Mueller (*pro hac vice*)
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
T: 202-736-8000
rwsmith@sidley.com
kmueller@sidley.com

*Attorneys for Plaintiff Las Crestas Wind Energy, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that, on September 21, 2026, a copy of the foregoing was uploaded to the Court's CM/ECF system, which will effectuate service on all registered counsel in this case.

*s/ Michael B. Giaquinto*

Michael B. Giaquinto