**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | | |
|---|---|---|
| RENEWABLE NORTHWEST, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 3:26-CV-01092 |
| | § | |
| PETER B. HEGSETH, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FEDERAL DEFENDANTS' RESPONSE TO PLAINTIFFS' FILING WITH RESPECT TO THE FIRST STATUS REPORT**

As directed by the Court, Federal Defendants hereby file this Response in connection with the Department of War's (DoW) first status report, previously filed on September 10. *See* Dkt. No. 144. As described below, Plaintiffs' speculation about DoW's compliance with the Court order is not merely premature but also risks entangling this Court unnecessarily in internal DoW processes.

On August 6, this Court issued a preliminary injunction against Federal Defendants that "stayed" any "freeze" on the DoW Military Aviation and Installation Assurance Siting Clearinghouse's ("Clearinghouse") "review" of applications referred to it by the Federal Aviation Administration under 10 U.S.C. § 183a. *See* Dkt. No. 125 at 35. The Court also ordered DoW to submit status reports every 30 days "addressing whether review of wind energy projects has resumed for projects" under five identified stages of review. In the first status report, DoW reported that it has "resumed processing wind energy project

applications," Dkt. No. 144 at 1, and described the steps it has taken, including with respect to projects under the five categories, Dkt. No. 144 at 1–4.

Plaintiffs' opposition to the status report and claim of noncompliance with the injunction are based upon two incorrect assumptions. *First*, Plaintiffs assume a return to "review" of the applications can only be demonstrated by a completion of the process. As the Court's injunction required, the status report demonstrates that DoW has returned to reviewing—the parties have also been using the verb "processing"—the pending applications. *Second*, Plaintiffs assume that DoW's continued review must ignore the national security concerns that underpinned the alleged freeze that the Court enjoined. To the contrary, however, DoW needs to conduct its review *in light of* those concerns, not despite them. The status report demonstrates that DoW has been doing just that. We address each point in turn.

**<u>The Department's Return to Review</u>**

As to the return to review, the status report documents the Clearinghouse's compliance. DoW has developed a new analytical methodology through which to assess each project's potential risks to national security and (at the time of the report) had begun to apply that methodology to the pending applications. DoW has also developed a new model mitigation agreement and (at the time of the report) had shared that agreement with at least one project proponent. None of that suggests that DoW has continued a freeze on "review," which is what the Court enjoined.

That carries over to the five categories the Court identified in its order. Indeed, Plaintiffs concede the status report "identifies some movements at the preliminary review stage." Dkt. No. 147 at 8. And DoW noted that it "expects to complete all of the projects in

Category 5 as of the date of the Court's order prior to the next report." Dkt. No. 144 at 4. Similarly, though post-dating the report, Plaintiffs acknowledge that "Do[W] recently sought extensions of the mitigation period for certain developers." Dkt. No. 147 at 7 n.5. For the remaining categories, DoW had (at the time of the report) begun to apply its new methodology to the projects. Dkt. No. 144 at 2–3.

Thus, the status report does not support the conclusion that DoW is not reviewing applications, as the injunction required. Instead, Plaintiffs' concern is with the pace of progress. But Plaintiff did not request, and the injunction did not set, deadlines. Nor would that preliminary relief have been appropriate given that Plaintiffs sought a prohibitory injunction against a pause on review. Indeed, both in their motion for preliminary relief and at the hearing on the same, Plaintiffs took pains to make clear that they were only seeking a return to review, not programmatic relief. *See*, *e.g.*, Dkt. No. 14 at 46 (Plaintiffs' Motion for Stay or Preliminary Injunction) (asking for a stay or injunction against the "unlawful review freeze and related policies and practices"); Transcript of Preliminary Injunction Hearing at 58:4-16 (attached as Exhibit 1) ("[W]e're asking for a prohibitory injunction . . . [w]e are not asking for any particular action to be taken by the Government . . . this order will just take away the policy that stopped them from doing what they're supposed to be doing."). And it is not realistic to expect that DoW would advance 300+ projects to the next stage of review within the first 30 days of the Court's injunction. That is especially so given DoW's need to work through a revamped process that, historically, has typically taken, on average, 491 days (or over 16 months) for an application to go from starting the mitigation response team review process to circulation of a draft agreement. Dkt. No. 90-1 ¶ 27.

**The Department's Current Process**

Turning to our second point, Plaintiffs ignore what DoW needs to consider in complying with the Court's injunction. Plaintiffs assume that DoW should have simply signed all the pending mitigation agreements, provided that same prior mitigation agreement to the projects awaiting one, and otherwise returned to the state of the world as it existed prior to August 2025. But that is not the current state of the world. The issue here arose because of DoW's well-founded concerns about emerging adverse threats to national security. *See*, *e.g.*, *id.* ¶¶ 37–64. Thus, each of the steps implemented since the Court's injunction is a necessary component of resuming review and processing of the pending applications. These efforts reflect DoW's compliance with the injunction in light of DoW's statutory responsibilities. Because previous mitigation discussions and agreements were under the former, outdated analytical framework, it is only natural for the Clearinghouse to, as Plaintiffs allege, "reassess" the relevant categories "under [the] newly developed methodology." Dkt. No. 147 at 5.

Plaintiffs mischaracterize this process as "materially the same type of freeze the Court addressed in its August 6 Order." Dkt. No. 147 at 2. But the Court preliminarily enjoined an alleged freeze on reviewing the applications. The Court did not—despite what Plaintiffs seem to assume—compel DoW to ignore national security risks for any project, let alone a blanket, substantive determination across all projects. And as emphasized earlier, DoW has already been applying the revamped mitigation review process. Given the number of pending applications, DoW also must exercise its discretion among the projects in various stages of review to determine the sequencing to address any backlog. *See*, *e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its

limited resources and personnel to carry out its delegated responsibilities."); *Thrivent Fin. for Lutherans & Thrivent Inv. Mgmt. Inc. v. Sec. & Exch. Comm'n*, 183 F.4th 777, 784 (D.C. Cir. 2026) ("Agencies have broad discretion in ordering priorities on their regulatory agenda and husbanding scarce agency resources."). Implementing that discretion is not evidence of a continued freeze on application review or a violation of the Court's injunction.

* * *

In sum, the Court preliminary enjoined a pause on review of applications and ordered periodic status reports. DoW is presently in compliance with the Court's preliminary injunction and will continue to report on its progress in review of applications every thirty days. The next report is due October 5. But nothing in DoW's first status report demonstrates that a pause on review remains in place. Defendants have tried to accommodate Plaintiffs' information requests during meet and confers, including with respect to which project proponent that received the new draft mitigation agreement and multiple other pieces of information we have agreed to share. But at some point requests for information and project-specific details begin to frustrate DoW's ability to focus on reviewing the applications. The Court granted Plaintiffs the status reports they sought; if Plaintiffs desire a modified injunction or some other relief from the Court, a motion is the proper mechanism. *See, e.g.*, Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); *Meghinasso v. Mercedes-Benz USA*, No. C17-5930-LK, 2022 WL 226078, at *1 (W.D. Wash. Jan. 26, 2022) (explaining that "it is procedurally improper to include a request for affirmative relief in a response brief"); *Frank v. Wells Fargo Bank*, N.A., 620 F. Supp. 3d 1024, 1028 (C.D. Cal. 2022) (same) (citing Fed. R. Civ. P. 7(b)(1)). The parties should not be litigating via status report.

Dated: September 25, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Shawn D. Ren*

Shawn D. Ren, Trial Attorney
Texas Bar No. 24132873
U.S. Department of Justice
Environment & Natural Resources Division
999 18th St., N Terrace, Suite 600
Denver, CO 80202
Tel: (202) 598-3141
Fax: (303) 844-1350
E-mail: shawn.ren2@usdoj.gov

*Attorney for Federal Defendants*