IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | | |
|---|---|---|
| RENEWABLE NORTHWEST, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 3:26-cv-01092-IM |
| | ) | |
| v. | ) | |
| | ) | August 4, 2026 |
| PETER B. HEGSETH, et al. | ) | |
| | ) | |
| Defendants. | ) | Portland, Oregon |
| | ) | |

MOTIONS HEARING

TRANSCRIPT OF PROCEEDINGS

BEFORE THE HONORABLE KARIN J. IMMERGUT

UNITED STATES DISTRICT COURT JUDGE

PLAINTIFFS APPEARANCES

FOR THE PLAINTIFF(S):
MICHAEL B. GIAQUINTO
Morgan Lewis & Bockius LLP
300 South Grand Avenue
22nd Floor
Los Angeles, CA 90071

FOR THE PLAINTIFF(S):
ELLA FOLEY GANNON
Morgan Lewis & Bockius LLP
600 Montgomery Street
Suite 2300
San Francisco, CA 94111

FOR THE PLAINTIFF(S):
DOUGLAS A. HASTINGS
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

FOR THE PLAINTIFF(S):
JENNIFER ELIZABETH TROCK
Morgan Lewis & Bockius LLP
1111 Pennsylvania Ave., NW
Washington, DC 20004

FOR THE PLAINTIFF(S):

KATHLEEN MORIARTY MUELLER
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005

DEFENSE APPEARANCES

FOR THE DEFENDANT(S):

SHAWN REN
DOJ-Enrd
999 18th St.
N. Terrace
Suite 600
Denver, CO 80202

Also Present: Kristofor Swanson, DOJ

COURT REPORTER: Jill L. Jessup, CSR, RMR, RDR, CRR, CRC
United States District Courthouse
1000 SW Third Avenue, Room 301
Portland, OR 97204
(503)326-8191

* * *

INDEX

| PROCEEDINGS: | PAGE: |
| --- | --- |
| Motion Hearing before Judge Immergut | 5 |

TRANSCRIPT OF PROCEEDINGS

(August 4, 2026)

(In open court:)

THE COURT: Good morning, everyone. Please be seated.

We are here on the record in Renewable Energy -- excuse me -- Renewable Northwest, et al. v. Peter Hegseth, et al. This is Case Number 26-cv-01092. This is the time set for oral argument on plaintiffs' motion for preliminary injunction and defendants' motion to dismiss.

Let me have counsel state appearances for the record.

First, for -- and I'll try to work with this seating chart here.

First, for plaintiffs.

MR. GIAQUINTO: Good morning, Your Honor.

Mike Giaquinto, with Morgan Lewis, on behalf of the plaintiffs. Oregon Bar Number 246342.

I have with me my colleagues Ella Foley Gannon, Jennifer Trock, and Douglas Hastings, appearing pro hac vice. And also for the plaintiffs, Kathleen Murphy, who represents Las Crestas Wind Energy LLC.

THE COURT: And I don't see Ms. Murphy on my chart.

MS. MUELLER: It's Mueller. Kathleen Mueller.

THE COURT: Mueller. Got it. All right.

And for defendants?

MR. REN: Good morning, Your Honor.

Shawn Ren. DOJ, Department of Justice.

THE COURT: Okay.

MR. SWANSON: And Kristofor Swanson. Also on behalf of the federal defendants. Thank you.

THE COURT: All right. Thank you.

I thought what I would do is start by -- or my plan is -- I've reserved two hours for this hearing. My plan is to ask some questions to clarify some of the facts in the record, and -- and a little bit of argument, but mostly just to clarify my understanding of what's in the record in some areas, and then I thought I would give you my inclined rulings on both the motion to dismiss and the preliminary injunction motion and just barebones rulings and then let you both argue for -- 30 minutes is kind of my estimate -- why I'm right or wrong, based on my rulings, and plaintiff can reserve time -- a certain amount of time as part of that half hour.

Yeah, I'll give you about a half hour each. You don't have to take up all the time. It's up to you, but then you can reserve a portion of that, if you want, for any rebuttal.

So, first, let me start with plaintiffs. And this actually is a question for both, in case the Government

disagrees, but has -- actually, I should preface this: Department of Defense is the congressionally created agency I know it's sometimes referred to as "Department of War" and "Department of Defense." The lawsuit is against the Department of Defense. The statutes talk about "Department of Defense." So I understand the new moniker is "Department of War."

So, just for clarity, I'm just going to refer to them as "Department of Defense" because that's who is sued in this case. But I don't really care what you use. It's understandable either way.

So, first, for plaintiff, has DoD resumed preliminary review of wind energy projects in accordance with its 75-day statutory and 30-day regulatory deadlines since this case started?

MS. FOLEY GANNON: Thank you, Your Honor. Our understanding is that it has not. We are not aware of any project that has begun processing again since the delay that that -- that is the subject matter of this case.

THE COURT: Do defendants disagree with that as a factual matter?

MR. REN: Judge, to my understanding, preliminary review is ongoing.

THE COURT: With wind energy projects?

MR. REN: Yes. The preliminary review stage in

accordance with the May 7th memorandum. I'm not sure what the disconnect there is, in terms of perhaps DoW hasn't gotten around to the specific plaintiffs in this case's applications; but, to my understanding, preliminary review, as a general matter, should be ongoing, in accordance with the May 7th memorandum.

THE COURT: Do you have any example?

MR. REN: I do not, Judge.

I did not know that that was a point of disagreement, but I'm happy to follow up with that.

THE COURT: Well, it's -- well, I don't know that it's a point of disagreement. It seemed that the defendants were actually conceding that because you didn't offer anything in the record that disputed what plaintiffs said.

So it's not a point of disagreement. So far the record stands for what plaintiff says.

MR. REN: All right. Judge, I would just echo, again, to my understanding, preliminary review is ongoing.

THE COURT: And based -- what's that understanding based on?

MR. REN: Based on the Marks -- based on the declaration from the Honorable Marks, as well as, generally, my conversations with my client.

THE COURT: So is there anything in the record that I have that says wind projects are -- continue review?

MR. REN: There is, in the record, indication, again, that wind projects have resumed the preliminary review stage. In terms of concrete examples -- I don't have with me concrete examples.

THE COURT: And has any preliminary review been completed since May 7th? Because I think more than 75 days have passed.

Has any review been completed, if there is, in fact, a review going on?

MR. REN: I'm not sure, Your Honor. I would have to follow up with my client on that, and I'm happy to do so and file a supplementation with the Court.

THE COURT: Well, wouldn't you already have supplemented the record if that were true?

MR. REN: Judge, I don't believe that, until now, that that has been an issue. I've had no reason to believe that preliminary review has not been ongoing.

THE COURT: Isn't that the whole issue in the case -- that reviews are not ongoing? I can't even understand this.

MR. REN: I believe there's the preliminary review stage and then there's the mitigation phase, including the back and forth, and then, ultimately, the signature on those mitigation agreements.

THE COURT: Well, plaintiff has alleged that none

of it's going on basically since August of 2025, and so I -- I'm confused here. And you didn't recognize that that was a big issue, whether there were statutory and regulatory violations? I mean, that's the -- one of the main arguments plaintiff is making.

MR. REN: Right, Judge.

From all the communications I've had with my client, it seems that preliminary -- I had been under the understanding that preliminary review was not an issue at this juncture because they had, as I said, resumed. Right? There was a period, particularly of three weeks, between April and May, where that had halted, and then the Government shut down back in, I believe, October and November last year when that halted; but, otherwise, my understanding is preliminary review has been ongoing through that time.

THE COURT: So have any been done in accordance with -- been done within 75 days?

MR. REN: Again, Judge, I -- I would think the answer is "Yes," but I'm not -- I don't have concrete examples.

THE COURT: And why would you think that?

MR. REN: Because that is -- because the process -- it's been represented to me that the process is ongoing because the process has resumed in accordance with the May 7th memorandum.

THE COURT: All right. Let me ask plaintiffs on this. Am I missing something?

MS. FOLEY GANNON: No, Your Honor, you're not. And we have been in contact with all of our -- our members of our various plaintiffs, and we have been asking for repeated updates. Has there been anything that has been completed? Has there been anything that's been processed? And the answer that we have received is definitively "No."

THE COURT: And to your review of the -- or based on your review of the record -- in my review, I don't see anything where there has been a preliminary review within 75 days or any preliminary review. And, also, the 90-day deadline set by regulation for completion of the mitigation discussions -- I've seen no evidence of that.

MS. FOLEY GANNON: That's correct, Your Honor.

There is -- one thing we're aware of is that one of the DoD's components, the Air Force, had made some requests to some projects about a possible extension. Those are discussions that are ongoing; but, again, we have not seen anything that has been reviewed, that has been analyzed, that has been progressed through the process at all.

THE COURT: Let me turn to the defense on this.

Has DoD returned any countersigned agreements for any wind project since August of 2025?

MR. REN: To my understanding, no, Judge.

THE COURT: And has DoD done any preliminary review of any wind projects since its May 7, 2026, memo was issued that's in the record?

MR. REN: Not in the record; but, again, our understanding is that that review is ongoing.

THE COURT: Okay. And you just didn't think that it was important to have it as part of the record?

MR. REN: Well, Judge --

THE COURT: Is that --

MR. REN: -- my client has communicated to me that they are ongoing, and so our belief was that it was not an issue; but, again, we're happy to go back and come up with --

THE COURT: Okay. Let me ask plaintiff: In your opposition to the motion to dismiss, you say that, beginning in August of 2025, DoD decided to stop executing mitigation agreements and that this policy was memorialized in several written memos and unwritten actions.

Were there any written actions before the May 7, 2026, memo and, arguably, the April 2026 letter?

MS. FOLEY GANNON: There were no -- there's no written communications apart from the April letter and the May 7th memo, that we're aware of.

THE COURT: You argue, again, for plaintiffs that the final agency action is arbitrary and capricious, in

part, because of the Government's hostility to wind energy and essentially that the national security rationale is just a pretext because they already review national security within the existing statutory and regulatory guidelines.

Let me ask you, though: Don't I have to give, at this stage, significant deference to a Government's claim of national security?

MS. FOLEY GANNON: You do have to give significant deference to a national security decision that is made by the Department of Defense; however, that is not what is at issue here.

What is at issue here is the Department of Defense not making national security determinations on a project-by-project basis.

So we're not asking the Court at all to step in and to second-guess whether any particular project or any group of certain projects, with certain characteristics, could present an issue. That, we -- we acknowledge, is part of the review process that the Department of Defense is -- is -- is tasked with, and it's -- and is supposed to be carrying out.

Our problem is that they're not carrying that out.

THE COURT: And let me ask you: Looking at -- I -- it's unclear, I think, that the Marks declaration was filed under -- is it under seal or not under seal?

MR. REN: It is not, Judge.

THE COURT: Okay. So in the Marks declaration, which contains a lot of material, the suggestion, I think -- or my takeaway from it is somehow there's a sense that they have to do a broader review of the, I guess, energy projects that have a Doppler effect.

Why is -- and that is a little bit different than the individualized determinations that already are baked into the regulatory and statutory process. Why is that, in the plaintiffs' view, not sufficient to -- or different than the kind of review that they're doing?

MS. FOLEY GANNON: Well, there's a couple of problems with their approach, Your Honor. First off is that the solution that they have come up with, which is stopping the whole Clearinghouse process, is so extremely broad and is not connected to just projects with a Doppler effect. There are many things that come up, as far as the Clearinghouse review process, as potential impacts on military operations and readiness.

It can be things like "Does -- is there an intrusion into an airspace near a military facility? Is there something where there's a training route? Is there something that could affect other -- other considerations?"

So there is a -- there's a very, very broad solution they came up to of what they've identified as a very narrow

problem. So that is our -- that's our primary concern with it.

And then the secondary concern is that Congress looked at this issue, and the reason that the Clearinghouse was established was really because there was a recognition that evolving risks are going to continue to happen and that there is a potential conflict with renewable energy.

However, renewable energy and energy security is a priority of the United States and so is national security.

So what did -- Congress looked at these things and said, "How should they be taken care of?" How should they be involved?

And what they did was they created a very careful structured process through 183a, and that says you look at this. You identify "Is there a problem?" If there's a problem, then you look at if there's mitigation. If there's not mitigation that works, then you say that it's -- that it's an unacceptable risk.

THE COURT: So let me just cut you off now just because I think that's probably your argument for later.

MS. FOLEY GANNON: Yes. Sorry, Your Honor.

THE COURT: I'm trying to keep these kind of short answers, if possible; but you think the breadth -- that somehow the -- doing a broader review of these for national security is not warranted because it's already done?

MS. FOLEY GANNON: That's correct. And it's not warranted based upon anything that Mark says. He doesn't tie the need for this very, very broad stoppage to address every single wind project in the -- in the country that's before -- in the Clearinghouse process.

So that's -- that's -- it's -- I mean, it's like -- it's like the TSA saying that any time that there is something that is considered a threat, we shut down every airport in the country. That's disproportionate to the situation that has to be addressed, and it's unnecessary.

THE COURT: All right. Let me ask you: If, hypothetically, I were to find that DoD's actions violated statutory and regulatory guidelines -- or deadlines, do I need to reach other grounds for purposes of your preliminary injunction motion?

MS. FOLEY GANNON: If you find that there's likelihood on success on the merits on one of the grounds, I don't believe you have to reach the others at this stage.

THE COURT: You appear to be asking for a nationwide injunction. Obviously, those are now disfavored because of their breadth. Is there particular need here for a nationwide injunction?

MS. FOLEY GANNON: There -- I mean, there's -- we ask for two things: We ask for either a 705 stay, which still can be nationwide after *CASA*, and when -- we believe

that that's merited.

However, if the Court has concerns about that and is -- is -- wants to -- to design a more tailored remedy, we do not object to that because, in -- in reality, the plaintiffs before you and all of their members really constitute the vast majority of wind energy projects that are implicated by this rule.

THE COURT: And your association has constituents all over the country?

MS. FOLEY GANNON: That's correct.

THE COURT: Let me ask defense: How is DoD in compliance with the 75-day preliminary review deadline set by Congress?

MR. REN: Right, Judge.

So, historically, that 75 -- so it is a statutory 75-day period; and, again, I think, not to go back on our earlier discussion, but, to my understanding, those are ongoing and, you know, the 75 days should be met under the statute.

THE COURT: So you're -- well, what about plaintiffs, in particular? They're saying those 75-day preliminary review deadlines have not occurred within the time frame set.

Are you saying that, with respect to plaintiffs, they have occurred, or are you agreeing that you're not in -- DoD

is not in compliance with the 75-day preliminary review deadline set by Congress with regard to plaintiffs?

MR. REN: Right, Judge.

My friends on the other side are representing that the 75 days are not met. I would have to go back to my client and confer with them to confirm that that's the case.

Now, if that is the case, then that would be a ripe 701 -- 706(1) action by the developer, whose application is delayed, to compel action on that -- to compel preliminary review on that application.

THE COURT: Okay. What about the 30-day regulation for preliminary review and the 90-day MRT discussion deadlines? Is DoD in compliance with those?

MR. REN: Yes, Judge.

So I'll start with the MRT discussions. Right? The MRT -- again, I think, if we want to bifurcate it to preliminary review and then after preliminary review you have the mitigation discussions -- right? -- and then the mitigation discussions are what's currently paused temporarily because, to be able to have mitigation discussions, you need to be able to tell them what is required of these developers. Right? How to mitigate. And that's kind of the core issue -- is that we currently have a problem, specifically the Doppler effects, the radar interference, all of that. The problem is that it's a

problem that is currently in need of a solution, and the Department of War is currently working to identify that solution in consultation with the other agencies. Right?

But until --

THE COURT: So are you in compliance with the 90-day MRT discussion deadlines, then?

MR. REN: Yeah, that's what I'm -- sorry. Excuse me, Judge. That's what I'm speaking of -- is the 90-day.

THE COURT: And so are you in compliance with that?

MR. REN: No, Judge.

Because that is the pause. That is the pause.

THE COURT: Okay.

MR. REN: Now, with respect to the preliminary review time frame, the 30 days that you mention, Judge, our -- our reading of the -- our reading of the regulation is that those 30 days are not a 30 days to absolutely conclude the preliminary review. It's 30 days to initiate the process, and that has long been understood by historic practice and a legislative history.

So these regulations, to my understanding, have been in place since the inception of the Clearinghouse in 2011.

Now, since that time at -- the statute had actually originally provided for 60 days for DoD to do its preliminary review; and, in fact, DoD -- DoW said, "Hey, we

need more time than 60 days." So they asked -- so they actually asked Congress one more time. Then that's why that 60 days turned into 75.

Now, my friends on the other side read it as the 30 days to be -- 30 days to conclude it. But, if that were the case, DoW would have never asked Congress for more time to turn 60 into 75.

And historically -- oh, sorry.

THE COURT: And you'll have a chance to argue any of that, if you want to.

MR. REN: Sure. Absolutely.

THE COURT: But, again, sticking with just the 75-day deadline which was set by Congress, are you in compliance with that?

MR. REN: Yes, Judge.

That is, again, the part where my understanding is "Yes," but my friends on the other side represent "No"; so that's something that I need to circle back with my client.

THE COURT: All right. Then another question for defense: Plaintiffs discuss in their briefing events that started in October or -- excuse me -- August of 2025 with respect to pausing and then stopping the preliminary reviews and mitigation discussions and approvals and determinations of some sort.

Now, my understanding is that there's some wind and

energy projects that are in plaintiffs' group that await only DoD's countersignatures. Do you dispute that there's some that are just at the countersignature stage that are not getting signed?

MR. REN: No, Judge.

We don't dispute that. My understanding is that that is the case, that some are awaiting signature, but that signature cannot be signed at this matter -- at this stage because, in light of these new concerns, they may have to go back to the drawing board, when the solution has been identified, to ensure that these projects that are all waiting countersignatures have incorporated the mitigation requirements, whether it's, you know, the technology required, as ultimately identified by the Clearinghouse, ways to mitigate against these emergent risks.

THE COURT: Okay. Is it fair to say, just based on the record, that the -- historically, those -- once all that's left is for DoD to countersign, all the approvals and reviews have occurred. Is that right?

MR. REN: Not necessarily, Judge.

I would say, first, the Clearinghouse, of course, has to ultimately decide to sign it -- the final agreement -- but then that recommendation goes through a series of steps, all of which is, I believe, advisory at every step, and then ultimately to the FAA, who -- which, itself, makes an

independent assessment.

DoW's role in this entire process is advisory, and the FAA's process, even its ultimate -- what we're talking about here is the ultimate hazard determination. Is it hazard or is it no hazard? And as our briefing indicates, the entire -- none of that carries legal effect, in terms of a project can still go on, even if it receives a "no hazard" determination, but it depends on third parties to do with that information -- the hazard/no hazard determination -- what they will, whether it's insurers, whether it's local zoning commission's insurers, so on and so forth.

THE COURT: Okay. Another question for defense: So the current statutory and regulatory scheme already bake into it, as I mentioned to -- or discussed with plaintiffs, a national security review as part of the process.

I did review Secretary Marks' declaration, and can you explain to me why the individualized review that already exists, looking at national security issues that DoD already does, why is that -- why can't that continue?

MR. REN: Right, Judge.

I think this is inherently one of those things where -- it's not one of those things where it's -- you know, you're sitting on your feet, you're dilatory. That review is not occurring because of that. It's a problem that the Government has not yet been able to devise a solution to

yet.

And so the fact that, you know, you -- there might be a timer on a review, the problem -- you know, it's like an escape room. Right? You have to put together clues. You have to find a solution. But once the timer hits, if you haven't figured out the solution, you can't proceed.

THE COURT: Is it fair to say it's just with regard to wind energy?

MR. REN: It's with projects that create a Doppler effect. So I wouldn't say it's necessarily -- it's not necessarily discriminate towards wind energy, but because that is a unique characteristic of wind projects, that is something.

So, in effect --

THE COURT: Are there any other energy projects, other than wind projects, that create the -- I think it's -- you called did an "impactful Doppler effect"?

MR. REN: My understanding is that the overwhelming majority does come from wind energy. I'm not sure that there are any others readily, to my mind. Although I would not be surprised if there were.

THE COURT: All right. And one last question for defense: Plaintiffs do allege in their briefing that Department of Defense did not disclose its suspension of the Clearinghouse review process for wind energy projects

until April 2026, even though the policy began in August 2025.

If that's accurate, is there a reason that the industry was not informed and that inquiries by ACP were not responded to?

MR. REN: Right, Judge.

I don't want to speculate as to why an explanation might have come later rather than sooner. You know, it may well be that the Clearinghouse had thought maybe it would have figured it out in short order, but it's taken longer than anticipated. But that would be me speculating.

THE COURT: All right. Which I don't want you to do.

MR. REN: Right. And I don't want to do, which I'm clarifying that I'm not speculating -- I don't want to speculate.

THE COURT: So let me go through just my inclined rulings.

Now, again, they're just my inclinations. So it's a chance -- but I thought it would be helpful for you to kind of tailor your arguments, again, to respond to.

So, first, on defendants' motion to dismiss, which challenges a lot of the subject matter jurisdiction and jurisdictional issues here -- so, first, my inclination with regard to their argument that I don't have jurisdiction over

this matter, that it should go directly to the Ninth Circuit, I -- my inclination is that the jurisdiction channeling provision of the FAA Act 46100(a) does not strip this Court of jurisdiction based on what seems pretty clear Ninth Circuit precedent in *Ibrahim* and -- so *Ibrahim v. DHS* and *Latif v. Holder*.

Then the second issue that defendants raise is that this is a broad programmatic attack on DoD's Clearinghouse review. My inclination is, rather this is a -- not a broad programmatic attack, but rather a particular agency action that has broad application. So consistent with the cases that discuss that.

The challenge is to a single DoD policy of not reviewing wind energy projects.

Next is with respect to defendants' argument that there's no final agency action.

My inclination is that plaintiffs do allege a final agency action under 5 U.S.C. 706, which does satisfy both prongs of the *Bennett* test.

As to the first prong, the freeze is a consummation of the agency's decision-making process. The defense cites and the declaration of Secretary Marks states that DoD made the decision to refrain from executing further agreements and drafting new ones pending the outcome of DoD's internal methodology review.

And as to the second prong of *Bennett*, the review freeze is one from which legal consequences would flow, not only potentially or arguably to plaintiffs, but also there are legal consequences with respect to DOD's Clearinghouse program by suspending the Clearinghouse review and preventing DoD from notifying the FAA of national security determinations and, in the process, its violating regulatory and statutory deadlines.

And then, finally, on Article III standing, my inclination is that plaintiffs have met the requirements of associational standing at this stage of the litigation, and those were the grounds largely raised by defense.

Then with respect to the motion for preliminary injunction, I think this is fairly characterized as a prohibitory injunction, not a mandatory injunction, and that's because it seeks to preserve the status quo as it was before the alleged freeze on review of wind projects occurred.

And then, with regard to analyzing the *Winter* factors, plaintiffs make several arguments as to why DoD's alleged freeze of the review of energy projects must be set aside under 706.

My inclination is to address only the violation of the statutory and regulatory guidelines because I think those are clearly -- there's a -- that -- I think it's -- there's

strong evidence that they are violated, even at this stage, and I do think I need to give significant deference at this stage to the Government's allegations that they're not motivated by political considerations, specifically with respect to wind farms, but rather only national security interests.

At a later stage, perhaps determinations will need to be made regarding whether these national security interests are -- or what's going on here is more a pretext, but that -- at this stage I don't have enough information in the record, is my inclination, to support that argument, and -- but I do -- my inclination is that plaintiffs have shown a likelihood of success on the merits, both under 706(2) and 706(1), that the freeze violated statutory and regulatory deadlines and that they were both a final agency action and a withholding of agency action, in violation of law.

Further, with respect to the irreparable harm prong, I also -- my inclination is that plaintiffs have demonstrated irreparable harm will result in the absence of a freeze. Monetary damages are not available because it's against the Government.

And then, finally, that the balance of equities tips in plaintiffs' favor because they're only asking for the Government to resume review of these applications, not asking the Government to approve any applications.

So I -- at this time, I don't have a determination on or inclination as to the scope of relief; so I'll hear argument about that.

So those are my inclined rulings. Again, they're just my inclinations at this point.

Since it's -- I'll start with -- why don't I have, first, defense argue on the motion to dismiss. Let's take them separately. And you get to argue first.

Now, the half hour I'm going to have is for both of your arguments. So you have a half hour, and you'll have a chance to do a little bit of -- save time for rebuttal from that, and then we'll go into the preliminary injunction.

Go ahead.

MR. REN: And, Judge, by "half hour for both," do you mean both motion to dismiss and the merits or both parties?

THE COURT: Half hour each side for both motions.

MR. REN: Combined. Okay.

THE COURT: Is that enough time?

MR. REN: No, that's perfect.

THE COURT: Okay. You can kind of divide it as you want to, but I'll let -- on the motion to dismiss, you get two chances to talk because it's -- you're the moving party. On preliminary injunction, plaintiff gets a chance to rebut any arguments you make that -- if they want to.

They don't have to.

MR. REN: Sure. Got it.

So, Judge, first, starting with -- starting with the direct circuit review provision, as a threshold matter, they are seeking to compel a DoW process that is entirely subsumed within the broader FAA process, and that is a very meaningful distinction.

When there's a challenge involving FAA actions, including specifically here, the hazard determination process under 44718, it must be direct -- directly brought in the Circuit Court of Appeals because -- and both sides have put forth arguments. Right? And the Court has those. But we would note that the Government's articulation of the law on this matter is the only one that squares perfectly with every case cited by both sides, and I think that that's important because the rule is when you have one process entirely subsumed within another process and, as part of that broader process, a challenge to that broader process must go to the circuit, so too would a challenge entirely subsumed within it.

And that rule is highlighted by our cases. It doesn't clash with any of those -- any of the plaintiffs' cases.

Now, I know that --

THE COURT: How do you get around *Ibrahim*?

MR. REN: Right. And I believe that we addressed

that in our reply. So I believe that that is a case where the FBI had a No-Fly List. Is that correct, Judge? That's the No-Fly List case. Right?

The FBI puts out a No-Fly List case. Like, "These are the people we think are dangerous," and then DHS says, "Oh, we'll utilize that list. That's helpful to us because that -- we can use that list to find out who's dangerous and who's not dangerous." Right? But that's not a process. The FBI made its determination entirely separate of DHS's process. It might be beneficial to DHS. DHS might rely on it. It might draw upon it. But those are two distinct agencies, distinct processes, whereas here you have -- again, I think that case you might have -- and I think many of those cases you might have a Venn diagram, where the two circles might sometimes be touching or overlapping, because agencies obviously -- of course, they're always -- you know, agencies -- interagency coordination is common in the Government, and that's why you have these, you know, circles that are overlapping like a Venn diagram, whereas, in this case, there is one small circle entirely within that bigger circle. Right?

And so when you have a circle that is entirely subsumed within another -- within a bigger circle, here that's the case where there's an overarching scheme where DoW's part exists entirely within the FAA's process.

And so, because of that, a challenge to that smaller circle entirely within that bigger circle -- well, they say the bigger circle must go to the circuit. So the circle within that must go to the circuit.

And so too here is the case. Right? Because DoW's process exists entirely within FAA's process. It has no other independent bearing besides this FAA process. It is one part of this FAA process.

THE COURT: And the fact that there's separate agencies is not meaningful to you?

MR. REN: No. Because the cases we cite there were different -- they were different agencies.

In the cases we cite, multiple circuit cases, the circuit court has said, you know, whether it's the Bureau of Land Management or some other agency, its determination is part of the broader process. Because the broader process must go to the circuit, so too this must go to the circuit.

As to 706(2), the challenge, again, is to this alleged policy of inaction. And to that, again, we would maintain that it would -- it does not meet the final agency action prong, specifically when it comes to legal consequences. The second benefactor.

When it comes to -- and pardon me one second as I get my notes in order.

(Phone ringing in the courtroom.)

THE COURT: Just as a reminder, all phones do need to be turned off in court.

MR. REN: Right, Judge.

So to be final agency action, it must impose, quote, "obligations, prohibitions, restrictions," end quote, on the party. It must, quote, "command or prescribe that a party do something or refrain from doing something."

And that -- though we believe that those characteristics are unmet -- right? -- it does not prohibit -- this case is about delay. It's just that it's delayed. It does not require the applicants to do anything. It does not refrain -- it does not restrict them from doing anything. So we believe that, specifically, for that reason, it does not meet the qualities to be a final agency action.

Now, as to the -- as opposed to standing, we would just briefly say that we believe that, again, the organizational plaintiffs bring this motion. Right? This -- the developers themselves are not part of this motion. So the inquiry is "How does the organizational plaintiffs' standing rise and fall?"

And here, much of their harms, they allege, is the developers themselves. So they, I think, focus, then, in turn, to their standing in their own right, and we believe that, you know, of all those organizational plaintiffs --

they offer only a single plaintiff who purportedly meets the criteria for associational standing or standing to sue in their own right, and it's one organization. And their harms are just -- for purposes of especially being the sole forbearer of all their claims, it is not -- it is not proven up.

They allege that -- they allege that the renewable energy credits may be more scarce, that they will have to pay more for them. They have not made any showing of that, and, in any event, those are indirect harms.

And so we believe that, again, you know, they don't purport to even try to show standing as to any other organizational plaintiff.

I mean, just to have one be the one that all the other plaintiffs piggyback on, surely we believe a greater showing should be required.

THE COURT: But aren't they, under the law -- existing law at least -- allowed to do that? So even if one member of the organization can show harm, isn't that enough at this stage to proceed?

MR. REN: So I would say that I -- I would say that I'm not sure that standing -- there is case law there -- out there that says, "Standing for one, standing for all," and I think that that has been -- there are caveats to that, and I think one caveat is "standing for

one" does not mean "relief for all." So I do think that is a distinction that is meaningful.

But with that being said, even as to -- even if "standing for one" means "standing for all," again, we believe that standing requirements have not been met on the basis -- on their purported basis of standing, which is these renewable energy credits being more costly or difficult to obtain when they've shown nothing of that sort.

Now, I know that -- I know that, Judge, I think they mentioned -- I think they mentioned that they only need to allege it at this stage. I don't want to put words in their mouth, but I believe -- to the extent that there's a notion that they only need to allege standing, that they only need to plead the facts to show it, I don't believe that's true in the case of preliminary injunctive relief.

I do believe they need to prove that up to obtain preliminary injunctive relief for purposes of the motion -- for purposes of, again, you know, pleadings, complaints. That might suffice.

But, again, to obtain this extraordinary remedy, I'm not sure that that suffices.

Now, with respect to the mandatory versus prohibitory injunction, now the standard is already exceedingly deferential under the APA, but even with that, we believe that a likelihood of success does -- it is a higher burden

here to a clear likelihood of success.

A meaningful part, because, while they say that the injunction is just to go back to the status quo, the problem is that that runs -- and I think the parties can have different formulations of what the status quo means. I would -- we would submit that the relative status of the parties is just that: the status of the parties.

And, for example, to the developers themselves, their status before this litigation was a -- a pending wind application, and it remains pending.

And I think the guiding light -- and the Supreme Court has instructed -- is that preliminary injunction should preserve a case so that it can be determined on the merits.

And here, necessarily granting this preliminary -- quote/unquote "preliminary relief," would actually moot out -- there's a chance that it could moot out many of the claims on the merits so that we never get to the merits, which is entirely the polar opposite of what a preliminary injunction is designed to do.

And with respect to the purported policy --

THE COURT: Just explain what you meant by that.

So how would the DoD's determination moot out? Is it if DoD said "no wind" because it's too dangerous?

MR. REN: Absolutely.

So, Judge, I think, first of all, with respect to the

policy, that might not necessarily moot out. So let's say the policy were temporarily enjoined and then later on the Government prevails on the merits and then the policy comes back, or something of that ilk -- right? -- that would not necessarily moot out. But the developers, the individual projects that -- that -- the developers that are part of this lawsuit, their claims would moot out by nature of this injunction. Right? Because they name specific developers who say, "I want my application adjudicated. I'm suing to have my application processed." Right?

And so this preliminary relief, if wind -- if -- if, as a product of this preliminary relief, DoW begins reviewing these applications, then it may well be the case that those developers' claims are no longer around by the time the merits come around.

And so, in that case, those developers have to obtain the very relief that they seek on the merits before they get to the merits, which is the central anathema to be avoided in a preliminary injunction. The preliminary injunction is designed to do the exact opposite.

THE COURT: So when you say they may no longer be around -- what? They would go out of business or move onto a different project or --

MR. REN: No, no.

What I mean, Judge, is -- sorry -- if the wind review

proceeds, then, let's say the merits are sometime down the road -- let's say months or, for these purposes, say a year down the road -- right? -- but in the interim, if those developers' applications are processed, whether it's granted or -- sorry -- whether it's, you know, determinated that it poses a hazard or no hazard -- right? -- if those determinations -- or those applications are resolved, then, by the time this case gets to the merits, those developers' claims would no longer be around.

THE COURT: I understand what you're saying. In terms of the deadline, though, how is -- is it just, then, the Government -- DoD doesn't have to follow the congressionally mandatory -- mandated deadlines?

MR. REN: No, Judge, that's not our position, necessarily.

Our position is not the Government gets carte blanche all the time to do whatever. Right? Our position is -- and, again, we have not said that there is no jurisdiction full stop in any context. We have been very consistent in precisely how jurisdiction is maintained.

Even setting aside the circuit review provision, even just how these cases must proceed, we believe that a 706 -- we acknowledge that a 706(1) claim may proceed; but, again, they must be brought by the individual developers themselves, and that's a critical point.

And I believe maybe the central takeaway, if anything else, we want the Court to leave away -- here with is the 706(2) relief versus 706(1) relief.

And, Judge, I know you mentioned earlier -- and not to get ahead of it all -- right? -- but you mentioned earlier that the 706(1) claim -- that you were inclined to grant, but that is just absolutely categorically improper in this case even if 706(2) relief were granted.

And, actually, I think I'll springboard into that right now.

All right. So --

THE COURT: Are you still on the motion to dismiss?

MR. REN: Yes, I am.

THE COURT: Okay.

MR. REN: I am, Judge. Thank you.

So 706(2) and 706(1) are fundamentally different claims. 706(2) -- the remedy, and they each have their own statutory -- statutorily prescribed remedy. 706(2) says that the remedy is vacatur and/or remand. Right?

761 says that's the mandamus component. That's the compel agency action component. Right? That is saying -- that is the Court saying, "Agency, you must do this."

706(2) does not do that. 706(2) just says, "I'm setting aside this policy. I'm setting aside this action."

But to go one step further for that "and you must do this," that's entirely different, and that requires -- to obtain 706(1) relief, they must prevail on the 706(1) claim.

And they are -- again, they're fundamentally different. And with respect to the 706(1) claim -- what is that claim? It's fundamentally an agency -- it is the claim that a delay has been unreasonable. Right? It is a claim that delay has been unreasonable. So if you're suing to precipitate action on that delay, that is necessarily record-specific, fact-specific, and the APA requires that a case under 706(1), the agency action you're seeking to compel must be, quote/unquote, "discrete." Right? That is seminal Supreme Court case law. That's *SUWA, Southwest Wilderness Alliance*, and then *Lujan* reinforces that and says, again, in a 706(1), that 706(1) courts must take a case-by-case approach. Right? So the action must be discrete, and it must be case by case, and that accords perfectly with the statutory text which says that you may seek to compel agency action under the APA. Not "actions" plural.

So programmatic challenges are impermissible. Full stop.

In this case, as the plaintiffs arrange and present their case, this case is essentially an attempt at a class action, which is the polar opposite of case by case. Because they name a great number of developers.

It must be case by case and -- and this is why it must be case by case -- right? -- because if the inquiry is whether the delay is unreasonable, then the reasonableness of each delay inherently varies.

Now, as my friends on the other side point out and as we've pointed out, all the wind projects at issue are all in different stages. They're all different sizes. They're in different geographic areas. They present different types and varying levels of concerns.

So how can a court be expected to make a sweeping ruling as to the reasonableness of all their delays?

I don't -- you know, I think -- you know, I think my friends on the other side, one of their arguments is that evaluation should be project-specific, that, you know -- I think when they talk about the delay, they say the delay should not be painted with such broad strokes.

And to that -- if we're taking them at that, if the delay should not be pointed -- painted in such broad strokes, then the projects themselves -- again, because the APA requires -- the fact that the APA requires case-by-case review, it's a feature, not a bug, specifically for this type of action. Because it's not the case that -- and the Government doesn't believe and surely plaintiffs don't believe that, if any one particular project is reasonable, the delay is reasonable, then the delay on all the rest are

reasonable, and vice versa, that if one delay is unreasonable, that the rest necessarily must be unreasonable. They don't rise and fall together. They don't share common -- a lot of them don't share common characteristics. That's exactly why the APA requires case-by-case review is so that -- so that each project can be adjudicated on their own facts so that each delay is reasonable or unreasonable.

And so, because of that, this case is categorically the type of impermissible programmatic challenge that does not meet the discrete requirement, it does not meet the case-by-case requirement.

And so, because of that, at most, the Court should only -- only grant relief under 706(2), because, again, their 706(1) claims are impermissibly programmatic.

And then, finally, Judge, I think -- two more things briefly. One, as to the remaining factors, for example, the equities, which, you know, merge when the Government -- the third and fourth factors merge when the Government is the defendant.

To that, we would say, again, that there's a -- there's -- case law has made clear that there's no interest that is more paramount than national security; that right now there is an identified national security risk and the Government is actively trying to address it so that these

projects may resume and so that the Government can go back to processing these wind applications.

And so, to that, again, we believe the equities strongly favor us, even if the plaintiffs may have -- even to whatever extent the plaintiffs do have equities of their own. That the Government's overwhelming interest does favor that.

And even the equities alone find that the Government -- in favor of the Government, is reason alone to deny their preliminary injunction motion.

And then, finally, as to the scope of relief, again, I think circling back to the 706(2) versus 706(1) point, the scope of relief would be, at most, to temporarily enjoin the policy. But to go one step further and order anything of the Government that is necessarily 706(1) relief and that goes beyond the appropriate scope of relief because they do not have jurisdiction over the 706(1) claims.

Now, if they prevail on 706(2) and the purported policy is temporarily enjoined, that may, as a practical matter, result in the processing of winds applications.

But, again, while that's the natural result -- 706 -- while that's the result of 706(2), that is not the remedy of 706(2). The remedy of 706(2) is to set it aside, but 706(1), that's the -- say, again, 706(1) is -- that's the mandamus component, and that is the one that they've styled

their case impermissibly to proceed, again, essentially as a class action. Impermissibly.

They cannot -- it is not the case that every delay is unreasonable or every delay is reasonable. It is -- the APA specifically designed to eliminate this all-or-nothing approach.

I would reserve the rest of my time.

THE COURT: All right. Thank you.

And you did blend them together, which is fine, but -- that's fine.

MR. REN: Oh, I believe those were just jurisdictional. Right?

Oh, I'm sorry. No. The PI factors were not jurisdictional. You're right. Those do --

THE COURT: It's fine. You'll have another chance to address what plaintiff says. And then, on the PI issues, then I would give plaintiff some additional time, but it's all good.

Who is arguing for plaintiff?

MS. FOLEY GANNON: I am, Your Honor.

And do you want me to stand up at the podium?

THE COURT: That is usually the practice in my court. I know it's sometimes easier to -- if you have a lot of paper, it's okay to sit down.

MS. FOLEY GANNON: No, no, no, no. I'm happy to.

And, Your Honor, I'll start with the motion to dismiss arguments, and then I can go into the preliminary injunction or we can take a break. However it's best for you to handle, I'm happy to do it.

But turning to the motion to dismiss arguments, I would say, first off, I think your inclinations are exactly in line with the way that we read the facts and the law in the case.

First off, starting with the -- with the contention that this Court somehow does not have jurisdiction to hear this claim, this is really a straightforward APA case. This is -- we're asking the district court to decide whether an agency is taking unlawful action and if it's doing it according to the -- the processes and procedures that are required by law.

And as we'll discuss under the preliminary injunction factors, we believe that they cannot meet that burden and that it is -- it is unlawful for a number of reasons.

What they're saying is that somehow because this process is related to a potential order from the FAA, eventually that jurisdiction is stripped under 46110.

And you're exactly right: *Ibrahim* and its progeny answers that question in the Ninth Circuit. It says you look at "What is the action at issue?" And right now there is no FAA order. Plain and simple.

So there is no trigger for 46110 jurisdiction, and, in our minds, that answers the question.

And the Ninth Circuit has also dealt with the question, which some of the other circuits have talked about. You look at the inextricably intertwined and all of those other factors. The Ninth Circuit has clearly said that that's not it. We're talking about a jurisdictional statute. And that says in -- and 46110 specifically says it is an order by the FAA.

You are not judging legitimacy of an order by the FAA. So, plain and simple, there is no stripping of jurisdiction, and this Court is the appropriate place for this to be considered.

And that framing of the issue also takes care of the issue that somehow this is a programmatic challenge, that this is a challenge to the whole Clearinghouse process. It is not. It is a challenge to a discrete action. That action was the decision by the Department of Defense to stop the MRT process. And that was done in August of 2025.

That is not a programmatic challenge. That is not -- that is not what *SUWA* was talking about. That was not what was issued in *Lujan*.

This is a discrete action. It is a discrete action which has broad implications. But that's -- that's the nature of the action that the Department chose to take. So

that's why it has broad effects. Not because of the way that we're framing the challenge or that we're trying to reach a bunch of discrete actions. We're only trying to reach one action. The action by the Department of Defense to stop the process. That's it.

We're not asking the Court to say how the process should be carried out in an individual project. That's not before the Court at this time.

What is before the Court is this simple -- this simple challenge to one decision by the Department of Defense. That's not a programmatic challenge.

And the focus on whether we somehow are supposed to have to chose between 706(1) and 706(2), we also argue is just simply not based in the law that they are citing.

There is a distinction between the two, and we'll get a little bit more into this when we talk about the preliminary injunction, but -- but even setting that up as a jurisdictional bar that somehow 706(2) couldn't possibly survive here, we don't think that the Government has supported that in any way. And, again, it's a framing of the issue.

What are we challenging? We are challenging an agency action, the Department of Defense's decision to stop processing the MRT and to stop running the Clearinghouse process. That's all.

So that is -- that, we believe, you know, falls clearly within both 706(1) -- 706(2), as a challenge to a final agency action, and it falls under 706(1) because the implications of carrying out that possibility -- that policy results in an unlawful withholding of a congressionally mandated action.

So it fits into both, and there is nothing -- many of the courts that are even cited by -- by the defendants talk about the distinction, and they find sometimes that one applies and one doesn't, but that's not at issue here.

So we --

THE COURT: Is your challenge also your -- you're focused on the MRT, but is it also to the preliminary review?

MS. FOLEY GANNON: It is. It is. It encompasses the whole process, and, you know, it -- it's akin to if -- if -- if somebody makes a decision to close down a business, there's going -- that's going to be the decision, and then there's going to be a lot of things that happen because of that. They're going to decide at some point to fire employees. They're going to decide at some point to stop ordering things. They're going to decide at some point to close the doors, but the decision was a decision to close the business. The decision here was a decision to stop the process, and that happened in August of 2025.

For the final agency action prong of this, we agree with Your Honor's summation there that we meet both the benefactors. We think that there is a discrete action.

Again, it happened in August of 2025, and it has very real-world impacts. Not just on the developers, not just on all the members of the plaintiffs' organizations, but writ large. It impacts -- there are declarations before you that talk about the larger economic impacts, that talk about the impacts to the grid. There are multiple real-world harms that are happening immediately, and this will go into our preliminary injunction discussion as well about -- about the irreparable harm that will -- that will be suffered, but the legal consequences in *Bennett* is, we believe, very, very easily met here.

And then their final argument is regarding standing. We believe that that really just -- just has -- has really no merit.

The standing is clear for our members' organizations. Their plaintiffs are the ones that are -- their members are the ones that are immediately impacted, have been impacted since August of 2025 by the Department's action, and, therefore, they have -- they have associational standing and GECA has its own standing because it's impacted directly by the action.

So those are -- those are our discussions on the motion

to dismiss, and if you have any questions, I'm happy to address them.

THE COURT: Let me ask the Government: Do you want to respond to on -- just on the motion to dismiss?

MR. REN: Yes, we would.

THE COURT: All right. Why don't we do that, and then we'll go to the preliminary injunction.

MR. REN: And, Judge, I notice my friend on the other side took the podium. Would you like me to do the same?

THE COURT: That is the usual practice in my court, but if people have a lot of documents or need to refer to things, it's okay if you want to remain seated.

MR. REN: Okay. In the interest of convention.

Judge, so, first, on the 706(1) versus 706(2) distinction, they are distinct claims, and that's precisely the point.

Now, I don't know if the Court caught it, but I would like to really emphasize my friend on the other side just said, "We challenge agency action. That's all," quote. That means the 706(1) claims must be dismissed. They are challenging -- they just conceded they are challenging agency action. That is under 706(2).

Under 706(1), you are seeking to compel agency action that you have alleged has not yet taken place. That same

action that we have, again, time and time maintained is improper, is -- must be -- must proceed on a discrete individualized case-by-case basis.

They just said, "We challenge agency action. That is all."

If that is true, if we were to take them at their word, then, necessarily, the 706(1) claims must be dismissed at this juncture.

THE COURT: But aren't they seeking to compel DoD to comply with the statutory regulations? So isn't that -- isn't it both?

MR. REN: Right. That's what I'm saying -- is that, first, there's -- there's a bifurcation; right? There's one -- there's the policy, the purported agency action, which is what their arguing is what we're directed against, is striking down the policy, setting aside and enjoining the policy.

Then there's the entirely separate 706(1) component of compelling the agency to act in some way, shape, or form. And, again, that must be discrete particularized. That must proceed on a case-by-case basis.

And as I mentioned earlier, Judge, in terms of DoD -- in terms of DoD processing these applications, 706(2) relief, if the purported directive policy is vacated, then -- or enjoined at this stage, then, again, the result

of that may well be that they do resume the process. But, again, to get vacatur or -- sorry -- mandamus relief under 706, that must be obtained under 706(1).

So what they're doing here is they're presenting their claim as, again, challenging agency action under 706(2); but, again, they're asking for both 706(2) relief and 706(1) relief. So it's almost a bait-and-switch, where, again, they said, "Hey, we made a 706(2) claim. We have a viable 706(2) claim. Therefore, on the relief, give us 706(2) and 706(1)."

They cannot do that. They can only obtain, at most, the 706(2) relief not the (1) relief.

THE COURT: So just a couple of questions on that. I mean, there are some cases where you can have both. Here, aren't they both challenging the agency action and the inaction?

MR. REN: Yes, they are.

So they're -- as their complaint is styled, they are challenging both -- they are both, A, challenging the purported policy -- that's the 706(2) claim -- and they are seeking to compel action on certain identified applications, as well as the whole process. That's the 706(1) component.

And the law's clear that the 706(1) component must proceed case by case. The challenge must be discrete and it must be to a particular action.

And, again, that necessarily has to be the case because whether -- because 706(1) inquiry, that's "Is this delay unreasonable?" And the reasonableness of that delay, again, that's particular to the facts of that case.

I mean, if you can take, for example, a picture on one end of the spectrum, extreme end of the spectrum, a fairly small operation on the very much innocuous side of things, you know, relatively, that claim, under 706(1), may well be -- have a persuasive case that the delay there is unreasonable, whereas, on the opposite end of the spectrum, if you have, let's say, a very, very big project next to -- a very big project that presents a lot of inherent risks that are next to a sensitive military base, for example, then that might be -- then the delay there might be reasonable. So, again, they don't rise and fall together, and the APA requires that they each be considered individualized.

So, again, the Court -- they allege they challenge agency action. Yes. That's under Section 706(2). But, again, any mandamus relief that the Court would issue would come from 706(1), but their mandamus action is, again, impermissibly pled because it is not discrete case by case, as the Supreme Court has made clear time and time again that it must be.

THE COURT: Let me ask you: Just even with your

hypothetical, the complicated, potentially national security implicating project, big project -- "little innocuous project," in your terms -- aren't they just asking for DoD to do its statutory obligation of review for each of those projects? Because they are -- they are different, but the policy is the same. If they pause review as to both of these policies, even though one is, as you said, innocuous, why isn't that both inaction and also action? "We're pausing but we're also not acting on these reviews that we have a statutory obligation to do by Congress."

MR. REN: Right, Judge.

So the pause, again, that is challenging -- to the purported policy itself, that is under 706(2).

So when I talk about 706(1), again, that's the mandamus component, that's the Court's -- the Court going a step further and saying, "You must take action." Again, that must proceed case by case. Those cases must be brought by the developers themselves if there were a need to.

THE COURT: So the organizations on behalf of their developer constituencies cannot bring those.

MR. REN: I don't want to necessarily say it. I'm not the entirely sure of it, would -- if they -- if the organization somehow had associational standing, it would be for one developer. Again, in a case-by-case basis.

The point is that the developer themselves -- it's one

record. Right? "Here are the facts of this case. Is this delay reasonable or not?"

And that's the point I think your judge was -- Your Honor was alluding to, which is the policy, again, applying to the two ends of the spectrum -- right? -- on the two ends of the spectrum. The relatively innocuous versus the more large-scale one that presents maybe -- much heightened concerns. That's the point. Right?

The same policy, it may well be -- a court may well find one reasonable and one unreasonable. The very point of the APA is that they don't rise and fall together.

That is the point of the 706(1) jurisdictional limitation -- right? -- is that it's not the case that, if the innocuous one should -- you know, must go forward, that the Court should compel action that it's the case for the other -- the large-scale one and vice versa. That's the very point.

THE COURT: But here, again, as I understand the plaintiffs' challenge, it's not to the really subject matter of the innocuous or more complicated project. It's a question of you have a statutory obligation to review and make whatever determination DoD thinks is appropriate, taking into account national security, and the innocuous one, perhaps, can go forward. Perhaps the complicated one has -- needs to engage in a lot more mitigation than DoD is

willing to give a green light, but it's just that process that has been stopped. So they wanted to go forward, if I understand.

MR. REN: Right, Judge.

And, again, that's the 706(2) claim. That's the 706(2) claim. That would -- again, the attack on the purported policy, that would apply to both projects; but, again, the 706(1) claim is to compel action on a particular project. So that necessarily has to be one of those projects.

THE COURT: Okay.

MR. REN: So that's, I think, the distinction there.

And also, again, I think that to the -- on the jurisdictional bar -- sorry -- on the direct circuit review provision, the 706(1) claim is also -- all the -- I mean, if there were any claim that must go to the circuit, it would certainly be the 706(1) because they are -- they're seeking to compel a step in the broader FAA process. Right?

The DoW's determination is part of the FAA's ultimate hazard/no hazard determination. So a delay -- a purported delay on DoW's part necessarily means that the FAA's entire process has been delayed.

So a challenge to the circuit on the FAA's overall delay would necessarily include a review of DoW's delay. And, again, exclusive jurisdiction is just that: exclusive.

So this case -- if this 706(1) claim can be pled in a way that the circuit can hear it, then, necessarily, it is improper here.

And I will say -- I'll make a note too on the 706(1) claim that, in response to what I had said about the case law and, again, the bigger circle within -- the smaller circle within the bigger circle, they encountered with, I believe, a single argument, which is "There's no FAA order." And the statute says that, on an order, this goes -- orders may be reviewed by the circuit. I believe that's their argument -- is that because there's no final FAA order here that's unreviewable, that point is belied by the case law.

*TRAC* itself -- the seminal case, the *TRAC* -- the *TRAC* factors that govern 706(1), the *TRAC*, which my friends on the other side and we rely on heavily, both, as seminal precedent, that case, in fact, arose in a case where there was no FAA final order, where that case -- it's -- there the challenge was to an unreasonable delay.

706 -- *TRAC* -- the *TRAC* factors get at unreasonable delay, and it arose because someone was challenging -- someone was challenging seeking to compel agency action, even though the jurisdiction provision is saying it would go straight to the circuit, was, again, on an FAA order, and *TRAC* says, "No, no, no. When it says 'order,' that means everything subsumed within that -- within that is part of

the process."

So the argument that, because there's no final order that this provision doesn't attach, that's just, again, categorically belied by *TRAC*, which itself, on those facts, arose in the context where there was no FAA order, where the challenge was, "Hey, we need an order," which is very -- which is exactly the situation here.

And I don't know if I'm out of time, but --

THE COURT: All right. I -- I've not been policing it very closely.

But let's go now to the preliminary injunction.

How much time do you think you need?

MS. FOLEY GANNON: I think I can -- you know, we can probably talk for 10 or 15 minutes.

THE COURT: And then you'll get some rebuttal time.

So why don't I give each side -- well, actually, we've already taken over that time, but how about 15 minutes?

And you'll get 5 minutes for rebuttal, if you want.

MS. FOLEY GANNON: Okay. That works, Your Honor. Thank you.

THE COURT: Go ahead.

MS. FOLEY GANNON: Thank you. So I think the framing of the issue that we've been talking about under the motion to dismiss also really helps decide the preliminary

injunction motion as well.

When we're looking at, again, what is -- what is the nature of our challenge, our challenge is to a -- it is, first off, we're asking for a prohibitory injunction, as you indicated earlier in your preliminary thoughts on this.

We are not asking for any particular action to be taken by the Government, except for that which is required by the statute and the regulations.

And so, when we say we are trying to get the status quo reinstated, we're talking about the status quo that is required by the statute.

So if the DoD, following this hearing, is required to restart its Clearinghouse process, it is doing so because of the congressional mandate, not because of this order. This order will just take away the policy that stopped them from doing what they're supposed to be doing.

So, again, that falls squarely within the prohibitory nature and the case law that says that that is appropriate. So we are not in any sort of heightened standard here.

And then, turning to the merits of the case, if we -- if we first start talking about the 706(2), we've talked a little bit about the final agency action, and I'm -- and I'm happy to address any further questions you have about that, but I think we've -- we've talked about how we fit into the *Bennett* factors; so if you have any issues about that, I

can -- I can address them, but assuming that we have that shared understanding here, what we're really looking at is -- is a -- is a challenge to the Government's decision to halt a process and -- and, under 706(2), what the -- what the Court needs to look at is what is the rationale explanation that is given by -- or what is the reasoning that is provided by the Government? And it has to be at the time that the decision was made.

So we're talking about, in August of 2025, what was the basis for the Government's decision to stop the process?

We have not seen anything. We don't know of any sort of record that exists. They have not referenced any record that they're going to provide. Maybe they will. But at this time we don't have any justification. The only thing that we have is the Marks declaration, which the Government attached to its motion to dismiss, and it's -- and its opposition to the preliminary injunction.

But that is pure post hoc rationalization, and the case law is explicitly clear on this.

THE COURT: Let me ask you about that, though.

If the declaration does, kind of, have a looking-back -- just, I guess, part of it does look back at the -- the reason that we stopped this was to take a look at national security issues, isn't that -- and it talks about things that were going on at the time -- so I understand,

sort of, that could be pretext, that could be -- there could be other motivations for that, but isn't the declaration sufficient that it -- because if it -- it builds on what was going on at the time. At least that's how it's presented.

MS. FOLEY GANNON: That's how it's presented, Your Honor, and I understand, sort of, the intellectual, like, appeal of that because -- because we do have a person who was involved in the decision. So I understand that.

But the case law is really very clear about post hoc rationalizations. Before an agency makes a final determination, it has to have a rational basis for it, and it cannot later on, in litigation, provide that explanation.

There are ways that agencies deal with this problem. Sometimes, when they did not have a rational basis when they made their decision, it's overturned and it's remanded to them, and then they can try to make that decision again with a rational basis.

But when we're talking, again, about 706(2) challenges, the law is very clear it has to be the rationalization that existed at the time that the decision was made.

Marks does not say that. He can't say that in his declaration, which was just prepared, you know, a few months ago. So nothing speaks to what happened in August.

THE COURT: Although isn't he saying, though, that "When I looked at this, I got concerned, and so we paused

the program"?

MS. FOLEY GANNON: He does say that, but he doesn't say that that was the reason at the time -- I mean, it's -- it is -- again, this was not put together in August of 2025. He didn't -- he did not have that set forth.

THE COURT: But isn't he, arguably, the witness to the August 2025 -- so he doesn't have to -- I mean, we don't have to always have something in writing, do we, to justify the agency action, as much as that would be good?

MS. FOLEY GANNON: We normally do rely on things in writing. We don't have to have things in writing.

I also think that, if you go very, very carefully through his declaration, it's hard to know what was he thinking in August of 2025? What was -- then he talks about some things he did in December and he talks about things that he did later. I don't know, and I don't know that this Court can know.

So, in the absence of being able to be sure is arbitrary and capricious, and I think there can't be an assumption that should be made in favor of that.

And, again, we're not asking that the Marks declaration be completely discounted in this case. I mean, it's being offered for other purposes as well. Right? It's being offered to demonstrate the harm that they claim that will

happen. And it can even go towards the 706(1) claim in a different way than it can a 706(2). But I just think that, in the 706(2) context, it's very important to say that there has to be evidence of the reason that the agency took the agency action at the time that it took it.

And what we have in the record before you today simply doesn't address that, and maybe they can, but right now they don't have it. So we believe that we have shown a success -- a likelihood of success on the merits that -- that it's arbitrary and capricious because it's completely unsupported by a contemporaneous record, and we believe that, even if you credit the reasons that Marks gives for it, even if -- even if those were the reasons that he was thinking of in August of 2025 when the decision was made, they still don't line up with this incredibly broad solution.

As our colleague was just talking about, there are -- there could be innocuous projects that are caught up in this, and why should those projects be caught up in this universal ban? That doesn't speak to any problem that Marks is talking about. That is -- that is -- you know, that's bringing a sledgehammer to a walnut. I mean, it's completely out of proportion.

And, again, we can go back to the TSA example we were talking about earlier this morning. It would be like every

time there was some sort of scare that happened in a specific airport, we shut down all airports. That doesn't happen because the TSA has a broader mission than that. They are supposed to keep things running and they're supposed to respond to evolving risk.

That's what the DoD does, and the DoD has a process for doing that, and it does it on an individual process basis.

And if -- when he was talking about that in the very complicated project, which might have some issues that -- that are implicated by radar, then that project -- there can be an individual decision. The innocuous project, being caught up in it, that's arbitrary and capricious by its nature.

THE COURT: So the overbreadth, as alleged, is arbitrary and capricious, but that's -- that's different than the post hoc rationalization or the two entwined?

MS. FOLEY GANNON: They're both justifications for why this decision should be overturned.

So, yes. I mean, I believe that, again, Marks' decision is post hoc rationalization and can't -- can't really be relied on for the 706(2) justification; and, again, even if you take it into account as that justification, then it's overbroad, and so it's -- it is very akin to the types of actions that have been overturned in *New York v. Trump* and *Louisiana v. Biden* and *Renewable*

*Northeast*. You know, there's a whole slate of cases that have looked at this.

When the Government chooses to use a sledgehammer to deal with a specific problem, that's arbitrary and capricious. And that's exactly what we have here.

So I think that, again, things in -- and then we've talked about -- you talked about the statutory deadlines, the regulatory deadlines, and the Government, I believe, has conceded those deadlines are simply not being met, and that is not allowed under the APA; and so, just on that grounds alone, we have shown likelihood of success on the merits and, therefore, we should -- we should be granted preliminary relief.

In turning to the 706(1) versus 706(2) issue again, I think, Your Honor, we absolutely agree with the frame that you were just providing. We are bringing separate challenges, and they're really two sides to the same coin. And the reason that there's two sides to the same coin is because of the nature of the action that the Government took here. The nature of the action that was taken was to stop the processing.

The Government keeps talking about whether this delay is reasonable or unreasonable and it has to be looked at in an individual-projects context, that's simply not true here. Because what we're talking about is we're talking about a

blanket ban. That ban doesn't take into account the individuals of the projects, as was just conceded.

Again, the innocuous project gets caught up just like the really complicated project, and that is not an allowable -- allowable process under the APA. And so what we're really asking for is not that the Court say, "You, DoD, have to make a specific decision on a specific project." We're saying, "You, DoD, have to stop unlawfully withholding the action that Congress mandates you." And what does Congress mandate? Congress mandates that you do this Clearinghouse process, that you go through and you consider the impacts, you consider the mitigation, and you make a determination. That is all we are asking for, and that is certainly allowable and it's not -- we have not conceded that we are only challenging the action. We are also challenging the impacts of that action under 706(1).

And, again, we believe that it falls squarely within the unlawfully withheld provision of 706(1). We also believe it's unreasonable delay if you start looking at -- at the individual projects that have been caught up in it; but, again, we don't think that you need to get there to be able to resolve this case.

THE COURT: And let me ask you: In terms of harm to plaintiffs, is the inaction, even if the ultimate outcome might be to deny your clients' project or projects --

MS. FOLEY GANNON: Yes.

THE COURT: -- that there's harm that is associated with not knowing?

MS. FOLEY GANNON: Absolutely. Absolutely.

Because, again, there is -- this is, again, another reason, under the APA, that there is so much damage that has happened here -- is because there's been a really long established process since the Clearinghouse has been established in 2011, and it's been moving in a predictable way. And so there is really very significant reliance interest that -- that all of the developers, all of the members of the organizations have relied upon. And here what's happened is that that reliance issue -- interest has just been completely disregarded, and it is -- it's not being processed.

So if there was an individual determination that -- that an unacceptable risk existed, then we would want to know that. The damage that is happening right now is just this indefinite hold, which nothing can proceed.

And then the rest of the factors, I think -- again, Your Honor, in your summation, we -- we absolutely agree with you. We believe that we have shown significant harm that is immediate, that is happening, that is real, and that the reasons why the public interest weighs heavily in favor of a preliminary injunction at this juncture.

So, if you have any other questions, I'm happy to answer them.

THE COURT: All right. Thank you.

MS. FOLEY GANNON: Thank you.

THE COURT: And, otherwise, did you want to respond on the preliminary injunction?

MR. REN: I'd be remiss not to.

Judge, first of all, I would just, before I forget, make the point that -- and my colleague, you know, said that we characterized the one end of the spectrum as "innocuous." I would add an asterisk to that, which is "relatively innocuous." Right? I mean, there's obviously a spectrum of things, but that's not to say that even the relatively innocuous projects might not still impose -- come with those national security risks and considerations and might still need -- may well need to be mitigated, dealt with, assessed, reviewed in -- you know, in the ordinary course.

And if there were ever a time to be careful and be extra careful, it is here with issues of national security.

But, to that, everything they are saying -- again, with the policy, they're saying, "Well, we're challenging the policy. The policy goes towards both projects. The policy is broad," so on and so forth. Again, that is 706(2) claim, not the 706(1) claim. That is not the mandamus action. It is striking down -- they're trying to enjoin the policy,

which, again, may well have the effect of precipitating review on all ends of the spectrum; but, again, that mandamus component of the relief is simply legally untenable because that mandamus relief must be brought in a case-by-case basis.

THE COURT: Let me ask you: If Assistant Secretary Marks just said, "We're going to just do an outright ban on anything with a Doppler impact," so that would uniquely affect wind farms, is he allowed to do that? Would he have to get congressional approval before doing something like that, or how does that change the posture?

MR. REN: Sure. If it were an outright ban, and I -- I don't want to opine too much on a hypothetical not before us, but if it were an outright ban, I think, one, that would be -- that would be under -- that would be a lot more convincing of a 706(2) action, but also, under 706(1), in that case, if it were an outright ban, then not only would it be unlawfully -- it wouldn't just be unreasonably delayed. It would be -- it would be withheld, which is a much higher bar, and I think that, if it were an outright ban, they could -- a plaintiff could bring an action under that as well.

THE COURT: You can bring it under both, both provisions?

MR. REN: Right. And I'm being intellectually

honest with that.

THE COURT: All right. Thank you.

And that hypothetical is just a hypothetical.

MR. REN: Sure. Absolutely.

So, again, everything they are saying with respect to the policy is under 706(2). Again, 706(1) -- and I want to scream this from the mountaintops if I can. 706(1) is categorically improper.

And as to the merits of the 706(2) action, I think their biggest emphasis is that it's post hoc. Right? It's post hoc.

But I'll read what Ninth Circuit case law is on post hoc. "The rule barring consideration of post hoc agency rationalization operates when an agency has determined" -- sorry -- "has provided a particular justification for determination at the time the determination is made but provides a different justification for that same determination when it is reviewed by another body." That is -- end quote.

That is not the case here.

THE COURT: So let me ask you, though, what -- with a complete void of information about what motivated the decision to pause review back in August of 2025, how -- doesn't -- we don't have anything in the record. They're sort of alluding -- I'm reading into Assistant Secretary

Marks' declaration that arguably it's referring to what he was thinking at the time, but I'm not sure it really expressly says that. But what is the -- so the absence of justification, then, isn't it necessarily post hoc if now there's a rationale that's expressed but that there's no evidence that it was the rationale used at the time?

MR. REN: Judge, I went to bed last night hoping you'd ask me this question. I appreciate that.

THE COURT: All right.

MR. REN: Judge, this is precisely why this should be a 706(1) action case by case, reviewed on the facts, because -- and here is why my colleagues want this presented as a 706(2) claim: Because 706(1) is a picture -- is a "shoe fits" for this claim.

On 706(1), here is what Ninth Circuit controlling case law says -- it explains that, when a suit challenges agency inaction, district courts can consider supplemental statements of an agency position because there is no date certain by which to define the administrative record.

That's precisely the point.

When you're challenging agency inaction, agency inaction, by its very characteristics, has not been explained.

So, necessarily, is the case -- the Ninth Circuit is instructed -- is explaining that it's necessarily the case

that when litigation arises then the agency gets to explain why it didn't act. So that's -- that, in fact, makes it clear why this case needs to be brought on an individualized case-by-case basis and why this is, at heart, a challenge to agency -- agency inaction.

And to that I will also add that on the 706(2) claim it's not necessarily the case that the agency didn't provide any justification and the Marks declaration is the first time that any of this is coming up. That's not the case.

Again, I think, as our briefing shows, DoW has consistently given the same -- again, post hoc is when you give one rationale the first time around and then, in litigation, you change your tune.

DoW has been consistent the whole time. It has -- it has not been, perhaps, as detailed as the declaration before the Court has; but, again, these -- this information is very sensitive and, at the time, much of this information was classified. And at the time the agency did -- did provide justification, it did tell developers, it did tell interested parties: "Hey, there are national security risks. National security is the reason we're doing this."

They even went specifically enough to cite -- they mentioned Doppler effect. They mentioned the Doppler effect, and they mentioned emergent modern day threats. So this, we would submit --

THE COURT: Where is that in my record: What they were doing in August of 2025?

MR. REN: Right. Well, I believe that -- so at the time, in August of 2025, while this might not have -- the explanation might not have yet come, in terms of just the delay being a matter of fact that the -- that the agency had not been moving forward on these applications, but -- again, the agency did explain itself in the ensuing months, as developers inquired, and they said consistent --

THE COURT: But not until now.

MR. REN: No. No. Not until, I believe, months ago.

In our filings, I believe, it does show in -- in the plaintiffs' filings, it does show, again, communications between the parties, between DoW and the developers, that it had -- DoW has explained, "Hey" --

THE COURT: But not until April of 2026; right?

MR. REN: I would have to double-check that, but I believe that -- the agency -- I believe that, yes, the first time -- I believe the first time -- regardless of when exactly that date is, before the date of this declaration, that whenever that first time is, until now, the agency has been consistent as to the reasoning. It is not -- it has never changed its tune. It has always maintained the same justification, which is national security; and, again,

specifically enough to mention modern day threats and the Doppler effect and, I believe, radar mitigation.

THE COURT: Let me just ask a couple of follow-up questions to that.

So you said that it's always been -- even back in August of 2025, for which there's a complete void of evidence about what anybody was thinking at the time -- certainly, in some of the other cases, *in camera* classified information has been provided to the courts so they can assess more what people were thinking at the time.

Do I have anything that tells me -- you're saying that's what they were thinking.

Where do I get that from?

MR. REN: Sure, Judge.

I believe that those deliberations, if available -- for example, you know, in a -- whether it's just agency internal documents, kind of deliberations to that ilk, that would be part of the administrative record on summary judgment.

THE COURT: And so it's not currently in any of the materials I have, though. Is that fair to say?

MR. REN: Yes, that's fair to say.

But, again, I mean, what we have is the Marks declaration, which, as you mentioned, Judge, is looking back.

But also, as you mentioned, he is the person uniquely

in that -- as head of the Clearinghouse, he is the person uniquely opined to speak on the rationale at the time.

But, again, I think that, because of that, because of the nature of, you know, right, this APA action and that these cases are decided on the record, it's hard to say that -- it's hard for the Court to rule that this is -- this -- I think what we're getting at is, is this contrived, is this -- whatever. Right? It's hard for us to go on this path without having that administrative record.

So especially at the preliminary injunction phase.

THE COURT: And let me ask you: With regard to -- I think plaintiffs make the point in their briefing that all that had been said, really before the August 2025 pause, was -- were statements really by the Administration saying, "We're shutting down the wind farms," or something to that effect, or "We're not approving any wind farms."

MR. REN: Judge, I'll --

THE COURT: So that, again, I think -- should I consider any of that material or not?

MR. REN: Judge, the law says "No." Right? The judge -- the law is clear that -- and I believe Department of Commerce makes this clear, which is, when an agency makes its decision, there are always going to be political strings at play. There are always going to be political justifications lurking in the background, and we can never

decide if, you know, every case is just to be based on potentially ulterior motives or additional considerations. Right? The question is whether the agency action rises or falls based on the administrative record itself.

And in *Department of Commerce* itself -- I know my friends on the other side say, oh, but they considered statements. Right? They considered statements of bias, or whatever, that -- in *Department of Commerce*, it was part of the administrative record. It was part of the ultimate administrative record.

So the Court, even in *Department of Commerce*, decided the case on the record. So the question -- so --

THE COURT: In that case, were there any other -- here we just have the absence of statements, though.

MR. REN: Right. Well, we have, again, the communications between the Government and the developers, and we do have the Marks declaration.

THE COURT: But, like, nine months later; right?

MR. REN: Sure. But absent -- absent anything in the record of -- of, let's say, ulterior motives or political leanings, or whatever, absent anything in the record, again, the question is can -- as long as the administrative record itself -- as long as the Government's purported justification is defensible, is not arbitrary and capricious, that is the end of the inquiry.

THE COURT: And it's -- who is -- and it's plaintiffs' burden to prove that it was an ad hoc justification at this stage for the preliminary injunction?

MR. REN: Well, yes. Because in the APA -- in an APA case, the plaintiff always has the burden to show that the -- which, under the -- a standard that is, quote, "extremely deferential," end quote, to the Government, as -- as a baseline. So, yes, we would submit that they certainly bear the burden, including on that issue, at this stage.

THE COURT: Okay. Go ahead.

MR. REN: Right. So, for that reason, 706(2) is -- it's not post hoc. And, again, 706(1), this case should -- should proceed case by case for this exact reason. Because in a 706(1) claim, the agency would get the chance to explain itself as a matter of course because the very inherent nature of a 706(1) claim is the agency. There would not be an explanation. So the agency is entitled to one in litigation.

I mean, if the supposed error is that the agency is lacking an explanation, that explanation has to come from the agency, not from plaintiffs' insertions of statements that may be made by an executive official publicly for whatever reasons.

Again, as to the breadth, that goes to the 706(1) claim. When they challenge the spectrums of the policies,

that goes to 706(1). Again, the most the Court can do is vacate -- sorry -- temporarily enjoin at this stage the policy, which, again, would apply to projects of different sizes, types, so on and so forth. But that one step -- and, again, that might naturally result in those applications being processed; but, again, as a matter of form, it is categorically improper to order that take action/compel action mandamus relief, because that is, under 706(1), which is categorically improper, it must proceed case by case individualized. Because the reasonableness inquiry is inherently a fact-specific one, a -- a record-specific one.

And to that I would just finally note, on that relief, not a single case that plaintiffs cite, to my knowledge -- and I'm not aware of any -- provide section 706(1) relief. All of those cases that -- where the Court has cited in favor of the plaintiffs and against the Government, they only preliminarily enjoin or vacate the policy. They do not order, in any way, shape, or form, that 706(1) mandamus action. That's not a characteristic in any of the wind cases.

Although those wind cases are, you know, subject matter, dissimilar in a lot of ways. But in terms of relief, none of them were 706(1) relief.

And plaintiffs say they only seek a prohibitory injunction to that point. If they seek a prohibitory

injunction -- if that's the case, then, yes, there's no need to opine on the 706(1) claim. Because 706(2) is prohibitory. 706 is prohibitory, but 706(1), again, is directing the Government to take action. Because they say they only seek a prohibitory injunction, I mean, by that representation, they're not seeking 706(1) relief.

And so, again, consistently, throughout this, they have -- all of their arguments are directed and fall under the umbrella of 706(2). It doesn't change the fact that under 706(1) cases, the cases must proceed case by case. It must challenge a discrete agency action, singular, and it must rise and fall on that record.

THE COURT: All right. Thank you.

Plaintiff.

MS. FOLEY GANNON: Thank you, Your Honor.

I find it interesting that the Government is so focused on the distinction between 706(1) and 706(2) because I think -- I think it really is involving a mischaracterization, first, of 706(1), and also the record before you.

One of the things that my colleague keeps not referring to in 706(1) is "unlawfully withheld." It's talking about "unreasonably delayed." We claim both "unlawfully withheld," which means that -- "unlawfully withheld" means that there is a duty that you are owed. Here, the duty is

for the Clearinghouse process to go forward with timelines that are required by statute, by regulations, by DoD guidance. That is being unlawfully withheld. So that is a violation of 706(1). That, and the fact that it's being done because of a policy, which can be challenged under 706(2).

And, again, there are -- in *New York v. Trump*, if you look at that case carefully, it goes through and it talks about the distinction between 706(1) and 706(2), but it doesn't say that they're mutually exclusive when the Government chooses this type of policy, which is a blanket ban.

So I think it's very important to really -- to really home down in -- on what specifically our claims are and what is damaging us.

So we believe that the record before you supports that there is both a violation of 706(2) -- because they adopted a policy which is not justified. The only justification given is post hoc rationalization. It doesn't matter whether there's a changing or refinement. I mean, the courts have recognized that there can be some further explanation given for a reason, but you can't -- you can't further explain nothing. There is nothing from August of 2025.

And you're right, Your Honor, the next -- the only

communications we are aware of start in April. Yes. Nine -- you know, many, many months later, and they still don't address it.

And the fact that -- that somehow that -- that the fact that they don't have a record -- if I understand what the Government was just arguing, somehow it says that, then, this must be a 706(1) claim. I guess, I'm just kind of lost on how that even -- how that even lines up. Because the fact is there was a final agency action. It was the adoption and the directive of following this policy of stopping the Clearinghouse process. That's the action. There is no record. The fact that there is no record doesn't change that into only a 706(1) claim.

And, also, I think it's interesting that the Government just recognized that, if -- if -- in your hypothetical, if the Department decided to have a blanket ban that it adopted and just said, "We're never going to process these again," what I heard the Government say was that 706(1) would then also come into play because that would be unlawfully withheld.

Well, in the Ninth Circuit, if you look at the *Varniab* case, they say that a freeze can equal unlawfully withholding.

So we think that, again, the totality of Ninth Circuit precedent, Supreme Court's precedent, the record before you,

the facts before you clearly show that there has been a violation of the APA; that there is a final agency action which is arbitrary and capricious, not according to law; that they are unlawfully withholding a process that is mandated by Congress, and both of those things are not allowed under the APA.

And in our -- in my earlier discussion under the PI, we didn't really get into the remedies. I'm happy to discuss those with you if you have questions on those, Your Honor, but essentially what we're really asking for is, again, a direction that tells the Department of Defense that it needs to start the process, which it has been carrying out since 2011 and which it stopped or paused in August of 2025, and that, during the pendency of this litigation, they go back to that process.

Again, there's not going to be -- national security interests can be taken into account. They will be done on a project-by-project basis, just like Congress directed them to, just like they have done in the past, and we're not asking that the -- that the Court get involved in any of those national security determinations.

We're simply asking that there be a direction that they have to follow that process, and that we ask for court oversight simply to make sure that that direction is being followed. We're not asking for oversight of any particular

decision.

THE COURT: Now, let me ask you: You mentioned a 30-day report to the Court.

MS. FOLEY GANNON: Yes.

THE COURT: What would, in your view, be appropriate to include in such a report?

MS. FOLEY GANNON: An aggregate of what the Department has done in that 30 days in the Clearinghouse process, to be able to demonstrate that they are carrying -- that they -- that they have reinitiated the congressionally mandated process and that they are carrying it out.

THE COURT: All right. Anything further?

MS. FOLEY GANNON: No. Unless you have any questions.

MR. REN: Judge, may I make two brief points?

THE COURT: You can make two brief points, and we'll be in recess shortly thereafter.

MR. REN: Thank you, Judge.

Judge, two -- I just want to, first of all, briefly address the unlawful withholding point because, as -- as we discussed earlier, I think that's the hypothetical you gave. That's the much more extreme version of "unreasonable delay," where it's an outright withholding. Right? That's the hypothetical you posed with your ban hypothetical.

Now, with that, first of all, I think, again, my

colleagues avoid the point that, even that, again, it's still under 706(1). It must be discrete. It must be case by case. They have not disputed any of this, and that must be -- that must proceed, again, as an individual claim, not as an all-or-nothing action. Essentially -- this case is essentially a class action.

THE COURT: So now you're repeating what you said.

MR. REN: Yes, yes. But what I'm saying is their unlawful withholding, that still falls within the 701 umbrella and is still subject to those restrictions.

I would also say, substantively, on that case by -- oh, sorry -- on the unlawful withholding, unlawful withholding is a very high bar, and, on this record, there is no indication that it is an unlawful withholding. Unlawful withholding is the agency saying, "We will not get to this. We will never get to this. You will wait forever." That is not the case here.

The record before us, the Honorable Marks has steadfastly maintained we are working as fast as we can, and I'll also put into perspective the broader time horizon, if we zoom out. This case is still in its infancy. The delay is still measured in a period of months, as opposed to years. Perhaps, if this delay had spanned multiple years, then they might have a more compelling argument that there has been an unlawful withholding based on the record.

But based on this record, again, the delay has been in place for less than a year. It's hard -- and, based on that, it's hard to say that this amounts to an unlawful withholding.

I think, again --

THE COURT: So has Assistant Secretary Marks stated when a decision would be made, though? I think one of the arguments made in plaintiffs' briefing is it's an indefinite pause, as opposed to giving us, "Okay. We'll pause it for five months to reconsider things."

That might, I think, potentially, alter the scenario here.

MR. REN: Right, Judge.

As Honorable Marks indicated in his declaration, there have been already -- at the time even the declaration was filed, there had been 53 meetings with key -- key stakeholders in trying to resolve -- I think all parties are aligned that we want a solution as quickly as possible.

The Department of War has steadfastly maintained that.

And so while there isn't a clear --

THE COURT: Has he met with the plaintiffs in this case?

MR. REN: I do not believe so.

THE COURT: Is he giving the plaintiffs any date by which they can expect a resolution?

MR. REN: We've -- again, I think we've -- the Department of War and the Clearinghouse and Honorable Marks are working as expeditiously as possible. It's hard to say -- this is inherently hard to come up with an end date because they're actively working to solve a problem, and so it's hard to know when you're going to be able to solve a technological problem to clear that hurdle; but, again, on the record, it's hard to -- I mean, there's -- I'm not sure there's reason to say that there will never be a decision, which is the bar for unlawful withholding.

Again, in the relative time horizon of things, this case has -- the purported policy has only been the case for less than a year, and these applications -- and I want to get the numbers right, but, historically -- based on the declaration, historically, projects have taken almost two years from the -- from submitting the application to finally getting that hazard/no hazard determination. Right? So it takes multiple years.

And then, even the mitigation stage itself, historically, it's taken about a year and a half for the -- even just after the preliminary review, when the mitigation first starts, to the very end -- sorry -- to the first draft of that mitigation agreement of -- a rough draft of the principal agreements in place. Even that component of the mitigation phase has taken about a year and a half.

And so, again, in the broader time horizon of things, there's just nothing on this record that suggests an outright withholding. These things take time.

And, again, if it were many years, and the -- there would be a more compelling argument that there has been an unlawful withholding, that the agency will never act, but -- but --

THE COURT: But aren't the time frames different? Before, it was actually engaging in some kind of review, but here there's been a statement that "We've decided" -- or a retroactive statement, "We decided to pause" with no deadline in sight and no incorporating any of the developers or their organizations in the process.

So, from -- it does seem like this could be -- is it a ban or not? When you said there might be insurmountable issues with the Doppler, then how -- how are the plaintiffs to know? So isn't that different than just how long -- the length of time it's previously taken?

MR. REN: Right, Judge.

So, I think, again, specifically in the 706(1) context, the inquiry is, you know, "Is the agency ever going to act?" for purposes of "Is this an unlawful withholding?" And to that, there's -- I don't believe I've ever said, you know, this Doppler problem is insurmountable, or anything like that, but just that --

THE COURT: We're looking for a solution. Why is the solution so hard for the innocuous projects or previously considered innocuous project? Why is it --

MR. REN: Well, I believe the solution would want to be catered to that, so that it effectively mitigates against that risk period across the board; right? A one-size-fits-all solution.

But, to that, again, I think that, when it comes to the delay, at this point, we cannot say that it will never happen. There just hasn't been enough time. Right?

Like, in an --

THE COURT: How long would the delay have to be for it to be construed as an all-out ban?

MR. REN: Right. I think that would be context dependent. But I think that here, the facts of this case -- I mean, obviously, I think once you get into the years, there's a certain point where it's marginal either way. Right? But here, on this record, having been less than a year, I don't know that there's argument to say that there's an outright withholding.

I think an analogy, if I'm thinking of one, is you're -- you're waiting on a bus, and the bus is delayed. Right? How long before the bus gets here that you determine the City has altogether canceled the entire bus route -- that the City no longer services that bus in your area

anymore? Right? And I don't know if there's enough time here.

Even if there is a significant delay, you have to be waiting a really, really long time to say "The City has altogether canceled the route," as opposed to, "Hey, there's a delay coming, but eventually a bus will get here."

THE COURT: But don't they have some other information here with regard to statements made about wind farm technology?

MR. REN: Yes. Again, Judge, I think that that goes toward the impermissible outside statements that are not part of the record, and I think all that -- I think it would also -- I think courts should tread carefully on giving too much credit to those statements, which can be political posturing or just -- you know, just statements. Right?

Like, I mean, it's one thing to say -- it's one thing to posture in that way, and it's another to have some edict running up and down an agency.

And, again, I think, as a declaration -- as Honorable Marks repeatedly makes clear in this declaration, the decision is an independent decision from him and the Clearinghouse, and that is -- that is reiterated in the declaration. It's his and his team's independent decision that they came to.

THE COURT: All right. Thank you so much.

MR. REN: Thank you, Judge.

THE COURT: All right. Thank you for your briefing, your arguments, and I'm going to take it under advisement.

I'm going to try to get you a decision as quickly as possible, in light that it's a preliminary injunction, and so we'll be in recess. Thank you.

MS. FOLEY GANNON: Thank you, Your Honor.

MR. REN: Thank you, Your Honor.

(Hearing concluded at 11:59 AM.)

C E R T I F I C A T E

Renewable Northwest, et al. v. Peter B. Hegseth, et al.

3:26-cv-01092-IM

Motions Hearing

August 4, 2026

I certify, by signing below, that the foregoing is a true and correct transcript of the record, taken by stenographic means, of the proceedings in the above-entitled cause. A transcript without an original signature, conformed signature, or digitally signed signature is not certified.

/s/Jill L. Jessup, CSR, RMR, RDR, CRR, CRC

Official Court Reporter Signature Date: 8/13/2026
Oregon CSR No. 98-0346 CSR Expiration Date: 9/30/2026

**MR. GIAQUINTO: [1]** 5/15
**MR. REN: [85]** 6/2 7/22 7/25 8/8 8/17 8/21 9/1 9/10 9/15 9/21 10/6 10/18 10/22 11/25 12/4 12/8 12/10 14/1 17/14 18/3 18/14 19/7 19/11 19/14 20/11 20/15 21/5 21/20 22/20 23/9 23/18 24/6 24/14 28/14 28/18 28/20 29/2 29/25 31/11 32/3 33/21 35/24 36/24 37/14 38/14 38/16 43/11 49/5 49/8 49/14 50/12 51/17 53/11 53/21 55/4 55/11 67/7 68/12 68/25 69/4 70/7 70/10 72/3 72/11 72/18 73/14 73/21 74/17 74/20 75/15 75/19 76/4 76/11 82/15 82/18 83/8 84/13 84/23 85/1 86/19 87/4 87/14 88/10 89/2 89/10
**MR. SWANSON: [1]** 6/5
**MS. FOLEY GANNON: [29]** 7/16 11/3 11/15 12/21 13/8 14/12 15/21 16/1 16/16 16/23 17/10 43/20 43/25 47/15 57/13 57/20 57/23 60/5 61/2 61/11 63/17 66/1 66/4 67/4 78/15 82/4 82/7 82/13 89/9
**MS. MUELLER: [1]** 5/24
**THE COURT: [115]**

**'**

**'order,' [1]** 56/24

**/**

**/s/Jill [1]** 90/15

**0**

**01092 [3]** 1/5 5/8 90/4
**0346 [1]** 90/17

**1**

**1 [77]** 18/8 27/14 37/23 38/3 38/6 38/17 39/3 39/3 39/5 39/11 39/14 39/15 41/15 42/12 42/15 42/17 42/24 42/24 46/13 47/2 47/3 49/15 49/21 49/24 50/7 50/18 51/3 51/6 51/10 51/12 51/22 51/23 52/2 52/8 52/21 53/14 54/12 55/8 55/15 55/17 56/1 56/4 56/14 62/1 64/14 65/16 65/18 67/24 68/16 69/6 69/7 70/11 70/13 70/15 76/12 76/14 76/16 76/24 77/1 77/8 77/14 77/18 77/23 78/2 78/3 78/6 78/10 78/17 78/19 78/22 79/4 79/9 80/7 80/13 80/18 83/2 86/20
**10 [1]** 57/14
**1000 [1]** 3/16
**1111 [2]** 2/10 2/13
**11:59 [1]** 89/11
**13 [1]** 90/16
**15 [2]** 57/14 57/18
**1501 [1]** 2/17
**183a [1]** 15/14
**18th [1]** 3/4

**2**

**2 [52]** 27/13 31/18 38/3 38/8 38/17 38/18 38/19 38/24 38/24 41/14 42/12 42/18 42/22 42/23 42/23 46/13 46/18 47/2 49/15 49/23 50/23 51/5 51/6 51/8 51/9 51/9 51/12 51/20 52/19 53/13 55/5 55/5 58/21 59/4 60/18 62/2 62/3 63/21 64/14 67/23 68/16 69/6 69/9 70/13 71/6 76/11 78/2 78/9 78/17 79/6 79/9 79/17
**20004 [2]** 2/11 2/14
**20005 [1]** 2/17
**2011 [3]** 19/22 66/9 81/13
**2025 [21]** 10/1 11/24 12/16 20/21 24/2 45/19 47/25 48/4 48/21 59/9 61/5 61/8 61/15 62/14 69/23 72/2 72/4 73/6 74/13 79/24 81/13
**2026 [10]** 1/7 5/2 12/2 12/19 12/20 24/1 72/17 90/6 90/16 90/17
**22nd [1]** 2/4
**2300 [1]** 2/7
**246342 [1]** 5/17
**26 [1]** 5/8
**26-cv-01092 [1]** 5/8

**3**

**30 [12]** 6/16 7/14 18/11 19/15 19/17 19/17 19/18 20/4 20/5 82/3 82/8 90/17
**30-day [3]** 7/14 18/11 82/3
**300 [1]** 2/3
**301 [1]** 3/16
**326 [1]** 3/17
**326-8191 [1]** 3/17
**3:26 [2]** 1/5 90/4
**3:26-cv-01092-IM [2]** 1/5 90/4

**4**

**4 [3]** 1/7 5/2 90/6
**44718 [1]** 29/10
**46100 [1]** 25/3
**46110 [3]** 44/21 45/1 45/8

## 5

**503 [1]** 3/17
**53 [1]** 84/16

## 6

**60 [4]** 19/24 20/1 20/3 20/7
**600 [2]** 2/7 3/5

## 7

**7 [2]** 12/2 12/19
**701 [2]** 18/8 83/9
**705 [1]** 16/24
**706 [135]**
**75 [14]** 7/13 9/6 10/17 11/12 17/12 17/15 17/16 17/18 17/21 18/1 18/5 20/3 20/7 20/13
**75 days [1]** 11/12
**75-day [6]** 7/13 17/12 17/16 17/21 18/1 20/13
**761 [1]** 38/21
**7th [5]** 8/1 8/6 9/6 10/25 12/23

## 8

**8 [1]** 90/16
**8/13/2026 [1]** 90/16
**80202 [1]** 3/6
**8191 [1]** 3/17

## 9

**9 [1]** 90/17
**9/30/2026 [1]** 90/17
**90 [4]** 11/12 18/12 19/6 19/8
**90-day [4]** 11/12 18/12 19/6 19/8
**90071 [1]** 2/4
**94111 [1]** 2/8
**97204 [1]** 3/16
**98 [1]** 90/17
**98-0346 [1]** 90/17
**999 [1]** 3/4

## A

**able [7]** 18/20 18/21 22/25 61/19 65/22 82/9 85/6
**about [52]** 6/20 7/5 11/18 17/2 17/20 18/11 22/3 28/3 32/10 40/15 45/4 45/7 45/21 46/16 47/9 48/8 48/8 48/11 48/11 53/14 56/5 57/18 57/24 58/10 58/21 58/22 58/23 58/24 58/25 59/9 59/20 59/24 60/9 60/18 61/15 61/16 62/17 62/21 62/25 63/8 64/7 64/7 64/22 64/25 64/25 69/22 73/7 78/22 79/9 85/20 85/25 88/8
**above [1]** 90/10
**above-entitled [1]** 90/10
**absence [4]** 27/19 61/19 70/3 75/14
**absent [3]** 75/19 75/19 75/21
**absolutely [9]** 19/17 20/11 35/24 38/7 64/15 66/4 66/4 66/21 69/4
**accordance [5]** 7/13 8/1 8/5 10/16 10/24
**according [2]** 44/14 81/3
**accords [1]** 39/17
**account [4]** 54/23 63/22 65/1 81/17
**accurate [1]** 24/3
**acknowledge [2]** 13/18 37/23
**ACP [1]** 24/4
**across [1]** 87/6
**act [5]** 25/3 50/19 71/2 86/6 86/21
**acting [1]** 53/9
**action [79]** 12/25 18/8 18/9 25/10 25/16 25/18 27/15 27/16 31/20 32/4 32/15 38/22 38/25 39/8 39/11 39/16 39/18 39/24 40/22 43/2 44/13 44/24 45/17 45/18 45/23 45/23 45/25 46/4 46/4 46/23 47/3 47/6 48/1 48/3 48/21 48/24 49/20 49/23 49/24 50/1 50/4 50/15 51/5 51/15 51/21 51/25 52/19 52/21 53/8 53/16 54/15 55/8 56/21 58/6 58/22 61/10 62/5 64/19 64/20 65/9 65/15 65/16 67/24 68/16 68/21 69/9 70/11 74/4 75/3 77/7 77/8 77/19 78/4 78/11 80/9 80/11 81/2 83/5 83/6
**action/compel [1]** 77/7
**actions [7]** 12/18 12/19 16/12 29/8 39/19 46/3 63/24
**actively [2]** 41/25 85/5
**actually [9]** 6/25 7/1 8/13 19/23 20/2 35/15 38/9 57/17 86/9
**ad [1]** 76/2
**add [2]** 67/11 71/6
**additional [2]** 43/17 75/2
**address [10]** 16/3 26/23 41/25 43/16 49/2 58/23 59/1 62/7 80/3 82/20
**addressed [2]** 16/10 29/25
**adjudicated [2]** 36/9 41/7
**Administration [1]** 74/14
**administrative [7]** 70/19 73/18 74/9 75/4 75/9 75/10 75/23
**adopted [2]** 79/17 80/16
**adoption [1]** 80/10
**advisement [1]** 89/5
**advisory [2]** 21/24 22/2
**affect [2]** 14/23 68/9
**after [3]** 16/25 18/17

## A

**after... [1]** 85/21
**again [126]**
**against [6]** 7/4 21/15 27/20 50/16 77/16 87/6
**agencies [7]** 19/3 30/12 30/16 30/17 31/10 31/12 60/13
**agency [65]** 7/2 12/25 25/10 25/16 25/18 27/15 27/16 31/15 31/20 32/4 32/14 38/22 38/23 39/6 39/11 39/18 44/13 46/22 47/3 48/1 49/20 49/23 49/24 50/4 50/14 50/19 51/5 51/15 52/19 56/21 58/22 60/10 61/10 62/4 62/5 69/13 69/14 70/16 70/18 70/21 70/21 71/1 71/5 71/5 71/7 71/18 72/6 72/8 72/19 72/22 73/16 74/22 75/3 76/14 76/16 76/17 76/19 76/21 78/11 80/9 81/2 83/15 86/6 86/21 88/19
**agency's [1]** 25/21
**aggregate [1]** 82/7
**ago [2]** 60/23 72/12
**agree [3]** 48/1 64/15 66/21
**agreeing [1]** 17/25
**agreement [2]** 21/22 85/23
**agreements [5]** 9/24 11/23 12/17 25/23 85/24
**ahead [4]** 28/13 38/5 57/22 76/10
**Air [1]** 11/17
**airport [2]** 16/9 63/2
**airports [1]** 63/2
**airspace [1]** 14/21
**akin [2]** 47/16 63/24
**al [6]** 1/4 1/7 5/7 5/7 90/3 90/3
**aligned [1]** 84/18
**all [70]** 5/25 6/7 6/21 8/17 10/7 11/1 11/4 11/21 13/15 16/11 17/5 17/9 18/25 20/19 21/11 21/17 21/18 21/24 23/22 24/12 32/1 32/25 33/5 33/14 33/24 34/1 34/4 35/25 37/17 38/5 38/11 40/6 40/6 40/7 40/11 40/25 43/5 43/8 43/18 45/5 46/25 48/6 49/6 49/20 50/5 55/15 57/9 63/2 65/13 66/11 66/11 67/3 67/8 68/2 69/2 70/9 74/12 77/15 78/8 78/13 82/12 82/19 82/25 83/5 84/17 87/7 87/13 88/12 89/1 89/3
**all-out [1]** 87/13
**allegations [1]** 27/3
**allege [8]** 23/23 25/17 32/22 33/7 33/7 34/11 34/13 52/18
**allege that [1]** 33/7
**alleged [6]** 9/25 26/17 26/20 31/18 49/25 63/14
**Alliance [1]** 39/13
**allowable [3]** 65/5 65/5 65/14
**allowed [4]** 33/18 64/10 68/9 81/6
**alluding [2]** 54/4 69/25
**almost [2]** 51/7 85/15
**alone [3]** 42/8 42/9 64/11
**already [10]** 9/13 13/3 14/8 15/25 22/13 22/17 22/18 34/23 57/18 84/15
**also [28]** 3/8 5/20 6/5 11/12 26/3 27/18 45/3 45/14 46/13 47/12 47/13 53/8 53/9 55/13 55/15 57/25 61/13 65/16 65/18 68/16 71/6 73/25 78/19 80/14 80/19 83/11 83/20 88/13
**alter [1]** 84/11
**Although [3]** 23/21 60/24 77/21
**altogether [2]** 87/24 88/5
**always [7]** 30/16 61/9 72/24 73/5 74/23 74/24 76/5
**am [5]** 11/2 38/14 38/16 43/20 89/11
**amount [1]** 6/18
**amounts [1]** 84/3
**analogy [1]** 87/21
**analyzed [1]** 11/20
**analyzing [1]** 26/19
**anathema [1]** 36/18
**Angeles [1]** 2/4
**another [8]** 20/19 22/12 29/17 30/23 43/15 66/5 69/18 88/18
**answer [3]** 10/19 11/8 67/2
**answers [3]** 15/23 44/23 45/2
**anticipated [1]** 24/11
**any [55]** 6/22 7/17 8/7 9/5 9/8 10/16 11/12 11/23 11/23 12/1 12/2 12/19 13/16 13/16 16/7 20/9 23/15 23/20 27/25 28/25 29/22 29/22 33/9 33/10 33/12 37/19 40/24 46/20 49/1 52/20 55/16 58/6 58/19 58/23 58/25 59/11 59/12 59/14 62/20 67/1 71/8 71/9 73/19 74/16 74/19 75/13 77/14 77/18 77/19 81/20 81/25 82/13 83/3 84/24 86/12
**anybody [1]** 73/7
**anymore [1]** 88/1
**anything [19]** 8/14 8/24 11/6 11/7 11/11 11/20

**A**

**anything... [13]** 16/2 32/11 32/13 38/1 42/14 59/11 68/8 69/24 73/11 75/19 75/21 82/12 86/24
**APA [18]** 34/24 39/10 39/19 40/20 40/20 41/5 43/4 44/11 52/16 54/11 64/10 65/5 66/6 74/4 76/4 76/5 81/2 81/6
**apart [1]** 12/22
**appeal [1]** 60/7
**Appeals [1]** 29/11
**appear [1]** 16/19
**appearances [3]** 2/1 3/1 5/11
**appearing [1]** 5/19
**applicants [1]** 32/11
**application [7]** 18/8 18/10 25/11 35/10 36/9 36/10 85/16
**applications [13]** 8/4 27/24 27/25 36/13 37/4 37/7 42/2 42/20 50/23 51/21 72/7 77/5 85/13
**applies [1]** 47/10
**apply [2]** 55/7 77/3
**applying [1]** 54/5
**appreciate [1]** 70/8
**approach [3]** 14/13 39/15 43/6
**appropriate [5]** 42/16 45/12 54/22 58/18 82/6
**approval [1]** 68/10
**approvals [2]** 20/23 21/18
**approve [1]** 27/25
**approving [1]** 74/16
**April [6]** 10/11 12/20 12/22 24/1 72/17 80/1
**April 2026 [1]** 12/20
**arbitrary [8]** 12/25 61/20 62/10 63/12 63/15 64/4 75/24 81/3
**are [123]**
**area [1]** 87/25
**areas [2]** 6/13 40/8
**aren't [5]** 33/17 50/9 51/15 53/3 86/8
**arguably [4]** 12/20 26/3 61/7 70/1
**argue [6]** 6/16 12/24 20/9 28/7 28/8 46/13
**arguing [3]** 43/19 50/15 80/6
**argument [14]** 5/9 6/11 15/20 24/25 25/15 27/11 28/3 48/15 56/8 56/11 57/2 83/24 86/5 87/19
**arguments [12]** 10/4 24/21 26/20 28/10 28/25 29/12 40/13 44/2 44/5 78/8 84/8 89/4
**arises [1]** 71/1
**arose [3]** 56/16 56/20 57/5
**around [7]** 8/3 29/24 36/14 36/15 36/22 37/9 71/12
**arrange [1]** 39/22
**Article [1]** 26/9
**articulation [1]** 29/13
**as [107]**
**aside [6]** 26/21 37/21 38/25 38/25 42/23 50/16
**ask [20]** 6/10 11/1 12/14 13/5 13/23 16/11 16/24 16/24 17/11 49/3 52/25 59/20 65/23 68/6 69/21 70/8 73/3 74/11 81/23 82/2
**asked [3]** 20/1 20/2 20/6
**asking [18]** 11/5 13/15 16/19 27/23 27/25 44/12 46/6 51/6 53/3 58/4 58/6 61/22 65/6 65/13 81/10 81/20 81/22 81/25
**assess [1]** 73/10
**assessed [1]** 67/16
**assessment [1]** 22/1
**Assistant [3]** 68/6 69/25 84/6
**associated [1]** 66/3
**association [1]** 17/8
**associational [4]** 26/11 33/2 48/22 53/23
**assuming [1]** 59/1
**assumption [1]** 61/21
**asterisk [1]** 67/11
**attach [1]** 57/3
**attached [1]** 59/16
**attack [3]** 25/8 25/10 55/6
**attempt [1]** 39/23
**August [25]** 1/7 5/2 10/1 11/24 12/16 20/21 24/2 45/19 47/25 48/4 48/21 59/9 60/23 61/5 61/8 61/15 62/14 69/23 72/2 72/4 73/6 74/13 79/23 81/13 90/6
**August 2025 [3]** 24/2 61/8 74/13
**August of [1]** 61/5
**Austin [1]** 2/16
**available [2]** 27/20 73/15
**Ave [2]** 2/10 2/13
**Avenue [2]** 2/3 3/16
**avoid [1]** 83/1
**avoided [1]** 36/18
**await [1]** 21/1
**awaiting [1]** 21/7
**aware [5]** 7/17 11/16 12/23 77/14 80/1
**away [2]** 38/2 58/15

**B**

**B [3]** 1/7 2/2 90/3
**back [18]** 9/23 10/13 12/12 17/16 18/5 20/18 21/10 35/3 36/4 42/1 42/12 59/22 59/22 62/24 69/23 73/5 73/24 81/14
**background [1]** 74/25

## B


**bait [1]** 51/7
**bake [1]** 22/13
**baked [1]** 14/8
**balance [1]** 27/22
**ban [13]** 62/20 65/1 65/1 68/8 68/12 68/14 68/17 68/21 79/12 80/16 82/24 86/15 87/13
**bar [6]** 5/17 46/18 55/14 68/20 83/13 85/10
**barebones [1]** 6/15
**barring [1]** 69/13
**base [1]** 52/13
**based [16]** 6/17 8/19 8/20 8/21 8/21 11/9 16/2 21/16 25/4 46/14 75/1 75/4 83/25 84/1 84/2 85/14
**baseline [1]** 76/8
**basically [1]** 10/1
**basis [14]** 13/14 34/6 34/6 50/3 50/21 53/24 59/10 60/11 60/14 60/17 63/7 68/5 71/4 81/18
**be [145]**
**bear [1]** 76/9
**bearing [1]** 31/7
**because [87]** 7/9 8/13 9/6 10/10 10/22 10/22 10/24 13/1 13/3 15/5 15/20 15/25 16/21 17/4 18/20 19/12 21/9 22/24 23/11 26/16 26/24 27/20 27/23 28/23 29/11 29/16 30/6 30/15 31/1 31/5 31/11 31/16 35/2 35/23 36/8 39/25 40/2 40/19 40/22 41/9 41/13 41/14 42/16 44/19 46/1 47/3 47/19 48/23 52/1 52/2 52/22 53/5 55/17 56/11 56/20 57/2 58/13 58/14 60/3 60/7 60/7 62/10 63/3 64/19 64/25 66/5 66/7 68/4 70/12 70/13 70/18 74/3 74/3 76/4 76/14 76/15 77/8 77/10 78/2 78/4 78/17 79/5 79/17 80/8 80/19 82/20 85/5
**bed [1]** 70/7
**been [58]** 9/5 9/8 9/16 9/17 10/8 10/15 10/16 10/17 10/23 11/4 11/5 11/6 11/6 11/7 11/7 11/11 11/20 11/20 11/21 19/19 19/21 21/10 22/25 33/24 34/5 37/19 39/7 39/8 48/20 55/2 55/22 57/9 57/24 63/24 65/20 66/7 66/8 66/9 66/14 70/22 71/14 71/15 72/7 72/23 73/5 73/9 74/13 81/1 81/12 83/25 84/1 84/15 84/16 85/12 86/5 86/10 87/10 87/18
**before [26]** 1/15 4/3 12/19 16/5 17/5 26/17 35/9 36/17 46/8 46/9 48/7 60/10 62/6 67/8 68/10 68/14 71/15 72/21 74/13 78/20 79/16 80/25 81/1 83/18 86/9 87/23
**began [1]** 24/1
**beginning [1]** 12/15
**begins [1]** 36/12
**begun [1]** 7/18
**behalf [3]** 5/16 6/6 53/19
**being [15]** 33/4 34/3 34/7 61/19 61/23 61/24 63/11 64/9 66/15 68/25 72/6 77/6 79/3 79/4 81/24
**belied [2]** 56/12 57/4
**belief [1]** 12/11
**believe [52]** 9/15 9/16 9/21 10/13 16/18 16/25 21/24 29/25 30/1 32/8 32/13 32/17 32/24 33/11 33/15 34/5 34/12 34/14 34/16 34/24 37/22 38/1 40/23 40/24 42/3 43/11 44/17 47/1 48/13 48/16 56/8 56/10 62/8 62/11 63/19 64/8 65/17 65/19 66/22 72/3 72/11 72/13 72/19 72/19 72/20 73/2 73/15 74/21 79/16 84/23 86/23 87/4
**below [1]** 90/8
**benefactor [1]** 31/22
**benefactors [1]** 48/3
**beneficial [1]** 30/10
**Bennett [4]** 25/19 26/1 48/13 58/25
**besides [1]** 31/7
**best [1]** 44/3
**between [8]** 10/11 46/13 46/15 72/15 72/15 75/16 78/17 79/9
**beyond [1]** 42/16
**bias [1]** 75/7
**Biden [1]** 63/25
**bifurcate [1]** 18/16
**bifurcation [1]** 50/13
**big [4]** 10/3 52/11 52/12 53/2
**bigger [6]** 30/20 30/23 31/2 31/3 56/6 56/7
**biggest [1]** 69/10
**bit [5]** 6/11 14/7 28/11 46/16 58/22
**blanche [1]** 37/16
**blanket [3]** 65/1 79/11 80/16
**blend [1]** 43/9
**board [2]** 21/10 87/6
**Bockius [4]** 2/3 2/6 2/10 2/13
**body [1]** 69/18
**both [33]** 6/14 6/16 6/25 25/18 27/13 27/15 28/9 28/14 28/15 28/15 28/17 29/11 29/15 47/2 47/7

## B

**both... [18]** 48/2 50/11 51/6 51/14 51/15 51/19 51/19 53/6 53/8 55/7 56/15 63/17 67/22 68/23 68/23 78/23 79/17 81/5
**breadth [3]** 15/23 16/21 76/24
**break [1]** 44/3
**brief [2]** 82/15 82/16
**briefing [7]** 20/20 22/5 23/23 71/10 74/12 84/8 89/4
**briefly [3]** 32/17 41/17 82/19
**bring [4]** 32/18 53/20 68/21 68/23
**bringing [2]** 62/22 64/16
**broad [12]** 14/15 14/24 16/3 25/8 25/9 25/11 40/16 40/18 45/24 46/1 62/15 67/23
**broader [11]** 14/5 15/24 29/6 29/18 29/18 31/16 31/16 55/18 63/3 83/20 86/1
**brought [5]** 29/10 37/24 53/17 68/4 71/3
**bug [1]** 40/21
**builds [1]** 60/3
**bunch [1]** 46/3
**burden [5]** 34/25 44/17 76/2 76/5 76/9
**Bureau [1]** 31/14
**bus [6]** 87/22 87/22 87/23 87/24 87/25 88/6
**business [3]** 36/22 47/17 47/24

## C

**C [2]** 89/12 90/1
**CA [2]** 2/4 2/8
**called [1]** 23/17
**came [2]** 14/25 88/25
**camera [1]** 73/8
**can [49]** 6/18 6/22 14/20 16/25 22/7 22/16 28/21 30/7 33/19 35/4 35/13 40/10 41/6 42/1 44/2 44/3 51/11 51/14 52/5 54/24 56/1 56/2 57/13 57/14 59/1 59/1 60/16 61/18 62/1 62/2 62/7 62/24 63/10 66/19 68/23 69/7 70/17 73/9 74/25 75/22 77/1 79/5 79/21 80/22 81/17 82/16 83/19 84/25 88/14
**can't [9]** 9/19 22/19 23/6 60/21 61/20 63/20 63/20 79/22 79/22
**canceled [2]** 87/24 88/5
**cannot [7]** 21/8 43/3 44/17 51/11 53/20 60/12 87/9
**capricious [8]** 12/25 61/20 62/10 63/12 63/15 64/5 75/25 81/3
**care [3]** 7/10 15/11 45/14
**careful [3]** 15/13 67/18 67/19
**carefully [3]** 61/13 79/8 88/13
**carried [1]** 46/7
**carries [1]** 22/6
**carrying [6]** 13/21 13/22 47/4 81/12 82/9 82/11
**carte [1]** 37/16
**carte blanche [1]** 37/16
**CASA [1]** 16/25
**case [126]**
**case and [1]** 40/1
**case's [1]** 8/3
**cases [18]** 25/11 29/21 29/22 30/14 31/11 31/13 31/13 37/22 51/14 53/17 64/1 73/8 74/5 77/15 77/20 77/21 78/10 78/10
**categorically [6]** 38/7 41/9 57/4 69/8 77/7 77/9
**catered [1]** 87/5
**caught [6]** 49/18 62/18 62/19 63/12 65/3 65/20
**cause [1]** 90/11
**caveat [1]** 33/25
**caveats [1]** 33/25
**central [2]** 36/18 38/1
**certain [6]** 6/18 13/17 13/17 51/21 70/19 87/17
**certainly [4]** 55/17 65/14 73/8 76/8
**certified [1]** 90/13
**certify [1]** 90/8
**challenge [30]** 25/13 29/8 29/18 29/19 31/1 31/18 41/10 45/15 45/16 45/17 45/20 46/2 46/10 46/11 47/2 47/12 49/20 50/4 51/24 52/18 54/19 55/23 56/18 57/6 58/3 58/3 59/3 71/4 76/25 78/11
**challenged [1]** 79/5
**challenges [5]** 24/23 39/20 60/18 64/17 70/16
**challenging [15]** 46/22 46/22 49/22 49/22 51/5 51/15 51/19 51/19 53/12 56/20 56/21 65/15 65/16 67/21 70/21
**chance [7]** 20/9 24/20 28/11 28/24 35/16 43/15 76/14
**chances [1]** 28/23
**change [4]** 68/11 71/13 78/9 80/13
**changed [1]** 72/24
**changing [1]** 79/20
**channeling [1]** 25/3
**characteristic [2]** 23/12 77/19
**characteristics [4]** 13/17

C

**characteristics... [3]** 32/9 41/5 70/22
**characterized [2]** 26/14 67/10
**chart [2]** 5/13 5/23
**check [1]** 72/18
**chooses [2]** 64/3 79/11
**chose [2]** 45/25 46/13
**circle [12]** 20/18 30/20 30/21 30/22 30/23 31/2 31/2 31/3 31/3 56/6 56/7 56/7
**circles [2]** 30/15 30/18
**circling [1]** 42/12
**circuit [26]** 25/2 25/5 29/4 29/11 29/19 31/3 31/4 31/13 31/14 31/17 31/17 37/21 44/23 45/3 45/6 55/14 55/16 55/23 56/2 56/10 56/23 69/12 70/15 70/24 80/21 80/24
**circuits [1]** 45/4
**cite [4]** 31/11 31/13 71/22 77/13
**cited [3]** 29/15 47/8 77/15
**cites [1]** 25/21
**citing [1]** 46/14
**City [3]** 87/24 87/25 88/4
**claim [36]** 13/6 37/23 38/6 39/3 39/5 39/5 39/6 39/7 44/11 51/5 51/8 51/9 51/20 52/8 55/5 55/6 55/8 55/15 55/16 56/1 56/5 61/25 62/1 67/23 67/24 70/13 70/14 71/6 76/14 76/16 76/25 78/2 78/23 80/7 80/13 83/4
**claims [12]** 33/5 35/17 36/7 36/14 37/9 38/18 41/15 42/17 49/16 49/21 50/7 79/14
**clarify [2]** 6/10 6/12
**clarifying [1]** 24/15
**clarity [1]** 7/8
**clash [1]** 29/22
**class [3]** 39/23 43/2 83/6
**classified [2]** 71/18 73/8
**clear [15]** 25/4 35/1 41/22 48/18 51/23 52/23 59/19 60/9 60/19 71/3 74/21 74/22 84/20 85/7 88/21
**Clearinghouse [23]** 14/15 14/18 15/4 16/5 19/22 21/14 21/21 23/25 24/9 25/8 26/4 26/5 45/16 46/24 58/13 65/11 66/8 74/1 79/1 80/11 82/8 85/2 88/23
**clearly [4]** 26/25 45/6 47/1 81/1
**client [6]** 8/23 9/11 10/7 12/10 18/5 20/18
**clients' [1]** 65/25
**close [3]** 47/17 47/23 47/23
**closely [1]** 57/10
**clues [1]** 23/4
**CO [1]** 3/6
**coin [2]** 64/17 64/18
**colleague [3]** 62/17 67/9 78/21
**colleagues [3]** 5/18 70/12 83/1
**Combined [1]** 28/18
**come [12]** 12/12 14/14 14/17 23/19 24/8 36/15 52/21 67/14 72/5 76/20 80/19 85/4
**comes [4]** 31/21 31/23 36/3 87/8
**coming [2]** 71/9 88/6
**command [1]** 32/6
**Commerce [4]** 74/22 75/5 75/8 75/11
**commission's [1]** 22/11
**common [3]** 30/17 41/4 41/4
**communicated [1]** 12/10
**communications [5]** 10/7 12/22 72/14 75/16 80/1
**compel [14]** 18/9 18/9 29/5 38/22 39/11 39/18 49/24 50/9 51/21 54/15 55/8 55/18 56/21 77/7
**compelling [3]** 50/19 83/24 86/5
**complaint [1]** 51/18
**complaints [1]** 34/18
**complete [2]** 69/22 73/6
**completed [3]** 9/6 9/8 11/7
**completely [4]** 61/23 62/10 62/23 66/14
**completion [1]** 11/13
**compliance [6]** 17/12 18/1 18/13 19/5 19/9 20/14
**complicated [5]** 53/1 54/20 54/24 63/9 65/4
**comply [1]** 50/10
**component [9]** 38/21 38/22 42/25 50/18 51/22 51/23 53/15 68/3 85/24
**components [1]** 11/17
**conceded [4]** 49/22 64/9 65/2 65/15
**conceding [1]** 8/13
**concern [2]** 15/1 15/3
**concerned [1]** 60/25
**concerns [4]** 17/2 21/9 40/9 54/8
**conclude [2]** 19/18 20/5
**concluded [1]** 89/11
**concrete [3]** 9/3 9/4 10/19
**confer [1]** 18/6
**confirm [1]** 18/6
**conflict [1]** 15/7
**conformed [1]** 90/12
**confused [1]** 10/2

## C


**Congress [13]** 15/3 15/10 17/13 18/2 20/2 20/6 20/13 53/10 65/9 65/10 65/10 81/5 81/18
**congressional [2]** 58/14 68/10
**congressionally [4]** 7/2 37/13 47/5 82/10
**connected [1]** 14/16
**consequences [4]** 26/2 26/4 31/21 48/13
**consider [4]** 65/12 65/12 70/17 74/19
**consideration [1]** 69/13
**considerations [4]** 14/23 27/4 67/15 75/2
**considered [6]** 16/8 45/13 52/16 75/6 75/7 87/3
**consistent [5]** 25/11 37/19 71/14 72/9 72/23
**consistently [2]** 71/11 78/7
**constituencies [1]** 53/20
**constituents [1]** 17/8
**constitute [1]** 17/5
**construed [1]** 87/13
**consultation [1]** 19/3
**consummation [1]** 25/20
**contact [1]** 11/4
**contains [1]** 14/3
**contemporaneous [1]** 62/11
**contention [1]** 44/9
**context [6]** 37/19 57/5 62/3 64/24 86/20 87/14
**continue [3]** 8/25 15/6 22/19
**contrived [1]** 74/7
**controlling [1]** 70/15
**convention [1]** 49/14
**conversations [1]** 8/23
**convincing [1]** 68/16
**coordination [1]** 30/17
**core [1]** 18/23
**correct [5]** 11/15 16/1 17/10 30/2 90/9
**costly [1]** 34/7
**could [10]** 13/17 14/23 35/16 60/1 60/1 60/1 62/18 68/21 68/21 86/14
**couldn't [1]** 46/18
**counsel [1]** 5/11
**countersign [1]** 21/18
**countersignature [1]** 21/3
**countersignatures [2]** 21/2 21/12
**countersigned [1]** 11/23
**country [3]** 16/4 16/9 17/9
**couple [3]** 14/12 51/13 73/3
**course [4]** 21/21 30/16 67/17 76/15
**court [45]** 1/1 1/16 3/15 5/3 9/12 13/15 17/2 25/4 29/11 29/12 31/14 32/2 35/11 38/2 38/23 39/13 40/10 41/13 43/23 44/10 44/12 45/12 46/6 46/8 46/9 49/12 49/18 52/18 52/20 52/23 53/15 54/9 54/15 59/5 61/18 65/6 71/16 74/6 75/11 77/1 77/15 81/20 81/23 82/3 90/16
**Court's [2]** 53/15 80/25
**Courthouse [1]** 3/15
**courtroom [1]** 31/25
**courts [6]** 39/15 47/8 70/17 73/9 79/21 88/13
**CRC [2]** 3/15 90/15
**create [2]** 23/9 23/16
**created [2]** 7/2 15/13
**credit [2]** 62/12 88/14
**credits [2]** 33/8 34/7
**Crestas [1]** 5/21
**criteria [1]** 33/2
**critical [1]** 37/25
**CRR [2]** 3/15 90/15
**CSR [4]** 3/15 90/15 90/17 90/17
**current [1]** 22/13
**currently [5]** 18/19 18/23 19/1 19/2 73/19
**cut [1]** 15/19
**cv [3]** 1/5 5/8 90/4


## D


**damage [2]** 66/6 66/18
**damages [1]** 27/20
**damaging [1]** 79/15
**dangerous [4]** 30/5 30/7 30/8 35/23
**date [7]** 70/18 72/21 72/21 84/24 85/4 90/16 90/17
**day [15]** 7/13 7/14 11/12 17/12 17/16 17/21 18/1 18/11 18/12 19/6 19/8 20/13 71/24 73/1 82/3
**days [15]** 9/6 10/17 11/12 17/18 18/5 19/15 19/17 19/17 19/18 19/24 20/1 20/3 20/5 20/5 82/8
**DC [3]** 2/11 2/14 2/17
**deadline [6]** 11/13 17/12 18/2 20/13 37/11 86/12
**deadlines [11]** 7/14 16/13 17/22 18/13 19/6 26/8 27/15 37/13 64/7 64/8 64/9
**deal [2]** 60/13 64/4
**dealt [2]** 45/3 67/16
**December [1]** 61/16
**decide [7]** 21/22 44/12 47/20 47/21 47/22 57/25 75/1
**decided [6]** 12/16 74/5 75/11 80/16 86/10 86/11
**decision [33]** 13/9 25/21

**D**

**decision... [31]** 25/23 45/18 46/10 46/23 47/17 47/18 47/23 47/23 47/24 47/24 59/3 59/8 59/10 60/8 60/15 60/16 60/20 62/14 63/11 63/18 63/20 65/7 69/23 74/23 82/1 84/7 85/9 88/22 88/22 88/24 89/6
**decision-making [1]** 25/21
**declaration [23]** 8/22 13/24 14/2 22/16 25/22 59/15 59/21 60/2 60/22 61/14 61/22 70/1 71/8 71/15 72/21 73/23 75/17 84/14 84/15 85/15 88/20 88/21 88/24
**declarations [1]** 48/7
**defendant [2]** 3/3 41/20
**defendants [7]** 1/8 6/1 6/6 7/20 8/12 25/7 47/8
**defendants' [3]** 5/10 24/22 25/15
**defense [22]** 2/19 7/2 7/4 7/5 7/6 7/9 11/22 13/10 13/12 13/19 17/11 20/20 22/12 23/23 23/24 25/21 26/12 28/7 45/18 46/4 46/10 81/11
**Defense's [1]** 46/23
**defensible [1]** 75/24
**deference [3]** 13/6 13/9 27/2
**deferential [2]** 34/24 76/7
**define [1]** 70/19
**definitively [1]** 11/8
**delay [38]** 7/18 32/10 39/6 39/7 39/9 40/3 40/4 40/15 40/15 40/18 40/25 40/25 41/1 41/7 43/3 43/4 52/2 52/3 52/9 52/14 54/2 55/20 55/21 55/24 55/24 56/18 56/20 64/22 65/19 72/6 82/23 83/21 83/23 84/1 87/9 87/12 88/3 88/6
**delayed [6]** 18/9 32/11 55/22 68/19 78/23 87/22
**delays [1]** 40/11
**deliberations [2]** 73/15 73/17
**demonstrate [2]** 61/25 82/9
**demonstrated [1]** 27/18
**Denver [1]** 3/6
**deny [2]** 42/9 65/25
**Department [27]** 6/3 7/2 7/3 7/4 7/5 7/5 7/6 7/9 13/10 13/12 13/19 19/2 23/24 45/18 45/25 46/4 46/10 46/23 74/21 75/5 75/8 75/11 80/16 81/11 82/8 84/19 85/2
**Department's [1]** 48/21
**dependent [1]** 87/15
**depends [1]** 22/8
**design [1]** 17/3
**designed [3]** 35/19 36/20 43/5
**detailed [1]** 71/15
**determinated [1]** 37/5
**determination [18]** 22/4 22/8 22/9 28/1 29/9 30/9 31/15 35/22 54/22 55/19 55/20 60/11 65/13 66/16 69/16 69/16 69/18 85/17
**determinations [7]** 13/13 14/8 20/23 26/7 27/7 37/7 81/21
**determine [1]** 87/23
**determined [2]** 35/13 69/14
**developer [4]** 18/8 53/20 53/24 53/25
**developers [18]** 18/22 32/19 32/23 35/8 36/5 36/6 36/8 36/16 37/24 39/25 48/5 53/18 66/11 71/19 72/9 72/15 75/16 86/12
**developers' [3]** 36/14 37/4 37/8
**devise [1]** 22/25
**DHS [4]** 25/5 30/5 30/10 30/10
**DHS's [1]** 30/9
**diagram [2]** 30/14 30/19
**did [17]** 8/9 15/10 15/13 22/16 23/17 23/24 43/9 60/14 61/5 61/16 61/17 67/5 71/18 71/18 71/19 71/19 72/8
**didn't [7]** 8/13 10/2 12/6 61/5 71/2 71/7 81/8
**different [20]** 14/7 14/10 31/12 31/12 35/5 36/23 38/17 39/2 39/4 40/7 40/7 40/8 40/8 53/5 62/2 63/15 69/17 77/3 86/8 86/17
**difficult [1]** 34/8
**digitally [1]** 90/12
**dilatory [1]** 22/23
**direct [3]** 29/4 29/10 55/14
**directed [3]** 50/15 78/8 81/18
**directing [1]** 78/4
**direction [3]** 81/11 81/22 81/24
**directive [2]** 50/24 80/10
**directly [3]** 25/1 29/10 48/23
**disagree [1]** 7/20
**disagreement [3]** 8/9 8/12 8/15
**disagrees [1]** 7/1
**disclose [1]** 23/24
**disconnect [1]** 8/2
**discounted [1]** 61/23
**discrete [14]** 39/12 39/16 41/11 45/17 45/23 45/23

## D


**discrete... [8]** 46/3 48/3 50/2 50/20 51/24 52/22 78/11 83/2
**discriminate [1]** 23/11
**discuss [4]** 20/20 25/12 44/16 81/8
**discussed [2]** 22/14 82/21
**discussion [5]** 17/17 18/13 19/6 48/11 81/7
**discussions [8]** 11/14 11/19 18/15 18/18 18/19 18/21 20/23 48/25
**disfavored [1]** 16/20
**dismiss [14]** 5/10 6/14 12/15 24/22 28/7 28/15 28/22 38/13 44/1 44/5 49/1 49/4 57/25 59/16
**dismissed [2]** 49/21 50/7
**disproportionate [1]** 16/9
**dispute [2]** 21/2 21/6
**disputed [2]** 8/14 83/3
**disregarded [1]** 66/14
**dissimilar [1]** 77/22
**distinct [3]** 30/11 30/12 49/16
**distinction [8]** 29/7 34/2 46/15 47/9 49/16 55/11 78/17 79/9
**district [6]** 1/1 1/2 1/16 3/15 44/12 70/17
**divide [1]** 28/21
**DIVISION [1]** 1/3
**do [58]** 6/8 7/20 8/7 8/8 9/11 13/8 14/5 16/13 17/3 19/24 21/2 22/8 23/23 24/13 24/14 25/17 27/2 27/12 28/11 28/14 29/24 32/1 32/7 32/11 33/18 34/1 34/16 35/19 36/20 37/17 38/23 38/24 39/1 42/5 42/16 43/14 43/21 44/4 49/3 49/6 49/9 51/1 51/11 53/4 53/10 57/12 60/7 61/9 61/11 65/10 68/7 68/9 73/11 73/13 75/17 77/1 77/17 84/23
**documents [2]** 49/12 73/17
**DoD [28]** 7/12 11/23 12/1 12/16 17/11 17/25 18/13 19/24 19/25 21/18 22/18 25/13 25/22 26/6 35/23 37/12 50/9 50/22 50/23 53/3 54/22 54/25 58/12 63/6 63/6 65/7 65/8 79/2
**DoD's [8]** 11/17 16/12 21/2 25/8 25/24 26/4 26/20 35/22
**does [30]** 14/20 22/19 23/19 25/3 25/18 31/20 32/9 32/11 32/12 32/12 32/14 32/20 34/1 34/25 38/24 41/10 41/11 42/6 44/10 59/21 59/22 60/21 61/2 63/6 63/7 65/10 68/11 72/13 72/14 86/14
**doesn't [17]** 16/2 29/21 37/12 40/23 47/10 57/3 61/3 61/8 62/7 62/20 63/2 65/1 69/24 78/9 79/10 79/19 80/13
**doing [13]** 14/11 15/24 32/7 32/12 44/13 51/4 58/13 58/16 58/16 63/7 68/10 71/21 72/2
**DOJ [3]** 3/4 3/8 6/3
**DOJ-Enrd [1]** 3/4
**don't [53]** 5/22 6/20 7/10 8/11 9/3 9/15 10/19 11/10 13/5 16/18 21/6 24/7 24/12 24/14 24/15 24/25 27/10 28/1 28/6 29/1 33/11 34/11 34/14 40/12 40/23 41/3 41/4 41/4 46/19 49/6 49/18 52/15 53/21 54/11 57/8 57/17 59/11 59/14 61/8 61/12 61/17 61/17 62/8 62/15 65/21 68/13 69/24 80/3 80/5 86/23 87/19 88/1 88/7
**done [9]** 10/16 10/17 12/1 15/25 45/19 79/5 81/17 81/19 82/8
**doors [1]** 47/23
**Doppler [11]** 14/6 14/16 18/24 23/9 23/17 68/8 71/23 71/23 73/2 86/16 86/24
**double [1]** 72/18
**double-check [1]** 72/18
**DOUGLAS [2]** 2/9 5/19
**DoW [9]** 8/2 19/25 20/6 29/5 36/12 71/10 71/14 72/15 72/16
**DoW's [6]** 22/2 30/24 31/5 55/19 55/21 55/24
**down [12]** 10/12 16/8 37/1 37/3 43/24 47/17 50/16 63/2 67/25 74/15 79/14 88/19
**draft [2]** 85/22 85/23
**drafting [1]** 25/24
**draw [1]** 30/11
**drawing [1]** 21/10
**during [1]** 81/14
**duty [2]** 78/25 78/25


## E


**E [2]** 90/1 90/1
**each [9]** 6/20 28/17 38/18 40/4 41/6 41/7 52/16 53/4 57/17
**earlier [8]** 17/17 38/4 38/5 50/22 58/5 62/25 81/7 82/21
**easier [1]** 43/23
**easily [1]** 48/14
**echo [1]** 8/17
**economic [1]** 48/8

E

**edict [1]** 88/18
**effect [11]** 14/6 14/16 22/6 23/10 23/14 23/17 68/1 71/23 71/24 73/2 74/16
**effectively [1]** 87/5
**effects [2]** 18/24 46/1
**either [3]** 7/11 16/24 87/17
**eliminate [1]** 43/5
**ELIZABETH [1]** 2/12
**ELLA [2]** 2/6 5/18
**else [1]** 38/2
**emergent [2]** 21/15 71/24
**emphasis [1]** 69/10
**emphasize [1]** 49/19
**employees [1]** 47/21
**encompasses [1]** 47/15
**encountered [1]** 56/7
**end [10]** 32/5 52/6 52/6 52/10 67/10 69/19 75/25 76/7 85/4 85/22
**ends [3]** 54/5 54/6 68/2
**energy [20]** 5/6 5/21 7/13 7/24 13/1 14/5 15/7 15/8 15/8 17/6 21/1 23/8 23/11 23/15 23/19 23/25 25/14 26/21 33/8 34/7
**engage [1]** 54/25
**engaging [1]** 86/9
**enjoin [4]** 42/13 67/25 77/2 77/17
**enjoined [3]** 36/2 42/19 50/25
**enjoining [1]** 50/17
**enough [7]** 27/10 28/19 33/19 71/22 73/1 87/10 88/1
**Enrd [1]** 3/4
**ensuing [1]** 72/8
**ensure [1]** 21/11
**entire [4]** 22/2 22/6 55/21 87/24
**entirely [13]** 29/5 29/17 29/19 30/9 30/20 30/22 30/25 31/2 31/6 35/18 39/2 50/18 53/22
**entitled [2]** 76/17 90/10
**entwined [1]** 63/16
**equal [1]** 80/22
**equities [5]** 27/22 41/18 42/3 42/5 42/8
**error [1]** 76/19
**escape [1]** 23/4
**especially [2]** 33/4 74/10
**essentially [6]** 13/2 39/23 43/1 81/10 83/5 83/6
**established [3]** 15/5 66/8 66/9
**estimate [1]** 6/16
**et [6]** 1/4 1/7 5/7 5/7 90/3 90/3
**evaluation [1]** 40/14
**even [39]** 9/19 22/3 22/7 24/1 27/1 33/12 33/18 34/3 34/3 34/24 37/21 37/21 38/8 42/4 42/4 42/8 46/17 47/8 52/25 53/7 56/22 62/1 62/12 62/13 62/13 63/22 65/24 67/13 71/22 73/5 75/11 80/8 80/8 83/1 84/15 85/19 85/21 85/24 88/3
**event [1]** 33/10
**events [1]** 20/20
**eventually [2]** 44/21 88/6
**ever [3]** 67/18 86/21 86/23
**every [8]** 16/4 16/8 21/24 29/15 43/3 43/4 62/25 75/1
**everyone [1]** 5/4
**everything [3]** 56/25 67/20 69/5
**evidence [5]** 11/14 27/1 62/4 70/6 73/7
**evolving [2]** 15/6 63/5
**exact [2]** 36/20 76/13
**exactly [6]** 41/5 44/6 44/22 57/7 64/5 72/21
**example [7]** 8/7 35/8 41/17 52/5 52/13 62/24 73/16
**examples [3]** 9/3 9/4 10/20
**exceedingly [1]** 34/23
**except [1]** 58/7
**exclusive [3]** 55/25 55/25 79/10
**excuse [3]** 5/6 19/7 20/21
**executing [2]** 12/16 25/23
**executive [1]** 76/22
**existed [2]** 60/20 66/17
**existing [2]** 13/4 33/18
**exists [4]** 22/18 30/25 31/6 59/12
**expect [1]** 84/25
**expected [1]** 40/10
**expeditiously [1]** 85/3
**Expiration [1]** 90/17
**explain [6]** 22/17 35/21 71/1 72/8 76/15 79/23
**explained [2]** 70/23 72/16
**explaining [1]** 70/25
**explains [1]** 70/16
**explanation [8]** 24/7 59/6 60/12 72/5 76/17 76/20 76/20 79/22
**explicitly [1]** 59/19
**expressed [1]** 70/5
**expressly [1]** 70/3
**extension [1]** 11/18
**extent [2]** 34/12 42/5
**extra [1]** 67/19
**extraordinary [1]** 34/20
**extreme [2]** 52/6 82/22
**extremely [2]** 14/15 76/7

## F


**FAA [17]** 21/25 25/3 26/6 29/6 29/8 31/7 31/8 44/20 44/25 45/9 45/10 55/18 56/8 56/11 56/17 56/23 57/5
**FAA's [6]** 22/3 30/25 31/6 55/19 55/21 55/23
**facility [1]** 14/21
**fact [16]** 9/8 19/25 23/2 31/9 39/10 40/20 56/16 71/2 72/6 77/11 78/9 79/4 80/4 80/4 80/9 80/12
**fact-specific [2]** 39/10 77/11
**factors [10]** 26/19 41/17 41/19 43/13 44/17 45/6 56/14 56/19 58/25 66/20
**facts [10]** 6/10 34/14 41/7 44/7 52/4 54/1 57/4 70/11 81/1 87/15
**factual [1]** 7/21
**fair [4]** 21/16 23/7 73/20 73/21
**fairly [2]** 26/14 52/6
**fall [6]** 32/21 41/3 52/15 54/11 78/8 78/12
**falls [6]** 47/1 47/3 58/17 65/17 75/4 83/9
**far [2]** 8/15 14/17
**farm [1]** 88/9
**farms [4]** 27/5 68/9 74/15 74/16
**fast [1]** 83/19
**favor [7]** 27/23 42/4 42/6 42/9 61/21 66/24 77/16
**FBI [3]** 30/2 30/4 30/9
**feature [1]** 40/21
**federal [1]** 6/6
**feet [1]** 22/23
**few [1]** 60/22
**figured [2]** 23/6 24/10
**file [1]** 9/12
**filed [2]** 13/25 84/16
**filings [2]** 72/13 72/14
**final [18]** 12/25 21/22 25/16 25/17 27/15 31/20 32/4 32/14 47/2 48/1 48/15 56/11 56/17 57/2 58/22 60/10 80/9 81/2
**finally [6]** 26/9 27/22 41/16 42/11 77/12 85/16
**find [8]** 16/12 16/16 23/5 30/7 42/8 47/9 54/10 78/16
**fine [3]** 43/9 43/10 43/15
**fire [1]** 47/20
**first [30]** 5/12 5/14 6/24 7/12 14/13 21/21 24/22 24/24 25/20 28/7 28/8 29/3 35/25 44/6 44/9 49/15 50/13 58/4 58/21 67/8 71/8 71/12 72/19 72/20 72/22 78/19 82/19 82/25 85/22 85/22
**fit [1]** 58/24
**fits [3]** 47/7 70/14 87/7
**five [1]** 84/10
**Floor [1]** 2/4
**flow [1]** 26/2
**Fly [3]** 30/2 30/3 30/4
**focus [2]** 32/23 46/12
**focused [2]** 47/13 78/16
**FOLEY [2]** 2/6 5/18
**follow [5]** 8/10 9/11 37/12 73/3 81/23
**follow-up [1]** 73/3
**followed [1]** 81/25
**following [2]** 58/12 80/10
**forbearer [1]** 33/5
**Force [1]** 11/17
**foregoing [1]** 90/8
**forever [1]** 83/16
**forget [1]** 67/8
**form [3]** 50/19 77/6 77/18
**formulations [1]** 35/5
**forth [6]** 9/23 22/11 29/12 61/6 67/23 77/4
**forward [5]** 54/14 54/24 55/2 72/7 79/1
**fourth [1]** 41/19
**frame [3]** 17/23 19/15 64/15
**frames [1]** 86/8
**framing [4]** 45/14 46/2 46/20 57/24
**Francisco [1]** 2/8
**freeze [7]** 25/20 26/2 26/17 26/21 27/14 27/19 80/22
**friend [2]** 49/8 49/19
**friends [7]** 18/4 20/4 20/17 40/5 40/13 56/14 75/6
**full [2]** 37/19 39/20
**fundamentally [3]** 38/17 39/4 39/6
**further [9]** 25/23 27/17 39/1 42/14 53/16 58/23 79/21 79/23 82/12


## G


**GANNON [2]** 2/6 5/18
**gave [1]** 82/21
**GECA [1]** 48/23
**general [1]** 8/5
**generally [1]** 8/22
**geographic [1]** 40/8
**get [25]** 28/8 28/23 29/24 31/23 35/17 36/17 38/5 46/15 51/2 56/19 57/15 57/19 58/9 65/21 68/10 73/13 76/14 81/8 81/20 83/15 83/16 85/14 87/16 88/6 89/6
**gets [6]** 28/24 37/8 37/16 65/3 71/1 87/23
**getting [3]** 21/4 74/7 85/17
**GIAQUINTO [2]** 2/2 5/16
**give [10]** 6/13 6/20 13/5 13/8 27/2 43/17 51/9 55/1 57/17 71/12

## G


**given [4]** 59/6 71/11 79/19 79/22
**gives [1]** 62/12
**giving [3]** 84/9 84/24 88/14
**go [37]** 12/12 17/16 18/5 21/9 22/7 24/17 25/1 28/12 28/13 29/19 31/3 31/4 31/17 31/17 35/3 36/22 39/1 42/1 42/14 44/2 48/10 49/7 54/14 54/24 55/2 55/16 56/22 57/11 57/22 61/13 62/1 62/24 65/11 74/8 76/10 79/1 81/14
**goes [8]** 21/23 42/16 56/9 67/22 76/24 77/1 79/8 88/11
**going [25]** 7/8 9/9 10/1 15/6 27/9 28/9 47/18 47/18 47/19 47/20 47/21 47/22 53/15 59/13 59/25 60/4 68/7 74/23 74/24 80/17 81/16 85/6 86/21 89/4 89/6
**good [5]** 5/4 5/15 6/2 43/18 61/10
**got [3]** 5/25 29/2 60/25
**gotten [1]** 8/3
**govern [1]** 56/14
**Government [36]** 6/25 10/12 22/25 27/21 27/24 27/25 30/18 36/3 37/12 37/16 40/23 41/18 41/19 41/25 42/1 42/8 42/9 42/15 46/19 49/3 58/7 59/7 59/15 64/3 64/8 64/19 64/22 75/16 76/7 77/16 78/4 78/16 79/11 80/6 80/14 80/18
**Government's [8]** 13/1 13/6 27/3 29/13 42/6 59/3 59/10 75/23
**Grand [1]** 2/3
**grant [2]** 38/6 41/14
**granted [3]** 37/4 38/8 64/12
**granting [1]** 35/14
**great [1]** 39/25
**greater [1]** 33/15
**green [1]** 55/1
**grid [1]** 48/9
**grounds [4]** 16/14 16/17 26/12 64/10
**group [2]** 13/16 21/1
**guess [4]** 13/16 14/5 59/22 80/7
**guidance [1]** 79/3
**guidelines [3]** 13/4 16/13 26/24
**guiding [1]** 35/11


## H


**hac [1]** 5/19
**had [16]** 9/16 10/7 10/8 10/10 10/12 11/17 19/23 24/9 30/2 53/23 56/5 72/7 72/16 74/13 83/23 84/16
**half [8]** 6/19 6/20 28/9 28/10 28/14 28/17 85/20 85/25
**halt [1]** 59/4
**halted [2]** 10/12 10/14
**handle [1]** 44/4
**happen [5]** 15/6 47/19 62/1 63/3 87/10
**happened [6]** 47/25 48/4 60/23 63/1 66/7 66/13
**happening [3]** 48/10 66/18 66/23
**happy [9]** 8/10 9/11 12/12 43/25 44/4 49/1 58/23 67/1 81/8
**hard [11]** 61/14 74/5 74/6 74/8 84/2 84/3 85/3 85/4 85/6 85/8 87/2
**harm [8]** 27/17 27/19 33/19 48/12 61/25 65/23 66/2 66/22
**harms [4]** 32/22 33/3 33/10 48/9
**has [95]**
**hasn't [2]** 8/2 87/10
**HASTINGS [2]** 2/9 5/19
**have [150]**
**haven't [1]** 23/6
**having [2]** 74/9 87/18
**hazard [13]** 22/4 22/4 22/5 22/7 22/9 22/9 29/9 37/6 37/6 55/20 55/20 85/17 85/17
**hazard/no [3]** 22/9 55/20 85/17
**he [23]** 16/2 60/21 60/24 61/2 61/2 61/5 61/5 61/7 61/8 61/14 61/15 61/16 61/16 61/17 62/13 63/8 68/9 68/10 70/1 73/25 74/1 84/21 84/24
**head [1]** 74/1
**hear [3]** 28/2 44/10 56/2
**heard [1]** 80/18
**hearing [6]** 1/13 4/3 6/9 58/12 89/11 90/5
**heart [1]** 71/4
**heavily [2]** 56/15 66/24
**HEGSETH [3]** 1/7 5/7 90/3
**heightened [2]** 54/8 58/19
**helpful [2]** 24/20 30/6
**helps [1]** 57/25
**here [50]** 5/6 5/13 10/2 13/11 13/12 16/21 22/4 24/24 27/9 29/9 30/12 30/23 31/5 32/22 35/1 35/14 38/2 46/19 47/10 47/24 48/14 51/4 51/14 54/1 54/18 56/3 56/11 57/7 58/19 59/2 64/5 64/20 64/24 66/7 66/12 67/19 69/20 70/12 70/15

## H


**here... [11]** 75/14 78/25 83/17 84/12 86/10 87/15 87/18 87/23 88/2 88/6 88/8
**Hey [6]** 19/25 51/8 57/6 71/20 72/16 88/5
**high [1]** 83/13
**higher [2]** 34/25 68/20
**highlighted [1]** 29/21
**him [1]** 88/22
**his [5]** 60/21 61/14 84/14 88/24 88/24
**historic [1]** 19/19
**historically [6]** 17/15 20/8 21/17 85/14 85/15 85/20
**history [1]** 19/20
**hits [1]** 23/5
**hoc [13]** 59/18 60/9 63/16 63/20 69/10 69/11 69/13 69/13 70/4 71/11 76/2 76/12 79/19
**hold [1]** 66/19
**Holder [1]** 25/6
**home [1]** 79/14
**honest [1]** 69/1
**Honor [20]** 5/15 6/2 7/16 9/10 11/3 11/15 14/13 15/21 43/20 44/1 54/4 57/20 60/6 64/15 66/21 78/15 79/25 81/9 89/9 89/10
**Honor's [1]** 48/2
**HONORABLE [6]** 1/15 8/22 83/18 84/14 85/2 88/21
**Honorable Marks [1]** 88/21
**hoping [1]** 70/7
**horizon [3]** 83/20 85/11 86/1
**hostility [1]** 13/1
**hour [6]** 6/19 6/20 28/9 28/10 28/14 28/17
**hours [1]** 6/9
**how [26]** 15/11 15/11 17/11 18/22 29/24 32/20 35/22 37/11 37/20 37/22 40/10 46/6 57/12 57/18 58/24 60/4 60/5 68/11 69/23 80/8 80/8 86/16 86/16 86/17 87/12 87/23
**however [4]** 13/10 15/8 17/2 44/3
**hurdle [1]** 85/7
**hypothetical [8]** 53/1 68/13 69/3 69/3 80/15 82/21 82/24 82/24
**hypothetically [1]** 16/12


## I


**I [249]**
**I'd [1]** 67/7
**I'll [12]** 5/12 6/20 18/15 28/2 28/6 28/22 38/9 44/1 56/4 69/12 74/17 83/20
**I'm [41]** 6/17 7/8 8/1 8/10 9/10 9/11 10/2 10/19 15/22 19/7 19/8 23/19 24/15 24/15 28/9 33/22 34/20 36/9 38/24 38/25 43/13 43/25 44/4 49/1 50/12 53/21 57/8 58/22 58/22 67/1 68/25 69/25 70/2 77/14 80/7 81/8 83/8 85/8 87/21 89/4 89/6
**I've [6]** 6/9 9/16 10/7 11/14 57/9 86/23
**Ibrahim [4]** 25/5 25/5 29/24 44/22
**identified [5]** 14/25 21/11 21/14 41/24 51/21
**identify [2]** 15/15 19/2
**III [1]** 26/9
**ilk [2]** 36/4 73/17
**IM [2]** 1/5 90/4
**immediate [1]** 66/23
**immediately [2]** 48/10 48/20
**IMMERGUT [2]** 1/15 4/3
**impact [1]** 68/8
**impacted [3]** 48/20 48/20 48/23
**impactful [1]** 23/17
**impacts [7]** 14/18 48/5 48/7 48/8 48/9 65/12 65/16
**impermissible [3]** 39/20 41/10 88/11
**impermissibly [4]** 41/15 43/1 43/2 52/22
**implicated [2]** 17/6 63/10
**implicating [1]** 53/2
**implications [2]** 45/24 47/4
**important [4]** 12/7 29/16 62/3 79/13
**impose [2]** 32/4 67/14
**improper [6]** 38/7 50/2 56/3 69/8 77/7 77/9
**inaction [8]** 31/19 51/16 53/8 65/24 70/17 70/21 70/22 71/5
**inception [1]** 19/22
**inclination [10]** 24/24 25/2 25/9 25/17 26/10 26/23 27/11 27/12 27/18 28/2
**inclinations [3]** 24/19 28/5 44/6
**inclined [4]** 6/13 24/17 28/4 38/6
**include [2]** 55/24 82/6
**including [3]** 9/22 29/9 76/9
**incorporated [1]** 21/12
**incorporating [1]** 86/12
**incredibly [1]** 62/15
**indefinite [2]** 66/19 84/9
**independent [4]** 22/1 31/7 88/22 88/24
**INDEX [1]** 3/19

## I


**indicated [2]** 58/5 84/14
**indicates [1]** 22/5
**indication [2]** 9/1 83/14
**indirect [1]** 33/10
**individual [9]** 36/5 37/24 46/7 63/7 63/11 64/24 65/20 66/16 83/4
**individual-projects [1]** 64/24
**individualized [6]** 14/8 22/17 50/3 52/17 71/3 77/10
**individuals [1]** 65/2
**industry [1]** 24/3
**inextricably [1]** 45/5
**infancy [1]** 83/21
**information [7]** 22/9 27/10 69/22 71/16 71/17 73/9 88/8
**informed [1]** 24/4
**inherent [2]** 52/12 76/16
**inherently [4]** 22/21 40/4 77/11 85/4
**initiate [1]** 19/18
**injunction [35]** 5/10 6/15 16/15 16/20 16/22 26/14 26/15 26/15 28/12 28/24 34/23 35/3 35/12 35/19 36/8 36/19 36/19 42/10 44/2 44/16 46/17 48/11 49/7 57/11 58/1 58/4 59/17 66/25 67/6 74/10 76/3 77/25 78/1 78/5 89/7
**injunctive [2]** 34/15 34/17
**innocuous [15]** 52/7 53/2 53/7 54/6 54/14 54/20 54/23 62/18 63/11 65/3 67/10 67/12 67/14 87/2 87/3
**inquired [1]** 72/9
**inquiries [1]** 24/4
**inquiry [6]** 32/20 40/2 52/2 75/25 77/10 86/21
**insertions [1]** 76/21
**instructed [2]** 35/12 70/25
**insurers [2]** 22/10 22/11
**insurmountable [2]** 86/15 86/24
**intellectual [1]** 60/6
**intellectually [1]** 68/25
**interagency [1]** 30/17
**interest [6]** 41/22 42/6 49/14 66/11 66/13 66/24
**interested [1]** 71/20
**interesting [2]** 78/16 80/14
**interests [3]** 27/6 27/8 81/17
**interference [1]** 18/25
**interim [1]** 37/3
**internal [2]** 25/24 73/16
**intertwined [1]** 45/5
**intrusion [1]** 14/20
**involved [3]** 15/12 60/8 81/20
**involving [2]** 29/8 78/18
**irreparable [3]** 27/17 27/19 48/12
**is [458]**
**is it [1]** 87/3
**isn't [12]** 9/18 33/19 50/10 50/11 53/8 59/24 60/2 60/24 61/7 70/4 84/20 86/17
**issue [22]** 9/16 9/18 10/3 10/9 12/12 13/11 13/12 13/18 15/4 18/23 25/7 40/6 44/24 45/14 45/15 46/21 47/10 52/20 57/24 64/14 66/13 76/9
**issued [2]** 12/3 45/22
**issues [8]** 22/18 24/24 43/16 58/25 59/24 63/9 67/19 86/16
**it [209]**
**it's [120]**
**its [19]** 7/13 12/2 19/24 22/3 23/24 26/7 30/9 31/15 44/22 48/23 53/4 58/13 59/16 59/16 63/12 70/22 72/24 74/23 83/21
**itself [10]** 21/25 53/13 56/13 57/4 72/8 75/4 75/5 75/23 76/15 85/19


## J


**J [1]** 1/15
**JENNIFER [2]** 2/12 5/19
**Jessup [2]** 3/15 90/15
**Jill [2]** 3/15 90/15
**judge [54]** 1/16 4/3 7/22 8/8 8/17 9/15 10/6 10/18 11/25 12/8 14/1 17/14 18/3 18/14 19/8 19/11 19/15 20/15 21/5 21/20 22/20 24/6 28/14 29/3 30/2 32/3 34/9 35/25 36/25 37/14 38/4 38/16 41/16 49/8 49/15 50/22 53/11 54/3 55/4 67/8 70/7 70/10 73/14 73/23 74/17 74/20 74/21 82/15 82/18 82/19 84/13 86/19 88/10 89/2
**judging [1]** 45/10
**judgment [1]** 73/18
**juncture [3]** 10/9 50/8 66/25
**jurisdiction [13]** 24/23 24/25 25/2 25/4 37/18 37/20 42/17 44/10 44/21 45/1 45/11 55/25 56/22
**jurisdictional [7]** 24/24 43/12 43/14 45/7 46/18 54/12 55/14
**just [81]** 6/11 6/15 7/8 7/8 8/17 12/6 13/2 14/16 15/19 15/19 20/12 21/3 21/16 23/7 24/17 24/19 28/4 32/1 32/10 32/16

## J


**just... [61]** 33/4 33/14 35/3 35/7 35/21 37/11 37/22 38/7 38/24 43/11 46/14 48/5 48/5 48/16 48/16 49/4 49/19 49/22 50/4 51/13 52/25 53/3 55/1 55/25 57/3 58/15 59/22 60/22 62/2 62/17 64/10 64/16 65/2 65/3 66/14 66/18 67/8 68/7 68/7 68/18 69/3 72/5 73/3 73/16 75/1 75/14 77/12 80/6 80/7 80/15 80/17 81/18 81/19 82/19 85/21 86/2 86/17 86/25 87/10 88/15 88/15

**Justice [1]** 6/3

**justification [12]** 59/14 63/21 63/23 69/15 69/17 70/4 71/8 71/19 72/25 75/24 76/3 79/18

**justifications [2]** 63/17 74/25

**justified [1]** 79/18

**justify [1]** 61/9


## K


**K [1]** 2/17

**KARIN [1]** 1/15

**KATHLEEN [3]** 2/16 5/20 5/24

**keep [2]** 15/22 63/4

**keeps [2]** 64/22 78/21

**key [2]** 84/16 84/16

**kind [10]** 6/16 14/11 15/22 18/23 24/20 28/21 59/21 73/17 80/7 86/9

**know [56]** 7/3 8/9 8/11 17/18 21/13 22/22 23/2 23/3 24/8 29/23 30/16 30/18 31/14 32/25 33/11 34/9 34/9 34/18 37/5 38/4 40/12 40/12 40/14 41/18 43/23 47/1 47/16 49/18 52/8 54/14 57/8 57/13 59/11 60/22 61/14 61/17 61/17 61/18 62/21 64/1 66/18 67/9 67/17 73/16 74/4 75/1 75/5 77/21 80/2 85/6 86/17 86/21 86/23 87/19 88/1 88/15

**knowing [1]** 66/3

**knowledge [1]** 77/13

**Kristofor [2]** 3/8 6/5


## L


**L [2]** 3/15 90/15

**lacking [1]** 76/20

**Land [1]** 31/15

**large [3]** 48/7 54/7 54/16

**large-scale [2]** 54/7 54/16

**largely [1]** 26/12

**larger [1]** 48/8

**Las [1]** 5/21

**last [3]** 10/13 23/22 70/7

**later [8]** 15/20 24/8 27/7 36/2 60/12 61/17 75/18 80/2

**Latif [1]** 25/6

**law [21]** 27/16 29/14 33/17 33/18 33/22 39/13 41/22 44/7 44/15 46/14 56/6 56/12 58/18 59/19 60/9 60/19 69/12 70/16 74/20 74/21 81/3

**law's [1]** 51/23

**lawsuit [2]** 7/4 36/7

**leanings [1]** 75/21

**least [2]** 33/18 60/4

**leave [1]** 38/2

**left [1]** 21/18

**legal [5]** 22/6 26/2 26/4 31/21 48/13

**legally [1]** 68/3

**legislative [1]** 19/20

**legitimacy [1]** 45/10

**length [1]** 86/18

**less [3]** 84/2 85/13 87/18

**let [22]** 5/11 6/15 6/24 11/1 11/22 12/14 13/5 13/23 15/19 16/11 17/11 24/17 28/22 49/3 52/25 59/20 65/23 68/6 69/21 73/3 74/11 82/2

**let's [7]** 28/7 36/1 37/1 37/2 52/11 57/11 75/20

**letter [2]** 12/20 12/22

**levels [1]** 40/9

**Lewis [5]** 2/3 2/6 2/10 2/13 5/16

**light [4]** 21/9 35/11 55/1 89/7

**like [19]** 14/20 16/6 16/7 23/3 30/4 30/19 49/9 49/19 60/7 62/25 65/3 68/11 75/18 81/18 81/19 86/14 86/24 87/11 88/17

**likelihood [6]** 16/17 27/13 34/25 35/1 62/9 64/11

**limitation [1]** 54/13

**line [2]** 44/7 62/15

**lines [1]** 80/8

**list [5]** 30/2 30/3 30/4 30/6 30/7

**litigation [7]** 26/11 35/9 60/12 71/1 71/13 76/18 81/14

**little [6]** 6/11 14/7 28/11 46/16 53/2 58/22

**LLC [1]** 5/21

**LLP [5]** 2/3 2/6 2/10 2/13 2/16

**local [1]** 22/10

**long [8]** 19/19 66/7 75/22 75/23 86/17 87/12 87/23 88/4

**longer [5]** 24/10 36/14 36/21 37/9 87/25

**look [9]** 15/14 15/16 44/24 45/5 59/5 59/22

## L


**look... [3]** 59/23 79/8 80/21
**looked [5]** 15/3 15/10 60/25 64/2 64/23
**looking [8]** 13/23 22/18 58/2 59/2 59/22 65/19 73/23 87/1
**looking-back [1]** 59/22
**Los [1]** 2/4
**lost [1]** 80/7
**lot [10]** 14/3 24/23 41/4 43/23 47/19 49/12 52/12 54/25 68/15 77/22
**Louisiana [1]** 63/25
**Lujan [2]** 39/14 45/22
**lurking [1]** 74/25


## M


**made [19]** 11/17 13/9 25/22 27/8 30/9 33/9 41/22 51/8 52/23 59/8 60/15 60/20 61/21 62/14 69/16 76/22 84/7 84/8 88/8
**main [1]** 10/4
**maintain [1]** 31/19
**maintained [5]** 37/20 50/1 72/24 83/19 84/19
**majority [2]** 17/6 23/19
**make [13]** 26/20 28/25 40/10 54/22 56/4 60/16 65/7 65/13 67/9 74/12 81/24 82/15 82/16
**makes [7]** 21/25 47/17 60/10 71/2 74/22 74/22 88/21
**making [3]** 10/5 13/13 25/21
**Management [1]** 31/15
**mandamus [11]** 38/21 42/25 51/2 52/20 52/21 53/14 67/24 68/3 68/4 77/8 77/18
**mandate [2]** 58/14 65/10 74/11 82/2
**mandated [4]** 37/13 47/6 81/5 82/11
**mandates [2]** 65/9 65/10
**mandatory [3]** 26/15 34/22 37/13
**many [7]** 14/17 30/13 35/16 47/7 80/2 80/2 86/4
**marginal [1]** 87/17
**Mark [1]** 16/2
**Marks [19]** 8/21 8/22 13/24 14/2 25/22 59/15 60/21 61/22 62/12 62/20 68/7 71/8 73/22 75/17 83/18 84/6 84/14 85/2 88/21
**Marks' [3]** 22/16 63/19 70/1
**material [2]** 14/3 74/19
**materials [1]** 73/20
**matter [15]** 7/19 7/21 8/5 21/8 24/23 25/1 29/4 29/14 42/19 54/19 72/6 76/15 77/6 77/22 79/19
**may [27]** 8/1 8/6 9/6 10/11 10/25 12/2 12/19 12/23 21/9 24/8 33/8 36/13 36/21 37/23 39/18 42/1 42/4 42/19 51/1 52/8 54/9 54/9 56/10 67/16 68/1 76/22 82/15
**May 7 [1]** 12/19
**May 7th [4]** 8/1 8/6 10/25 12/23
**maybe [5]** 24/9 38/1 54/7 59/13 62/7
**me [34]** 5/7 5/11 5/18 6/24 9/4 10/23 11/1 11/22 12/10 12/14 13/5 13/23 15/19 16/11 17/11 19/8 20/21 22/17 24/11 24/17 31/23 43/21 49/3 49/9 52/25 59/20 65/23 68/6 69/21 70/8 73/3 73/11
**mean [23]** 10/4 16/6 16/23 28/15 33/14 34/1 36/25 51/14 52/5 55/15 61/3 61/8 61/23 62/22 63/19 67/12 73/22 76/19 78/5 79/20 85/8 87/16 88/17
**meaningful [4]** 29/7 31/10 34/2 35/2
**means [8]** 34/4 35/5 49/21 55/21 56/24 78/24 78/24 90/10
**meant [1]** 35/21
**measured [1]** 83/22
**meet [6]** 31/20 32/14 41/11 41/11 44/17 48/2
**meetings [1]** 84/16
**meets [1]** 33/1
**member [1]** 33/19
**members [5]** 11/4 17/5 48/6 48/19 66/12
**members' [1]** 48/18
**memo [3]** 12/2 12/20 12/23
**memorandum [3]** 8/1 8/6 10/25
**memorialized [1]** 12/17
**memos [1]** 12/18
**mention [2]** 19/15 73/1
**mentioned [12]** 22/14 34/10 34/10 38/4 38/5 50/22 71/23 71/23 71/24 73/23 73/25 82/2
**merge [2]** 41/18 41/19
**merit [1]** 48/17
**merited [1]** 17/1
**merits [16]** 16/17 27/13 28/15 35/13 35/17 35/17 36/3 36/15 36/17 36/18 37/1 37/8 58/20 62/9 64/11 69/9
**met [7]** 17/18 18/5 26/10 34/5 48/14 64/9 84/21

## M


**methodology [1]** 25/25
**MICHAEL [1]** 2/2
**might [22]** 23/2 24/8 30/10 30/10 30/11 30/13 30/14 30/15 34/19 36/1 52/14 52/14 63/9 65/25 67/14 67/15 72/4 72/5 77/5 83/24 84/11 86/15
**Mike [1]** 5/16
**Mike Giaquinto [1]** 5/16
**military [3]** 14/19 14/21 52/13
**mind [1]** 23/20
**minds [1]** 45/2
**minutes [4]** 6/16 57/14 57/18 57/19
**mischaracterization [1]** 78/19
**missing [1]** 11/2
**mission [1]** 63/3
**mitigate [2]** 18/22 21/15
**mitigated [1]** 67/16
**mitigates [1]** 87/5
**mitigation [18]** 9/22 9/24 11/13 12/16 15/16 15/17 18/18 18/19 18/20 20/23 21/12 54/25 65/12 73/2 85/19 85/21 85/23 85/25
**modern [2]** 71/24 73/1
**Monetary [1]** 27/20
**moniker [1]** 7/6
**Montgomery [1]** 2/7
**months [8]** 37/2 60/22 72/8 72/11 75/18 80/2 83/22 84/10
**moot [6]** 35/15 35/16 35/22 36/1 36/5 36/7
**more [20]** 9/6 17/3 20/1 20/2 20/6 27/9 33/8 33/9 34/7 41/16 41/23 46/16 54/7 54/20 54/25 68/16 73/10 82/22 83/24 86/5
**Morgan [5]** 2/3 2/6 2/10 2/13 5/16
**MORIARTY [1]** 2/16
**morning [4]** 5/4 5/15 6/2 62/25
**most [4]** 41/13 42/13 51/11 77/1
**mostly [1]** 6/11
**motion [24]** 4/3 5/9 5/10 6/14 6/15 12/15 16/15 24/22 26/13 28/7 28/15 28/22 32/18 32/19 34/17 38/12 42/10 44/1 44/5 48/25 49/4 57/25 58/1 59/16
**motions [3]** 1/13 28/17 90/5
**motivated [2]** 27/4 69/22
**motivations [1]** 60/2
**motives [2]** 75/2 75/20
**mountaintops [1]** 69/7
**mouth [1]** 34/12
**move [1]** 36/22
**moving [3]** 28/23 66/9 72/7
**MRT [7]** 18/12 18/15 18/16 19/6 45/19 46/24 47/13
**Ms [1]** 5/22
**much [12]** 32/22 52/7 54/7 57/12 61/10 66/6 68/13 68/20 71/17 82/22 88/14 89/1
**MUELLER [4]** 2/16 5/24 5/24 5/25
**multiple [4]** 31/13 48/9 83/23 85/18
**Murphy [2]** 5/20 5/22
**must [47]** 26/21 29/10 29/19 31/3 31/4 31/17 31/17 32/4 32/6 37/22 37/24 38/23 39/1 39/3 39/11 39/15 39/16 39/16 40/1 40/1 41/2 49/21 50/2 50/2 50/7 50/20 50/20 51/3 51/23 51/24 51/25 52/24 53/16 53/17 53/17 54/14 55/16 68/4 77/9 78/10 78/11 78/12 80/7 83/2 83/2 83/3 83/4
**mutually [1]** 79/10
**my [64]** 5/18 5/22 6/8 6/9 6/12 6/13 6/16 6/17 7/22 8/4 8/18 8/23 8/23 9/11 10/7 10/14 11/10 11/25 12/10 14/4 17/17 18/4 18/5 19/21 20/4 20/16 20/17 20/18 20/25 21/6 23/18 23/20 24/17 24/19 24/24 25/2 25/9 25/17 26/9 26/23 27/11 27/12 27/18 28/4 28/5 31/24 36/9 36/10 40/5 40/12 43/7 43/22 49/8 49/11 49/19 56/14 67/9 70/12 72/1 75/5 77/13 78/21 81/7 82/25


## N


**N [1]** 3/5
**name [2]** 36/8 39/25
**narrow [1]** 14/25
**national [24]** 13/2 13/3 13/7 13/9 13/13 15/9 15/24 22/15 22/18 26/6 27/5 27/8 41/23 41/24 53/1 54/23 59/24 67/15 67/19 71/20 71/21 72/25 81/16 81/21
**nationwide [3]** 16/20 16/22 16/25
**natural [1]** 42/21
**naturally [1]** 77/5
**nature [9]** 36/7 45/25 58/3 58/18 63/13 64/19 64/20 74/4 76/16
**near [1]** 14/21
**necessarily [21]** 21/20 23/10 23/11 35/14 36/1 36/5 37/15 39/9 41/2

## N


**necessarily... [12]** 42/15 50/7 52/1 53/21 55/9 55/21 55/24 56/2 70/4 70/24 70/25 71/7
**need [22]** 16/3 16/14 16/21 18/21 19/1 20/1 20/18 27/2 27/7 32/1 34/10 34/13 34/13 34/16 49/12 53/18 57/6 57/12 65/21 67/16 67/16 78/1
**needs [4]** 54/25 59/5 71/3 81/11
**never [9]** 20/6 35/17 72/24 74/25 80/17 83/16 85/9 86/6 87/9
**new [5]** 7/6 21/9 25/24 63/25 79/7
**next [4]** 25/15 52/11 52/13 79/25
**night [1]** 70/7
**nine [2]** 75/18 80/2
**Ninth [10]** 25/1 25/5 44/23 45/3 45/6 69/12 70/15 70/24 80/21 80/24
**no [64]** 1/5 9/16 11/3 11/8 11/14 11/25 12/21 12/21 19/11 20/17 21/5 22/5 22/7 22/9 25/16 28/20 30/2 30/3 30/4 31/6 31/11 35/23 36/14 36/21 36/24 36/24 37/6 37/9 37/14 37/18 41/22 43/13 43/25 43/25 43/25 43/25 44/25 45/1 45/11 48/17 55/20 56/8 56/11 56/17 56/24 56/24 56/24 57/2 57/5 70/5 70/18 72/11 72/11 74/20 78/1 80/12 80/12 82/13 83/13 85/17 86/11 86/12 87/25 90/17
**No-Fly [3]** 30/2 30/3 30/4
**none [3]** 9/25 22/6 77/23
**normally [1]** 61/11
**Northeast [1]** 64/1
**NORTHWEST [3]** 1/4 5/7 90/3
**not [180]**
**note [3]** 29/13 56/4 77/12
**notes [1]** 31/24
**nothing [9]** 34/8 43/5 47/7 60/23 66/19 79/23 79/23 83/5 86/2
**notice [1]** 49/8
**notifying [1]** 26/6
**notion [1]** 34/12
**November [1]** 10/13
**now [30]** 9/15 15/19 16/20 18/7 19/14 19/23 20/4 20/25 24/19 28/9 29/23 32/16 34/9 34/22 34/23 38/10 40/5 41/24 42/18 44/24 49/18 57/11 62/7 66/18 70/4 72/10 72/22 82/2 82/25 83/7
**number [4]** 5/8 5/17 39/25 44/18
**Number 246342 [1]** 5/17
**numbers [1]** 85/14
**NW [3]** 2/10 2/13 2/17


## O


**object [1]** 17/4
**obligation [3]** 53/4 53/10 54/21
**obligations [1]** 32/5
**obtain [6]** 34/8 34/16 34/20 36/16 39/3 51/11
**obtained [1]** 51/3
**obviously [4]** 16/20 30/16 67/12 87/16
**occurred [4]** 17/22 17/25 21/19 26/18
**occurring [1]** 22/24
**October [2]** 10/13 20/21
**off [6]** 14/13 15/19 32/2 44/6 44/9 58/4
**offer [2]** 8/13 33/1
**offered [2]** 61/24 61/25
**official [2]** 76/22 90/16
**oh [6]** 20/8 30/5 43/11 43/13 75/6 83/11
**okay [18]** 6/4 12/6 12/14 14/2 18/11 19/13 21/16 22/12 28/18 28/21 38/15 43/24 49/13 49/14 55/10 57/20 76/10 84/9
**once [3]** 21/17 23/5 87/16
**one [59]** 10/4 11/16 11/16 16/17 20/2 22/21 22/22 23/22 26/2 29/14 29/16 30/20 31/8 31/23 33/3 33/14 33/14 33/18 33/23 33/25 34/1 34/4 39/1 40/13 40/24 41/1 41/17 42/14 42/25 46/4 46/10 47/9 47/10 50/14 52/5 53/7 53/24 53/25 54/7 54/10 54/10 54/14 54/16 54/24 54/24 55/9 67/10 68/14 71/12 76/18 77/4 77/11 77/11 78/21 84/7 87/7 87/21 88/17 88/17
**one-size-fits-all [1]** 87/7
**ones [3]** 25/24 48/19 48/20
**ones that [1]** 48/19
**ongoing [11]** 7/23 8/5 8/18 9/17 9/19 10/15 10/24 11/19 12/5 12/11 17/18
**only [24]** 21/2 26/3 26/23 27/5 27/23 29/14 33/1 34/10 34/13 34/13 41/14 41/14 46/3 51/11 59/14 65/15 68/17 77/17 77/24 78/5 79/18 79/25 80/13 85/12
**open [1]** 5/3
**operates [1]** 69/14
**operation [1]** 52/7
**operations [1]** 14/19
**opine [2]** 68/13 78/2

## O


**opined [1]** 74/2
**opposed [4]** 32/16 83/22 84/9 88/5
**opposite [4]** 35/18 36/20 39/24 52/10
**opposition [2]** 12/15 59/17
**oral [1]** 5/9
**order [19]** 24/10 31/24 42/14 44/20 44/25 45/8 45/10 56/8 56/9 56/11 56/17 56/23 57/2 57/5 57/6 58/14 58/15 77/7 77/18
**ordering [1]** 47/22
**orders [1]** 56/9
**ordinary [1]** 67/17
**OREGON [4]** 1/2 1/8 5/17 90/17
**organization [3]** 33/3 33/19 53/23
**organizational [4]** 32/17 32/20 32/25 33/13
**organizations [5]** 48/6 48/18 53/19 66/12 86/13
**original [1]** 90/11
**originally [1]** 19/24
**other [28]** 14/23 14/23 16/14 18/4 19/3 20/4 20/17 23/15 23/16 31/7 31/15 33/12 33/14 40/5 40/13 45/4 45/5 49/9 49/19 54/16 56/15 60/2 61/24 67/1 73/8 75/6 75/13 88/7
**others [2]** 16/18 23/20
**otherwise [2]** 10/14 67/5
**our [30]** 7/16 11/4 11/4 11/5 12/4 12/11 13/22 15/1 15/1 17/16 19/16 19/16 19/16 22/5 29/21 30/1 37/14 37/16 37/17 45/2 48/10 48/18 48/25 58/3 58/3 62/17 71/10 72/13 79/14 81/7
**out [24]** 13/21 13/22 23/6 24/10 30/4 30/7 33/23 35/16 35/16 35/22 36/1 36/5 36/7 36/22 40/5 40/6 46/7 47/4 57/8 62/23 81/12 82/11 83/21 87/13
**outcome [2]** 25/24 65/24
**outright [8]** 68/8 68/12 68/14 68/17 68/20 82/23 86/3 87/20
**outside [1]** 88/11
**over [4]** 17/9 24/25 42/17 57/18
**overall [1]** 55/23
**overarching [1]** 30/24
**overbreadth [1]** 63/14
**overbroad [1]** 63/23
**overlapping [2]** 30/15 30/19
**oversight [2]** 81/24 81/25
**overturned [3]** 60/15 63/18 63/24
**overwhelming [2]** 23/19 42/6
**owed [1]** 78/25
**own [6]** 32/24 33/3 38/18 41/7 42/6 48/23


## P


**PAGE [1]** 4/2
**painted [2]** 40/16 40/18
**paper [1]** 43/24
**paramount [1]** 41/23
**pardon [1]** 31/23
**part [21]** 6/18 12/7 13/1 13/18 20/16 22/15 29/17 30/24 31/8 31/16 32/19 35/2 36/6 55/19 55/21 56/25 59/22 73/18 75/8 75/9 88/12
**particular [11]** 13/16 16/21 17/21 25/10 40/24 51/25 52/4 55/8 58/6 69/15 81/25
**particularized [1]** 50/20
**particularly [1]** 10/11
**parties [8]** 22/8 28/16 35/4 35/7 35/7 71/20 72/15 84/17
**party [3]** 28/24 32/6 32/6
**passed [1]** 9/7
**past [1]** 81/19
**path [1]** 74/9
**pause [9]** 19/12 19/12 53/6 53/12 69/23 74/13 84/9 84/10 86/11
**paused [3]** 18/19 60/25 81/13
**pausing [2]** 20/22 53/9
**pay [1]** 33/9
**pendency [1]** 81/14
**pending [3]** 25/24 35/9 35/10
**Pennsylvania [2]** 2/10 2/13
**people [3]** 30/5 49/12 73/10
**perfect [1]** 28/20
**perfectly [2]** 29/14 39/17
**perhaps [6]** 8/2 27/7 54/24 54/24 71/15 83/23
**period [4]** 10/11 17/16 83/22 87/6
**person [3]** 60/7 73/25 74/1
**perspective [1]** 83/20
**persuasive [1]** 52/9
**PETER [3]** 1/7 5/7 90/3
**phase [3]** 9/22 74/10 85/25
**Phone [1]** 31/25
**phones [1]** 32/1
**PI [3]** 43/13 43/16 81/7
**picture [2]** 52/5 70/13
**piggyback [1]** 33/15
**place [5]** 19/22 45/12 49/25 84/2 85/24

## P

**plain [2]** 44/25 45/11
**plaintiff [20]** 2/2 2/5 2/9 2/12 2/15 6/17 7/12 8/16 9/25 10/5 12/14 28/24 33/1 33/13 43/16 43/17 43/19 68/21 76/5 78/14
**plaintiffs [40]** 1/5 1/23 5/14 5/17 5/20 6/24 8/3 8/14 11/1 11/5 12/24 17/4 17/21 17/24 18/2 20/20 22/14 23/23 25/17 26/3 26/10 26/20 27/12 27/18 32/18 32/25 33/15 39/22 40/23 42/4 42/5 48/19 65/24 74/12 77/13 77/16 77/24 84/21 84/24 86/16
**plaintiffs' [12]** 5/9 14/10 21/1 27/23 29/22 32/20 48/6 54/19 72/14 76/2 76/21 84/8
**plan [2]** 6/8 6/9
**play [2]** 74/24 80/19
**plead [1]** 34/14
**pleadings [1]** 34/18
**Please [1]** 5/4
**pled [2]** 52/22 56/1
**plural [1]** 39/19
**podium [2]** 43/21 49/9
**point [26]** 8/9 8/12 8/15 28/5 37/25 40/5 42/12 47/20 47/21 47/22 49/17 53/25 54/3 54/8 54/10 54/12 54/17 56/12 67/9 70/20 74/12 77/25 82/20 83/1 87/9 87/17
**pointed [2]** 40/6 40/18
**points [2]** 82/15 82/16
**polar [2]** 35/18 39/24
**policies [2]** 53/7 76/25
**policing [1]** 57/10
**policy [36]** 12/17 24/1 25/13 31/19 35/20 36/1 36/2 36/3 38/25 42/14 42/18 47/4 50/14 50/16 50/17 50/24 51/20 53/6 53/13 54/4 54/9 55/7 58/15 67/21 67/22 67/22 67/22 67/25 69/6 77/3 77/17 79/5 79/11 79/18 80/10 85/12
**political [5]** 27/4 74/23 74/24 75/21 88/15
**portion [1]** 6/22
**PORTLAND [3]** 1/3 1/8 3/16
**posed [1]** 82/24
**poses [1]** 37/6
**position [4]** 37/14 37/16 37/17 70/18
**possibility [1]** 47/4
**possible [5]** 11/18 15/23 84/18 85/3 89/7
**possibly [1]** 46/18
**post [12]** 59/18 60/9 63/16 63/20 69/10 69/11 69/12 69/13 70/4 71/11 76/12 79/19
**posture [2]** 68/11 88/18
**posturing [1]** 88/15
**potential [3]** 14/18 15/7 44/20
**potentially [4]** 26/3 53/1 75/2 84/11
**practical [1]** 42/19
**practice [3]** 19/20 43/22 49/11
**precedent [4]** 25/5 56/16 80/25 80/25
**precipitate [1]** 39/8
**precipitating [1]** 68/1
**precisely [4]** 37/20 49/16 70/10 70/20
**predictable [1]** 66/9
**preface [1]** 7/1
**preliminarily [1]** 77/17
**preliminary [60]** 5/9 6/14 7/12 7/22 7/25 8/4 8/18 9/2 9/5 9/17 9/21 10/8 10/9 10/14 11/11 11/12 12/1 16/14 17/12 17/22 18/1 18/9 18/12 18/17 18/17 19/14 19/18 19/25 20/22 26/13 28/12 28/24 34/15 34/17 35/12 35/14 35/15 35/18 36/11 36/12 36/19 36/19 42/10 44/2 44/16 46/16 47/13 48/11 49/7 57/11 57/25 58/5 59/17 64/13 66/25 67/6 74/10 76/3 85/21 89/7
**prepared [1]** 60/22
**prescribe [1]** 32/6
**prescribed [1]** 38/19
**present [4]** 3/8 13/18 39/22 40/8
**presented [3]** 60/4 60/5 70/12
**presenting [1]** 51/4
**presents [2]** 52/12 54/7
**preserve [2]** 26/16 35/13
**pretext [3]** 13/3 27/9 60/1
**pretty [1]** 25/4
**prevail [2]** 39/3 42/18
**prevails [1]** 36/3
**preventing [1]** 26/6
**previously [2]** 86/18 87/3
**primary [1]** 15/1
**principal [1]** 85/24
**priority [1]** 15/9
**pro [1]** 5/19
**probably [2]** 15/20 57/14
**problem [16]** 13/22 15/1 15/15 15/16 18/24 18/25 19/1 22/24 23/3 35/3 60/13 62/20 64/4 85/5 85/7 86/24
**problems [1]** 14/13
**procedures [1]** 44/14
**proceed [14]** 23/6 33/20 37/22 37/23 43/1 50/2 50/21 51/24 53/17 66/19

## P

**proceed... [4]** 76/13 77/9 78/10 83/4
**proceedings [4]** 1/14 4/2 5/1 90/10
**proceeds [1]** 37/1
**process [65]** 10/23 10/23 10/24 11/21 13/19 14/9 14/15 14/18 15/14 16/5 19/19 22/2 22/3 22/15 23/25 25/21 26/7 29/5 29/6 29/10 29/16 29/17 29/18 29/18 30/8 30/10 30/25 31/6 31/6 31/7 31/8 31/16 31/16 44/20 45/16 45/19 46/5 46/6 46/25 47/16 47/25 51/1 51/22 55/1 55/18 55/22 57/1 58/13 59/4 59/10 63/6 63/7 65/5 65/11 66/8 79/1 80/11 80/17 81/4 81/12 81/15 81/23 82/9 82/11 86/13
**processed [5]** 11/7 36/10 37/4 66/15 77/6
**processes [2]** 30/12 44/14
**processing [6]** 7/18 42/2 42/20 46/24 50/23 64/21
**product [1]** 36/12
**progeny [1]** 44/22
**program [2]** 26/5 61/1
**programmatic [8]** 25/8 25/10 39/20 41/10 41/15 45/15 45/20 46/11
**progressed [1]** 11/21
**prohibit [1]** 32/10
**prohibitions [1]** 32/5
**prohibitory [9]** 26/15 34/22 58/4 58/17 77/24 77/25 78/3 78/3 78/5
**project [29]** 7/18 11/24 13/14 13/14 13/16 16/4 22/7 36/23 40/14 40/24 41/6 46/7 52/11 52/12 53/2 53/2 53/3 54/20 55/8 63/9 63/10 63/11 65/3 65/4 65/8 65/25 81/18 81/18 87/3
**project-specific [1]** 40/14
**projects [38]** 7/13 7/24 8/25 9/2 11/18 12/2 13/17 14/5 14/16 17/6 21/1 21/11 23/9 23/12 23/15 23/16 23/25 25/14 26/17 26/21 36/6 40/6 40/19 42/1 53/5 55/7 55/9 62/18 62/19 64/24 65/2 65/20 65/25 67/14 67/22 77/3 85/15 87/2
**prong [5]** 25/20 26/1 27/17 31/21 48/1
**prongs [1]** 25/19
**proportion [1]** 62/23
**prove [2]** 34/16 76/2
**proven [1]** 33/5
**provide [5]** 59/13 60/12 71/7 71/18 77/14
**provided [4]** 19/24 59/7 69/15 73/9
**provides [1]** 69/17
**providing [1]** 64/16
**provision [7]** 25/3 29/4 37/21 55/15 56/22 57/3 65/18
**provisions [1]** 68/24
**public [1]** 66/24
**publicly [1]** 76/22
**pure [1]** 59/18
**purport [1]** 33/12
**purported [11]** 34/6 35/20 42/18 50/14 50/24 51/20 53/13 55/6 55/20 75/24 85/12
**purportedly [1]** 33/1
**purposes [7]** 16/14 33/4 34/17 34/18 37/2 61/24 86/22
**put [5]** 23/4 29/12 34/11 61/4 83/20
**puts [1]** 30/4

## Q

**qualities [1]** 32/14
**question [12]** 6/25 20/19 22/12 23/22 44/23 45/2 45/3 54/21 70/8 75/3 75/12 75/22
**questions [8]** 6/10 49/1 51/13 58/23 67/1 73/4 81/9 82/14
**quickly [2]** 84/18 89/6
**quo [5]** 26/16 35/3 35/5 58/9 58/10
**quote [9]** 32/4 32/5 32/6 35/15 39/12 49/20 69/19 76/6 76/7
**quote/unquote [2]** 35/15 39/12

## R

**R [1]** 90/1
**radar [3]** 18/24 63/10 73/2
**raise [1]** 25/7
**raised [1]** 26/12
**rather [4]** 24/8 25/9 25/10 27/5
**rational [3]** 60/11 60/14 60/17
**rationale [6]** 13/2 59/5 70/5 70/6 71/12 74/2
**rationalization [6]** 59/18 60/19 63/16 63/20 69/14 79/19
**rationalizations [1]** 60/10
**RDR [2]** 3/15 90/15
**reach [4]** 16/14 16/18 46/3 46/4
**read [3]** 20/4 44/7 69/12
**readily [1]** 23/20
**readiness [1]** 14/19

**reading [3]** 19/16 19/16 69/25
**real [3]** 48/5 48/9 66/23
**real-world [2]** 48/5 48/9
**reality [1]** 17/4
**really [27]** 7/10 15/5 17/5 44/11 48/16 48/16 49/19 54/19 57/25 59/2 60/9 63/21 64/17 65/4 65/6 66/7 66/10 70/2 74/13 74/14 78/18 79/13 79/13 81/8 81/10 88/4 88/4
**reason [15]** 9/16 15/4 24/3 32/14 42/9 59/23 61/3 62/4 64/18 66/6 71/21 76/11 76/13 79/22 85/9
**reasonable [9]** 40/24 40/25 41/1 41/8 43/4 52/15 54/2 54/10 64/23
**reasonableness [4]** 40/3 40/11 52/3 77/10
**reasoning [2]** 59/6 72/23
**reasons [5]** 44/18 62/12 62/13 66/24 76/23
**rebut [1]** 28/25
**rebuttal [4]** 6/23 28/11 57/15 57/19
**received [1]** 11/8
**receives [1]** 22/7
**recess [2]** 82/17 89/8
**recognition [1]** 15/5
**recognize [1]** 10/2
**recognized [2]** 79/21 80/15
**recommendation [1]** 21/23
**reconsider [1]** 84/10
**record [51]** 5/6 5/11 6/11 6/12 8/14 8/15 8/24 9/1 9/14 11/10 12/3 12/4 12/7 21/17 27/11 39/9 54/1 59/12 59/12 62/6 62/11 69/24 70/19 72/1 73/18 74/5 74/9 75/4 75/9 75/10 75/12 75/20 75/22 75/23 77/11 78/12 78/19 79/16 80/5 80/12 80/12 80/25 83/13 83/18 83/25 84/1 85/8 86/2 87/18 88/12 90/9
**record-specific [2]** 39/9 77/11
**refer [2]** 7/8 49/13
**referenced [1]** 59/12
**referred [1]** 7/3
**referring [2]** 70/1 78/21
**refinement [1]** 79/20
**refrain [3]** 25/23 32/7 32/12
**regard [6]** 18/2 23/8 24/25 26/19 74/11 88/8
**regarding [2]** 27/8 48/15
**regardless [1]** 72/20
**regulation [3]** 11/13 18/12 19/16
**regulations [4]** 19/21 50/10 58/8 79/2
**regulatory [10]** 7/14 10/3 13/4 14/9 16/13 22/13 26/7 26/24 27/14 64/8
**reinforces [1]** 39/14
**reinitiated [1]** 82/10
**reinstated [1]** 58/10
**reiterated [1]** 88/23
**related [1]** 44/20
**relative [2]** 35/6 85/11
**relatively [4]** 52/8 54/6 67/11 67/13
**reliance [2]** 66/10 66/13
**relied [2]** 63/21 66/12
**relief [34]** 28/2 34/1 34/15 34/17 35/15 36/11 36/12 36/17 38/3 38/3 38/8 39/3 41/14 42/11 42/13 42/15 42/16 50/24 51/2 51/6 51/7 51/9 51/12 51/12 52/20 64/13 68/3 68/4 77/8 77/12 77/14 77/23 77/23 78/6
**rely [3]** 30/10 56/15 61/11
**remain [1]** 49/13
**remaining [1]** 41/17
**remains [1]** 35/10
**remand [1]** 38/20
**remanded [1]** 60/15
**remedies [1]** 81/8
**remedy [7]** 17/3 34/20 38/18 38/19 38/20 42/22 42/23
**reminder [1]** 32/1
**remiss [1]** 67/7
**REN [2]** 3/3 6/3
**renewable [9]** 1/4 5/6 5/7 15/7 15/8 33/7 34/7 63/25 90/3
**repeated [1]** 11/6
**repeatedly [1]** 88/21
**repeating [1]** 83/7
**reply [1]** 30/1
**report [2]** 82/3 82/6
**REPORTER [2]** 3/15 90/16
**represent [1]** 20/17
**representation [1]** 78/6
**represented [1]** 10/23
**representing [1]** 18/4
**represents [1]** 5/21
**requests [1]** 11/17
**require [1]** 32/11
**required [8]** 18/22 21/14 33/16 44/15 58/7 58/11 58/12 79/2
**requirement [2]** 41/11 41/12
**requirements [3]** 21/13 26/10 34/5
**requires [6]** 39/2 39/10 40/20 40/20 41/5 52/16
**reserve [3]** 6/18 6/22 43/7

## R

**reserved [1]** 6/9
**resolution [1]** 84/25
**resolve [2]** 65/22 84/17
**resolved [1]** 37/7
**respect [13]** 17/24 19/14 20/22 25/15 26/4 26/13 27/5 27/17 34/22 35/20 35/25 39/5 69/5
**respond [4]** 24/21 49/4 63/5 67/6
**responded [1]** 24/5
**response [1]** 56/5
**rest [4]** 40/25 41/2 43/7 66/20
**restart [1]** 58/13
**restrict [1]** 32/12
**restrictions [2]** 32/5 83/10
**result [6]** 27/19 42/20 42/21 42/22 50/25 77/5
**results [1]** 47/5
**resume [3]** 27/24 42/1 51/1
**resumed [4]** 7/12 9/2 10/10 10/24
**retroactive [1]** 86/11
**returned [1]** 11/23
**review [65]** 7/13 7/23 7/25 8/4 8/18 8/25 9/3 9/5 9/8 9/9 9/17 9/21 10/9 10/15 11/9 11/10 11/10 11/11 11/12 12/2 12/5 13/3 13/19 14/5 14/11 14/18 15/24 17/12 17/22 18/1 18/10 18/12 18/17 18/17 19/15 19/18 19/25 22/15 22/16 22/17 22/23 23/3 23/25 25/9 25/25 26/1 26/5 26/17 26/21 27/24 29/4 36/25 37/21 40/21 41/6 47/14 53/4 53/6 54/21 55/14 55/24 68/2 69/23 85/21 86/9
**reviewed [5]** 11/20 56/10 67/17 69/18 70/11
**reviewing [2]** 25/14 36/12
**reviews [4]** 9/19 20/22 21/19 53/9
**right [101]**
**ringing [1]** 31/25
**ripe [1]** 18/7
**rise [5]** 32/21 41/3 52/15 54/11 78/12
**rises [1]** 75/3
**risk [5]** 15/18 41/24 63/5 66/17 87/6
**risks [5]** 15/6 21/15 52/12 67/15 71/21
**RMR [2]** 3/15 90/15
**road [2]** 37/2 37/3
**role [1]** 22/2
**room [2]** 3/16 23/4
**rough [1]** 85/23
**route [3]** 14/22 87/24 88/5
**rule [5]** 17/7 29/16 29/21 69/13 74/6
**ruling [1]** 40/11
**rulings [5]** 6/14 6/15 6/17 24/18 28/4
**running [3]** 46/24 63/4 88/19
**runs [1]** 35/4

## S

**s [7]** 2/2 2/5 2/9 2/12 2/15 3/3 90/15
**said [23]** 8/14 10/10 15/11 19/25 31/14 34/3 35/23 37/18 45/6 49/20 50/4 51/8 53/7 56/5 67/9 68/7 72/9 73/5 74/13 80/17 83/7 86/15 86/23
**said consistent [1]** 72/9
**same [9]** 49/10 49/25 53/6 54/9 64/17 64/18 69/17 71/11 72/24
**San [1]** 2/8
**satisfy [1]** 25/18
**save [1]** 28/11
**say [51]** 12/15 15/17 21/16 21/21 23/7 23/10 31/2 32/17 33/21 33/21 35/2 36/1 36/9 36/21 37/1 37/2 37/2 40/15 41/21 42/24 44/6 46/6 52/11 53/21 56/4 58/9 60/21 60/21 61/2 61/3 62/3 65/6 67/13 73/20 73/21 74/5 75/6 75/20 77/24 78/4 79/10 80/18 80/22 83/11 84/3 85/4 85/9 87/9 87/19 88/4 88/17
**saying [19]** 16/7 17/21 17/24 37/10 38/22 38/23 44/19 50/12 53/16 56/22 60/24 65/8 67/20 67/21 69/5 73/11 74/14 83/8 83/15
**says [23]** 8/16 8/25 15/14 16/2 30/5 33/23 38/19 38/21 38/24 39/14 39/18 43/16 44/23 45/8 45/8 56/9 56/24 56/24 58/18 70/3 70/16 74/20 80/6
**scale [2]** 54/7 54/16
**scarce [1]** 33/8
**scare [1]** 63/1
**scenario [1]** 84/11
**scheme [2]** 22/13 30/24
**scope [4]** 28/2 42/11 42/13 42/16
**scream [1]** 69/7
**seal [2]** 13/25 13/25
**seated [2]** 5/5 49/13
**seating [1]** 5/12
**second [5]** 13/16 25/7 26/1 31/22 31/23
**second-guess [1]** 13/16
**secondary [1]** 15/3
**Secretary [5]** 22/16 25/22

## S


**Secretary... [3]** 68/7 69/25 84/6
**section [2]** 52/19 77/14
**security [25]** 13/2 13/3 13/7 13/9 13/13 15/8 15/9 15/25 22/15 22/18 26/6 27/5 27/8 41/23 41/24 53/1 54/23 59/24 67/15 67/19 71/20 71/21 72/25 81/16 81/21
**see [2]** 5/22 11/10
**seek [5]** 36/17 39/18 77/24 77/25 78/5
**seeking [8]** 29/5 39/11 49/24 50/9 51/21 55/17 56/21 78/6
**seeks [1]** 26/16
**seem [1]** 86/14
**seemed [1]** 8/12
**seems [2]** 10/8 25/4
**seen [3]** 11/14 11/19 59/11
**seminal [3]** 39/12 56/13 56/15
**sense [1]** 14/4
**sensitive [2]** 52/13 71/17
**separate [4]** 30/9 31/9 50/18 64/16
**separately [1]** 28/8
**series [1]** 21/23
**services [1]** 87/25
**set [9]** 5/8 11/13 17/12 17/23 18/2 20/13 26/21 42/23 61/5
**setting [5]** 37/21 38/25 38/25 46/17 50/16
**several [2]** 12/17 26/20
**shape [2]** 50/19 77/18
**share [2]** 41/4 41/4
**shared [1]** 59/2
**SHAWN [2]** 3/3 6/3
**shoe [1]** 70/14
**short [2]** 15/22 24/10
**shortly [1]** 82/17
**should [25]** 7/1 8/5 15/11 15/11 17/18 25/1 33/16 35/12 40/14 40/16 40/18 41/13 46/7 54/14 54/15 61/21 62/19 63/18 64/12 64/12 70/10 74/18 76/13 76/13 88/13
**show [7]** 33/12 33/19 34/14 72/13 72/14 76/5 81/1
**showing [2]** 33/9 33/15
**shown [5]** 27/12 34/8 62/8 64/11 66/22
**shows [1]** 71/10
**shut [3]** 10/12 16/8 63/2
**shutting [1]** 74/15
**side [12]** 18/4 20/4 20/17 28/17 40/5 40/13 49/9 49/19 52/7 56/15 57/17 75/6
**sides [4]** 29/11 29/15 64/17 64/18
**Sidley [1]** 2/16
**sight [1]** 86/12
**sign [1]** 21/22
**signature [7]** 9/23 21/7 21/8 90/11 90/12 90/12 90/16
**signed [3]** 21/4 21/8 90/12
**significant [6]** 13/6 13/8 27/2 66/10 66/22 88/3
**signing [1]** 90/8
**simple [4]** 44/25 45/11 46/9 46/9
**simply [7]** 46/14 62/6 64/9 64/24 68/3 81/22 81/24
**since [12]** 7/14 7/18 9/6 10/1 11/24 12/2 19/22 19/23 28/6 48/21 66/8 81/12
**single [5]** 16/4 25/13 33/1 56/8 77/13
**singular [1]** 78/11
**sit [1]** 43/24
**sitting [1]** 22/23
**situation [2]** 16/10 57/7
**size [1]** 87/7
**sizes [2]** 40/7 77/4
**slate [1]** 64/1
**sledgehammer [2]** 62/22 64/3
**small [2]** 30/20 52/7
**smaller [2]** 31/1 56/6
**so [178]**
**sole [1]** 33/4
**solution [14]** 14/14 14/24 19/1 19/3 21/10 22/25 23/5 23/6 62/16 84/18 87/1 87/2 87/4 87/7
**solve [2]** 85/5 85/6
**some [26]** 6/10 6/10 6/12 11/17 11/18 20/24 20/25 21/3 21/7 31/15 43/17 45/4 47/20 47/21 47/22 50/19 51/14 57/15 61/16 63/1 63/9 73/8 79/21 86/9 88/7 88/18
**somebody [1]** 47/17
**somehow [10]** 14/4 15/24 44/10 44/19 45/15 46/12 46/18 53/23 80/4 80/6
**someone [2]** 56/20 56/21
**something [12]** 11/2 14/22 14/23 16/8 20/18 23/13 32/7 32/7 36/4 61/9 68/11 74/15
**sometime [1]** 37/1
**sometimes [5]** 7/3 30/15 43/23 47/9 60/14
**sooner [1]** 24/8
**sorry [12]** 15/21 19/7 20/8 36/25 37/5 43/13 51/2 55/14 69/15 77/2 83/12 85/22

S

sort [8] 20/24 34/8 58/19 59/11 60/1 60/6 63/1 69/25
South [1] 2/3
Southwest [1] 39/13
spanned [1] 83/23
speak [2] 62/20 74/2
speaking [1] 19/8
speaks [1] 60/23
specific [11] 8/3 36/8 39/9 39/10 40/14 63/2 64/4 65/7 65/7 77/11 77/11
specifically [12] 18/24 27/4 29/9 31/21 32/13 40/21 43/5 45/8 71/22 73/1 79/14 86/20
spectrum [8] 52/6 52/6 52/10 54/5 54/6 67/10 67/12 68/2
spectrums [1] 76/25
speculate [2] 24/7 24/16
speculating [2] 24/11 24/15
springboard [1] 38/9
squarely [2] 58/17 65/17
squares [1] 29/14
St [1] 3/4
stage [19] 7/25 9/3 9/22 13/6 16/18 21/3 21/8 26/11 27/1 27/3 27/7 27/10 33/20 34/11 50/25 76/3 76/9 77/2 85/19
stages [1] 40/7
stakeholders [1] 84/17
stand [1] 43/21
standard [3] 34/23 58/19 76/6
standing [22] 26/9 26/11 32/16 32/20 32/24 33/2 33/2 33/12 33/22 33/23 33/23 33/25 34/4 34/4 34/5 34/6 34/13 48/15 48/18 48/22 48/23 53/23
stands [1] 8/16
start [9] 6/8 6/24 18/15 28/6 44/1 58/21 65/19 80/1 81/12
started [2] 7/15 20/21
starting [3] 29/3 29/3 44/9
starts [1] 85/22
state [1] 5/11
stated [1] 84/7
statement [2] 86/10 86/11
statements [10] 70/18 74/14 75/7 75/7 75/14 76/21 88/8 88/11 88/14 88/15
states [5] 1/1 1/16 3/15 15/9 25/22
status [8] 26/16 35/3 35/5 35/6 35/7 35/9 58/9 58/10
statute [7] 17/19 19/23 45/7 56/9 58/8 58/11 79/2
statutes [1] 7/5
statutorily [1] 38/19
statutory [17] 7/14 10/3 13/4 14/9 16/13 17/15 22/13 26/8 26/24 27/14 38/19 39/17 50/10 53/4 53/10 54/21 64/7
stay [1] 16/24
steadfastly [2] 83/19 84/19
stenographic [1] 90/10
step [7] 13/15 21/24 39/1 42/14 53/15 55/18 77/4
steps [1] 21/23
sticking [1] 20/12
still [12] 16/25 22/7 38/12 62/15 67/14 67/15 80/2 83/2 83/9 83/10 83/21 83/22
stop [12] 12/16 37/19 39/21 45/18 46/5 46/23 46/24 47/21 47/24 59/10 64/20 65/8
stoppage [1] 16/3
stopped [4] 55/2 58/15 59/23 81/13
stopping [3] 14/14 20/22 80/11
straight [1] 56/23
straightforward [1] 44/11
Street [2] 2/7 2/17
striking [2] 50/16 67/25
strings [1] 74/23
strip [1] 25/3
stripped [1] 44/21
stripping [1] 45/11
strokes [2] 40/16 40/19
strong [1] 27/1
strongly [1] 42/4
structured [1] 15/14
styled [2] 42/25 51/18
subject [5] 7/19 24/23 54/19 77/21 83/10
submit [3] 35/6 71/25 76/8
submitting [1] 85/16
substantively [1] 83/11
subsumed [5] 29/6 29/17 29/20 30/22 56/25
success [7] 16/17 27/13 34/25 35/1 62/9 62/9 64/11
such [3] 40/16 40/18 82/6
sue [1] 33/2
sued [1] 7/9
suffered [1] 48/12
suffice [1] 34/19
suffices [1] 34/21
sufficient [2] 14/10 60/3
suggestion [1] 14/3
suggests [1] 86/2
suing [2] 36/9 39/8
suit [1] 70/16

## S


**Suite [2]** 2/7 3/5
**summary [1]** 73/18
**summation [2]** 48/2 66/21
**supplemental [1]** 70/17
**supplementation [1]** 9/12
**supplemented [1]** 9/14
**support [1]** 27/11
**supported [1]** 46/20
**supports [1]** 79/16
**supposed [6]** 13/20 46/12 58/16 63/4 63/5 76/19
**Supreme [4]** 35/11 39/12 52/23 80/25
**sure [16]** 8/1 9/10 20/11 23/20 29/2 33/22 34/21 53/22 61/19 68/12 69/4 70/2 73/14 75/19 81/24 85/8
**surely [2]** 33/15 40/23
**surprised [1]** 23/21
**survive [1]** 46/19
**suspending [1]** 26/5
**suspension [1]** 23/24
**SUWA [2]** 39/13 45/21
**SW [1]** 3/16
**Swanson [2]** 3/8 6/5
**sweeping [1]** 40/10
**switch [1]** 51/7


## T


**T [2]** 90/1 90/1
**tailor [1]** 24/21
**tailored [1]** 17/3
**take [16]** 6/21 28/7 39/15 44/3 45/25 50/6 52/5 53/16 58/15 59/23 63/22 65/1 77/7 78/4 86/3 89/4
**takeaway [2]** 14/4 38/1
**taken [12]** 15/11 24/10 49/25 57/18 58/6 64/20 81/17 85/15 85/20 85/25 86/18 90/9
**takes [2]** 45/14 85/18
**taking [3]** 40/17 44/13 54/23
**talk [9]** 7/5 28/23 40/15 46/16 47/8 48/8 48/8 53/14 57/14
**talked [5]** 45/4 58/21 58/24 64/7 64/7
**talking [16]** 22/3 45/7 45/21 57/24 58/10 58/21 59/9 60/18 62/17 62/21 62/25 63/8 64/22 64/25 64/25 78/22
**talks [4]** 59/24 61/15 61/16 79/8
**tasked [1]** 13/20
**team's [1]** 88/24
**technological [1]** 85/7
**technology [2]** 21/13 88/9
**tell [3]** 18/21 71/19 71/19
**tells [2]** 73/11 81/11
**temporarily [5]** 18/20 36/2 42/13 42/19 77/2
**terms [10]** 8/2 9/3 22/6 37/11 50/22 50/23 53/3 65/23 72/5 77/22
**Terrace [1]** 3/5
**test [1]** 25/19
**text [1]** 39/17
**than [16]** 9/6 14/7 14/10 20/1 23/16 24/8 24/11 41/23 54/25 62/2 63/3 63/16 84/2 85/13 86/17 87/18
**Thank [19]** 6/6 6/7 7/16 38/16 43/8 57/21 57/23 67/3 67/4 69/2 78/13 78/15 82/18 89/1 89/2 89/3 89/8 89/9 89/10
**that [766]**
**that I [1]** 33/21
**that that [1]** 7/19
**that's [95]**
**their [41]** 14/13 16/21 17/5 20/20 23/23 24/25 32/22 32/24 32/24 33/3 33/3 33/5 34/6 34/11 35/8 36/7 38/18 39/23 40/11 40/13 41/7 41/15 42/5 42/9 43/1 48/15 48/19 48/19 50/6 50/15 51/4 51/18 52/21 53/20 56/10 60/15 69/10 74/12 78/8 83/8 86/13
**them [17]** 7/8 18/6 18/21 28/8 32/12 33/9 40/17 41/4 43/9 49/2 50/6 58/15 59/1 60/16 67/2 77/23 81/18
**themselves [7]** 32/19 32/23 35/8 37/25 40/19 53/18 53/25
**then [70]** 6/13 6/15 6/21 9/22 9/23 10/12 15/3 15/16 15/17 18/7 18/17 18/18 19/6 20/2 20/19 20/22 21/23 21/24 25/7 26/9 26/13 26/19 27/22 28/12 30/5 32/23 36/2 36/3 36/13 37/1 37/7 37/11 39/14 40/3 40/19 40/25 41/16 42/11 43/16 43/17 44/2 47/18 48/15 49/7 50/7 50/18 50/25 50/25 52/14 52/14 56/2 57/15 58/20 60/16 61/15 63/10 63/23 64/6 66/17 66/20 68/17 70/4 71/1 71/12 78/1 80/6 80/18 83/24 85/19 86/16
**there [97]**
**there's [56]** 9/21 9/22 12/21 14/4 14/12 14/22 14/24 15/15 15/16 15/16 16/16 16/23 20/25 21/2

T

**there's... [42]** 25/16 26/25 26/25 29/8 30/24 31/9 34/12 35/16 41/21 41/22 41/22 47/18 47/19 50/13 50/13 50/14 50/14 50/18 56/8 56/11 57/2 64/1 64/18 66/2 66/7 67/12 70/5 70/5 73/6 78/1 79/20 81/16 85/8 85/9 86/2 86/10 86/23 87/17 87/19 87/19 88/1 88/5
**thereafter [1]** 82/17
**therefore [3]** 48/22 51/9 64/12
**these [27]** 15/10 15/22 15/24 18/22 19/21 21/9 21/11 21/15 27/8 27/24 30/4 30/18 34/7 36/13 37/2 37/22 41/25 42/2 50/23 53/7 53/9 71/16 72/7 74/5 80/17 85/13 86/3
**they [139]**
**they're [31]** 13/22 14/11 17/21 24/19 27/3 27/23 28/4 30/16 39/4 40/7 40/7 44/19 47/20 47/21 47/22 51/4 51/4 51/6 51/18 55/17 58/16 59/13 63/4 63/17 64/17 67/21 67/25 69/24 78/6 79/10 85/5
**they've [3]** 14/25 34/8 42/25
**thing [4]** 11/16 59/14 88/17 88/17
**things [25]** 14/17 14/20 15/10 16/24 22/21 22/22 41/16 47/19 47/22 49/13 52/7 59/25 61/11 61/12 61/16 61/16 63/4 64/6 67/13 78/21 81/5 84/10 85/11 86/1 86/3
**think [83]** 9/6 10/18 10/21 12/6 13/24 14/3 15/20 15/23 17/16 18/16 22/21 23/16 26/14 26/24 26/25 27/2 29/15 30/5 30/13 30/13 32/23 33/24 33/25 34/1 34/9 34/10 35/4 35/11 35/25 38/9 40/12 40/12 40/15 41/16 42/12 44/6 46/19 48/3 54/3 55/11 55/13 57/12 57/13 57/23 58/24 61/13 61/20 62/2 64/6 64/15 65/21 66/20 68/14 68/20 69/9 71/10 74/3 74/7 74/12 74/18 78/18 78/18 79/13 80/14 80/24 82/21 82/25 84/5 84/7 84/11 84/17 85/1 86/20 87/8 87/14 87/15 87/16 87/21 88/10 88/12 88/12 88/13 88/20
**thinking [7]** 61/15 62/14 70/2 73/7 73/10 73/12 87/21
**thinks [1]** 54/22
**third [3]** 3/16 22/8 41/19
**this [168]**
**this is [1]** 74/6
**those [50]** 9/23 11/18 16/20 17/17 17/21 18/13 19/17 21/17 22/21 22/22 26/12 26/24 28/4 29/12 29/22 30/11 30/14 32/8 32/25 33/10 36/13 36/16 37/3 37/6 37/7 37/8 43/11 43/14 45/5 48/25 48/25 53/4 53/17 53/20 55/9 57/4 62/13 62/19 64/9 67/14 73/15 77/5 77/15 77/21 81/5 81/9 81/9 81/21 83/10 88/14
**though [12]** 13/5 24/1 32/8 37/11 53/7 56/22 59/20 60/24 69/21 73/20 75/14 84/7
**thought [4]** 6/8 6/13 24/9 24/20
**thoughts [1]** 58/5
**threat [1]** 16/8
**threats [2]** 71/24 73/1
**three [1]** 10/11
**threshold [1]** 29/4
**through [8]** 10/15 11/21 15/14 21/23 24/17 61/14 65/11 79/8
**throughout [1]** 78/7
**tie [1]** 16/3
**time [63]** 5/8 6/18 6/18 6/21 10/15 16/7 17/23 19/15 19/23 20/1 20/2 20/6 28/1 28/11 28/19 36/14 37/8 37/17 43/7 43/17 46/8 50/1 50/1 52/23 52/23 57/8 57/12 57/16 57/18 59/8 59/14 59/25 60/4 60/20 61/3 62/5 63/1 67/18 69/16 70/2 70/6 71/9 71/12 71/14 71/17 71/18 72/4 72/20 72/20 72/22 73/7 73/10 74/2 83/20 84/15 85/11 86/1 86/3 86/8 86/18 87/10 88/1 88/4
**timelines [1]** 79/1
**timer [2]** 23/3 23/5
**tips [1]** 27/22
**today [1]** 62/6
**together [6]** 23/4 41/3 43/9 52/15 54/11 61/4
**too [7]** 29/19 31/5 31/17 35/23 56/4 68/13 88/14
**took [4]** 49/9 62/4 62/5 64/19
**totality [1]** 80/24
**touching [1]** 30/15
**toward [1]** 88/11
**towards [3]** 23/11 62/1 67/22

## T


**TRAC [8]** 56/13 56/13 56/13 56/14 56/19 56/19 56/24 57/4
**training [1]** 14/22
**transcript [4]** 1/14 4/4 90/9 90/11
**tread [1]** 88/13
**trigger [1]** 45/1
**TROCK [2]** 2/12 5/19
**true [5]** 9/14 34/14 50/6 64/24 90/9
**Trump [2]** 63/25 79/7
**try [4]** 5/12 33/12 60/16 89/6
**trying [7]** 15/22 41/25 46/2 46/3 58/9 67/25 84/17
**TSA [3]** 16/7 62/24 63/3
**tune [2]** 71/13 72/24
**turn [3]** 11/22 20/7 32/24
**turned [2]** 20/3 32/2
**turning [3]** 44/5 58/20 64/14
**two [16]** 6/9 16/24 28/23 30/11 30/14 41/16 46/15 54/5 54/6 63/16 64/17 64/18 82/15 82/16 82/19 85/15
**type [3]** 40/22 41/10 79/11
**types [3]** 40/8 63/24 77/4


## U


**U.S.C [1]** 25/18
**ulterior [2]** 75/2 75/20
**ultimate [5]** 22/3 22/4 55/19 65/24 75/9
**ultimately [4]** 9/23 21/14 21/22 21/25
**umbrella [2]** 78/9 83/10
**unacceptable [2]** 15/18 66/17
**unclear [1]** 13/24
**under [45]** 10/8 13/25 13/25 13/25 17/18 25/18 26/22 27/13 29/10 33/17 34/24 39/10 39/18 41/14 44/16 44/21 47/3 49/23 49/24 51/2 51/3 51/5 52/8 52/19 53/13 57/24 59/4 64/10 65/5 65/16 66/6 68/15 68/16 68/21 68/23 69/6 76/6 77/8 78/8 78/10 79/5 81/6 81/7 83/2 89/4
**understand [9]** 7/6 9/20 37/10 54/18 55/3 59/25 60/6 60/8 80/5
**understandable [1]** 7/11
**understanding [17]** 6/12 7/17 7/22 8/4 8/18 8/19 10/8 10/14 11/25 12/5 17/17 19/21 20/16 20/25 21/6 23/18 59/2
**understood [1]** 19/19
**unique [1]** 23/12
**uniquely [3]** 68/9 73/25 74/2
**UNITED [4]** 1/1 1/16 3/15 15/9
**universal [1]** 62/20
**unlawful [14]** 44/13 44/18 47/5 82/20 83/9 83/12 83/12 83/14 83/14 83/25 84/3 85/10 86/6 86/22
**unlawfully [10]** 65/8 65/18 68/18 78/22 78/23 78/24 79/3 80/19 80/22 81/4
**Unless [1]** 82/13
**unmet [1]** 32/9
**unnecessary [1]** 16/10
**unquote [2]** 35/15 39/12
**unreasonable [15]** 39/7 39/8 40/3 41/2 41/3 41/8 43/4 52/3 52/10 54/10 56/18 56/19 64/23 65/19 82/22
**unreasonably [2]** 68/18 78/23
**unreviewable [1]** 56/12
**unsupported [1]** 62/11
**untenable [1]** 68/3
**until [7]** 9/15 19/4 24/1 72/10 72/11 72/17 72/22
**until April 2026 [1]** 24/1
**unwritten [1]** 12/18
**up [23]** 6/21 6/21 8/10 9/11 12/12 14/14 14/17 14/25 33/6 34/16 43/21 46/17 62/15 62/18 62/19 63/12 65/3 65/20 71/9 73/3 80/8 85/4 88/19
**updates [1]** 11/6
**upon [3]** 16/2 30/11 66/12
**us [8]** 30/6 42/4 51/9 68/14 74/8 79/15 83/18 84/9
**use [3]** 7/10 30/7 64/3
**used [1]** 70/6
**usual [1]** 49/11
**usually [1]** 43/22
**utilize [1]** 30/6


## V


**v [8]** 1/6 5/7 25/5 25/6 63/25 63/25 79/7 90/3
**vacate [2]** 77/2 77/17
**vacated [1]** 50/24
**vacatur [2]** 38/20 51/2
**varies [1]** 40/4
**various [1]** 11/5
**Varniab [1]** 80/21
**varying [1]** 40/9
**vast [1]** 17/6
**Venn [2]** 30/14 30/19
**versa [2]** 41/1 54/16
**version [1]** 82/22
**versus [6]** 34/22 38/3 42/12 49/15 54/6 64/14
**very [34]** 14/24 14/24

## V


**very... [32]** 14/25 15/13 16/3 16/3 29/6 36/17 37/19 48/4 48/13 48/13 52/7 52/11 52/11 52/12 54/10 54/17 57/6 57/10 60/9 60/19 61/13 61/13 62/3 63/8 63/24 66/10 70/22 71/16 76/15 79/13 83/13 85/22
**viable [1]** 51/8
**vice [3]** 5/20 41/1 54/16
**view [2]** 14/10 82/5
**violated [3]** 16/12 27/1 27/14
**violating [1]** 26/7
**violation [5]** 26/23 27/16 79/4 79/17 81/2
**violations [1]** 10/4
**void [2]** 69/22 73/6


## W


**wait [1]** 83/16
**waiting [3]** 21/12 87/22 88/4
**walnut [1]** 62/22
**want [26]** 6/22 18/16 20/10 24/7 24/12 24/14 24/15 28/22 28/25 34/11 36/9 38/2 43/21 49/4 49/13 53/21 57/19 66/17 67/5 68/13 69/6 70/12 82/19 84/18 85/13 87/4
**wanted [1]** 55/2
**wants [1]** 17/3
**War [5]** 7/3 7/7 19/2 84/19 85/2
**warranted [2]** 15/25 16/2
**was [68]** 8/9 10/2 10/9 10/10 12/2 12/7 12/11 12/11 12/17 13/24 15/4 15/5 15/5 15/13 20/13 24/4 26/16 35/9 45/18 45/19 45/21 45/21 45/22 47/23 47/24 54/3 54/4 56/17 56/18 56/20 56/21 56/23 57/5 57/6 59/8 59/9 59/23 60/3 60/8 60/20 60/22 61/3 61/4 61/14 61/15 62/13 62/14 62/17 63/1 63/8 64/20 64/20 65/2 66/16 70/2 70/6 71/17 73/7 74/14 75/8 75/9 76/2 80/6 80/9 80/9 80/18 84/15 86/9
**Washington [3]** 2/11 2/14 2/17
**way [11]** 7/11 44/7 46/1 46/20 50/19 56/2 62/2 66/10 77/18 87/17 88/18
**ways [3]** 21/15 60/13 77/22
**we [138]**
**we'll [8]** 28/12 30/6 44/16 46/15 49/7 82/17 84/9 89/8
**we're [38]** 11/16 12/12 12/23 13/15 22/3 40/17 44/12 45/7 46/2 46/2 46/3 46/6 50/15 53/8 53/9 58/2 58/4 58/10 59/2 59/9 60/18 61/22 64/25 64/25 65/6 65/8 67/21 68/7 71/21 74/7 74/15 74/16 80/17 81/10 81/19 81/22 81/25 87/1
**we've [10]** 40/6 57/17 57/24 58/21 58/24 58/24 64/6 85/1 85/1 86/10
**weeks [1]** 10/11
**weighs [1]** 66/24
**well [29]** 8/11 8/11 8/22 9/13 9/25 12/8 14/12 17/20 24/9 31/2 36/13 48/11 51/1 51/22 52/8 54/9 54/9 57/17 58/1 61/24 67/16 67/21 68/1 68/22 72/3 75/15 76/4 80/21 87/4
**went [2]** 70/7 71/22
**were [37]** 8/13 9/14 10/3 12/19 12/21 16/12 20/5 23/21 24/4 26/12 27/15 31/12 31/12 36/2 38/6 38/8 43/11 43/13 50/6 53/18 55/16 59/25 62/13 62/24 64/16 67/18 68/12 68/14 68/17 68/20 72/2 73/10 73/12 74/14 75/13 77/23 86/4
**what [77]** 6/8 7/10 8/1 8/14 8/16 13/10 13/12 14/25 15/10 15/13 17/20 18/11 18/21 19/7 19/8 22/3 22/10 25/4 35/5 35/18 35/21 36/22 36/25 37/10 39/5 43/16 44/19 44/24 45/21 45/21 46/9 46/22 50/12 50/15 50/15 51/4 56/5 58/2 58/2 58/16 59/2 59/4 59/4 59/5 59/6 59/9 60/3 60/23 61/14 61/15 62/6 63/6 64/5 64/25 65/5 65/10 69/12 69/21 69/22 70/1 70/3 70/15 72/1 73/7 73/10 73/12 73/22 74/7 79/14 79/14 80/5 80/18 81/10 82/5 82/7 83/7 83/8
**what's [5]** 6/12 8/19 18/19 27/9 66/13
**whatever [7]** 37/17 42/5 54/22 74/8 75/8 75/21 76/23
**when [40]** 10/13 16/25 21/10 29/8 29/16 30/22 31/21 31/23 34/8 36/21 40/15 41/18 41/19 46/16 53/14 56/24 58/2 58/9 60/14 60/14 60/18 60/25 62/14 63/8 64/3 69/14 69/18 70/16 70/21 71/1

## W

**when... [10]** 71/11 72/20 74/22 76/25 79/10 84/7 85/6 85/21 86/15 87/8
**whenever [1]** 72/22
**where [21]** 10/12 11/11 14/22 20/16 22/21 22/22 30/1 30/14 30/24 30/24 51/7 51/14 56/16 56/17 57/5 57/5 72/1 73/13 77/15 82/23 87/17
**whereas [3]** 30/12 30/19 52/10
**whether [17]** 10/3 13/16 21/13 22/10 22/10 27/8 31/14 37/4 37/5 40/3 44/12 46/12 52/2 64/22 73/16 75/3 79/20
**which [53]** 14/3 14/14 16/24 20/13 21/24 21/25 24/12 24/14 24/22 25/18 26/2 34/6 35/18 36/18 39/18 39/24 41/18 43/9 45/4 45/24 50/15 54/4 56/8 56/14 57/4 57/6 57/7 58/7 59/15 60/22 63/9 66/19 67/11 68/1 68/19 70/19 72/25 73/6 73/23 74/22 76/6 77/3 77/8 78/24 79/5 79/11 79/18 81/3 81/12 81/13 84/25 85/10 88/14
**while [5]** 35/2 42/21 42/22 72/4 84/20
**who [8]** 5/20 7/9 21/25 33/1 36/9 43/19 60/8 76/1
**who is [1]** 76/1
**who's [2]** 30/7 30/8
**whole [7]** 9/18 14/15 45/16 47/16 51/22 64/1 71/14
**whose [1]** 18/8
**why [28]** 6/17 10/21 14/7 14/9 20/2 22/17 22/19 24/7 26/20 28/6 30/18 40/1 41/5 46/1 49/6 53/8 57/17 62/19 63/18 66/24 70/10 70/12 71/2 71/3 71/4 87/1 87/3
**Wilderness [1]** 39/13
**will [20]** 22/10 27/7 27/19 33/8 48/10 48/12 48/12 56/4 58/15 59/13 61/25 71/6 81/17 83/15 83/16 83/16 85/9 86/6 87/9 88/6
**willing [1]** 55/1
**wind [32]** 5/21 7/13 7/24 8/25 9/2 11/24 12/2 13/1 16/4 17/6 20/25 23/8 23/11 23/12 23/16 23/19 23/25 25/14 26/17 27/5 35/9 35/23 36/11 36/25 40/6 42/2 68/9 74/15 74/16 77/19 77/21 88/8
**winds [1]** 42/20
**Winter [1]** 26/19
**withheld [7]** 65/18 68/19 78/22 78/24 78/24 79/3 80/20
**withholding [19]** 27/16 47/5 65/9 80/23 81/4 82/20 82/23 83/9 83/12 83/12 83/14 83/15 83/25 84/4 85/10 86/3 86/6 86/22 87/20
**within [22]** 10/17 11/11 13/4 17/22 29/6 29/17 29/20 30/20 30/23 30/23 30/25 31/2 31/4 31/6 47/2 56/6 56/7 56/25 56/25 58/17 65/17 83/9
**without [2]** 74/9 90/11
**witness [1]** 61/7
**word [1]** 50/6
**words [1]** 34/11
**work [1]** 5/12
**working [4]** 19/2 83/19 85/3 85/5
**works [2]** 15/17 57/20
**world [2]** 48/5 48/9
**would [78]** 6/8 6/13 8/17 9/10 10/18 10/21 18/5 18/7 20/6 21/21 23/21 24/9 24/11 24/20 26/2 29/13 29/19 31/19 31/20 32/16 33/21 33/21 35/6 35/6 35/15 35/22 36/4 36/7 36/22 37/9 41/21 42/13 43/7 43/17 44/5 49/5 49/9 49/18 52/20 52/20 53/22 53/23 55/6 55/7 55/16 55/24 56/22 61/10 62/25 66/17 67/8 67/11 68/9 68/10 68/15 68/15 68/15 68/18 68/19 68/19 71/25 72/18 73/17 76/8 76/14 76/17 77/3 77/12 80/18 80/19 82/5 83/11 84/7 86/5 87/4 87/12 87/14 88/13
**wouldn't [3]** 9/13 23/10 68/18
**writ [1]** 48/6
**writing [3]** 61/9 61/12 61/12
**written [3]** 12/18 12/19 12/22
**wrong [1]** 6/17

## Y

**Yeah [2]** 6/20 19/7
**year [7]** 10/13 37/2 84/2 85/13 85/20 85/25 87/19
**years [6]** 83/23 83/23 85/16 85/18 86/4 87/16
**yes [22]** 7/25 10/19 15/21 18/14 20/15 20/17 38/14 49/5 51/17 52/19 63/19 66/1 72/19 73/21 76/4 76/8 78/1 80/1 82/4 83/8 83/8 88/10
**yet [4]** 22/25 23/1 49/25 72/5

**Y**

**York [2]** 63/25 79/7
**you [208]**
**you can't [1]** 79/22
**you'd [1]** 70/8
**you'll [5]** 20/9 28/10 43/15 57/15 57/19
**you're [19]** 11/3 17/20 17/25 22/22 22/23 28/23 37/10 39/8 39/11 43/14 44/22 47/12 70/21 73/11 79/25 83/7 85/6 87/22 87/22
**your [46]** 5/15 6/2 7/16 9/10 11/3 11/9 11/10 11/15 12/14 14/13 15/20 15/21 16/14 17/8 22/23 24/21 28/10 43/20 44/1 44/6 47/12 47/12 48/2 52/25 53/3 54/3 54/4 57/20 58/5 60/6 64/15 65/25 66/21 66/21 71/13 78/15 79/25 80/15 81/9 82/5 82/24 87/25 89/3 89/4 89/9 89/10
**Your Honor [16]** 6/2 7/16 9/10 11/3 11/15 14/13 43/20 44/1 54/4 60/6 64/15 66/21 78/15 79/25 89/9 89/10
**Your Honor's [1]** 48/2

**Z**

**zoning [1]** 22/11
**zoom [1]** 83/21