**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | | |
|---|---|---|
| RENEWABLE NORTHWEST, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>PETER B. HEGSETH, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. 3:26-CV-01092 |

**FEDERAL DEFENDANTS' SECOND STATUS REPORT**

On August 6, 2026, the Court directed (Dkt. No. 125) the Department of War (DoW) to provide status updates every 30 days "addressing whether review of wind energy projects has resumed at each stage of the review process, specifically: (1) projects with a mitigation agreement executed by the developer that are awaiting countersignature by [DoW]; (2) projects that have completed the [Mitigation Response Team (MRT)] process but have not yet received a draft mitigation agreement from [DoW]; (3) projects that were in the middle of the MRT process; (4) projects that have received a notice of presumed risk and are awaiting initial MRT meetings; and (5) projects that are awaiting completion of a preliminary review and issuance of a notice of presumed risk determination or non-objection transmittals to the FAA."

In its first report (Dkt. No. 144), DoW reported that it had: resumed processing wind energy project applications; developed and began to apply a new analytical methodology in order to capture emergent threats; and developed a new model mitigation agreement for use where

appropriate. Since the last report, DoW has continued to process pending applications. With respect to the five categories identified by the Court[1]:

1. Projects with a mitigation agreement executed by the developer that are awaiting countersignature by DoD.

As of the last report, DoW had begun to apply its new analytical methodology to the approximately 30 projects that were in this category at the time of the Court's injunction. At the time of the last report, one developer had received the new model mitigation agreement.

DoW has now applied the new analytical methodology to all remaining projects in this category except one, and believes that most of the projects therein present threats that are mitigatable, with limited additional mitigation measures. Accordingly, DoW is in the process of providing each of the Category 1 projects a copy of the new model mitigation agreement. This is meant to accelerate any negotiations that may be required by providing the developers with terms they may consider while the Department begins the process of providing them with individualized mitigation agreements crafted for each project.

2. Projects that had completed the MRT process but had not yet received a draft mitigation agreement from DoD.

As of the last report, DoW had begun to apply its new analytical methodology to the approximately 30 projects that were in this category at the time of the Court's injunction.

DoW has also completed analysis on at least 10 of the 30 projects in this second category. Absent discovery of threats that cannot be mitigated, DoW expects to provide copies of the model mitigation agreement template to Category 2 projects as well. After DoW completes the drafting

[1] During a status conference on October 1, the Court clarified that it expected the Department to include its compliance with statutory and regulatory deadlines in its updates. Given there are more than 300 projects under review, and the short time between the status conference and this report, collection of that information for this report has proven infeasible. Federal Defendants will begin to report in the next status report the number of projects, if any, that are beyond a regulatory or statutory deadline for any step in the review process.

and dissemination of individualized mitigation agreements for the Category 1 projects, it intends to turn to Category 2 and will follow the same basic process until work on projects in both categories is complete.

3. Projects that were in the middle of the MRT process.

At the time of the last report, DoW had begun to apply its new analytical methodology to the approximately 110 projects that were in this category at the time of the Court's injunction, but had not yet re-engaged with developers regarding potential risks.

Since the last report, DoW has applied the new analytical methodology to more than 5 of those projects. To ensure proper re-engagement with developers, DoW issued interim guidance reflecting the principles in the new model mitigation agreement and directing that the principles be used in MRT discussions with the project developers. The Air Force has initiated or re-initiated contact with 92 projects in Categories 3 and 4.[2]

4. Projects that had received notice of presumed risk and were awaiting initial MRT meetings.

As of the Court's injunction and at the time of the last report, there were approximately 50 projects in this category. DoW reported in the last report that it would begin applying its new analytical methodology to the projects in this category once it finishes with those in Category 3.

Since the last report, DoW has applied the new analytical methodology to one project in Category 4. As with the other Categories, DoW will provide that project a model mitigation agreement template.

As noted above, the Air Force has contacted 92 projects in Categories 3 and 4 to initiate or re-engage in MRT discussions. Meanwhile, the North American Aerospace Defense Command

[2] The Air Force does not presently track MRT progress in alignment with the Court's five category construct. However, DoW is working to ensure future status reports more clearly articulate Air Force progress between these two Categories.

(NORAD) has similarly contacted 22 projects in Category 4 and invited them to begin MRT negotiations, moving them from Category 4 to Category 3, notwithstanding that the analytical methodology may not yet have been completed. As a result, approximately half of the nearly 50 projects in this category at the time of the Court's injunction remain in Category 4, and approximately 10 more have moved into Category 4 from Category 5. At present, approximately 35 projects remain in Category 4.

5. Projects that were awaiting completion of a preliminary review and issuance of presumed risk determinations or non-objection transmittals to the FAA.

At the time of the Court's injunction, approximately 90 projects were awaiting the completion of the preliminary review process. At the time of the last report, DoW had determined that at least 40 of those projects warranted a notice of presumed risk but had not fully disseminated notices to each developer.

Since the last status report, additional notices of presumed risk have been sent to project developers, and 25 draft notices are awaiting final input from the Services that identified the risks so that the notice will include the specifics required by 10 U.S.C. § 183a(c)(2)(A) and implementing regulations. Since the last status report, DoW has identified 4 projects that did not warrant a notice of presumed risk. DoW has closed the review of those projects without need for further action. Those projects are now with the FAA.

Dated: October 5, 2026

Respectfully submitted,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
U.S. Department of Justice

*/s/ Shawn D. Ren*
Shawn D. Ren, Trial Attorney
Natural Resources Section
999 18th St., N Terrace, Suite 600
Denver, CO 80202
Tel: (202) 598-3141
E-mail: shawn.ren2@usdoj.gov

*Attorney for Federal Defendants*