THE ASSISTANT SECRETARY OF WAR
3400 DEFENSE PENTAGON
WASHINGTON, DC 20301-3400

ENERGY, INSTALLATIONS, AND ENVIRONMENT

September 29, 2026

MEMORANDUM FOR ASSISTANT SECRETARY OF THE ARMY (INSTALLATIONS, ENERGY, AND ENVIRONMENT)
ASSISTANT SECRETARY OF THE NAVY (ENERGY, INSTALLATIONS, AND ENVIRONMENT)
ASSISTANT SECRETARY OF THE AIR FORCE (INSTALLATIONS, ENVIRONMENT, AND ENERGY)
DIRECTORS OF THE DEFENSE AGENCIES

Subject: Interim Guidance Regarding Compliance with Established Military Aviation and Installation Assurance Siting Clearinghouse Procedures

This interim guidance regarding compliance with established Military Aviation and Installation Assurance Siting Clearinghouse (SCH) procedures intends to clarify necessary coordination, interactions, and consultations required to ensure adherence to the processes established in Section 183a of title 10, United States Code (U.S.C.), the Clearinghouse statute, and the corresponding regulations set forth in Code of Federal Regulations (C.F.R.) Part 211.

This guidance merely reiterates the Department's current expectations of the SCH, the Services, and Department of War (DoW) Components with respect to projects issued a Notice of Presumed Risk (NPR) pursuant to 32 C.F.R. § 211.6(a)(3)(iii)(A). Specifically:

a. The SCH will notify the Secretary of Transportation and the Secretary of Homeland Security that the Clearinghouse has offered to engage in mitigation discussions with the applicant (32 C.F.R. § 211.6(a)(3)(iii)(D)).

b. The SCH will secure the applicant's decision regarding its desire to participate in mitigation discussions within five days of the applicant's receipt of the NPR memorandum (32 C.F.R. § 211.6(a)(4)).

c. The SCH will invite the Administrator of the Federal Aviation Administration and the Secretary of Homeland Security to participate in Mitigation Response Team (MRT) discussions. The SCH may also invite other Federal agencies to participate in such discussions as necessary (32 C.F.R. § 211.6(b)). If any Federal partners elect to participate in project specific MRT discussions, the SCH will notify the lead Service or the DoW Component to ensure these agencies are included in MRT scheduling and negotiations.

d. If MRT discussions have not reached agreement as to mitigation measures that remove the adverse impacts of the proposed project on military operations and readiness within 75 days of the NPR notification to the applicant, the Service or the

DoW Component leading the MRT discussions will seek an extension of a specific period of time in writing from the applicant and provide the SCH with a copy of any extension documentation (32 C.F.R. § 211.6(b)(1)).

e. If an extension agreement is reached and reduced to writing, the MRT discussions will continue. If a written extension agreement is not reached by 90 days from the date of the NPR or MRT discussion have not concluded by that date, the Service or the DoW Component leading the MRT discussions notify will the SCH of the results of the discussions, including an analysis and any recommendations of the MRT with regard to the project (32 C.F.R. § 211.6(b)(1)(i)).

f. If the applicant and the MRT are unable to reach agreement on mitigation, the SCH shall review the analysis and recommendations of the MRT and determine if the proposed project as it may have been modified by the applicant after discussions would result in an unacceptable risk to the national security of the United States (32 C.F.R. § 211.6(b)(2)).

The Services and the Components will ensure the prompt scheduling of MRTs. For any projects for which a NPR has been issued and that have not already been contacted to schedule an initial meeting, the Service or the DoW Component leading the MRT discussions will contact the applicant **no later than 1200 on 30 September 2026** and will provide the SCH with documentation reflecting such contact, including any details regarding scheduling an initial meeting, if available. For projects that need to resume MRT discussions, the Service or the DoW Component leading the MRT discussions will contact the applicant **no later than 1200 on 30 September 2026** and will provide the SCH with documentation reflecting such contact, including any details regarding the resumption of MRT discussions.

Prior to attending any meetings, the Services and Components leading the MRT will discuss the operational risks identified during the pre-MRT, internal, analytical evaluation of the project with the North American Aerospace Defense Command's J322 Radar Analysis Branch. In addition to discussing mission-specific impact data and ensuring mitigation decisions are technically effective, operationally feasible, and defensible, the MRT will address the standard mitigation agreement topics described below. Importantly, several of these topics are in furtherance of Executive Order 14421, *Declaring a National Emergency to Secure the United States Bulk-Power System*, dated August 26, 2026, and the forthcoming implementation standards.

a. Re-opener of Mitigation Discussions based on Technical and/or National Security Changes:

- DoW may require renegotiation if unforeseen events materially alter National Defense Imperatives and Priorities and the parties cannot agree on an amendment to address it. National Defense Imperatives and Priorities are national defense capabilities and military operations, including military installations, defense critical infrastructure, research, development, test and evaluation activities, and military readiness activities. These imperatives and priorities require protection

from significant interference, degradation, impairment, compromise and/or exploitation that may occur due to an activity under foreign control operating in the vicinity of such defense assets, critical infrastructure, capabilities and/or military operations;

- Applicants must agree to participate, as necessary, in post-execution MRT discussions in good faith for a minimum of 90 days;
- To the extent releasable, the DoW will provide written notice and describe the event, the military impact, proposed agreement changes, and meeting details;
- During renegotiation, both sides will generally continue performing their existing obligations;
- The DoW may request the applicant suspend operations when national security or safety risks arise outside the normal curtailment procedures; and
- Any changes agreed to require a formal amendment to the mitigation agreement (MA).

b. Ownership Disclosures, Committee on Foreign Investment in the United States (CFIUS) Warranties, and Voluntary Filings:

- The applicant must provide and maintain accurate ownership, corporate-structure, governance, and authorized-representative information;
- The applicant must disclose whether it is or is not a "Foreign Person" and is or is not subject to foreign control as those terms are defined under the CFIUS legal framework;
- The applicant must agree to disclose material ownership or governance changes: (1) 180 days in advance if the change could affect foreign-person status; (2) or 30 days in advance of any other material changes. A material change includes a new owner obtaining five (5) percent or more equity or voting interest, or a change in the ultimate parent entity;
- If an applicant subsequently becomes foreign-owned or foreign-controlled, it must make a voluntary CFIUS filing and provide the filing and related CFIUS documentation to DoW;
- CFIUS conditions applicable to the project would automatically become part of the agreement without using the normal MA amendment process;
- The applicant must mark sensitive ownership and CFIUS material as proprietary. DoW agrees to use such information for authorized purposes and to provide notice before disclosure when legally possible; and
- Failure to comply with these CFIUS and disclosure requirements may lead to discretionary termination of the MA as described below.

c. Voluntary Compliance with Select Medium-Impact North American Electric Reliability Corporation (NERC) Critical Infrastructure Protection (CIP) Standards:

- Assuming the applicant's project is formally categorized as a Low Impact Bulk Electric System (BES) Cyber Asset under the NERC regulatory definitions, the applicant agrees to enforce a "Secure-by-Design" risk posture by adopting

measures equivalent to those defined in NERC CIP-004-8, *Personnel & Training*, CIP-005-8, *Electronic Security Perimeters*, and CIP-013-3, *Supply Chain Risk Management*.

d. Non-Disclosure Agreement (NDA):

- The DoW may need to share sensitive information (Mitigation Agreement Disclosure Information (MADI)) with the applicant in the normal course of effectuating the MA, especially with respect to curtailment requests;
- Broadly MADI covers confidential, proprietary, sensitive defense, operational, technical, critical-infrastructure, and other information whose unauthorized release could harm national security, public safety, readiness, operational security, or Government mission interests;
- To protect MADI, the applicant agrees to sign an NDA governing the handling of sensitive but generally unclassified information shared to support the project; and
- The NDA strictly limits who may access the information, how it may be stored and used, prohibits disclosure to foreign persons and unapproved systems, and requires rapid incident reporting.

e. Indemnification and Assumption of Risk Regarding Military Operations:

- The applicant shall acknowledge that the project is located near areas used for potentially hazardous military operations and accept the associated risks, including possible activities such as low-level and supersonic flights, sonic booms, live-fire and weapons testing, temporary airspace or ground closures, emergency maneuvers, and radar operations; and
- The applicant will agree to permanently release, indemnify, and hold harmless the United States, DoW, the respective Service(s) and/or DoW Components, and their personnel from claims or costs arising from authorized military activities. This includes claims for damage to project equipment, lost revenue, grid instability, or power-service interruptions.

f. Discretionary Termination: DoW may terminate the MA if any of the following events occur—

- A required federal lease, right-of-way, easement, or approval is denied, withdrawn, or terminated;
- The project stops generating power for 90 consecutive days without required prior notice, unless the stoppage results from force majeure;
- The applicant fails to meet foreign-ownership disclosure, reporting, or CFIUS-related obligations;
- The project owner fails to comply with the MA's voluntary NERC CIP requirements;
- The applicant violates the NDA; or

- A legal or regulatory change harms National Defense Imperatives and Priorities and the parties cannot agree on an amendment to address it.

The point of contact for this memorandum is Ms. Rebecca Isacowitz, DASW(ER&O) at 703-693 5796, rebecca.isacowitz.civ@mail.mil.

MARKS.DALE.R.1080786405 Digitally signed by MARKS.DALE.R.1080786405 Date: 2026.09.29 13:39:07 -04'00'

Dale R. Marks